**ROCHE FREEDMAN LLP**
Kyle W. Roche (*pro hac vice* forthcoming)
Edward Normand (*pro hac vice* forthcoming)
Richard Cipolla (*pro hac vice* forthcoming)
Stephen Lagos (*pro hac vice* forthcoming)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: kyle@rochefreedman.com
Email: tnormand@rochefreedman.com
Email: rcipolla@rochefreedman.com
Email: slagos@rochefreedman.com
Email: ingo@rochefreedman.com

*Counsel for Lead Plaintiff Movant Henry Rodriguez and Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION, and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**NOTICE OF MOTION AND MOTION TO APPOINT HENRY RODRIGUEZ AS LEAD PLAINTIFF AND APPROVE HIS SELECTION OF ROCHE FREEDMAN LLP AS LEAD COUNSEL**<br><br>Date: November 18, 2021<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: No. 11, 19th Floor |

# NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on November 18, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i), Henry Rodriguez ("Movant") will move the Court to appoint him as lead plaintiff and approve his selection of Roche Freedman LLP as lead counsel. In support of this motion, Movant respectfully submits herewith a Memorandum of Points and Authorities and the Declaration of Kyle W. Roche ("Roche Decl.").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is a securities class action against Dfinity USA Research LLC ("Dfinity USA"), Dfinity Foundation (the "Foundation," and together with Dfinity USA, "Dfinity"), and Dominic Williams, seeking to recover damages caused by Defendants' promotion and sale of ICP tokens, which are unregistered securities, while in possession of material non-public information. This action—the first-filed federal action concerning this subject matter—was commenced on August 9, 2021, by Plaintiff Daniel Valenti, also represented by Roche Freedman LLP, on behalf of a proposed class consisting of all persons who purchased ICP tokens from May 10, 2021, to the present (the "Class").

The PSLRA directs the Court to appoint as lead plaintiff the class member the Court "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). Under the applicable standards, Movant is the "most adequate plaintiff" to represent the class. *See id.* §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).

Movant timely filed this motion, has substantial financial interests in this action, and satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. He will fairly and adequately protect the Class's interests by prosecuting this litigation and seeking the fullest recovery for the Class, and he is not subject to unique defenses that would render him

1
NOTICE OF MOTION AND MOTION TO APPOINT
LEAD PLAINTIFF AND LEAD COUNSEL – No. 3:21-cv-06118-JD

incapable as lead plaintiff. He has also selected highly qualified and experienced counsel, Roche Freedman LLP ("Roche Freedman"), who will provide him and the Class the highest-caliber representation against these sophisticated defendants and their counsel. For these reasons, Movant respectfully requests that the Court appoint him as lead plaintiff and approve his selection of Roche Freedman as lead counsel.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).

2. Whether the Court should approve Movant's selection of Roche Freedman as Lead Counsel pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).

## III. STATEMENT OF FACTS

### a. Summary of the Case

Dfinity, led by its Founder, President, and Chief Executive Officer Dominic Williams, is a blockchain technology company that developed and operates the Internet Computer network, a purportedly decentralized network that publicly launched on May 10, 2021. (Compl. ¶¶ 14-16, 31, 36-44.) To build that network, in the years leading up to the launch, Dfinity raised over $60 million from private investors, including prominent venture capital firms like Andreessen Horowitz and Polychain. (*Id.* ¶¶ 31-35.) In exchange, Dfinity issued to those investors certain cryptoassets known as "ICP tokens," which would not become tradable on exchanges until the network launched. (*Id.*) ICP tokens are securities under federal law, including because investors reasonably expected that they would profit from their investment in ICP to the extent that Defendants' efforts to popularize Dfinity's network succeeded. (*Id.* ¶¶ 86-106.)

Indeed, prior to the launch, Dfinity and Williams persistently promoted the Internet Computer network in blog posts, tweets, and interviews, and at promotional events—claiming, among other things, that it would become "humanity's primary computer platform for building software" in 20 years. (*Id.* ¶¶ 36-44.) They explained to investors that ICP tokens would be publicly available on exchanges once the network launched, that the price of those tokens would fluctuate

depending on the network's success, and that they would use funds that they raised from investors like Andreessen Horowitz to make the network a "mass market phenomenon." (*Id.* ¶¶ 36-44, 100-02.) They also explained that although approximately 50% of ICP tokens would be allocated to Dfinity and its insiders, such insiders would not—and due to four-year vesting restrictions purportedly imposed on their ICP tokens, *could not*—dump their ICP on the market when the network launched. (*Id.* ¶¶ 64-85.)

Defendants thus assured investors that (i) the supply of ICP on exchanges would be limited (and the price would therefore be high) and (ii) those investors would not be buying tokens from insiders. (*Id.* ¶¶ 62, 149, 152.) Accordingly, on May 10, 2021, when the network launched, investors rushed to buy what they believed were relatively scarce ICP tokens, causing the price to surge in the opening hours of trading to over $730, and catapulting ICP to among the world's ten most valuable cryptoassets by market capitalization. (*Id.* ¶¶ 54-55.) The high prices did not last for long, however: over the ensuing weeks, the price of ICP collapsed, falling to approximately $110 by the end of May, before dropping to around $45 in July. (*Id.* ¶ 56.)

This crash, as public reporting and other data make clear, was driven by massive selling by Dfinity and its insiders, as well as the realization that, contrary to Defendants' representations, Dfinity and its insiders could—*and did*—sell their ICP on the open market. Indeed, a report published by crypto-analyst Arkham Intelligence and analysis of ICP blockchain data demonstrate that Dfinity and its insiders flooded the market with ICP, selling at least 18 million ICP tokens—worth over $3 billion at the time—on cryptoasset exchanges on May 10, 2021, and in the weeks that followed. (*Id.* ¶¶ 57-61.) Making matters worse, the price of ICP further crashed as Defendants disclosed information that enabled investors to conclude that Dfinity and its insiders were not subject to vesting restrictions that precluded them from dumping their ICP. (*Id.* ¶¶ 68-77.)

Based on the foregoing facts, on August 9, 2021, Plaintiff Daniel Valenti commenced this action against Defendants, asserting claims on behalf of himself and the proposed Class. In Counts I and II, he alleges that, by selling ICP, Defendants sold unregistered securities and thus violated 15 U.S.C. §§ 77e, 77l(a)(1), and that Williams is liable for such violations as a controller. (*Id.* ¶¶ 120-

38.) In Counts III and IV, he alleges that Defendants engaged in securities fraud and thus violated 15 U.S.C. § 78j(b), and that Williams is liable for such violations as a controller. (*Id.* ¶¶ 139-71.) In Counts V and VI, he alleges that Defendants engaged in insider trading in violation of 15 U.S.C. § 78t-1, and that Williams is liable for such violations as a controller. (*Id.* ¶¶ 172-88.)

On August 11, 2021, Roche Freedman, which also represents Mr. Valenti, issued a press release informing investors and prospective plaintiffs of the pending action against Defendants. (*See* Dkt. No. 8-1.) The notice summarized the allegations and notified investors that if they "wish to serve as lead plaintiff, [they] must move the Court no later than October 12, 2021." *Id.*

### b. Movant

Movant is 46 years old, lives in New Jersey, and works in real estate. (Roche Decl. Ex. C ¶ 2.) He is a relatively experienced crypto investor, having begun investing in the sector over two years ago. (*Id.*) He purchased over $475,000 in ICP on the popular cryptoasset exchange Coinbase and has lost more than $72,000 to date. (*See* Roche Decl. Ex. B at 5.)

## IV. LEGAL STANDARD

### a. Lead Plaintiff

The PSLRA "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members'"—that is, the "most adequate plaintiff"—and "provides a simple three-step process" for making that selection. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).

"In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). "In step two," the "district court must 'adopt a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)). "This means the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality." *Id.*

"Once the district court has determined that the movant with the largest stake has made a prima facie showing of adequacy and typicality, that movant 'becomes the presumptively most adequate plaintiff.'" *Id.* (quoting *Cavanaugh*, 306 F.3d at 730). "If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." *Id.* In the third step, other prospective lead plaintiffs "have 'an opportunity to rebut the presumptive lead plaintiff's showing' by 'present[ing] evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy.'" *In re Stitch Fix, Inc. Securities Litig.*, 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) (Donato, J.) (quoting *Cavanaugh*, 306 F.3d at 730) (alterations in original).

### b. Lead Counsel

"The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval." *Habelt v. iRhythm Techs., Inc.*, 2021 WL 2207365, at *2 (N.D. Cal. June 1, 2021). "The Court should interfere with the Lead Plaintiff's selection only when necessary 'to protect the interests of the class,'" *id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)), such as where the selection "is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff," *Cavanaugh*, 306 F.3d at 732-33. In other words, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711-12 (9th Cir. 2009).

## V. ARGUMENT

### a. The Court Should Appoint Movant As Lead Plaintiff

Movant respectfully requests that the Court appoint him Lead Plaintiff.

*First*, Roche Freedman properly provided notice of this action to prospective plaintiffs, by issuing a press release through PRNewswire and explaining that investors must move for lead plaintiff status by "no later than October 12, 2021." (Dkt. No. 8); *see also Cavanaugh*, 306 F.3d at 729 (explaining that first plaintiff must post notice "in a widely circulated national business-oriented publication or wire service," and that such notice "must also state that 'any member of the purported

5
NOTICE OF MOTION AND MOTION TO APPOINT
LEAD PLAINTIFF AND LEAD COUNSEL – No. 3:21-cv-06118-JD

class may move the court to serve as lead plaintiff'") (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). Movant timely filed his motion on October 12.

*Second*, as explained further below, Movant is the "most adequate" plaintiff because, to his knowledge, he has the largest financial interest in this matter and because he satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. Indeed, he lost over $72,000, suffered the same injuries as absent class members as a result of the same conduct by Defendants, has no conflicts with other class members, and will prosecute this action vigorously on behalf of the Class. Movant accordingly asserts, pursuant to Local Civil Rule 23-1(b), that he is entitled to the presumptions set forth in section 27(a)(3)(B)(iii)(I) of the Securities Act and section 21D(a)(3)(B)(iii)(I) of the Exchange Act, but reserves the right to attempt to rebut those presumptions to the extent that they are invoked by another prospective lead plaintiff.

i. Movant has the largest financial interest in this matter

To his knowledge, Movant suffered the largest alleged losses and therefore has the largest financial interest in this matter. "The Ninth Circuit has not provided clear guidance on what metric district courts should use in determining which potential plaintiff has the largest financial interest in a case, noting only that 'the court may select accounting methods that are both rational and consistently applied.'" *Xu v. FibroGen, Inc.*, 2021 WL 3861454, at *4 (N.D. Cal. Aug. 30, 2021) (quoting *Mulligan v. Impax Labs., Inc.*, 2013 WL 3354420, at *4 (N.D. Cal. July 2, 2013)). "Courts in this district primarily have relied on two methods: '[m]ethods in the first category equate financial interest with actual economic losses suffered.'" *In re Lyft Securities Litig.*, 2020 WL 1043628, at *3 (N.D. Cal. Mar. 4, 2020) (quoting *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *3 (N.D. Cal. Feb. 15, 2011)). "In contrast, a second category of methods equates largest financial interest with potential recovery." *Id.* (quoting *Perlmutter*, 2011 WL 566814, at *3).

"Within the first category, courts have used the *Lax-Olsten* four-factor test to approximate economic losses." *Id.* "These four factors are '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period.'"

*Id.* (quoting *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). "Courts then consider the totality of these factors in order to determine an approximate loss for each movant." *Id.*

With respect to the second category—potential recovery—some courts endeavor to exclude "economic losses that are not caused by a defendant's misrepresentations." *Xu*, 2021 WL 3861454, at *5; *compare Perlmutter*, 2011 WL 566814, at *5 ("[R]ecent Ninth Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff."), *with Melucci v. Corcept Therapeutics Inc.*, 2019 WL 4933611, at *4 (N.D. Cal. Oct. 7, 2019) ("Assessing potential recovery in a case involving gradual disclosures would require fact-intensive loss causation inquiries that are not amenable to analysis at this stage of the proceedings."). Courts adopting this approach "have chosen 'not to consider losses resulting from stock trades that occurred prior to any disclosure of the defendant's fraud' when evaluating potential plaintiffs' financial interests in the litigation." *Xu*, 2021 WL 3861454, at *5 (quoting *Perlmutter*, 2011 WL 566814, at *4).

Pursuant to the foregoing principles, Movant's financial interest in this matter is summarized in the table below (*see* Roche Decl. Ex. B):

**Summary of Losses**

| Metric | 10(b) Claims | 12(a)(1) Claims |
|---|---|---|
| Economic Loss | | |
|    Total Tokens Purchased | 1,984.37 | 9,873.50 |
|    Net Tokens Purchased | 1,265.15 | 339.13 |
|    Net Funds Expended | $110,435 | $87,487 |
|    Approximate Loss | $58,798 | $72,670 |
| Potential Recovery | $61,221 | $72,670 |

ii. Movant satisfies Rule 23's typicality and adequacy requirements

Movant likewise satisfies the typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23. "Once a movant has demonstrated that it has the largest financial interest, it need only make a prima facie showing of its typicality and adequacy." *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1061 (quoting *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012)). "The test for adequacy is whether the class representative and his counsel 'have any conflicts of interest with other class members' and whether the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Id.* (quoting *City of Royal Oak Ret. Sys.*, 2012 WL 78780, at *5).

Movant's claims are typical of those possessed by other class members because he suffered the same injury, from the same conduct. Indeed, during the class period, Movant (i) purchased at an inflated price unregistered securities from, or that were promoted by, Defendants (*see* Roche Decl. Ex. C ¶ 3); (ii) traded contemporaneously with Defendants, who sold ICP on May 10, May 24, and June 15, 2021 (*see* Compl. ¶¶ 57-60; Roche Decl. Ex. A, at Schedule A); *see also Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 605-06 (N.D. Cal. 2019) (contemporaneous trading required to state insider trading claim); and (iii) sold his ICP at a significant loss following the disclosure of Defendants' fraudulent conduct (*see* Roche Decl. Ex. B).

Movant and his counsel are likewise adequate representatives of the Class because, to their knowledge, they do not have any conflicts of interest with other class members, and they will vigorously prosecute this action. The latter point is confirmed not only by Roche Freedman's efforts to date in investigating and pursuing the claims set forth in the Complaint, but also by the fact that Movant is an experienced and knowledgeable crypto investor who (i) lost significant amounts as a result of Defendants' conduct, (ii) adopts the allegations in the Complaint, and (iii) is fully committed to obtaining the best result for the Class. (*See* Roche Decl. Ex. A ¶ 2; Roche Decl. Ex.

C ¶ 3); *see also Malriat v. QuantumScape Corp.*, 2021 WL 1550454, at *4 (N.D. Cal. Apr. 20, 2021) (adequacy requirement satisfied where prospective lead plaintiff was experienced investor who lost money as a result of defendant's alleged misconduct); *Saint Jermain v. Fluidigm Corp.*, 2020 WL 7342717, at *4 (N.D. Cal. Dec. 14, 2020) (adequacy requirement satisfied where prospective lead plaintiff contended that there was "no evidence of antagonism between his interests and those of the class" and that he had "a significant interest in prosecuting the action based on his large financial losses").

### b. The Court Should Appoint Roche Freedman As Lead Counsel

Movant has selected Roche Freedman as his counsel and represents that Roche Freedman is fully capable of litigating this case. (*See* Roche Decl. Ex. C ¶¶ 9-10); *see also Perlmutter*, 2011 WL 566814, at *14 (deferring to selection, where lead plaintiff represented that "its chosen counsel is fully capable of litigating this case effectively and expeditiously"). Given that Roche Freedman and its attorneys have extensive experience in prosecuting securities fraud claims, Movant's choice is reasonable and should not be set aside. *See Mulquin v. Nektar Therapeutics*, 2019 WL 1170774, at *3 (N.D. Cal. Mar. 13, 2019) (deferring to lead plaintiff's selection, where counsel had "extensive experience as counsel in securities class actions"); *accord Ziolkowski v. Netflix, Inc.*, 2017 WL 2572583, at *3 (N.D. Cal. June 14, 2017); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *12 (N.D. Cal. Nov. 8, 2019); *Vataj v. Johnson*, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020); *Habelt*, 2021 WL 2207365, at *2; *In re Lyft Securities Litig.*, 2020 WL 1043628, at *7.

Indeed, in *D'Arcy v. Sequential Brands Group, Inc.*, the court recognized that Roche Freedman "has extensive experience and expertise in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors," and appointed Roche Freedman as lead counsel. No. 2:21-cv-02305, Dkt. No. 25 (C.D. Cal. June 11, 2021). Roche Freedman has likewise recently secured lead counsel appointments in numerous other matters, including *In re Qutoutiao Inc. Sec. Litig.*, No. 1:20-cv-06707 (SHS) (S.D.N.Y.); *Carl D. Cachia v. Bellus Health Inc. et al.*, No. 1:21-cv-02278 (S.D.N.Y.); *In re Renewable Energy Grp. Sec. Litig.*, No. 1:21-cv-01832 (S.D.N.Y.); *In re Qiwi Plc*

*Sec. Litig.*, No. 1:20-cv-06054 (E.D.N.Y.); *Chapman v. Fennec Pharma Inc. et al.*, No. 1:20-cv-812 (M.D.N.C.); *Garcia v. J2 Global, Inc. et al.*, No. 2:20-cv-06096 (C.D. Cal.); *In re Sona Nanotech, Inc. Sec. Litig.*, No. 2:20-cv-11405 (C.D. Cal.); *Lowry v. RTI Surgical Holdings, Inc. et al.*, No. 1:20-cv-01939 (N.D. Ill.) (co-lead counsel); and *Hartel v. Geo Group, Inc. et al.*, No. 9:20-cv-81063 (S.D. Fla.) (co-lead counsel). In one of these recent appointments, Roche Freedman has already obtained preliminary approval of a $10.5 million recovery for investors. *See Lowry v. RTI Surgical Holdings, Inc., et al.*, No. 1:20-cv-01939, Dkt. No. 99 (N.D. Ill. Sept. 10, 2021).

In addition to such extensive experience in prosecuting traditional securities claims, including Section 10(b) securities fraud claims, Roche Freedman's lawyers also have unique and unparalleled expertise with respect to litigation involving cryptoassets like ICP. Mr. Roche, a lead attorney from Roche Freedman, is a recognized thought leader in the industry. He has published multiple articles on the intersection of cryptoassets and law (*see, e.g.*, *Bitcoin: Order Without Law in the Digital Age*, 94 Indiana L.J. 1497 (2019); *Why Bitcoin is Booming*, Wall Street Journal (July 10, 2017)), and is a frequent speaker and lecturer on the topic, having guest-lectured a course at the Northwestern Pritzker School of Law. Together with his colleagues, he represents plaintiffs in some of the most significant disputes in the crypto industry, both outside of the class action context, *see Kleiman v. Wright*, No. 9:18-cv-80176-BB (S.D. Fla.) (litigation concerning the rightful ownership of billions of dollars' worth of bitcoin and bitcoin-related intellectual property rights); *Shin v. Icon Found.*, No. 20-cv-07363-WHO (N.D. Cal.) (litigation concerning ownership of automatically-generated cryptoassets), and inside the class action context, where Roche Freedman has secured several notable lead counsel appointments, *see In re Tether & Bitfinex Crypto Asset Litig.*, No. 19-cv-9236-KPF (S.D.N.Y.) (litigation concerning multibillion-dollar crypto market manipulation scheme); *Lee v. Binance*, No. 1:20-cv-02803-ALC (S.D.N.Y.) (unregistered securities offering); *accord Clifford v. TRON Found.*, No. 20-cv-2804-VSB (S.D.N.Y.); *Williams v. KuCoin*, No. 1:20-cv-02806-GBD (S.D.N.Y.); *Messieh v. HDR Global Trading Ltd.*, No. 1:20-cv-03232-ALC (S.D.N.Y.). In addition to working with Mr. Roche on these significant crypto-related disputes, *see also, e.g.*, *Jeong v. Nexo Financial LLC*, 5:21-cv-02392 (N.D. Cal.) (class-action litigation

concerning the operation of the popular "Nexo" crypto-asset exchange), Edward Normand worked on complex class-action-related matters while at Boies Schiller Flexner LLP for more than two decades, including representing Vanguard against ARCP, *In re American Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.); and a class of employee health benefit plans against Merck-Medco, *In re Medco Health Sols., Inc., Pharm. Benefits Mgmt. Litig.*, No. 7:03-md-01508 (S.D.N.Y.).

In short, Roche Freedman's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. (*See* Roche Decl. Ex. D.) The firm's attorneys have previously been appointed as lead or co-lead counsel in securities class actions throughout the country, and have clerked for federal judges sitting in the Second Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, and United State Supreme Court. *See id.* Movant respectfully submits that this wealth of experience and qualifications demonstrates Roche Freedman's ability to vigorously and zealously prosecute this action on behalf of Movant and the Class.

## VI. CONCLUSION

Movant respectfully requests, for the foregoing reasons, that the Court appoint him as lead plaintiff and approve his selection of Roche Freedman as lead counsel.

Dated: October 12, 2021

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Kyle W. Roche*
Kyle W. Roche
Edward Normand (*pro hac vice* forthcoming)
Richard Cipolla (*pro hac vice* forthcoming)
Stephen Lagos (*pro hac vice* forthcoming)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: kyle@rochefreedman.com
Email: tnormand@rochefreedman.com
Email: rcipolla@rochefreedman.com

Email: slagos@rochefreedman.com
Email: ingo@rochefreedman.com

*Counsel for Lead Plaintiff Movant Henry Rodriguez and Proposed Lead Counsel for the Class*

**Certificate Pursuant to Local Rule 5-1(i)(3)**

I, Ivy T. Ngo, am the ECF User whose ID and password are being used to file this brief. In compliance with Local Rule 5-1(i)(3), I hereby attest that Kyle W. Roche concurs in this filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of October, 2021.

                                          */s/ Ivy T. Ngo*
                                          Ivy T. Ngo

# CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Ivy T. Ngo*
Ivy T. Ngo