CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

[Additional Counsel on Signature Page]

*Counsel for Defendants Dfinity USA Research LLC, Dfinity Foundation, and Dominic Williams*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          July 14, 2022<br>Time:          10:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:          Hon.  James Donato |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 14, 2022, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James Donato, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 11, 19th Floor, Defendants Dfinity USA Research, LLC, Dfinity Foundation, and Dominic Williams (together, "Defendants") will and do hereby move the Court for an order dismissing the Amended Class Action Complaint (ECF No. 45; the "Complaint") brought by Plaintiff Daniel Valenti and Lead Plaintiff Henry Rodriguez (together, "Plaintiffs").

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on the following ground:  the Complaint fails to state a claim for relief under Sections 12(a)(1) or 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(a)(1), 77*o* ("Securities Act"), or under Sections 10(b), 20A, or 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t-1, 78t(a).

This motion is based upon this Notice of Motion and the Memorandum of Points and Authorities in Support filed herewith, the pleadings and documents on file in this case, and other such arguments as may be presented by counsel at the hearing on this motion.

## ISSUE TO BE DECIDED

Whether the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because, even if the allegations in the Complaint are taken as true, it fails to state a claim under Sections 12(a)(1) or 15 of the Securities Act or under Sections 10(b), 20A, or 20(a) of the Exchange Act.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.    STATEMENT OF FACTS............................................................................. 2

III.    LEGAL STANDARD .................................................................................. 4

IV.    PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED ............. 4

     A.    Plaintiffs' Securities Act Claims Are Barred by the Statute of Repose    4

     B.    Plaintiffs Do Not Adequately Allege Any Defendant Was a "Statutory Seller" 6

         1.    Plaintiffs Do Not Allege That Any Defendant Passed Title to Them..... 7

         2.    Plaintiffs Do Not Allege That Defendants Directly Solicited Their Purchases........................................................................................ 7

V.    PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED ............... 9

     A.    Plaintiffs' Section 10(b) And Rule 10b-5 Claim For Allegedly Materially False And Misleading Statements Should Be Dismissed............................................. 9

         1.    Plaintiffs Fail To Plead Any Materially False Or Misleading Statement Or Omission .................................................................................. 9

         2.    Plaintiffs Fail To Plead A Strong Inference Of Scienter ..................... 12

         3.    Plaintiffs Fail To Plead Loss Causation............................................. 15

     B.    Plaintiffs' Section 10(b) And Rule 10b-5 Claim For Alleged Market Manipulation Should Be Dismissed........................................................................... 16

         1.    Plaintiffs Fail To Plead A Manipulative Act ....................................... 16

         2.    Plaintiffs Fail To Plead A Strong Inference Of Scienter. .................... 19

     C.    Plaintiffs' Section 20A Claim Should Be Dismissed    20

VI.    Plaintiffs' Securities Act Section 15 And Exchange Act Section 20(a) Control Person Claims Should Be Dismissed ................................................................... 20

VII.    Conclusion................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ..........................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ...........................16, 18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................4

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002)...............................10, 11

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, ___ U.S. ____, 137 S. Ct. 2042
    (2017) ....................................................................................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856
    F.3d 605 (9th Cir. 2017) .......................................................................................10

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014)..................................................................5

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) ................................17

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ....................................2, 15, 16

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)........................................................17

*Feiner Fam. Tr. v. Xcelera.com, Inc.*, No. 07 Civ. 1914 (RPP), 2008 WL 5233605
    (S.D.N.Y. Dec. 15, 2008).....................................................................................19

*Feola v. Cameron*, No. LA CV15-01654 JAK, 2016 WL 11750382 (C.D. Cal.
    Aug. 25, 2016) ......................................................................................................13

*Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18 (2d Cir. 2013)..........................................17

*Footbridge Ltd. Tr. v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y.
    2011) .......................................................................................................................6

*GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189 (3d Cir. 2001) ............................17

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ........................................14

*Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) ............................13

*Griffin v. PaineWebber, Inc.*, No. 99 Civ. 2292 (VM), 2001 WL 740764
    (S.D.N.Y. June 29, 2001)........................................................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014)................................9

*Hodges v. Akeena Solar, Inc.*, No. C 09-02147 JW, 2010 WL 3705345 (N.D. Cal.
    May 20, 2010)........................................................................................................12

*Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990).................................................14

*Holsworth v. BProtocol Found.*, No. 20 Civ. 2810 (AKH), 2021 WL 706549
    (S.D.N.Y. Feb. 22, 2021) ...........................................................................................8

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100
    (S.D.N.Y. 2018) .......................................................................................................19

*Hudson v. Sherwood Sec. Corp.*, No. C-86-20344-WAI, 1989 WL 108797 (N.D.
    Cal. July 27, 1989), *aff'd*, 951 F.2d 360 (9th Cir. 1991) .........................................8

*Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2021 WL 3633837 (N.D.
    Cal. Aug. 17, 2021)................................................................................................14

*In re Apollo Grp., Inc. Sec. Litig.*, 2012 WL 2376378 (D. Ariz. June 22, 2012) .........................15

*In re Bank of Am. Corp.*, No. 09-md-02014 JSW, 2011 WL 740902 (N.D. Cal.
    2011) ...............................................................................................................16, 18

*In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020)..............................................15

*In re CytRx Corp. Sec. Litig.*, No. CV-14-1956-GHK, 2015 WL 5031232 (C.D.
    Cal. July 13, 2015) ...................................................................................................8

*In re Energy Recovery Inc. Sec. Litig.*, No. 15-CV-00265-EMC, 2016 WL 324150
    (N.D. Cal. Jan. 27, 2016) ........................................................................................20

*In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd*, 32 F.
    App'x 338 (9th Cir. 2002) .......................................................................................13

*In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080 (C.D. Cal. 2003) ...........................7

*In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378 (S.D.N.Y. 2010)..................18

*In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012)......................................16, 20

*In re Rigel Pharms., Inc. Sec. Litig.*, No. C 09-00546 JSW, 2010 WL 8816155
    (N.D. Cal. Aug. 24, 2010).......................................................................................16

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)...................................13, 14

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059 (N.D. Cal.
    2001) .......................................................................................................................14

*In re Stitch Fix, Inc. Sec. Litig.*, No. 18-CV-06208-JD, 2020 WL 5847506 (N.D.
    Cal. Sept. 30, 2020)..................................................................................................9

*In re Terravia Holdings, Inc. Sec. Litig.*, No. 16-CV-06633-JD, 2020 WL 553939
    (N.D. Cal. Feb. 4, 2020).....................................................................................4, 10

*In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173 (N.D. Cal. 2004) .....................9

*In re VeriFone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ................................................................20

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-CV-05558-HSG, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ....................................................12

*Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ......................................11

*Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296 (S.D. Cal. 2020) ...........................15

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-0302-MRP, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ..............................................................7, 8

*Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, No. 21-15050, 2021 WL 6101391 (9th Cir. Dec. 21, 2021) ..................................................................12

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 (9th Cir. 2014) ..............................15

*P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) ............................................5, 6

*Pino v. Cardone Cap., LLC*, No. 20-cv-8499-JFW, 2021 WL 3502493 (C.D. Cal. Apr. 27, 2021) ............................................................................7, 8

*Pinter v. Dahl*, 486 U.S. 622 (1988) ..........................................................................5, 6, 7

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90 (2d Cir. 2021) ........................................................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051 (9th Cir. 2014) ...............................................................................10

*Polinsky v. MCA Inc.*, 680 F.2d 1286 (9th Cir. 1982) ...............................................................18

*Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105 (N.D. Cal. 2013) .........................7

*Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021) ..............................9

*Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 2085839 (S.D. Fla. May 13, 2019) ...............................................................................8

*Santa Fe Indus. v. Green*, 430 U.S. 462 (1977) ........................................................................18

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213 (C.D. Cal. 2015) ...............................................................................19

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113 (N.D. Cal. 2020) ..................20

*Smith v. LifeVantage Corp.*, No. 2:18-cv-00621-DBB-JCB, 2020 WL 6940735 (D. Utah Nov. 25, 2020) ...............................................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007) ...........................................2

v

*Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ................................................................................................6

*Wozniak v. Align Tech., Inc.*, No. C-09-3671 MMC, 2011 WL 2269418 (N.D. Cal. June 8, 2011) ............................................................................................... 13

*XOMA Corp. Sec. Litig.*, No. C-91-2252 TEH, 1990 WL 357807 (N.D. Cal. Dec. 27, 1991) ...................................................................................................7

*Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014) .................................5

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ...........................9, 12, 13

## **Statutes & Rules**

15 U.S.C. § 77e ...................................................................................................................5

15 U.S.C. §§ 77l.......................................................................................................... passim

15 U.S.C. § 77m ..................................................................................................................4

15 U.S.C. § 77o ...........................................................................................................1, 20

15 U.S.C. § 78j ............................................................................................................ passim

15 U.S.C. § 78t ...........................................................................................................1, 20

15 U.S.C. § 78t-1 ........................................................................................................1, 20

15 U.S.C. § 78u-4 ....................................................................................................... passim

Fed. R. Civ. P. 9.......................................................................................................1, 9, 10

Fed. R. Civ. P. 12 ...........................................................................................................1, 4

## **Treatises**

Thomas Lee Hazen, *The Law of Securities* Regulation, § 7.10[4] (4th ed. 2002)..........................6

J. William Hicks, *Civil Liabilities: Enforcement and Litigation Under the 1933 Act* § 5:50 (2002) ....................................................................................................6

Dfinity USA Research LLC ("Dfinity USA"), Dfinity Foundation (the "Foundation," and, together with Dfinity USA, "Dfinity"), and Dominic Williams ("Mr. Williams," and together with Dfinity, "Defendants") respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Amended Class Action Complaint (ECF No. 45) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims under Sections 12(a)(1) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(a)(1), 77*o* ("Securities Act"), and Sections 10(b), 20A, and 20(a) of the Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t-1, 78t(a).

## I.    PRELIMINARY STATEMENT

Plaintiffs seek to invoke the federal securities laws as an insurance policy against their purported losses on opportunistic purchases and sales of ICP tokens.  The federal securities laws offer no such protection.  The core premise of Plaintiffs' claims is that ICP tokens are securities. Defendants vigorously contest that premise.  That question is not presented by this motion, however, because Plaintiffs' Securities Act claims are barred by the statute of repose, and both Plaintiffs' Securities Act and Exchange Act claims are insufficient as a matter of law.

*First*, Plaintiffs' Securities Act claims should be dismissed because ICP tokens were first offered to the public in February 2017 (¶ 36[1])—more than three years before this action was filed in August 2021.  Accordingly, the applicable three-year statute of repose has run, and Plaintiffs' Securities Act claims must be dismissed as untimely.  Additionally, Plaintiffs allege no facts supporting the contention that either Dfinity USA or the Foundation was a "statutory seller"—a requisite element of their Securities Act Section 12(a)(1) claim.  Specifically, Plaintiffs do not allege that any Defendant directly passed title to them, or that any Defendant *actively* and *directly* solicited them, resulting in their purchases of ICP tokens.  These pleading defects are fatal to Plaintiffs' Securities Act claims.

*Second*, Plaintiffs' Exchange Act claims should be dismissed for failure to meet the exacting pleading standards under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1)(B), and Federal Rule of Civil Procedure 9(b).  With respect to Plaintiffs'

---

[1]    Throughout, all references to "¶ __" are to the Complaint, all emphasis is added, and all quotations and citations are omitted unless otherwise noted.

misrepresentation claims, Plaintiffs do not allege any actionable materially false or misleading statement. Each statement to which Plaintiffs point was true when made, and any allegedly concealed facts were disclosed. Plaintiffs likewise fail to plead scienter. Under well-established Supreme Court precedent, "[a]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). Here, Plaintiffs' Complaint rests on speculative and conclusory allegations about Defendants' motives and intent that are insufficient as a matter of law to give rise to a "cogent" or "compelling" inference of scienter. Moreover, Plaintiffs do not plead specific facts establishing that any purported action by Defendants caused Plaintiffs' alleged losses (*i.e.*, Defendants do not plead loss causation). Plaintiffs' Exchange Act claims therefore must be dismissed, because the federal securities laws do not "provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). With respect to Plaintiffs' market manipulation claim, Plaintiffs wholly fail to allege that Defendants engaged in any manipulative or deceptive act and also fail to plead the requisite scienter.

This Court should dismiss the Complaint in its entirety. And, because the Complaint's untimeliness cannot be cured, the Court should dismiss Plaintiffs' Securities Act claims without leave to amend.

## II.    STATEMENT OF FACTS[2]

Dfinity is engaged in the development of a decentralized version of the internet (the "Internet Computer"). ¶¶ 5, 36. The Internet Computer is a blockchain-based network that can run "smart contracts at web speed, that can serve web directly to users, that can increase its capacity with demand as needed, that is efficient, that governs itself, and that can provide better usability than those systems built on traditional technology." ¶¶ 5, 49. ICP tokens are used for computational, governance, and other purposes on the Internet Computer. In February 2017 (more than three years before this Action was filed), Dfinity conducted a public "crowdsale," or "seed

---

[2]    The following facts are drawn from Plaintiffs' Complaint and are accepted as true for purposes of this motion to dismiss only.

2

round," to fund development of the Internet Computer.  ¶ 36.  Hundreds of purchasers participated in this February 2017 crowdsale, receiving over 115 million ICP tokens—24.72 percent of all ICP tokens.  ¶¶ 54, 91.  In May 2018, a "Community Airdrop" took place, during which over 3.7 million tokens were allocated to over 50,000 additional participants.  ¶¶ 54, 77.

Following the first public offering of ICP tokens in February 2017, Defendants periodically provided public updates (in publicly accessible statements, interviews, and news articles) on the development status and potential benefits of the Internet Computer.  ¶¶ 41-49, 53, 57-58.  In 2018, more than three years before Genesis, Defendants spoke publicly about predictions for Genesis and early ICP token purchasers.  For example, Defendants provided opinions as to the division of control of ICP tokens.  ¶ 91.  Thereafter, Defendants continued to publicly recommend the Internet Computer.  To protect the integrity of ICP tokens, Defendants established and disclosed lockup periods and vesting requirements for certain categories of purchasers and insiders.   ¶ 56.  Defendants specifically told the public before Genesis that the February 2017 seed round participants were subject to certain vesting requirements, and that a separate but related entity—the Internet Computer Association ("ICA")—would own a percentage of ICP tokens at Genesis.  ¶¶ 54-56.  Plaintiffs do not allege that the ICA was subject to a lockup period or other restrictions.

In May 2021, Mr. Williams—the Foundation's founder—made statements in interviews, some of which were republished in news articles, regarding the progress that had been made on the Internet Computer.  ¶¶ 41-49.  On May 10, 2021, Dfinity completed the Genesis release of the Internet Computer, and—as is common—ICP tokens were listed on cryptocurrency platforms such as Binance and Kucoin.  ¶ 50.  At Genesis, Defendants told the public that there would be vesting restrictions on certain purchasers, including seed round and Airdrop participants, among others.  ¶¶ 70-71, 92.  Defendants also reminded ICP purchasers that "the [F]oundation and key early team members were locked up at launch for a week[.]"  ¶ 95.  Indeed, Plaintiffs do not allege that Mr. Williams himself sold ICP tokens at any time during the Class Period.  Instead, Plaintiffs allege only that Mr. Williams stated during a September 25, 2021 interview—months after the end of the Class Period—that he had sold ICP tokens at some unspecified prior time.  *See* ¶ 112.  In response to unfounded accusations that certain Dfinity insiders had sold ICP tokens (contrary to

the lockup periods), Mr. Williams assured the public that this was not the case.  ¶¶ 95-100.  Indeed, as Plaintiffs acknowledge, people and entities other than Defendants (*i.e.*, third parties) held ICP tokens that were not subject to restrictions, and these third parties did sell ICP tokens during the Class Period.  ¶ 179(h)-(j).[3]  As Plaintiffs also acknowledge, a significant number of the ICP token sales that occurred at and immediately after Genesis were by former Dfinity employees, who were not subject to any lockup periods.  ¶¶ 100, 103.  Around the same time, Defendants also instituted a "Cash-in-Lieu-of-Tokens" benefit program for its employees, whereby Dfinity would buy its employees' ICP tokens.  ¶¶ 64-65.

Beginning in May 2021, Plaintiffs made several purchases of ICP tokens.  Plaintiffs do not plead any reliance on representations by Defendants.  *See* ¶¶ 13-14.  Since Genesis, the digital asset market remains volatile.  Accordingly, the price of ICP tokens has fluctuated and, ultimately, fallen significantly, giving rise to Plaintiffs' opportunistic action on behalf of a purported class of purchasers between May 10, 2021 and the present.  ¶¶ 104-08.

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *See In re Terravia Holdings, Inc. Sec. Litig.*, No. 16-CV-06633-JD, 2020 WL 553939, at *2 (N.D. Cal. Feb. 4, 2020).   In construing the Complaint, the Court "need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.   PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED

### A.     Plaintiffs' Securities Act Claims Are Barred by the Statute of Repose

Plaintiffs' claims under Sections 12(a)(1) and 15 of the Securities Act are time-barred under Section 13's statute of repose and should be dismissed.  *See* 15 U.S.C. § 77m ("In no event

---

[3]  Throughout the Complaint, Plaintiffs improperly use the term "insiders" to refer to "Dfinity USA and Dfinity's current and *former* team members."  *See, e.g.*, ¶ 179(a), (b), (d), (e), (h)-(j).

4

shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public[.]").[4]  The statute of repose is an absolute outer limit on liability and is not subject to equitable tolling.  *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014); *see also Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, ___ U.S. ____, 137 S. Ct. 2042, 2051-53 (2017) (holding that the tolling rule espoused in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), does not apply to statutes of repose).

Courts have held that for a sale of alleged unregistered securities "the three-year period begins when the security is *first* bona fide offered."  *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 100, 102-03, 106 (2d Cir. 2004)*; see also Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 896 (4th Cir. 2014) ("The Second Circuit's opinion in *P. Stolz* is the leading authority on the term 'bona fide offered to the public' in § 13.").  In *Stolz*, the Second Circuit expressly rejected a "last offered" rule, under which the statute of repose would start over again each time a defendant offered securities to the public.  355 F.3d at 100-06.  The court also explained that the term "bona fide" means that the security was "really and truly (genuinely) being offered to the public, as opposed to, say, a simulated offering."  *Id.* at 99.

In *Stolz* itself, for example, the district court dismissed the plaintiff's Section 12(a)(1) claim (brought in 2001), because the defendant first offered those securities to the public in 1997, even though the *plaintiff* did not purchase until 2000.  The Second Circuit affirmed the district court's dismissal of the action under the statute of repose, because "the defendant bona fide offered to the public the security at issue in the present case in July of 1997 . . . . Stolz's § 12(a)(1) claim was filed more than three years after . . . and is therefore barred by § 13's statute of repose."  *Id*. at 106.  This means that, as here, "a repose period can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues."  *Id.* at 103; *see also Smith v. LifeVantage Corp.*, No. 2:18-cv-00621-DBB-JCB, 2020 WL 6940735, at *3-4 (D. Utah

---

[4]  Plaintiffs also purport to bring a claim under Securities Act Section 5, 15 U.S.C. § 77e. ¶¶ 22, 153-56.  But there is no separate, independent private right of action under Section 5.  *See Pinter v. Dahl*, 486 U.S. 622, 641 (1988) (construing Securities Act Section 12(1) to create a private right of action for violations of Section 5); *see also* Pub. L. No. 104-67, § 105, 109 Stat. 737, 757 (1995) (Securities Act Section 12(1) is now Section 12(a)(1)).

Nov. 25, 2020) (similar); *Footbridge Ltd. Tr. v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 627 (S.D.N.Y. 2011) (holding Section 12(a)(2) claim barred).[5]

Plaintiffs' own allegations make clear that Dfinity's first bona fide offering of ICP tokens to the public was a "crowdsale" or "seed round" in February 2017—more than three years before this action commenced on August 9, 2021.  ¶ 36 (detailing "early ICP fundraising," stating that "[t]he first sale occurred in February 2017," and describing the offering as a public "crowdsale (or 'seed round'[)]" with "78% of the ICP created for the network . . . earmarked for [seed and main] investors").  Plaintiffs allege that 370 contributors—"a large number"—participated in the seed round, receiving over 115 million ICP tokens (about 25% of all tokens created).  ¶¶ 54, 77, 91. Plaintiffs also expressly distinguish the "outside investors" in the February 2017 seed round from "likely insiders" and "insiders."  ¶ 77.  Because the February 2017 "first sale"—which resulted in sales of 115 million ICP tokens to 370 participants—was "really and truly (genuinely) being offered to the public," *Stolz*, 355 F.3d at 99, it was the first bona fide public offering and started Section 13's three-year clock.  Plaintiffs' claims (asserted for the first time on August 9, 2021), are barred by the three-year statute of repose and should be dismissed without leave to amend.

**B.    Plaintiffs Do Not Adequately Allege Any Defendant Was a "Statutory Seller"**

Liability under Section 12(a)(1) of the Securities Act is limited to the narrow set of defendants who are "statutory sellers," that is "those who offer or sell unregistered securities." *Pinter v. Dahl*, 486 U.S. 622, 641-42 (1988).  A defendant is a "statutory seller" "in only two circumstances:  (1) if the defendant directly *passed title* of the security to the plaintiff; or (2) if the defendant directly *solicited* the sale of the security and is motivated in part to serve [its] own financial interests or the financial interests of the securities owner."  *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017) (citing *Pinter*, 486 U.S.

---

[5]  *See also* Thomas Lee Hazen, *The Law of Securities Regulation* § 7.10[4], at 666-67 (4th ed. 2002) ("[I]n the case of a slow offering, it is conceivable that the cause of action would be foreclosed before it even arises."); J. William Hicks, *Civil Liabilities: Enforcement and Litigation Under the 1933 Act* § 5:50 (2002) ("[A] plaintiff seeking relief under § 12(a)(1) must establish . . . that the filing occurred within three years after the security was first bona fide offered to the public.").

6

at 624, 646-48).  Plaintiffs do not meet either *Pinter* prong.

1.  Plaintiffs Do Not Allege That Any Defendant Passed Title to Them

Under *Pinter*'s first prong, Plaintiffs must allege that one of the Defendants was their "immediate seller," and passed title in ICP tokens (the alleged securities) directly to Plaintiffs. *Pinter*, 486 U.S. at 644 n.21; *see also Pino v. Cardone Cap., LLC*, No. 20-cv-8499-JFW (KSx), 2021 WL 3502493, at *16 (C.D. Cal. Apr. 27, 2021) (no privity because no allegation "that either [defendant] passed title to the securities to Plaintiff"); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1125 (N.D. Cal. 2013) (no privity with issuer because "securities at issue were sold through a firm commitment underwriting, in which title passed to the Underwriter Defendants *before* passing to the ultimate purchasers").  Here, Plaintiffs do not allege—in even a conclusory fashion—that any Defendant passed title to ICP tokens to them.  Indeed, Plaintiffs do not allege why or from whom they purchased.  ¶¶ 13-14.  Plaintiffs *do* allege, however, that people and entities *other than* Defendants (*i.e.*, third parties) held ICP tokens that were not subject to restrictions, and that these third parties in fact sold ICP tokens during the Class Period. ¶ 179(h)-(j).  Thus, there is no basis to draw even the unstated inference that Plaintiffs purchased ICP tokens from Defendants.  Plaintiffs do not meet *Pinter*'s first prong.

2.  Plaintiffs Do Not Allege That Defendants Directly Solicited Their Purchases

In the absence of any allegation that any Defendant passed title to Plaintiffs, Plaintiffs must adequately allege, under *Pinter*'s second prong, that Defendants (i) "actively and directly solicit[ed] the plaintiff's investment" and (ii) that such solicitation *caused* Plaintiffs' investments. *Pino*, 2021 WL 3502493, at *16-17.  Plaintiffs do not do so.

*First*, Plaintiffs do not allege that any defendant "personally or directly solicited" them.  *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003).  Plaintiffs do not "include [the] very specific allegations of solicitation, including direct communication with Plaintiffs," required by law.  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-0302-MRP, 2011 WL 4389689, at *10 (C.D. Cal. May 5, 2011); *see also, e.g., XOMA Corp. Sec. Litig.*, No. C-91-2252 TEH, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991) (dismissing because

plaintiffs "do not allege that any particular defendants solicited *any particular plaintiff*" (emphasis original)). To the contrary, Plaintiffs rely solely on alleged public statements (such as online social media posts and public interviews) to cobble together a solicitation claim. *See* ¶¶ 41-49, 53, 57-58. Courts regularly dismiss claims for failure to plead solicitation where, as here, plaintiffs allege no more than that a defendant "publicly recommend[ed] a security." *Pino*, 2021 WL 3502493, at *16-17; *see also Maine State Ret. Sys.*, 2011 WL 4389689, at *10 ("[B]eing merely a substantial factor in causing the sale of unregistered securities is not sufficient[.]"); *Hudson v. Sherwood Sec. Corp.*, No. C-86-20344-WAI, 1989 WL 108797, at *1-2 (N.D. Cal. July 27, 1989) (allegations that defendant made "public presentation[s] describing and recommending an investment" insufficient), *aff'd*, 951 F.2d 360 (9th Cir. 1991); *In re CytRx Corp. Sec. Litig.*, No. CV-14-1956-GHK (PJWx), 2015 WL 5031232, at *15 (C.D. Cal. July 13, 2015) ("Even participation in road shows to promote the sale of stock does not constitute active solicitation under *Pinter*.").

*Second*, Plaintiffs fail to allege that any purported solicitation caused their purchases of ICP tokens. Indeed, Plaintiffs do not even allege that they were aware of any solicitation. To the contrary, Plaintiffs allege facts consistent with independent and personal efforts to gamble on the ups and downs of the market. *See* ¶¶ 13-14 (alleging Plaintiff Valenti made at least 23 separate purchases of ICP and Lead Plaintiff Rodriguez made at least seven separate purchases).

Because Plaintiffs have not alleged that Defendants personally and directly solicited them, and have not alleged that any such solicitation caused their purchases of ICP tokens, their Section 12(a)(1) claim fails as a matter of law. *See, e.g., Pino*, 2021 WL 3502493, at *17 ("Plaintiff does not allege that [either defendant] was directly and actively involved in soliciting Plaintiff's investment, or that Plaintiff relied on such a solicitation when investing."); *Holsworth v. BProtocol Found.*, No. 20 Civ. 2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (dismissing Section 12(a)(1) claim where plaintiff failed to allege "that he purchased [crypto tokens] as a result of any active solicitations by Defendants"); *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing Section 12(a)(1) claim relating to crypto tokens in the absence of allegations that purported solicitation on Twitter "was a successful solicitation . . . or that Plaintiffs even saw the posts"); *Griffin v. PaineWebber, Inc.*, No. 99 Civ.

2292 (VM), 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001) ("[Plaintiff] must allege not only that [defendant] actively solicited investors with respect to this transaction but that [plaintiff] purchased securities as a result of [defendant's] solicitation.").

\* \* \* \*

Plaintiffs' Securities Act claims are both untimely and insufficient as a matter of law and should be dismissed.

## V.    PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED

### A.    Plaintiffs' Section 10(b) And Rule 10b-5 Claim For Allegedly Materially False And Misleading Statements Should Be Dismissed

To state a misrepresentation claim under Exchange Act Section 10(b) and Rule 10b-5, Plaintiffs must allege, *inter alia*: (i) a material misrepresentation or omission; (ii) scienter; and (iii) loss causation. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)).  Plaintiffs' Exchange Act claims are subject to the heightened pleading requirements of the PSLRA and Rule 9(b), which require that Plaintiffs "state with particularity the circumstances constituting fraud," *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1183 (N.D. Cal. 2004), and "facts giving rise to a strong inference that the defendant[s] acted with the required state of mind," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009); *see also In re Stitch Fix, Inc. Sec. Litig.*, No. 18-CV-06208-JD, 2020 WL 5847506, at *2 (N.D. Cal. Sept. 30, 2020). Plaintiffs' Exchange Act claims should be dismissed because Plaintiffs fail to plead *any* actionable materially false or misleading statement, a "strong inference" of scienter, or loss causation.

#### 1.    Plaintiffs Fail To Plead Any Materially False Or Misleading Statement Or Omission

Plaintiffs' misrepresentation claim rests on ten purported statements by Defendants between February 7, 2018 and June 22, 2021, many of which predate Genesis and Plaintiffs' purchases by *years*, and virtually all of which focus on vesting periods, lockups, and purported sales by Dfinity, its founders, officers, directors, and other purported "insiders." ¶¶ 90-92, 95-100, 179(a)-(j).  Plaintiffs do not—and cannot—allege that any of the challenged statements were false.

Instead, Plaintiffs ask this Court to infer—from vague, unsupported allegations about the meaning of these excerpted statements—that the statements were somehow misleading.  Plaintiffs' speculative inferences both defy common sense and are insufficiently particularized under the PSLRA and Rule 9(b).[6]  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614 (9th Cir. 2017) (complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading") (citing 15 U.S.C. § 78u-4(b)(1)(B)).  Plaintiffs fail to state a claim.

      *First*, Plaintiffs cannot rest their misrepresentation claim on allegations that statements by Defendants concerning lockups at the time of Genesis for the Foundation, its directors, and Mr. Williams were materially false and misleading.  ¶¶ 95, 97, 179(f), (i).  These statements were true, and Plaintiffs do not allege otherwise.  Instead, Plaintiffs ask this Court to infer that these statements were misleading because Defendants did not state that *other* individuals—including *former* Dfinity employees—were not subject to lockups.  *Id.*  Plaintiffs' inferential leap does not give rise to a violation of the securities laws.  On their face, the challenged statements are expressly limited to named individuals and entities.  Defendants did not state—and it is not reasonable to infer from Defendants' statements—that everyone else previously or currently associated with Dfinity was also locked up.  *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) ("To be actionable under the securities laws, an omission . . . must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.").

---

    [6]  Several of Plaintiffs' alleged misstatements are inactionable puffery and, for that reason as well, do not state a claim.  *Compare, e.g.*, ¶ 179(b) ("We believe in a holistic approach that engaged participation from the wider community"); (d) ("Decisions are made with respect to helping the foundation achieve its goals rather than personal desires for more tokens . . . ."); (e) ("It is very important that the flow of liquid ICP tokens around the network is released on a schedule for the safety and security of ICP holders, the network, and its users while the underlying technology is being fettled and its ecosystem is being established."); (h) ("DFINITY is committed to responsibly divesting its token allocation over time to reinvest back into the Internet Computer and community."); (j) ("Despite Seed Donors divesting their ICP tokens, it's important to note this community of early supporters helped bootstrap the Internet Computer project."), *with Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (dismissing "feel good speak" as non-actionable puffery), *and In re Terravia Holdings*, 2020 WL 553939, at *5-6 (dismissing as inactionable puffery "generalizations that provide nothing concrete upon which a plaintiff could reasonably rely").

For the same reason, Plaintiffs cannot state a misrepresentation claim based on Mr. Williams' June 11, 2021 statements that the Foundation, its founders, and its directors did not sell tokens at or soon after Genesis.  ¶¶ 97-98, 179(h), (i).  These statements were true, and Plaintiffs do not plead facts showing otherwise.  Plaintiffs merely assert that the statements were misleading, because *other* people or entities allegedly sold ICP tokens around Genesis.  *Id.*  But Mr. Williams did not tell the public that no one previously or currently associated with Dfinity sold at or soon after Genesis, and the Complaint is bereft of particularized allegations suggesting otherwise.  *See Brody*, 280 F.3d at 1006.  Plaintiffs cannot cobble together a securities claim by asking this Court to ignore what Defendants actually said.

*Second*, Plaintiffs' misrepresentation claim fails because much of the information that Plaintiffs claim should have been disclosed was in fact disclosed (as Plaintiffs themselves acknowledge).  For example, Plaintiffs allege that Defendants were required to disclose that seed round participants were subject to vesting requirements.  ¶¶ 90, 99-100, 179(b), (j).  But Plaintiffs' own Complaint (and documents incorporated by reference therein) show that this fact was disclosed.  At Genesis, Defendants told the public that there would be certain vesting restrictions on purchasers, including on seed round and Airdrop participants.  ¶¶ 70-71, 92; Orsini Decl. Ex. A (May 10, 2021 Medium Post).[7]  For the same reason, Plaintiffs cannot state a misrepresentation claim by alleging that Defendants were required to disclose that the ICA might have access to tokens at Genesis.  ¶¶ 92, 95-100, 179(e)-(j).  This fact was disclosed, as Plaintiffs themselves

---

[7]  Plaintiffs appear to rely on a handful of online posts by two "Dfinity representative[s]," named Dukakis Tejada and Moritz Fuller, for the proposition that Defendants "repeatedly stated that seed investors' ICP would not be subject to vesting restrictions."  ¶¶ 68-70.  Plaintiffs do not identify the job titles of these purported "representatives," nor do they provide any other details concerning their identities, their roles at Dfinity, or any control exercised by Dfinity over their conduct or their statements.  Alleged statements by Messrs. Tejada and Fuller thus cannot be attributed to Defendants.  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.  Without control, a person or entity can merely suggest what to say, not 'make' a statement in its own right.").  Plaintiffs therefore fail to allege that Mr. Williams or anyone else who could bind Dfinity ever stated that seed donors would not have restrictions at Genesis.  Indeed, Plaintiffs themselves appear to recognize this infirmity, as they do not include the statements by Messrs. Tejada and Fuller among those for which Plaintiffs assert a claim against Defendants.  ¶ 179(a)-(j).

allege. ¶¶ 54-56; Orsini Decl. Ex. B (Messari Report).[8]  Plaintiffs cannot state a misrepresentation claim where the facts alleged in the Complaint belie their claims of an omission.

*Finally*, Plaintiffs cannot rest their misrepresentation claim on stale statements allegedly made in 2018—more than three years before Genesis.  ¶¶ 90-91, 179(a)-(d).   Even if these statements were false or misleading (they are not), those made outside the class period are not actionable. *See Hodges v. Akeena Solar, Inc.*, No. C 09-02147 JW, 2010 WL 3705345, at *2 (N.D. Cal. May 20, 2010) ("A securities class action defendant is liable only for those statements made during the class period, not statement made before or after the class period."); *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-CV-05558-HSG, 2018 WL 4181954, at *4 (N.D. Cal. Aug. 31, 2018) (collecting cases).  Moreover, the statements predate Plaintiffs' alleged purchases by at least three years and are too old to state an actionable claim.  *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 103 (2d Cir. 2021) (holding that "no 'reasonable' investor" would consider statements three years' prior  "in deciding how to act").

### 2.    Plaintiffs Fail To Plead A Strong Inference Of Scienter

Plaintiffs do not allege facts sufficient to "giv[e] rise to a strong inference that [Defendants] acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  To adequately demonstrate the required state of mind, the Complaint must "allege that the [D]efendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners*, 552 F.3d at 991.  In this Circuit, "although facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are *not* sufficient to

---

[8]  Plaintiffs' allegations that "according to a group of Dfinity's high-level engineering employees in Switzerland (the 'Swiss Engineers') Williams [and others] . . . met to strategize the Foundation's sale of ICP at launch," and to purportedly enable Defendants to use the ICA to evade lockups, ¶¶ 62, 86, are insufficiently particularized, because Plaintiffs do not plead the "who, what, when, where, or how" of the Swiss Engineers' purported reports.  Where a complaint invokes confidential witnesses, the "plaintiffs must establish confidential witnesses' reliability and personal knowledge with sufficient particularity." *Nat'l Elevator Indus. Pension Fund v. Flex Ltd.*, No. 21-15050, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021) ("To be credited as reliable, a witness must be in a position to personally know the information alleged.").  Plaintiffs plead no particularized facts showing the Swiss Engineers' personal knowledge of the claims attributed to them in the Complaint and do not otherwise establish their reliability; Plaintiffs therefore cannot rely on them to support Plaintiffs' allegations.

establish a *strong* inference of deliberate recklessness." *Id.* (quoting *In re Silicon Graphics Inc.
Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)).  Plaintiffs fail to plead the requisite state of mind.

Where, as here, Plaintiffs allege fraud by an entity (Dfinity USA and the Foundation), they
must allege particularized facts to establish that an individual defendant—here, Mr. Williams—
acted with the requisite state of mind.  *See Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736,  745
(9th Cir. 2008) ("[T]he PSLRA requires [Plaintiffs] to plead scienter with respect to those
individuals who actually made the false statements . . . ."); *Feola v. Cameron*, No. LA CV15-
01654 JAK, 2016 WL 11750382, at *7 (C.D. Cal. Aug. 25, 2016) ("[I]n all but the most unusual
cases, a plaintiff may not rely upon notions of 'collective scienter,' *i.e.*, that the state of mind of
an entity defendant for purposes of pleading scienter can be inferred from the collective knowledge
of some or all of its employees.").

Here, Plaintiffs appear to suggest that Mr. Williams had a motive to act wrongfully because
he benefited from his own sales of ICP tokens.  But, as discussed above, mere motive and
opportunity are insufficient to plead scienter in this Circuit.  Moreover, Plaintiffs misleadingly
suggest that Mr. Williams "admitted that he sold ICP."  ¶ 188.  But Plaintiffs rely only on an
interview from September 25, 2021—*months* after the end of the Class Period and *months* after
Plaintiffs themselves assert that any impact of the alleged misstatements had dissipated from the
market.  *See* ¶ 112 (alleging that *by late June 2021*, "the price of ICP had fallen by over 94% from
its May 10 high"); ¶ 194(d) (alleging that price fell 40% *between June 11 and June 22, 2021*).
Plaintiffs therefore do not allege with particularity that Mr. Williams sold ICP tokens during the
Class Period.  And, the complete absence of any ICP token sales by Mr. Williams during the Class
Period "negates any slight inference of scienter."  *In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d
1031, 1039 (N.D. Cal. 2000), *aff'd*, 32 F. App'x 338 (9th Cir. 2002).

Further, Plaintiffs cannot substitute sales by alleged "insiders"—many of whom are ex-
employees not alleged to have any continuing relationship with Defendants—to compensate for
this deficiency.  *See, e.g.*, ¶ 179(a) (the term "insiders" includes "Dfinity USA and Dfinity's
current and *former* team members").  "Sales by insiders not named as defendants . . . are irrelevant
to the determination of the named defendant's scienter."  *Wozniak v. Align Tech., Inc.*, No. C-09-

13

3671 MMC, 2011 WL 2269418, at *14 (N.D. Cal. June 8, 2011); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1082 n.22 (N.D. Cal. 2001) (collecting cases); *Hurst v. Enphase Energy, Inc.*, No. 20-CV-04036-BLF, 2021 WL 3633837, at *5 (N.D. Cal. Aug. 17, 2021).  Plaintiffs do not come anywhere close to the required showing.

Plaintiffs' allegation that Mr. Williams "knew what restrictions were imposed on [his] own tokens, as well as the tokens that [Defendants] issued and allocated to current and former team members, and to outside investors," ¶ 185, likewise does not establish the requisite state of mind. Plaintiffs must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Silicon Graphics*, 183 F.3d at 976 (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)).  Plaintiffs allege no facts supporting the conclusion that Mr. Williams intended to defraud ICP token purchasers by withholding information from the public, or that any alleged omission was so "highly unreasonable" as to constitute "an extreme departure from the standards of ordinary care" (particularly since Plaintiffs do not assert that statements Mr. Williams did make were false).  *Id.*

Finally, Plaintiffs' allegation that "Defendants . . . had the motive not to disclose these facts after May 10, 2021, because they still hold significant amounts of ICP" and therefore purportedly "had an incentive to ensure that the price of ICP remained artificially inflated," ¶ 190, defies logic. If Plaintiffs' inference about Defendants' motives were true, then—as Plaintiffs admit— Defendants would have had no reason to disclose these allegedly concealed facts at *any* time. ¶ 189.  Yet, as Plaintiffs concede, Mr. Williams disclosed all of the allegedly concealed facts after May 10, 2021.  *See, e.g.*, ¶¶ 95-97, 102.  Plaintiffs' own allegations underscore the illogic of their allegations, and this Court should disregard them.  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) ("It defies reason that an entity looking to profit on a fraudulently inflated stock price would" trigger a lockup, "*while knowing that the information illuminating the fraud was seeping into the market*.") (emphasis in original).

1

       3.    <u>Plaintiffs Fail To Plead Loss Causation</u>

2

     "Loss causation" refers to "a causal connection between the material misrepresentation and

3

the loss." *Dura Pharms.*, 544 U.S. at 342.[9]  Plaintiffs must plead that "(1) a corrective disclosure

4

revealed, in whole or in part, the truth concealed by the defendant's misstatements; and (2)

5

disclosure of the truth caused the company's stock price to decline and the inflation attributable to

6

the misstatements to dissipate."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir.

7

2020)).  Here, Plaintiffs cannot plead loss causation, because they fail to adequately allege *any*

8

corrective disclosure.

9

     Plaintiffs point to a series of purported "partial disclosure[s]," ¶¶ 95-104, but none of these

10

alleged statements corrects, changes, or contradicts any earlier statements.  *See* § V.A.1, *supra*.

11

Thus, these statements are not corrective, and cannot meet the first prong of the loss causation

12

standard.  *See In re Apollo Grp., Inc. Sec. Litig.*, 2012 WL 2376378, at *7 (D. Ariz. June 22, 2012)

13

(holding that failure to allege which statements were corrected by disclosure is fatal to a loss

14

causation claim)  Indeed, Plaintiffs have not alleged "specific statements . . . that were made untrue

15

or called into question by subsequent public disclosures" or the supposed corrective disclosures.

16

*Or. Pub. Emps. Ret. Fund*, 774 F.3d at 608.  Plaintiffs do not allege that Defendants represented,

17

at any time, that the Foundation and key team members were *not* locked up for a week at Genesis;

18

that the Foundation *did* vest itself; or that former employees were *not* able to sell ICP tokens.

19

Thus, statements that the Foundation *was* locked up at Genesis, ¶ 194(a), that the Foundation did

20

*not* vest itself, ¶ 194(b), and that former employees *were* able to sell tokens, ¶ 194(c), are not

21

"corrective."  Although Plaintiffs point to "discussions on Reddit from June 11 to June 22," they

22

do not allege that any specific information was disclosed in those alleged discussions, state that

23

any defendant participated in those discussions, or explain how such discussions "corrected" prior

24

statements by Defendants.  ¶ 194(d).  *Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296,

25

1314 (S.D. Cal. 2020) (holding loss causation not established where disclosures were not

26

27

28

---

    [9]  In the Ninth Circuit, loss causation is subject to Rule 9(b)'s heightened pleading standard.  *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

corrective).  Plaintiffs' failure to plead specific facts showing loss causation is an independent ground for dismissal.  *Dura Pharms.*, 544 U.S. at 345-46.

## B.    Plaintiffs' Section 10(b) And Rule 10b-5 Claim For Alleged Market Manipulation Should Be Dismissed

To state a claim for market manipulation under Exchange Act Section 10(b) and Rule 10b-5, Plaintiffs must allege with particularity:  "[i] that the defendant engaged in manipulative acts; [ii] that plaintiff suffered damage [iii] which was caused by his or her reliance on an assumption that the market was free of manipulation, and [iv] that the defendant acted with scienter."  *In re Rigel Pharms., Inc. Sec. Litig.*, No. C 09-00546 JSW, 2010 WL 8816155, at *9 (N.D. Cal. Aug. 24, 2010) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 102 (2d Cir. 2007)), *aff'd*, 697 F.3d 869 (9th Cir. 2012).  Plaintiffs do not plead particularized facts establishing either a manipulative act or scienter, and their market manipulation claim therefore should be dismissed.[10]

### 1.    Plaintiffs Fail To Plead A Manipulative Act

Plaintiffs' market manipulation claim rests on allegations (including "on information and belief") that Defendants: (i) purchased ICP tokens from employees in undisclosed off-market transactions, ¶ 227; (ii) imposed last-minute vesting restrictions on seed participants' ICP tokens, ¶ 228; and (iii) imposed further undisclosed restrictions on other outside investors, ¶ 229.  Plaintiffs assert that, through these alleged acts, Defendants "reduce[d] the supply of ICP" tokens on the market," ¶ 230, providing "greater control over the price of ICP," ¶ 78.  Even accepting these allegations as true, however, Plaintiffs do not plead any manipulative act with particularity.

As an initial matter, the term "manipulation" is "virtually a term of art," connoting "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."  *In re Bank of Am. Corp.*, No. 09-md-02014 JSW, 2011 WL 740902, at *7 (N.D. Cal. 2011).  "Manipulation" typically refers to practices such as

---

[10] Plaintiffs also have the burden to plead and prove reliance and damages.  Should the Complaint survive, Defendants will challenge Plaintiffs' allegations and proof on these points as well.

wash sales, matched orders, rigged prices, or pump and dump schemes, which are deliberately designed to mislead investors as to the value of a security.  *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009).  In these paradigmatic examples of a market manipulation scheme, the manipulative conduct includes inherently fraudulent transactions.  *See Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18, 21 (2d Cir. 2013) (pump and dump scheme sufficient to show manipulation where "purchasers were led to believe that the prices they paid were set by trading in [an] arms-length market," rather than a market in which Defendants "create[ed] a false appearance of [trading] volume and increasing price"); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205 n.25 (1976) (wash sale is fictitious transaction "involving no change in beneficial ownership").

Here, Plaintiffs do not—and cannot—allege any such manipulative act.  Plaintiffs do not allege that Defendants (or anyone acting on their behalf) engaged in artificial trading that provided any false pricing signal to the market.  Indeed, as discussed above, Plaintiffs do not sufficiently plead that any Defendant bought or sold ICP tokens during the Class Period.  *See* § V.A.2, *supra.* But to the extent Plaintiffs plead *any* purchases and sales during the Class Period, the Complaint makes clear that any such transactions were arm's-length transactions with independent third-party purchasers, not fictitious arm-in-arm transactions designed to mislead the public.  ¶¶ 138-39 (describing the purported class as non-insider individuals who purchased ICP tokens "in the ICO and through online crypto-asset exchanges").[11]  This is fatal to Plaintiffs' market manipulation claim.  *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 207 (3d Cir. 2001) (defendant's sales did not create a false impression of supply and demand because the transactions had "real buyers, betting against [defendant], however foolishly, that the price of [the] stock would rise").

Plaintiffs' market manipulation claim also fails because Plaintiffs do not allege deceptive conduct.  The common factor underlying a market manipulation claim is that the defendant engages in deceptive conduct with the *express purpose* of affecting a stock's price, without the

---

[11]  As noted above, *see* § V.A.2, *supra,* there is no particularized allegation that Mr. Williams sold any ICP tokens during the Class Period.  Nor are there particularized allegations that Dfinity USA sold, and the only allegations concerning the Foundation are that it sold some ICP tokens at some point before May 24, 2021, according to an unreliable third-party report.  *See, e.g.*, ¶¶ 85, 179(h).

1    plaintiff's knowledge, in order to profit from the manipulated price of that stock.  As such,

2    "nondisclosure is usually essential to the success of a manipulative scheme."  *Santa Fe Indus. v.*

3    *Green*, 430 U.S. 462, 477 (1977).  Where, as here, the allegedly manipulative conduct is fully

4    disclosed, the market is not misled.  *See e.g.*, *Bank of Am.*, 2011 WL 740902, at *7-9 (holding

5    market manipulation claim could not be based on information that was sufficiently disclosed to

6    the public); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390-93 (S.D.N.Y.

7    2010) (dismissing market manipulation claim for failure to plead manipulative activity where

8    transaction's terms were fully disclosed to the public).

9         Even assuming that Defendants' actions reduced the supply of ICP tokens on the market,

10   ¶ 230, Plaintiffs' allegation that Defendants did so deceptively to give themselves control over the

11   available ICP tokens (and, presumably, the price), ¶ 78, does not hold water.  Plaintiffs concede

12   that: (i) vesting restrictions on seed round and Airdrop participants were publicly disclosed at the

13   time of Genesis, ¶¶ 70-71, 92; and (ii) instructions to seed round participants for claiming tokens

14   likewise were disclosed, *see* ¶¶ 70-71.  Accordingly, there was no deceptive conduct and there can

15   be no manipulation.  *See, e.g.*, *Bank of Am.*, 2011 WL 740902, at *7-9; *In re Merrill Lynch Auction*

16   *Rate Sec. Litig.*, 704 F. Supp. 2d at 390-93.

17        Similarly, although Plaintiffs allege that Defendants did not disclose their cash-in-lieu-of-

18   tokens repurchase program, ¶ 227, Plaintiffs do not plead any deception in connection with that

19   program.  Indeed, absent any allegation that the market was led to believe that employees' tokens

20   would be available in the open market during the Class Period, Plaintiffs fail to allege with

21   particularity that Defendants' repurchases affected the price of ICP tokens or caused Plaintiffs

22   harm—the crux of a market manipulation claim.  *See ATSI*, 493 F.3d at 100, 104-05 (dismissing

23   market manipulation claim where no "false pricing signal" or alleged impact on the market);

24   *Polinsky v. MCA Inc.*, 680 F.2d 1286, 1290 (9th Cir. 1982) (no claim for market manipulation

25   where plaintiff was not harmed).  In fact, Plaintiffs allege just the opposite.  Plaintiffs contend that

26   it was *not* understood that Dfinity employees would be able to sell ICP tokens as of Genesis.

27   ¶ 179(a) (alleging that "Defendants were obligated to (but did not) disclose that . . . any applicable

28   vesting periods would nevertheless allow . . . Dfinity's current and former team members[] to

immediately sell substantial amounts of ICP"). Accordingly, Plaintiffs cannot claim that a failure to disclose the program sent a "false pricing signal" to the market. *ATSI*, 493 F.3d at 100.

### 2.    Plaintiffs Fail To Plead A Strong Inference Of Scienter.

As in their misrepresentation claim (*see* § V.A.2, *supra*), Plaintiffs have not pleaded deliberate recklessness attributable to Defendants that would support an inference of scienter. The pleading requirement for scienter "is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 119 (S.D.N.Y. 2018). The entire scheme alleged by Plaintiffs is that Defendants "reduced the supply of ICP" tokens and "benefit[ed] from inflated prices."[12]  ¶ 236. But, crucially, Plaintiffs do not allege that Defendants *sold* ICP tokens at artificially inflated prices. Indeed, Plaintiffs concede that the Foundation and key team members (including Mr. Williams) could *not* sell during the first week of trading, when the price of ICP tokens was at its peak. ¶ 95. Thus, at the time when the price of ICP tokens allegedly was inflated (at Genesis), neither the Foundation nor Mr. Williams could benefit from such inflation, and Plaintiffs' inference that Defendants intentionally inflated the price of ICP tokens at a time when they could not sell makes no sense. *See, e.g.*, *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1258-64 (C.D. Cal. 2015) (dismissing market manipulation claim where plaintiff's allegations were inconsistent with an intent to deceive); *Feiner Fam. Tr. v. Xcelera.com, Inc.*, No. 07 Civ. 1914 (RPP), 2008 WL 5233605, at *5 (S.D.N.Y. Dec. 15, 2008) (granting motion to dismiss where alleged benefit was speculative).

---

[12]  Plaintiffs also assert that the process by which seed donors could access their tokens at Genesis was "highly technical" and "buggy," ¶ 72, and that Defendants were "intentionally trying to prevent [seed donors] from accessing their ICP," ¶ 74. To the extent Plaintiffs invoke this purportedly difficult technical process to demonstrate scienter, this effort fails. An imperfect rollout of a revolutionary computing platform does not equal intent, or even extreme recklessness. *See, e.g.*, Orsini Decl. Ex. C (Cycle Dao (cited ¶¶ 76, 83) ("Launching a network is hard. It will never be perfect. Sometimes the market conditions dictate that you must launch now. In the rush to deploy so many moving parts, some things get neglected: token management UX and KYC processes among them. It's easy to buy into false narratives and jump on a bandwagon. We hear accusations of insider trading, of misleading investors, and of the team wildly profiting from retail investors – all very much attention grabbing, but very much lacking in nuance. It is ridiculous to say the team was negligent or acting maliciously, but certainly, we can blame them for not executing the perfect launch.").

### C.    Plaintiffs' Section 20A Claim Should Be Dismissed

"To satisfy § 20A, a plaintiff must plead (1) a predicate violation of the securities laws; and (2) facts showing that the trading activity of plaintiffs and defendants occur contemporaneously." *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135 (N.D. Cal. 2020) (cleaned up); 15 U.S.C. § 78t-1(a).  Plaintiffs fail adequately to allege a predicate violation of the Exchange Act (*see* §§ V.A, V.B, *supra*), and their Section 20A claim therefore fails as a matter of law.  *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993) (holding that because plaintiffs failed to allege an actionable independent underlying violation of the Exchange Act, they could not maintain a claim under Section 20A).

Plaintiffs' Section 20A claim against Dfinity USA and Mr. Williams also should be dismissed on the independent ground that Plaintiffs fail to allege that either Defendant traded contemporaneously with Plaintiffs.  As noted above, Plaintiffs do not allege with particularity that Mr. Williams or Dfinity USA sold ICP tokens *at all* before the end of the Class Period on June 22, 2021.  *See* § V.A.2, *supra*.  This further compels dismissal.  *See, e.g., SEB Inv. Mgmt.*, 485 F. Supp. 3d at 1136 (dismissing claim because plaintiff failed to plead contemporaneous purchases).

## VI.    Plaintiffs' Securities Act Section 15 And Exchange Act Section 20(a) Control Person Claims Should Be Dismissed

To state a claim for control person liability, Plaintiffs must allege (i) a primary violation of the federal securities laws; and (ii) that the defendant exercised actual power or control over the primary violator.  *In re Energy Recovery Inc. Sec. Litig.*, No. 15-CV-00265-EMC, 2016 WL 324150, at *8 (N.D. Cal. Jan. 27, 2016).  Because Plaintiffs fail adequately to plead a primary violation, his control person claims should be dismissed.  *See, e.g.*, *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Complaint should be dismissed in its entirety.  Plaintiffs' Securities Act claims should be dismissed with prejudice, because their untimeliness cannot be cured.

1

Respectfully Submitted,

2

Dated:          April 4, 2022          CRAVATH, SWAINE & MOORE LLP

3

*/s/ Kevin J. Orsini*

4

Antony L. Ryan (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)

5

Lauren M. Rosenberg (*pro hac vice*)

6

Worldwide Plaza
825 Eighth Avenue

7

New York, New York 10019
Tel.:  (212) 474-1000

8

Fax:  (212) 474-3700
korsini@cravath.com

9

10

*Counsel for Defendants*

11

QUINN EMANUEL URQUHART & SULLIVAN LLP

12

*/s/ Michael E. Liftik*

13

Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)

14

1300 I Street, Suite 900

15

Washington, D.C. 20005
Telephone:  (202) 538-8000

16

michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

17

18

Emily C. Kapur (CA Bar No. 306724)

19

555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065

20

Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

21

22

Brenna Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Floor

23

New York, New York 10010
Telephone: (212) 849-7000

24

brennanelinson@quinnemanuel.com

25

26

*Counsel for Defendants*

27

28

-21-

1   CRAVATH, SWAINE & MOORE LLP
    Antony L. Ryan (*pro hac vice*)
2   Kevin J. Orsini (*pro hac vice*)
    Lauren M. Rosenberg (*pro hac vice*)
3   Worldwide Plaza
    825 Eighth Avenue
4   New York, New York 10019
    Tel.:  (212) 474-1000
5   Fax:  (212) 474-3700
    aryan@cravath.com
6   korsini@cravath.com
    lrosenberg@cravath.com
7
8   QUINN EMANUEL URQUHART & SULLIVAN LLP
9   Michael E. Liftik (CA Bar No. 232430)
    Sarah Heaton Concannon (*pro hac vice*)
10  1300 I Street, Suite 900
    Washington, D.C. 20005
11  Telephone:  (202) 538-8000
12  michaelliftik@quinnemanuel.com
    sarahconcannon@quinnemanuel.com
13
14  *Counsel for Defendants Dfinity USA Research LLC, Dfinity Foundation, and Dominic Williams*

15              **UNITED STATES DISTRICT COURT**
16              **NORTHERN DISTRICT OF CALIFORNIA**

17  DANIEL VALENTI, Individually and On Behalf          Case No.: 3:21-cv-06118-JD
    of All Others Similarly Situated,
18                                                      **[PROPOSED] ORDER GRANTING
                    Plaintiff,                          DEFENDANTS' MOTION TO
19                                                      DISMISS**
20          v.

21  DFINITY USA RESEARCH LLC, DFINITY
    FOUNDATION and DOMINIC WILLIAMS,
22
                    Defendants.
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pending before the Court is Defendants Dfinity USA Research, LLC, Dfinity Foundation, and Dominic Williams' (together, "Defendants'") Motion to Dismiss the Complaint brought by Plaintiff Daniel Valenti and Lead Plainiff Henry Rodriguez (together, "Plaintiffs").  After full consideration of the moving and opposing papers of each party, the arguments of counsel, and all other matters presented to the Court, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED.  Plaintiffs' Complaint is dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

IT IS SO ORDERED.


Dated: _____, 2022


_____
Honorable James Donato
United States District Judge
Northern District of California