# EXHIBIT B

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 11/4/2021 3:56 PM
Reviewed By: Y. Chavez
Case #21CV384865
Envelope: 7607390**

1 | STEPHEN C. STEINBERG (SBN 230656)
*ssteinberg@bzbm.com*
2 | MICHAEL D. ABRAHAM (SBN 125633)
*mabraham@bzbm.com*
3 | BARTKO ZANKEL BUNZEL & MILLER
A Professional Law Corporation
4 | One Embarcadero Center, Suite 800
San Francisco, California 94111
5 | Telephone: (415) 956-1900
Facsimile: (415) 956-1152

6

Attorneys for Plaintiff Sacha Williams

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SANTA CLARA

10

11 | SACHA WILLIAMS, an individual,      Case No.      21CV384865

12 | Plaintiff,      **COMPLAINT FOR:**

13 | v.      **1. CONVERSION**

14 | DOMINIC WILLIAMS, an individual;      **2. BREACH OF CONTRACT**
and Does 1-10,
15 |       **3. BREACH OF FIDUCIARY DUTY**
Defendants.
16 |       <u>**REDACTED PURSUANT TO
10/26/21 COURT ORDER**</u>

17

18

19 | Plaintiff Sacha Williams ("Sacha"), for his Complaint against Defendant Dominic

20 | Williams ("Dominic") and Does 1-10, inclusive, alleges as follows:

21 | **NATURE OF THIS ACTION**

22 | 1.      This action arises out of Dominic's wrongful acts with regard to cryptocurrency

23 | tokens, and the substantial proceeds from the sales of a portion of the tokens, that Dominic had

24 | transferred to Sacha in 2017.

25 | 2.      On December 18, 2017, Dominic transferred cryptocurrency tokens to his son,

26 | Sacha, which transfer was documented in a written, binding Token Transfer Agreement that was

27 | effective on that date and delivered to Sacha shortly thereafter. The tokens were and are related to

28 | a technology startup called "Dfinity."

2912.000/1636131.7

COMPLAINT

1      3.     In the intervening years, Sacha and Dominic became estranged from each other.

2      4.     Dfinity's cryptocurrency tokens, now called "ICP" tokens, went live and became

3 fully tradable on public cryptocurrency exchanges on or about May 7, 2021.

4      5.     Since that date, Dominic has taken and wrongfully exercised control over and

5 interfered with Sacha's tokens, sold a small percentage of them for ▮▮▮▮▮, which Dominic

6 deposited in a bank account in his own name.  Dominic now seeks to control Sacha's remaining

7 tokens, the proceeds from the prior sale of Sacha's tokens, the timing of any future sales of

8 Sacha's tokens, and the sales proceeds from any future sales of Sacha's tokens.

9      6.     Contrary to the express terms of the Token Transfer Agreement, Dominic now

10 falsely claims that rather than transferring ownership of the tokens to Sacha, Dominic put all of the

11 subject tokens in a trust for Sacha's benefit, with Dominic as the trustee.  Dominic is making this

12 claim despite the fact that the Token Transfer Agreement does not create a trust and despite

13 Dominic having previously admitted that his trust claim is false.

14      7.     In the meantime, over the past month and a half while Dominic has wrongfully

15 exercised control over and interfered with Sacha's tokens, the tokens have fallen from a high value

16 of over $750 per token to about $40 per token as of the date of the filing of this Complaint.

17      8.     Dominic's wrongful conduct has resulted in most of Sacha's financial assets being

18 in a single asset in a single volatile asset class, which has plummeted in value and caused Sacha

19 substantial damages.  Further, Dominic's wrongful conduct has resulted in Sacha's financial assets

20 being improperly subject to risk instead of responsibly invested in a diversity of asset classes.

21      9.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

23      10.    Sacha desires and needs to regain control of his tokens as well as the proceeds from

24 the prior sales of his tokens so that his financial assets can be properly managed with the

25 assistance of a well-qualified financial planner; rather than leaving it in the hands of his estranged

26 father, Dominic, who has engaged in the above described wrongful conduct, who has no expertise

27 in financial planning, and who appears to be irreconcilably conflicted based on his own interests

28 and/or his role in Dfinity's interests.

2912.000/1636131.7

1      11.    Sacha has been forced to bring this action to regain control of and prevent the

2  improper interference with his tokens as well as the proceeds from the sale of a portion of Sacha's

3  tokens, enforce the Token Transfer Agreement, and hold Dominic liable for the damages he has

4  caused.

5                              **PARTIES**

6      12.    Plaintiff Sacha Williams ("Sacha") is an individual, is an adult, and resides in Palo

7  Alto, Santa Clara County, California.

8      13.    Defendant Dominic Williams ("Dominic") is an individual, is an adult, and resides

9  in Palo Alto, Santa Clara County, California.

10      14.    Plaintiff is unaware of the true names and capacities of the Defendants sued herein

11  as Does 1 through 10, inclusive, and therefore sues such Defendants by such fictitious names.

12  Plaintiff will amend his Complaint to allege the true names and capacities of such Defendants

13  upon ascertaining such information. Plaintiff is informed and believes, and thereon alleges, that

14  each fictitiously named Defendant is legally responsible in some manner for and proximately

15  caused the harm and damages alleged.

16                    **JURISDICTION AND VENUE**

17      15.    This Court has jurisdiction over the parties and this action. All of the parties are

18  residents of Santa Clara County, California. The Token Transfer Agreement between Dominic

19  and Sacha was executed and breached in Santa Clara County, California. The conversion of

20  Sacha's tokens by Dominic and his breaches of fiduciary duty took place in Santa Clara County,

21  California. Thus, the Court has personal jurisdiction over the parties, and venue is proper in this

22  Court.

23                **DOMINIC'S WORK ON DFINITY AND**

24      **TRANSFER OF CRYPTOCURRENCY TOKENS TO SACHA**

25      16.    In 2015, Dominic began working to develop a new cryptocurrency, which he

26  originally called "dfinities" or "DFN" tokens, and an accompanying decentralized computing

27  platform that was initially called the "DFINITY Project," and would later come to be known as the

28  "Internet Computer."

2912.000/1636131.7

COMPLAINT

1   17.   Dominic joined a technology incubator called String Labs in 2016, where he
2  continued working on the DFINITY Project, and took in his first investment in the project from
3  String Labs in the Summer of 2016.

4   18.   Dominic formed the DFINITY Stiftung (a Swiss foundation) (hereinafter referred
5  to as the "DFINITY Foundation") in mid-2016 and DFINITY USA Research, LLC in August
6  2017 to continue developing the project.

7   19.   In 2017, Dominic received various allocations of "dfinities" or "DFN" tokens from
8  the DFINITY Foundation as compensation for his services as President, Council Member, and
9  Chief Scientist.

10   20.   On December 18, 2017, Dominic transferred ███████ of his tokens to Sacha, and
11  made identical transfers to each of his other three children.

12   21.   The transfer to Sacha was documented in a Token Transfer Agreement, a copy of
13  which is attached hereto as **Exhibit A**.

14   22.   The Token Transfer Agreement was made, entered into, and effective as of
15  December 18, 2017.

16   23.   Under the Recitals and Section 1.1 of the Token Transfer Agreement, effective on
17  December 18, 2017, ████████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████████████████
20  ███████████████████████████████████

21   24.   Under Section 2 of the Token Transfer Agreement, █████████████████████
22  ████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████

24   25.   Under Section 7.7 of the Token Transfer Agreement, █████████████████████
25  ████████████████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████████████████
27  █████████████████████

28

2912.000/1636131.7                                    4

1    26.    Shortly after signing the Token Transfer Agreement with Sacha and identical
2  agreements with each of his other three children, Dominic put all four agreements, as well as
3  documents containing notarization keys that, on information and belief, would enable each child to
4  prove their ownership of the tokens and take custody of them when Dfinity's cryptocurrency went
5  live, in an envelope on which Dominic wrote "Dylan, Charlie, Sacha, Theo Token Assignment
6  Agreements." Dominic gave the envelope to his oldest son, Dylan Williams, who had witnessed
7  the signing of the agreements, to take home to Sacha and his other siblings and their mother,
8  Melissa Williams ("Melissa"), and to keep at Melissa's home, as Dominic and Melissa were
9  separated and residing in separate homes. Sacha and his siblings resided at Melissa's home at that
10  time.

11    27.    Dominic explained to Melissa that he transferred the tokens to their children as
12  "gifts" and entered into the Token Transfer Agreements for tax efficiency and planning reasons.

13    28.    Since December 2017, over the ensuing years, Dominic and Sacha became largely
14  estranged from each other.

15    29.    In the years following the aforementioned transfers of tokens to his children,
16  Dominic repeatedly mentioned to his children, including Sacha, the transfers of these tokens and
17  called them "gifts."

18    30.    In fact, in subsequent divorce proceedings between Melissa and Dominic, he
19  confirmed the aforementioned transfers of tokens to Sacha and the other children from the marital
20  estate and once again called them gifts of tokens, and later referred to the Token Transfer
21  Agreements and notarization keys as being for the tokens that were gifted to the Williams's
22  children.

23  **DOMINIC'S CONVERSION OF SACHA'S TOKENS AND BREACH OF THE TOKEN**
24  **TRANSFER AGREEMENT AND FIDUCIARY DUTIES**

25    31.    In January 2021, Dominic and the DFINITY Foundation announced that the
26  Internet Computer would be fully launched in the Spring of 2021. They also announced that the
27  cryptocurrency tokens underlying the Internet Computer would now be known as "ICP" tokens,
28  instead of "DFN" tokens.

32.     These tokens were already being traded in limited volumes on multiple cryptocurrency exchanges, and following Dominic's announcement and as the full launch of the Internet Computer approached, their value to gradually increase from about $10-15 per token in December 2020, to over $200 per token in early May 2021.

33.     As the full launch of the Internet Computer approached, Dominic and the DFINITY Foundation provided other owners of ICP tokens, such as early investors in the DFINITY Foundation, with instructions on how to claim, take custody of, and sell their ICP tokens as soon as the full launch took place.  However, Dominic provided Sacha with no such instructions.

34.     On information and belief, in or about late 2020 or early 2021, Dominic and/or the DFINITY Foundation at the direction of Dominic took steps to disable the notarization keys that he had previously provided to his children for their tokens.

35.     Melissa asked Dominic to provide each of their children with instructions about how to take control of and manage their tokens, and Sacha made a similar request, but Dominic refused.

36.     Instead, in the Spring of 2021, Dominic told his children, including Sacha, for the first time that rather than having transferred the tokens in 2017 pursuant to the terms of the Token Transfer Agreements and/or as "gifts" as he had previously repeatedly called them, he had purportedly put the tokens into a trust for their benefit at that time, with Dominic as the trustee. This was false, as Dominic later admitted to his children, including Sacha.

37.     Dominic then told his children, including Sacha, that he wanted to put their tokens into a trust which he was in the process of setting up, and asked if they would agree, recognizing that the tokens already belonged to his children, but Sacha refused, as did some of the other children.

38.     Dominic then told Melissa that this was a mistake and he had no intention of putting their children's tokens into a trust ██████████████████████████████████████████████

██████████████████████████████████.

39.     The Internet Computer was fully launched on May 7, 2021.

1    40.    ICP tokens became fully tradable on public cryptocurrency exchanges around that

2  same date, and became fully tradable on Coinbase, the largest cryptocurrency exchange in the

3  United States, on May 10, 2021.

4    41.    After the launch, the value of ICP tokens quickly increased, hitting a high of $750

5  per token on May 9, 2021, and fluctuating between about $225-400 per token during the following

6  week.

7    42.    During that week, Dominic asked Melissa and his children, including Sacha, if they

8  would authorize him to sell a small percentage of each child's tokens ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮, and Sacha agreed only on the condition that Dominic would immediately transfer the

10  proceeds from sales of Sacha's tokens to him.

11    43.    Dominic agreed to this condition and then stated he had sold a total of

12  ▮▮▮▮▮▮▮▮ of his children's tokens, split equally between them, meaning that ▮▮▮▮▮▮

13  belongs to Sacha.

14    44.    But Dominic then refused to transfer the proceeds from these sales to Sacha or any

15  of the other children.

16    45.    Instead, Dominic claims he deposited the proceeds from these sales into a bank

17  account that he had opened in his own name, without Sacha's consent and in express violation of

18  Sacha's instructions.

19    46.    Over the past month and a half while Dominic has refused to transfer control of

20  Sacha's ICP tokens to him, the value of these tokens has gradually declined to about $40 per token

21  as of the filing date of this Complaint, causing Sacha substantial damages as a result.

22    47.    As a result of Dominic's misconduct, most of Sacha's net worth is tied up in a

23  single asset in a volatile asset class that has decreased in value by over 95% over the past six

24  weeks.

25    48.    In addition to the steep decline in the value of Sacha's tokens, Dominic's prior sale

26  of some of Sacha's tokens ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Sacha also needs the ability to invest the net sales

28  proceeds from this prior sale as well as proceeds from future sales of his remaining tokens in order

2912.000/1636131.7                                          7

1 | to be protected against undue financial risk by having his investments appropriately diversified

2 | among asset classes.

3 |      49.    Dominic has also stated that he intends to move to Switzerland in the near future,

4 | ███████████████████████████████████████████████████████

5 |      50.    Dominic recently called Sacha to ask if he would "voluntarily" put his tokens into a

6 | trust with Dominic as the trustee, again recognizing that the tokens already belonged to Sacha, but

7 | Sacha refused.

8 |      51.    Since then, Dominic has threatened to punish Sacha for not agreeing to Dominic's

9 | demands.

10 |      52.    Recently, Dominic returned to the false claim that he did not give the tokens to

11 | Sacha and the other children in December 2017, but actually put them into trust for the children's

12 | benefit with Dominic as the trustee, even though he previously admitted this was untrue.

13 |      53.    Dominic also now falsely claims that he never gave the Token Transfer

14 | Agreements to anyone else, nor did he even inform Sacha about the transfers or "gifts" of tokens,

15 | and that Sacha or someone acting for him stole Sacha's Token Transfer Agreement from Dominic.

16 | These allegations are categorically false and are defamatory.

17 | **FIRST CAUSE OF ACTION**

18 | **(Conversion)**

19 |      54.    Sacha hereby incorporates by reference each of the allegations in the preceding

20 | paragraphs of this Complaint as if fully set forth herein.

21 |      55.    Sacha owns and has a right to possess the Dfinity cryptocurrency tokens (now

22 | known as "ICP" tokens) that were transferred to him from his parents' marital estate in 2017.

23 |      56.    Dominic has improperly and substantially interfered with Sacha's possession of his

24 | tokens and the proceeds from the sale of a portion of Sacha's tokens by knowingly and

25 | intentionally taking possession of Sacha's tokens and the sale proceeds, thereby preventing Sacha

26 | from having control over, access to, and the use of the tokens and sale proceeds.  Instead, by

27 | Dominic's wrongful acts and/or by Dominic acting in a manner inconsistent with Sacha's rights,

28 |

2912.000/1636131.7

8

1 Dominic has wrongfully converted Sacha's tokens and the proceeds from the sale of a portion of

2 Sacha's tokens.

3    57.    Sacha did not consent to these actions by Dominic.

4    58.    Sacha has been harmed and damaged as a result of Dominic's actions.

5    59.    Dominic's actions were a substantial factor in causing Sacha's harm and damages.

6    60.    Dominic engaged in the aforementioned conduct with malice, oppression, and/or

7 fraud.

8                          **SECOND CAUSE OF ACTION**

9                              **(Breach of Contract)**

10    61.    Plaintiff hereby incorporates by reference each of the allegations in the preceding

11 paragraphs of this Complaint as if fully set forth herein.

12    62.    In December 18, 2017, Dominic signed the Token Transfer Agreement between

13 himself and Sacha, as described above and attached hereto, and effective on that date, Dominic

14 transferred all of his interest in █████ Dfinity cryptocurrency tokens (now known as "ICP"

15 tokens) to Sacha.

16    63.    The Token Transfer Agreement is a binding contract supported by consideration.

17    64.    Sacha did all, or substantially all, of the significant things that the Token Transfer

18 Agreement required him to do, and all conditions required by the contract for Dominic's

19 performance occurred.

20    65.    Dominic has failed to perform as required by the Token Transfer Agreement in

21 that, among other things, took back and/or interfered with the ICP tokens owned by Sacha.

22    66.    As a result, Sacha has been harmed and damaged.

23    67.    Dominic's breach of his contract with Sacha was a substantial factor in causing

24 Sacha's harm and damages.

25                          **THIRD CAUSE OF ACTION**

26                          **(Breach of Fiduciary Duty)**

27    68.    Plaintiff hereby incorporates by reference each of the allegations in the preceding

28 paragraphs of this Complaint as if fully set forth herein.

2912.000/1636131.7                          9

1    69.    As set forth above, Dominic has improperly taken control of Sacha's tokens and

2  proceeds from sales of a portion of such tokens and wrongfully sought to appoint himself as

3  Sacha's trustee without consent or legal right to do so.

4    70.    By claiming to act on Sacha's behalf in taking control of and managing Sacha's

5  tokens and proceeds from sales of a portion of such tokens, and for at least so long as Dominic

6  continues to wrongfully maintain control of such tokens and proceeds and withhold them from

7  Sacha, Dominic has taken on a special relationship of trust that imposes fiduciary duties to act

8  with the utmost good faith in the best interests of Sacha and in a reasonably prudent manner.

9    71.    Dominic has failed to act with reasonable care in that, among other things, he failed

10  to liquidate any more of Sacha's tokens at much higher prices and has failed to diversify Sacha's

11  financial assets such that most of his net worth is locked up in a single highly volatile asset which

12  has lost substantial value.

13    72.    Sacha has been harmed and damaged as a result of Dominic's actions.

14    73.    Dominic's conduct was a substantial factor in causing Sacha's harm and damages.

15    74.    Dominic engaged in the aforementioned conduct with malice, oppression, and/or

16  fraud.

## PRAYER FOR RELIEF

18  WHEREFORE, Plaintiff prays for judgment against Defendant for:

19    1.    Compensatory and consequential damages according to proof on all causes of

20  action;

21    2.    Specific performance compelling Dominic to fulfill his obligations under the Token

22  Transfer Agreement with Sacha, including but not limited to delivery of all of Sacha's tokens and

23  the proceeds from any sales of such tokens;

24    3    Preliminary and permanent injunctive relief compelling Dominic to turn over to

25  Sacha all of Sacha's tokens and the proceeds from any sales of such tokens;

26    4.    Punitive damages on the first and third causes of action;

27    5.    Attorneys' fees;

28    6.    Pre- and post-judgment interest;

2912.000/1636131.7                                   10

1       7.     Costs of suit; and

2       8.     Such further relief as the Court may deem just and proper.

3

4   Dated:  June 28, 2021

                                        BARTKO ZANKEL BUNZEL & MILLER
5                                             A Professional Law Corporation

6

7                        By:  _____

8                                    STEPHEN C. STEINBERG
                                  Attorneys for Plaintiff Sacha Williams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## SEALED PURSUANT TO
## 10/26/21 COURT ORDER