QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

[Additional Counsel on Signature Page]

*Counsel for Defendants Dfinity USA Research LLC, Dfinity Foundation, and Dominic Williams*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>               Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date: July 14, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...............................................................................1

II.  DEFENDANTS WERE NOT STATUTORY SELLERS..............................................1

    A.   Plaintiffs' Inference That Defendants Directly Passed Title Is Not Reasonable ...............................................................................................2

    B.   Plaintiffs' Solicitation Arguments Likewise Fail ...................................4

III. PLAINTIFFS DO NOT PLEAD ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS UNDER THE EXCHANGE ACT.......................................................5

    A.   Plaintiffs Fail to Allege An Actionable Misstatement or Omission ........5

    B.   Plaintiffs Fail to Allege Scienter .........................................................8

    C.   Plaintiffs Fail To Plead Loss Causation...............................................11

IV.  PLAINTIFFS DO NOT PLEAD A MARKET MANIPULATION CLAIM.............13

    A.   Plaintiffs Fail To Plead A Manipulative Act Or Deceptive Conduct ...................13

    B.   Plaintiffs Fail To Plead A Strong Inference Of Scienter ......................14

V.   PLAINTIFFS DO NOT SALVAGE THEIR INSIDER TRADING CLAIM ...........15

VII. CONCLUSION .............................................................................................15

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT, CASE NO. 3:21-CV-06118-JD

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Applestein v. Medivation, Inc.*,
    561 F. App'x 598 (9th Cir. 2014) ................................................................. 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) .................................................................... 13

*Balestra v. ATBCOIN LLC*,
    380 F. Supp. 3d 340 (S.D.N.Y. 2019) ........................................................ 4

*Bennett v. H&R Block Fin. Advisors, Inc.*,
    2005 WL 8178042 (N.D. Cal. June 1, 2005) ...................................... 14, 15

*Born v. Quad/Graphics, Inc.*,
    521 F. Supp. 3d 469 (S.D.N.Y. 2021) ........................................................ 12

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ....................................................... 5, 6, 7, 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ................................................................. 10

*Colgate v. JUUL Labs, Inc.*,
    402 F. Supp. 3d 728 (N.D. Cal. 2019) ...................................................... 10

*Collins v. Winex Invs., LLC*,
    2009 WL 861738 (S.D. Cal. Mar. 27, 2009) ............................................... 2

*Crane Co. v. Westinghouse Air Brake Co.*,
    419 F.2d 787 (2d Cir. 1969) .................................................................... 14

*Curry v. Yelp Inc.*,
    2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) ........................................... 11

*Doherty v. Pivotal Software Inc.*,
    2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) .............................................. 3

*Glenbrook Cap. Ltd. P'ship v. Kuo*,
    2008 WL 929429 (N.D. Cal. Apr. 3, 2008) ............................................... 6

*Hershewe v. JOYY Inc.*,
    2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ............................................. 12

*In re Alliance Equip. Lease Program Sec. Litig.*,
    2002 WL 34451621 (S.D. Cal. Oct. 15, 2002) ........................................... 2

# TABLE OF AUTHORITIES
### (Cont'd)

*In re AOL Time Warner, Inc. Sec. Litig.*,
    503 F. Supp. 2d 666 (S.D.N.Y. 2007) ......................................................... 12

*In re Bank of Am. Corp.*,
    2011 WL 740902 (N.D. Cal. Feb. 24, 2011) ............................................... 13

*In re BofI Holding, Inc. Secs. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ....................................................................... 11

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ................................................................... 5

*In re Merrill Lynch Auction Rate Sec. Litig.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010) ......................................................... 14

*In re Nektar Therapeutics*,
    2020 WL 3962004 (N.D. Cal. July 13, 2020) ............................................. 12

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ....................................................................... 12

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ....................................................................... 12

*In re Petco Animal Supplies Inc. Sec. Litig.*,
    2006 WL 6829623 (S.D. Cal. Aug. 1, 2006) ............................................... 15

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ................................................................... 7, 15

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ......................................................................... 9

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................... 9

*In re Tezos Securities Litigation*,
    2018 WL 4293341,  (N.D. Cal. Aug. 7, 2018) .............................................. 5

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 7260479 (N.D. Cal. Dec. 10, 2020) .............................................. 8

*Jensen v. iShares Tr.*,
    44 Cal. App. 5th 618 (Cal. App. Ct. 2020) ................................................... 5

*Lenart v. Coach Inc.*,
    131 F. Supp. 3d 61 (S.D.N.Y. 2015) .............................................................. 2

*Lloyd v. CVB Fin. Corp.*,
    2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ........................................... 13

*McGovney v. Aerohive Networks, Inc.*,
  367 F. Supp. 3d 1038 (N.D. Cal. 2019) ........................................................ 7

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ..................................................................... 9

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ..................................................... 10

*Ocampo v. Dfinity USA Research LLC*,
  156, No. 21-CIV-03843, Dkt. 156 (Cal. Super. Ct., San Mateo Cty., Apr. 7,
  2022) ............................................................................................................. 5

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ..................................................................... 12

*Owen v. Elastos Found.*,
  2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) ................................................ 4

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ............................................................................. passim

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  56 F. Supp. 3d 1121 (C.D. Cal. 2014) ...................................................... 14

*SEC v. Chinese Consolidated Benevolent Association*,
  120 F.2d 738 (2d Cir. 1941) ........................................................................ 4

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
  633 F. Supp. 2d 763 (D. Ariz. 2009) ........................................................ 12

*Weston Family P'ship LLP v. Twitter, Inc.*,
  29 F.4th 611 (9th Cir. 2022) ....................................................................... 8

*Wozniak v. Align Tech., Inc.*,
  2011 WL 2269418 (N.D. Cal. June 8, 2011) ............................................ 11

*Zakinov v. Ripple Labs, Inc.*,
  2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ........................................... 2, 4

*Zelman v. JDS Uniphase Corp.*,
  376 F. Supp. 2d 956 (N.D. Cal. 2005) ........................................................ 8

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..................................................................... 10

# TABLE OF AUTHORITIES
### (Cont'd)

## Statutes

15 U.S.C. § 78p(a) ......................................................................................... 11

Cal. Corp. Code § 25503 ................................................................................. 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS
ACTION COMPLAINT, CASE NO. 3:21-CV-06118-JD

## I. PRELIMINARY STATEMENT

In their Opposition[1] to Defendants' Motion to Dismiss, Plaintiffs seemingly abandon the Complaint wholesale, impermissibly using their Opposition to introduce new factual allegations and reframe the Complaint through inference and rhetoric. But Plaintiffs do not, and cannot, cure the inadequacy of their Complaint. This Court should grant Defendants' Motion to Dismiss.

*First*, Plaintiffs' Opposition fails to establish that any Defendant was a statutory seller under Section 12. Plaintiffs do not plead that any Defendant directly, actively, or successfully solicited their ICP purchases. Implicitly recognizing this threshold pleading deficiency, Plaintiffs pivot in their Opposition and ask the Court to "infer" from generalized allegations in the Complaint that Defendants directly passed title to ICP tokens to Plaintiffs. But Plaintiffs' inference is belied by their own allegations, and "inferring" privity is impermissible under the applicable pleading standards, Section 12(a)(1), and *Pinter v. Dahl*, 486 U.S. 622 (1988).

*Second*, Plaintiffs double-down on their Exchange Act claims, alleging—for the first time—a purported "pump and dump" scheme based on allegations that are nowhere to be found in the Complaint. Plaintiffs' inability to articulate a plausible theory of falsity and scienter confirms the deficiencies of Plaintiffs' misstatement claim. Plaintiffs' market manipulation claim likewise falls short under the stringent pleading standards of Rule 9(b) and the PSLRA. Indeed, it is virtually impossible to decipher what *specific acts* Plaintiffs allege were manipulative or what conduct Plaintiffs allege was deceptive. These pleading deficiencies require dismissal.

## II. DEFENDANTS WERE NOT STATUTORY SELLERS[2]

Pursuant to *Pinter*, Plaintiffs can establish that any Defendant was a statutory seller under

---

[1] "Opp." ECF No. 65. Capitalized terms have the meanings assigned to them in Defendants' opening brief ("Mem."). ECF No. 62. All citations and quotations are omitted and all emphasis added unless otherwise noted. "¶ __" refers to the Amended Complaint. ECF No. 45.

[2] Plaintiffs' Securities Act claims are also untimely because the statute of repose has run. Mem. at 4-6. Based on Plaintiffs' own allegations, the first bona fide public offering took place more than three years before their Complaint was filed. *Id.* Plaintiffs suggest that U.S. purchasers were blocked from participating in the earlier sale, so the statute of repose does not apply, Opp. at 5, but Defendants are not aware of *any* case from *any* jurisdiction endorsing this position, and Plaintiffs do not cite any. Plaintiffs also argue that the earlier sale was for "future" tokens, *id.* at 4, 6, but this is a red herring: *All* early purchasers received rights to the *same* tokens, and a "bona fide offer" means only an offer on which the seller genuinely intends to deliver. Mem. at 4-6.

Section 12(a)(1) *only* if that Defendant: (i) passed title in ICP tokens directly to Plaintiffs (privity); or (ii) directly solicited Plaintiffs' purchase. 486 U.S. at 641-42; Mem. at 6. Plaintiffs fail to plead either prong, but nevertheless contend that they satisfy Section 12(a)(1)'s statutory seller standard through the "inference" that Defendants passed title to them and vague claims about Defendants' generalized "promotional efforts." Opp. at 6-9. This Court should reject Plaintiffs' arguments.

## A. Plaintiffs' Inference That Defendants Directly Passed Title Is Not Reasonable

Because the "statutory scheme" of Section 12(a)(1) "impose[s] rescission based on strict liability," the statutory seller standard "demands certainty and predictability." *Pinter*, 486 U.S. at 647, 651-52. Plaintiffs ask this Court to discard these principles of certainty and predictability, and to instead draw impermissible and legally unsupported inferences that are belied by Plaintiffs' own allegations. Courts routinely reject such efforts to show direct passage of title. *See, e.g.*, *In re Alliance Equip. Lease Program Sec. Litig.*, 2002 WL 34451621, at *6 (S.D. Cal. Oct. 15, 2002) (no privity where "[p]laintiffs have not alleged nor offered evidence that [defendant] was a direct seller of the [token] (*i.e.* involved in the actual passing of title)"). This Court should do the same.[3]

Further, the inferences that Plaintiffs ask this Court to draw are not supported by their allegations. *See, e.g.*, *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) ("[A] court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true when deciding a motion to dismiss."). Plaintiffs allege that the Lead Plaintiff Rodriguez purchased ICP tokens on Coinbase on May 18 and May 28 and on five separate dates in June. ¶ 14. But the Complaint contains no particularized allegations directly connecting any purported sales by Defendants to Mr. Rodriguez's purchases. Plaintiffs assert—based on reports from unidentified "Swiss Engineers"—that "Defendants sold ICP in the days and weeks that followed [May 10],"

---

[3] Plaintiffs cite *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26, 2020) in purported support of their novel proposal, but *Zakinov* addressed California Corporations Code Section 25503, not Section 12 of the Securities Act. California courts have rejected the argument that federal law should be used to interpret California code sections that are "not, on the matter of statutory seller status, 'substantially identical' to federal law." *Collins v. Winex Invs., LLC*, 2009 WL 861738, at *5 (S.D. Cal. Mar. 27, 2009) (interpreting Sections 25401 and 25501). Similar reasoning applies here: Because Section 25503 is not substantially identical to Section 12(a)(1), this Court should reject Plaintiffs' argument that Section 25503's privity requirements have any relevance to Section 12(a)(1).

¶ 86, but Plaintiffs plead no facts establishing that any Defendant sold (i) on Coinbase; (ii) on the dates on which Mr. Rodriguez allegedly purchased; and (iii) in sufficient quantities to have been the source of Mr. Rodriguez's ICP tokens—facts that are required to support an inference of direct passage of title. Similarly, Plaintiffs' allegation that Defendants and "Team Members" collectively "controlled" a significant percentage of ICP tokens available on May 10 says nothing about *whether*, *when*, *how*, or *to whom* Defendants are alleged to have directly sold ICP tokens (and says even less about direct passage of title to *Mr. Rodriguez*)—particularly since Plaintiffs concede that only small quantities of "available" ICP tokens were sold by *anyone*. ¶¶ 77, 83.

Indeed, Plaintiffs' Complaint undercuts any inference that Mr. Rodriguez purchased ICP tokens *directly* from Defendants, alleging that unknown accounts sold "nearly all" ICP tokens exchanged on May 10, ¶ 83, and that "these three" accounts that allegedly received ICP tokens from Defendants sold millions of ICP tokens between May 10 and July 28 (when Mr. Rodriguez purchased). ¶¶ 14, 84. Allegations that Defendants may have transferred tokens to *accounts of unknown ownership*, on unspecified platforms, and that *those* accounts allegedly sold ICP tokens, expressly foreclose any inference that Mr. Rodriguez bought *directly from Defendants*. ¶¶ 83-85; *Pinter*, 486 U.S. at 644 n.21 (under "§ 12(1) ... remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller.").

At best, Plaintiffs' allegations boil down to a "speculative statistical argument" that direct passage of title can be inferred based on allegations that Defendants controlled a certain percentage of ICP at launch, but this is not enough. *Cf., e.g.*, *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *10 (N.D. Cal. Nov. 8, 2019) (allegations in a Section 11 claim that "stock is traceable because of a favorable percentage do[] not give rise to a reasonable inference that plaintiffs' shares are traceable"). This would effectively eliminate Section 12(a)(1)'s privity requirement: Under Plaintiffs' logic, any purchaser of any token—no matter from whom they purchased—would necessarily meet privity, because but for the initial token deposit on a platform, there would be nothing to buy on the public market. This Court should not countenance Plaintiffs' unprecedented interpretation of Section 12(a)(1).

## B. Plaintiffs' Solicitation Arguments Likewise Fail

Plaintiffs next argue that Defendants are statutory sellers based on their purported generalized solicitation of ICP purchases, Opp. at 7, but this argument also fails.

Plaintiffs rely heavily on *Zakinov*, 2020 WL 922815, at *12 and *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340 (S.D.N.Y. 2019) to support their own standard for solicitation, but this reliance is misplaced. Both *Zakinov* and *Balestra* ignore *Pinter* and impermissibly apply a statutory seller standard that *Pinter* expressly overturned. *Balestra* relied on a Second Circuit test set forth in *SEC v. Chinese Consolidated Benevolent Ass'n*, 120 F.2d 738 (2d Cir. 1941), over *45 years before Pinter*, which holds that "[a]ny person who engaged in steps necessary to the distribution of the unregistered security is liable" under Section 5. 380 F. Supp. 3d at 357. *Pinter* expressly rejected this test because it "focus[ed] on the defendant's degree of involvement in the securities transaction and its surrounding circumstances," instead of "the defendant's relationship with the plaintiff-purchaser." 486 U.S. at 651. *Zakinov*, in turn, relied solely on *Balestra* (and its abrogated articulation of the solicitation standard). 2020 WL 922815, at *12; *see also Owen v. Elastos Found.*, 2021 WL 5868171, at *15 n.6 (S.D.N.Y. Dec. 9, 2021) (recognizing "error" in *Balestra* from following "pre-*Pinter* caselaw").

Under *Pinter*'s solicitation standard (the governing law), Plaintiffs' generalized claims of solicitation, Opp. at 7, are insufficient. Plaintiffs allege only that Defendants purportedly "relentlessly advertised ICP" through a series of widespread public promotions. *Id.* (citing ¶¶ 41-49, 53, 57-58, 90, 92). This is not enough. *Pinter* requires *specific* allegations that "the defendant's relationship with the plaintiff-purchaser" was such that the plaintiff purchased *because of* the defendant's solicitation—*i.e.*, the solicitation must "successfully" result in the purchase. 486 U.S. at 647, 651; Mem. at 7-9 (collecting cases). The Complaint does not come close. And, contrary to Plaintiffs' assertion, this requirement does not "import a reliance requirement into § 12." Opp. at 9. Rather, *Pinter*'s mandate that promotional activities successfully result in a purchase is determinative of whether a plaintiff has standing to bring a 12(a)(1) claim at all, a critical gating requirement given the strict liability standard. *Pinter*, 486 U.S. at 646-47. *In re Tezos Securities Litigation*, on which Plaintiffs rely, Opp. at 7, underscores this point, recognizing that liability is

not "plausible" "in the absence of any buyer-seller contact." 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018) (dismissing multiple defendants due to failure to allege buyer-seller contact).

Plaintiffs' allegations also fail to satisfy the post-*Pinter* requirement that the alleged contact between Plaintiffs and Defendants be *direct*. Mem. at 7-8 (collecting cases).[4] This indisputably is the law in California, where the Court of Appeal held that "[a]n allegation of *direct* and *active* participation in the solicitation of the immediate sale is necessary for solicitation liability." *Jensen v. iShares Tr.*, 44 Cal. App. 5th 618, 647 (Cal. Ct. App. 2020). In accord with *Jensen*, the State Court in the parallel putative class action against the Dfinity Defendants recently held—on virtually identical facts as here—that the plaintiff failed to plead solicitation because plaintiff did not "allege that he had *any* relationship with any Defendant, much less a *direct* relationship or communication with any Defendant. At most, Plaintiff alleges that Defendants engaged in 'general advertising and promotions'—which is not sufficient to establish that any Defendant qualifies as a statutory seller under Section 12." *Ocampo v. Dfinity USA Research LLC*, No. 21-CIV-03843, Dkt. 156, at 5 (Cal. Super. Ct., San Mateo Cty., Apr. 7, 2022) (Roche Decl. Ex. A). The same is true here—Plaintiffs concede that the Complaint contains no allegations concerning Defendants' relationship with any purchaser, much less the lead plaintiff. Opp. at 7-9. This Court likewise should dismiss Plaintiffs' Securities Act claims.

## III. PLAINTIFFS DO NOT PLEAD ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS UNDER THE EXCHANGE ACT

Plaintiffs' Opposition underscores the deficiencies of their misstatements claim. Plaintiffs do not adequately plead falsity, scienter, or loss causation, and their claim should be dismissed.

### A. Plaintiffs Fail to Allege An Actionable Misstatement or Omission

In their Opposition, Plaintiffs effectively concede that Defendants' statements were true, but argue that "literally true statements 'can be misleading and thus actionable under the securities laws.'" Opp. at 9 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). Plaintiffs' recitation of hornbook law does not bolster their claims. Plaintiffs' argument

---

[4] Plaintiffs' protest that some of these cases addressed Section 12(a)(2) instead of 12(a)(1), Opp. at 8, is unavailing; courts routinely hold the standards to be identical. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 548 n.2 (N.D. Cal. 2009) ("[T]he Ninth Circuit has clarified that the same [*Pinter*] inquiry governs claims under Section 12(a)(2).") (cited Opp. at 9).

that Defendants' "literally true" statements are nevertheless misleading *at best* amounts to an assertion that they were "incomplete"—*i.e.*, that Defendants had a duty to provide Plaintiffs with additional information.  But even if Defendants' statements were incomplete—and they were not—that does not form the basis of a securities fraud claim.  *Brody*, 280 F.3d at 1006 (Section 10(b) "prohibit[s] only misleading and untrue statements, not statements that are incomplete"); *see also Glenbrook Cap. Ltd. P'ship v. Kuo*, 2008 WL 929429, at *10 (N.D. Cal. Apr. 3, 2008) (noting there is no rule of completeness in the Ninth Circuit, and "a statement does not necessarily mislead by simply failing to include all of the relevant facts").  Plaintiffs point to two categories of alleged misstatements concerning (i) lockup periods and (ii) vesting, Opp. at 10, but neither states a claim, *see, e.g.*, *Glenbrook Cap.*, 2008 WL 929429, at *10; *see also Brody*, 280 F.3d at 1006 ("To be actionable . . . an omission must . . . affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.").

*First*, Plaintiffs argue that although Defendants' statements about lockups were true, they "created the impression" that every person or entity associated with Dfinity was locked up at launch, Opp. at 10 (citing ¶¶ 179(f), (h)-(i)), but capricious impressions are not particularized allegations.  Because Plaintiffs concede that Defendants' statements about the lockup period were *true*, they must plead facts sufficient to show that Defendants' literally true statements somehow "create[d] an impression of a state of affairs that differ[ed] in a *material* way from the one that actually exists." *Brody*, 280 F.3d at 1006.  Plaintiffs do not do so.  Instead, Plaintiffs plead that the purported lockups were expressly limited to "the foundation, founders, and directors" and "key early team members."  Opp. at 9-10, 19 (citing ¶¶ 95, 97, 179(f) & (i)).  Thus, if Defendants' statements created any impression at all, it was that lockups were *limited* to select groups.  Plaintiffs' lockup claim hinges on an unreasonable inference—belied by Plaintiffs' own allegations—that lockups applied to *all* team members or "insiders" (broadly and illogically defined by Plaintiffs to include current *and* former employees and third party venture capital firms).  Plaintiffs' argument that a specific statement about who is locked up implies a far broader and more general statement that *everyone* is locked up defies law and logic.  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 881 n.10 (9th Cir. 2012) (explaining that a statement that is not

inconsistent with or contradicted by the omitted facts is not materially misleading). Defendants' statements "neither stated nor implied anything regarding" whether *all* Dfinity-affiliated persons or entities were subject to lockup periods. *Brody*, 280 F. 3d at 1006. Plaintiffs cannot point to any statements by Defendants that *no* Dfinity-affiliated person or entity could sell at Genesis, and Plaintiffs have identified no case that imposes a duty to make such an affirmative representation.

Plaintiffs also appear to suggest that Defendants' statements were misleading because they did not disclose that the Foundation allegedly transferred ICP tokens to the ICA so it could allegedly sell "in circumvention of regulatory restrictions," Opp. at 10, but these allegations fall far short of establishing the omission of any material fact with the particularity required by Rule 9(b) and the PSLRA. Plaintiffs do not allege, among other relevant facts, by whom the tokens were transferred, what "regulatory restrictions" Defendants purportedly sought to circumvent or why ICA sales would alleviate the supposed regulatory restrictions, and to what end. Further, the *only* purported basis for Plaintiffs' suggestion that Defendants transferred ICP tokens to the ICA is uncorroborated reports from the anonymous "Swiss Engineers," *id*. at 10 n.9, whom Plaintiffs fail to identify with the requisite specificity. Plaintiffs' description of the "Swiss Engineers" as "whistleblower employees" and alarmist claims of "emergency committee" meetings lack the hallmarks of credibility required for confidential witness allegations to bolster claims of securities fraud. *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (declining to credit confidential witnesses where plaintiff pleaded no facts supporting an inference that the witnesses had personal knowledge of relevant information); *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1053-54 (N.D. Cal. 2019) ("[W]ithout describing the particular responsibilities of each of the [confidential witnesses], the complaint also fails to adequately allege that [they] were in a position to have the knowledge they profess.").

*Second*, Plaintiffs argue that Defendants' (literally true) statements concerning vesting "implied" that "Dfinity team members" were subject to strict vesting requirements, Opp. at 10-11 (citing ¶¶ 56, 90, 92-93), but this, too, is nothing more than a complaint that Defendants' statements were somehow "incomplete." Plaintiffs curiously argue that there is a duty when discussing one group of ICP holders (outsiders) to *also* discuss a *completely different* group of ICP holders

(insiders).  *Id.* at 11.  Not only does Plaintiffs' position find no support in the law, but none of the facts to which Plaintiffs point supports their claim.  *Id.* at 15-16; ¶ 54 (table showing ICP allocation at Genesis); ¶ 90 (Mr. Williams' public statement on social media from February 2018 that *third parties* Polychain and a16z were not "looking to flip their positions for a quick profit"); ¶ 92 (emphasizing vesting requirements for Seed and Airdrop purchasers, including that it is "important that the flow of liquid ICP tokens . . . is released on a schedule for the safety and security of ICP holders").  Plaintiffs do not plead that Defendants "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exists."  *Brody*, 280 F. 3d at 1006.

*Third*, Plaintiffs cannot support a misstatements and omissions claim by pointing to statements allegedly made in 2018—more than three years *before* the filing of the Complaint. *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005) (cited Opp. at 12) is inapposite.  There, the plaintiff alleged that the value of the "equity-backed debt securities" purchased "was distorted by fraud relating to the value of" certain "*pre-existing* linked securities." 376 F. Supp. 2d at 965-97.  Not so here.  More importantly, Plaintiffs do not allege that the "omitted information had plausibly occurred at the time of the challenged statements," *In re Twitter, Inc. Sec. Litig.*, 2020 WL 7260479 (N.D. Cal. Dec. 10, 2020), *aff'd sub nom. Weston Family P'ship LLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022), nor could they.  Defendants' alleged statements from 2018—three years before Genesis—were statements about what *might* happen in the future, and, as such, cannot form the basis for Plaintiff's misstatements claim.

### B.  Plaintiffs Fail to Allege Scienter

Plaintiffs' circular arguments as to scienter—which impermissibly attempt to shift the burden from Plaintiffs to *plead* scienter to Defendants to *refute* it, Opp. at 12-13—fare no better.

*First*, Plaintiffs argue that Defendants' omissions were "one piece of a broader strategy" to inflate the price of ICP, *id.* at 12, but this conclusory assertion does not support a strong inference of scienter—and is belied by Plaintiffs' own allegation that following Genesis, Defendants made statements that allegedly *disclosed* the fraud.  *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1008 (N.D. Cal. 2017) ("[f]acts showing mere recklessness or a motive to commit fraud and the opportunity to do so" are insufficient to create strong inference of scienter).

Further, even if this Court could consider Defendants' purported "broader strategy" as evidence of scienter, Plaintiffs have not pleaded particularized facts establishing such a strategy. Courts are "not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).

*Second*, Plaintiffs argue that Defendants must have known of the allegedly omitted facts because of Mr. Williams' role and the "fundamental importance" of the information, Opp. at 13 & n.11, but courts routinely reject such "core operations" theories of scienter, *see, e.g.*, *Solarcity*, 274 F. Supp. 3d at 1012-13. To establish scienter under the exacting requirements of Rule 9(b) and the PSLRA, Plaintiffs must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence . . . which presents a danger of misleading buyers or sellers[.]" Mem. at 14 (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999)). Plaintiffs cite Complaint ¶ 182, which quotes a "sworn declaration filed in connection with another matter" in which Mr. Williams allegedly stated that he felt "pressure" not to sell his ICP. But even if such after-the-fact allegations could establish Mr. Williams' contemporaneous state of mind, nothing in this statement suggests that Mr. Williams made any intentional misstatements or omissions. Similarly, Plaintiffs cannot rely on statements made in 2018, *before* the Genesis launch in 2021, to establish Defendants' scienter. To plead intentionality or deliberate recklessness, the Complaint "must contain allegations of specific *contemporaneous* statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Solarcity*, 274 F. Supp. 3d at 1008. Here, Plaintiffs do not allege a single fact establishing a causal connection between what Defendants allegedly knew in 2018 and a purported intent to deceive ICP token purchasers *three years later*.

*Third*, purported departures of certain employees do not support a strong inference of scienter. Opp. at 13-14 (citing ¶¶ 65, 114). To support a finding of scienter on this ground, plaintiffs would need to "allege sufficient information to differentiate between a *suspicious* change in personnel and a *benign* one." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Here, Plaintiffs plead no facts whatsoever tying employee departures to the alleged fraud. Absent such facts, the inference that the resignations or terminations were related to the

alleged fraud "will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons."[5]  *Id*; *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (finding that employee resignations are probative of scienter "only when the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances").

*Fourth*, in a last-ditch attempt to establish scienter, Plaintiffs purport to rely on "evidence uncovered after the Amended Complaint was filed." Opp. at 14 & Roche Decl. Ex. B.  As an initial matter, Plaintiffs' attempt to introduce new "evidence" in their Opposition is impermissible, and this Court should reject their argument on that ground alone.  *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 750 (N.D. Cal. 2019) ("[N]ew allegations contained in an opposition motion may not be properly considered in ruling on a motion to dismiss.").  More to the point, Plaintiffs' so-called evidence is nothing of the kind: Plaintiffs ask this Court to rely on unproven allegations in a complaint filed by Mr. Williams' son in June of last year, which have not been adjudicated, and appear to be nothing more than the fruit of an apparent family feud.  *See* Opp. at 14 & Roche Decl. Ex. B.  Far from supporting a strong inference of scienter, Plaintiffs' reliance on these unproven allegations underscores the fundamental deficiency of their scienter claim—Plaintiffs allege *no sales*.  Plaintiffs' backhanded accusation that they are at a disadvantage because Mr. Williams "illegally failed to submit a Form 4 to the SEC in connection with his sales," Opp. at 14, is likewise baseless.[6]  It is "Plaintiffs' burden to plead scienter with particularity" and "the unavailability of historical trading data does not unfairly foreclose Plaintiffs' ability to survive a motion to dismiss." *Curry v. Yelp Inc.*, 2015 WL 7454137, at *14 (N.D. Cal. Nov. 24,

---

[5]  Plaintiffs' reliance on *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007), Opp. at 13-14, is unsound.  There, the plaintiff pleaded that defendant's former CEO refused to cooperate with a special committee investigation and instead chose to resign.  *Id.* at 1187.  Plaintiffs plead no facts (nor could they) suggesting that any such thing occurred here.

[6]  Plaintiffs' allegation also misstates the federal securities laws.  Form 4s must be filed by certain reporting persons for issuers of securities registered under Section 12 of the *Exchange Act*.  *See* Exchange Act Section 16(a), 15 U.S.C. § 78p(a).  Plaintiffs nowhere allege that ICP should have been registered under the *Exchange Act*.  Rather, their claims stem from an alleged violation of Section 5 of the *Securities Act*, which requires registration or an exemption under the *Securities Act*.  To base scienter on the failure to file a form Mr. Williams was *not required to file* is absurd.

2015), *aff'd*, 875 F.3d 1219 (9th Cir. 2017). Plaintiffs similarly cannot fall back on generalized allegations about purported sales during the Class Period. Opp. at 14 (citing ¶¶ 79-86, 188, 201). Even if these allegations were well-pleaded (and they are not), sales by *other*, or *former*, Dfinity employees do not suffice to establish *Defendants'* scienter. *See, e.g.*, *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *14 (N.D. Cal. June 8, 2011) ("Sales by insiders not named as defendants, however, are irrelevant to the determination of the named defendant's scienter.").

### C. Plaintiffs Fail To Plead Loss Causation

In response to Defendants' showing that Plaintiffs do not plead any adequate corrective disclosures, Plaintiffs argue that they need only offer this Court "some assurance that the theory has a basis in fact," Opp. at 15 n.12 (quoting *In re BofI Holding, Inc. Secs. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020)), but Plaintiffs cannot surmount even the low bar they set for themselves.

Plaintiffs' argument that they have identified disclosures that "render some aspect of defendant's prior statements false or misleading," Opp. at 15 (quoting *BofI*, 977 F.3d at 790), is unavailing. Because Plaintiffs fail to establish that any of Defendants' statements were false or misleading, *see supra* pp. 5-8, they also fail to establish that there was anything to "correct." Moreover, Plaintiffs' purported "disclosures" are not well-pleaded and bear no relationship to Defendants' allegedly misleading statements. Plaintiffs argue that Mr. Williams stated that (i) "the foundation, founders and directors weren't even able to sell" at launch, ¶ 179(i); (ii) the "foundation did NOT sell ICP tokens from its endowment at or soon after Genesis launch," ¶ 179(h); and (iii) both "Seed Donors" and "former employees" divested their ICP tokens at the time of launch, ¶¶ 99-100. Plaintiffs then paradoxically allege that these statements are somehow *both* misleading *and* corrective, because they at once "created the impression" that Dfinity's team members were not subject to any vesting restrictions, while also "disclosing" that former Dfinity employees sold ICP at launch. Opp. at 15-16. But Defendants never suggested—much less stated—that *former* employees were subject to vesting restrictions; that "key early team members" were locked up at launch has no bearing on former employees. *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014) (no loss causation where it was "unclear what claims made by the defendants were invalidated by" the alleged disclosures); *see also In re Oracle*

*Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("[T]o establish loss causation, *the market must learn of and react to those particular practices themselves.*").

Plaintiffs' argument that comments from former Dfinity employees on Reddit are "corrective disclosures," Opp. at 15 (citing ¶¶ 103-04), is even less compelling. If anything, allegations that former Dfinity employees stated that they sold ICP tokens at launch *confirm the truth* of Mr. Williams' statements attributing ICP token sales at the time of launch to former Dfinity employees. ¶¶ 100, 179(j). Plaintiffs also allege that an unidentified Reddit "user posited that Dfinity and team sold 90 million tokens since Genesis." ¶ 103. Not only does this statement not specify who "Dfinity and team" refers to, but it was made by an anonymous individual posting on a public internet message board. Plaintiffs plead no facts establishing the reliability of the statement, much less that it is a corrective disclosure pled with the specificity required under Rule 9(b).[7] *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679-80 (S.D.N.Y. 2007) (third-party comments in news article and speculative concerns about accounting practices

---

[7] Plaintiffs' attempt to characterize the Arkham Report as a corrective disclosure, Opp. at 15, likewise fails. That report compiled public information and vaguely speculated about Defendants' purported wrongdoing. *See* ¶ 108. It is no more a "corrective disclosure" than a short seller analyst report. *See, e.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 840 (9th Cir. 2022) (holding that even where short seller report "pulled together disparate sources and connected data in ways that were not plainly obvious," report was still insufficient to establish loss causation). Plaintiffs' reliance on the Arkham Report for their allegations concerning (i) alleged deposits and transfers of ICP tokens by "Dfinity and its insiders," and (ii) alleged technical difficulties accessing tokens at Genesis Launch encountered by certain purchasers is misplaced. ¶¶ 71-72, 82, 107-09. On its face, the Arkham Report is highly unreliable: it did not rely on publicly filed documents or a major industry trade publication, and it was not produced by a named author. *See id.* The Court should not credit allegations derived from this patently unreliable source. *See, e.g.*, *Hershewe v. JOYY Inc.*, 2021 WL 6536670, at *4 (C.D. Cal. Nov. 5, 2021) (granting motion to dismiss where short seller report on which complaint relied lacked indicia of reliability); *In re Nektar Therapeutics*, 2020 WL 3962004, at *10 (N.D. Cal. July 13, 2020) (holding that absence of any information about authors of short seller report's qualifications, together with their standing to benefit from poor stock performance, failed to support falsity allegations). Dfinity Foundation recently sued the New York Times, Arkham Intelligence, Inc. and other related parties for defamation. Liftik Decl. Ex. A (*Dfinity Found. v. New York Times Co., et al.*, Case No. 1:22-cv-5418, Dkt. No. 1). The complaint makes numerous allegations concerning the reliability of the Arkham Report, including that Arkham has released only a single report in the entire duration of its existence, Arkham has tweeted only a handful of times and in reference exclusively to the Arkham Report, the authors of the Arkham Report all appear to have no prior experience in the blockchain industry, outside of connections to Dfinity's competitor Reserve Protocol, and Arkham was, by its own admission, hired and paid to prepare the Arkham Report. *Id.* at ¶¶ 3(a)-(d), 13.

not corrective disclosures); *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 633 F. Supp. 2d 763, 820 (D. Ariz. 2009) (analyst report questioning defendants' stock option and making "speculative observations" not corrective disclosure).

## IV. PLAINTIFFS DO NOT PLEAD A MARKET MANIPULATION CLAIM

In response to Defendants' showing that Plaintiffs improperly attempt to bootstrap their misstatements claim into a market manipulation claim, Plaintiffs now focus on alleged "secret off-market transactions" and difficulties with certain purchasers accessing their ICP, Opp. at 16-17.[8] This changes nothing: Plaintiffs allege *no* manipulative act, *no* deceptive conduct, and *no* scienter.

### A. Plaintiffs Fail To Plead A Manipulative Act Or Deceptive Conduct

Plaintiff's new focus on so-called "secret off-market transactions" (which were part of a standard buyback program) to establish their manipulation claim fails on at least three grounds.

*First*, to plead a viable market manipulation claim, Plaintiffs must allege that some "false pricing signal" was sent to the market or that the market was otherwise deceived. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101, 104-05 (2d Cir. 2007). But Plaintiffs fail to address their argument's crucial deficiency: It is impossible for the market to have been deceived by Defendants' alleged nonpublic purchases of employee tokens (which allegedly restricted the supply of available ICP beyond what the market expected), when—according to Plaintiffs' own allegations—the market believed that Dfinity team employees would be unable to sell at Genesis Launch due to vesting restrictions. ¶ 179(a). Plaintiffs cannot allege that these off-market transactions "distorted the market picture," Opp. at 18, when the market had no expectation that these tokens would be available for public sale in the first place.

*Second*, Plaintiffs' assertion that, but for the cash-in-lieu-of-tokens program, Dfinity employees would have sold their ICP tokens on the open market shortly after launch, increasing supply and reducing price, Opp. at 13, 17-18, is rank speculation. *See, e.g.*, *Lloyd v. CVB Fin.*

---

[8] Plaintiffs' scattershot loss causation allegations further highlight the inadequacy of their market manipulation claim; Plaintiffs do not plead facts establishing which disclosures allegedly "correct" each of Defendants' alleged misrepresentations, as opposed to which disclosures allegedly "correct" each of Defendants' alleged manipulative acts. Opp. at 15-16; *see, e.g.*, *In re Bank of Am. Corp.*, 2011 WL 740902, at *15 (N.D. Cal. Feb. 24, 2011) (dismissing manipulation claim for failure to plead loss causation in connection with *specific* manipulative acts).

*Corp.*, 2012 WL 12883522, at *22 (C.D. Cal. Jan. 12, 2012) (statements "rife with speculation and conjecture" "lack the specificity demanded by Rule 9(b)").[9]

*Finally*, allegations that Defendants "prevented" Seed participants from accessing their tokens, or that Defendants announced Seed vesting restrictions shortly before Genesis Launch, cannot form the basis of Plaintiffs' manipulation claim. Plaintiffs not only plead nothing to support a finding that the technical issues experienced by Seed participants were intentional, but also fail to overcome the fact that both the vesting restrictions and the instructions for Seed participants to access their tokens were publicly disclosed *prior to* Genesis Launch. *See, e.g.*, *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1162 (C.D. Cal. 2014) (dismissing market manipulation claim where plaintiff failed to allege "facts indicative of manipulative *intent*"); *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390-93 (S.D.N.Y. 2010) (dismissing market manipulation claim for failure to plead manipulative activity where transaction's terms were fully disclosed to the public).[10]

## B. Plaintiffs Fail To Plead A Strong Inference Of Scienter

In support of their manipulation claim, Plaintiffs again ask this Court to infer scienter from boilerplate allegations of motive, merely arguing that because Defendants had a "direct pecuniary interest in [Dfinity's] success," Opp. at 18, they have met the high bar for pleading scienter under the PSLRA and Rule 9. But "scienter cannot rest on" such allegations of motive alone. *Bennett v. H&R Block Fin. Advisors, Inc.*, 2005 WL 8178042, at *6 (N.D. Cal. June 1, 2005) ("[I]ncentives

---

[9] The acts Plaintiffs allege are also inherently inconsistent with any so-called "pump." ICP tokens began trading at $730 before promptly declining in value. ¶ 8. Each of the actions Plaintiffs assert Dfinity took following that decline would only have *exacerbated* the fall by increasing the selling pressure on ICP tokens—the very opposite of a "pump."

[10] Plaintiffs rely heavily on *Crane Co. v. Westinghouse Air Brake Co*., 419 F.2d 787 (2d Cir. 1969), Opp. at 17-19, but *Crane* is inapposite. There, plaintiff sued defendant for allegedly manipulating its stock price by working with another company to artificially drive up the price through "extraordinary transactions" and cause defendant's stockholders to reject a tender offer. *Id.* at 792. The effect of the "extraordinary buying," together with "large secret [off-market] sales," "create[d] the appearance of an extraordinary demand for [defendant's] stock and a dramatic rise in market price, as a result of which [defendant's] shareholders were deterred from tendering." *Id.* at 793. The court focused on the allegations of collusion; *specific* deceptive acts; numerous *specific* sales and transactions; defendant's desire to beat the tender offer; and the fact that an investor "could only conclude that there was a wide-based demand for [defendant's] stock and that it would be unprofitable to tender his stock[.]" *Id.* at 795. Plaintiffs make no such allegations.

-14-

to enhance business prospects are insufficient allegations of scienter.").

Plaintiffs now resort to innuendo, baldly asserting that there is "no innocent explanation for Defendants' transactions and restrictions," Opp. at 19, but run-of-the-mill vesting requirements and employee incentive programs do not become suspicious simply because Plaintiffs say so. *Cf. Rigel*, 697 F.3d at 884 ("routine corporate objectives" and compensation structures based on those objectives do not show fraudulent intent); *Bennett*, 2005 WL 8178042, at *6.

Plaintiffs' repeated claim that "Defendants sold ICP during the relevant period and profited handsomely from those sales," Opp. at 19, does not change the *actual allegations* of the Complaint. To be clear: Plaintiffs do not allege a single sale by any Defendant. Mem. at 19. Plaintiffs do not establish that Defendants "sold ICP" and "profited handsomely" such that they benefited from any purported market manipulation. Plaintiffs' attempts to cobble together a manipulation claim through colorful language and rhetoric fail.

## V.  PLAINTIFFS DO NOT SALVAGE THEIR INSIDER TRADING CLAIM

Plaintiffs argue that this Court should not dismiss their insider trading claim because they allege a predicate violation and contemporaneous trading, Opp. at 19-20, but neither assertion is true. Plaintiffs' failure to establish a predicate violation of the Exchange Act forecloses their Section 20A claim as a matter of law. Mem. at 20.[11] Even if Plaintiffs stated a predicate violation, their argument that they satisfied the "contemporaneous trading" requirement by purchasing ICP within nine days of a sale by Defendants, Opp. at 20, falls short. Plaintiffs do not adequately plead that *any* Defendant traded close in time to Plaintiffs. *See supra* pp. 12-13; *see also, e.g.*, *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *35 (S.D. Cal. Aug. 1, 2006) (dismissing insider trading allegations where plaintiff failed to identify any stock trades made by individual defendants). Plaintiffs' generalized allegations do not suffice.

## VII.  CONCLUSION

For the foregoing reasons and those set forth in Defendants' opening brief, this Court should grant Defendants' motion to dismiss the Complaint in its entirety.

---

[11] Because Plaintiffs fail to allege a predicate violation, their Section 20(a) control person claims also must be dismissed. Mem. at 20.

| | |
|---|---|
| Dated: July 8, 2022 | Respectfully Submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |

*/s/ Michael E. Liftik*
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

Brenna Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
brennanelinson@quinnemanuel.com

CRAVATH, SWAINE & MOORE LLP

*/s/ Antony L. Ryan*
Antony L. Ryan (*pro hac vice*)
Kevin J. Orsini (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*