Jennifer Milici, D.C. Bar No. 987096
J. Alexander Ansaldo, Va. Bar No. 75870
Joseph R. Baker, D.C. Bar No. 490802
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2912; (202) 326-3496 (fax)
jmilici@ftc.gov; jansaldo@ftc.gov;
jbaker1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

CRAVATH, SWAINE & MOORE LLP
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
825 Eighth Avenue
New York, New York 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

MORGAN, LEWIS & BOCKIUS LLP
Richard S. Taffet (*pro hac vice*)
richard.taffet@morganlewis.com
Willard K. Tom (*pro hac vice*)
willard.tom@morganlewis.com
Donn P. Pickett (SBN 72257)
donn.pickett@morganlewis.com
Geoffrey T. Holtz (SBN 191370)
geoffrey.holtz@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Telephone:  (415) 442-1000
Facsimile:  (415) 442-1001

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>        v.<br><br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>                Defendant. | Case No. 5:17-cv-00220-LHK<br><br>JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE STATEMENT<br><br><br>DATE:      April 19, 2017<br>TIME:      2:00 PM PDT<br>CTRM:    Courtroom 8, 4th Floor<br>JUDGE:   Hon. Lucy H. Koh |

Pursuant to Federal Rules of Civil Procedure 16 and 26, as well as Civil Local Rules 16-9 and 16-10, Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") and Defendant Qualcomm Incorporated ("Defendant" or "Qualcomm") have met and conferred and hereby submit this Joint Case Management and Federal Rule of Civil Procedure 26(f) Conference Statement.

# I.    JURISDICTION AND SERVICE

The parties agree that this Court has subject-matter jurisdiction over this case pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1331, 1337(a) and 1345.  There are no issues pending regarding personal jurisdiction.  Qualcomm does not plan to contest venue in this district.  Qualcomm was properly served on January 20, 2017.

# II.    FACTS

## A.    PLAINTIFF'S STATEMENT

The FTC filed its Complaint for Equitable Relief in this action on January 17, 2017. The Complaint alleges that a course of conduct by Qualcomm violates Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and seeks a permanent injunction and other equitable relief.

Qualcomm is a supplier of baseband processors, a key component of cellular phones, and has monopoly power in certain baseband processor markets. Qualcomm is also a holder of patents, including patents that it has declared essential to widely used cellular standards, and has committed to license these standard-essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms.

The FTC's Complaint alleges that Qualcomm has used its monopoly power in baseband processor markets to distort license negotiations for its patents.  Among other things, Qualcomm has used its "no license-no chips" policy to successfully demand royalties that are higher than those that customers would otherwise negotiate, and that do not reflect assessments of patent royalties that a court or neutral arbiter would deem reasonable, including in light of

Qualcomm's FRAND commitments. In some cases, Qualcomm has also used incentive payments to "close the gap" with customers that resist its license terms. The elevated royalties demanded by Qualcomm in exchange for continued access to Qualcomm's baseband processors apply to all cellular phones made by a customer, even those that do not use Qualcomm processors. Qualcomm thus collects a "tax," unrelated to the value of its patents, on its customers' use of non-Qualcomm processors. This tax raises all-in prices to consumers, reduces demand for competitors' processors, and reinforces Qualcomm's monopoly power.

Qualcomm's competitors, unlike its customers, do not depend on Qualcomm for supply, and would thus be able to negotiate licenses to Qualcomm's SEPs independent of a threatened supply disruption. But Qualcomm has shut off this path to a reasonable royalty rate by consistently refusing to license its cellular patents to its competitors.

In the case of at least one major customer, Apple, Qualcomm agreed to provide partial royalty relief, but only so long as Apple exclusively used Qualcomm baseband processors. Qualcomm's exclusive supply arrangement with Apple denied other baseband processor suppliers the benefits of working with a particularly important customer, further hampering their development into effective competitors.

The FTC anticipates that the following issues will be disputed: (a) whether Qualcomm has had a monopoly position, and OEMs limited other options, in certain baseband processor markets; (b) whether Qualcomm has used its position, along with a "no license-no chips" policy, to distort patent license negotiations and extract elevated royalties and other unreasonable terms; (c) whether Qualcomm's refusal to license standard essential patents to competitors contributes to its ability to distort patent license negotiations and extract elevated royalties; (d) whether Qualcomm's incentive payments to certain customers contribute to its ability to distort license negotiations; (e) whether Qualcomm's agreements with Apple effectively prevented Apple from dealing with Qualcomm's competitors; and (f) whether Qualcomm's conduct has tended to hamper the ability of its competitors to compete in baseband processor markets or to otherwise distort competition.

1

### B.    DEFENDANT'S STATEMENT

2    Qualcomm has invented, and continues to invent, technologies that are

3 fundamental to modern cellular communications systems—including both SEPs and valuable

4 non-essential patents.  Qualcomm has two primary business units: Qualcomm Technology

5 Licensing ("QTL") and Qualcomm CDMA Technologies ("QCT").  QTL grants licenses under

6 Qualcomm's patented technologies to the makers of cellular devices, such as cell phones (which

7 the Complaint refers to as original equipment manufacturers ("OEMs")), in return for the

8 payment of royalties and other consideration.  QCT designs and sells components, such as

9 modem chips, that OEMs use in manufacturing cellular devices.  QCT does not have monopoly

10 power in any modem chip market.

11    Qualcomm's patent portfolio is priced and licensed separately from the pricing

12 and sale of QCT's components.  QTL seeks to commercialize the company's patented

13 technologies by entering into license agreements with all OEMs, regardless of whether those

14 OEMs use QCT's modem chips.  That is because all cellular devices practice Qualcomm's

15 patented technologies, regardless of which company supplies the modem chip in the device.  The

16 royalties that QTL charges are "chip-neutral"; in other words, the royalty per device does not

17 change depending on the OEM's choice of component supplier.  The royalties are compensation

18 for Qualcomm's patented technologies and not compensation for any physical components.  No

19 OEM licensee is ever required to purchase QCT components, but if they wish to purchase

20 modem chips or other components from QCT, they may do so—and the components are priced

21 competitively with components offered by QCT's competitors.

22    QCT does not sell modem chips to OEMs that do not have a license to

23 Qualcomm's cellular SEPs.  By definition, unlicensed OEMs making standard-compliant devices

24 infringe Qualcomm's SEPs.  If QCT did not have this practice, its sales would facilitate the

25 infringement of Qualcomm's patents and jeopardize the company's ability to seek a return on its

26 extensive R&D investments.  This practice does not cause (and has not caused) royalties to be

27

28

1   "unreasonable" or to violate Qualcomm's FRAND commitments. Rather, QTL's royalty terms

2   have been broadly consistent for almost three decades, irrespective of any changes in QCT's

3   share of modem chip sales. QTL's first license agreements were executed before QCT sold a

4   single modem chip, and many more were executed before QCT had an appreciable share of sales

5   in relevant types of modem chips. QTL's licensing terms did not change as QCT grew to

6   become a major supplier of modem chips or as QCT's share has fallen in the past few years.

7                Rather than license at multiple levels of the supply chain, which would be

8   inefficient, QTL licenses the manufacture and sale of cellular devices like phones and tablets, but

9   not the manufacture and sale of individual components like modem chips. QTL neither asserts

10  its patents against, nor seeks royalties from, component makers—nor does it use its patents to

11  interfere with their business in any other way.

12               Apple is a uniquely powerful buyer in the cellular industry, and it has used that

13  power to extract extremely favorable terms from QCT for modem chips. The first four

14  generations of the iPhone, launched from 2007 through 2010, used modem chips from a

15  competing supplier. As a condition of considering QCT chips, Apple demanded from

16  Qualcomm extraordinary incentive payments. This was in addition to very large investments by

17  Qualcomm necessary to develop unique products to satisfy Apple's demands. Nevertheless,

18  Apple refused to provide QCT with any commitment as to the volume of chips it would procure.

19  The parties ultimately agreed to an arrangement that provided Qualcomm some limited

20  protection for its investments. But the agreements between Qualcomm and Apple did not require

21  Apple to deal exclusively with QCT, as Apple demonstrated when it began sourcing chipsets

22  from Intel while the agreement was still in effect. Nor did the agreements prevent any

23  competing chip maker from gaining scale through the sale of modem chips to the hundreds of

24  other OEMs that compete with Apple, including major OEMs such as Samsung, LG, HTC,

25  Huawei and others.

26               Qualcomm anticipates that the following factual issues will be disputed by the

27  parties: (a) the relevant product markets; (b) whether Qualcomm has monopoly power in any

28

relevant product market; (c) whether Qualcomm's practice of not selling modem chips to infringers has allowed Qualcomm to charge "elevated" royalties to OEMs; (d) whether Qualcomm's royalties are "unreasonable", including in light of Qualcomm's FRAND commitments; (e) whether Qualcomm's practice of not selling modem chips to infringers has caused the exclusion of competing modem chip suppliers; (f) whether Qualcomm's incentive payments have caused the exclusion of competing modem chip suppliers; (g) whether Qualcomm's practice of licensing the manufacture and sale of handsets but not the manufacture and sale of components has caused the exclusion of competing modem chip suppliers; (h) whether Qualcomm's agreements with Apple amounted to exclusive dealing; (i) whether Qualcomm's agreements with Apple foreclosed a substantial portion of any well-defined product market; (j) whether any competing modem chip supplier was able to meet Apple's modem chip needs between 2011 and September 2016 and was foreclosed from doing so by Qualcomm's agreements with Apple; (k) whether the four practices alleged in the Complaint have excluded competing modem chip suppliers or harmed consumers; and (l) whether Qualcomm has pro-competitive justifications for the four practices alleged in the Complaint.

## III.    LEGAL ISSUES

PLAINTIFF'S STATEMENT: This action presents the following legal issues for determination:

- Whether Qualcomm's course of conduct constitutes unlawful maintenance of monopoly power in one or more markets for baseband processors in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (corresponding to a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2). *See* Compl. at 31 ¶ 147(a).

- Whether Qualcomm's licenses and other agreements with its customers constitute unreasonable restraints of trade in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (corresponding to a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1). *See* Compl. at 31 ¶ 147(b).

1
2
3
4
5
6

- Separate and apart from whether the above practices constitute unlawful maintenance of monopoly power or unreasonable restraints of trade, whether they harm competition and the competitive process in a manner that is not reached by the Sherman Act and therefore constitute unfair methods of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). *See* Compl. at 31 ¶ 147(c).

7
8
9
10
11
12
13
14

DEFENDANT'S STATEMENT:  Qualcomm anticipates that the following legal issues will be disputed by the parties:  (a) whether the four practices alleged in the Complaint, separately or together, have led to the acquisition or maintenance of monopoly power in a relevant antitrust market; (b) whether Qualcomm's incentive payments to certain OEMs and/or agreements with Apple constitute unlawful restraints of trade; (c) if Section 5 of the FTC Act prohibits conduct not prohibited by the Sherman Act, whether the four practices alleged in the Complaint, separately or together, constitute an unfair method of competition under Section 5 of the FTC Act, 15 U.S.C. § 45.

15  **IV.    MOTIONS**

16
17
18

On April 3, 2017, Qualcomm filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The FTC's response to that motion is due May 12, 2017, and Qualcomm's reply is due June 2, 2017.  The Court has scheduled argument on the motion for June 15, 2017.

19
20

Should this case proceed to discovery, Qualcomm anticipates moving for summary judgment at an appropriate time.

21  **V.    AMENDMENT OF PLEADINGS**

22
23

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), the FTC may amend its complaint by April 24, 2017.  The FTC does not anticipate any amendments to its Complaint.

24  **VI.    EVIDENCE PRESERVATION**

25
26

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and that they met and conferred pursuant to Fed.

27
28

JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE
STATEMENT - 5:17-CV-0220-LHK

1  R. Civ. P. 26(f) on March 29, 2017 regarding reasonable and proportionate steps taken to

2  preserve evidence relevant to the issues reasonably evident in this action.  The parties further

3  certify that such steps are being taken.

4  **VII.    DISCLOSURES**

5          The parties have agreed to serve the information required by Fed. R. Civ.

6  P. 26(a)(1) by April 12, 2017.  The parties also stipulate that Fed. R. Civ. P. 37(c)(1) sanctions

7  will not be sought and should not be imposed if initial disclosures are supplemented in a timely

8  fashion under Fed. R. Civ. P. 26(e).

9  **VIII.   DISCOVERY**

10         **A.    Discovery Propounded to Date**

11         No discovery has been propounded as part of this litigation to date.  The FTC

12 expects to serve its First Set of Requests for Production under Fed. R. Civ. P. 34 on Qualcomm

13 shortly.

14         **B.    Timing of Discovery Commencement**

15         PLAINTIFF'S POSITION: The FTC's position is that prompt resolution of this

16 enforcement action is essential to accomplish the objective of restoring competition in the

17 affected markets. Significant delay in the schedule impairs the FTC's ability to obtain effective

18 equitable relief, to the detriment of consumers. The FTC, therefore, opposes any stay in

19 discovery pending resolution of Qualcomm's motion to dismiss, and asks that the Court establish

20 a discovery schedule that will permit the resolution of this action without unnecessary delay.

21         The federal rules do not provide for an automatic stay of discovery when a motion

22 to dismiss is pending and courts in this Circuit look unfavorably upon requests for blanket stays.

23 *See, e.*g., *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.,* No. 12-cv-05847-JST, 2013 U.S.

24 Dist. LEXIS 61848, at *4-7 (N.D. Cal. Apr. 29, 2013).  Courts have also rejected the argument

25 that a government investigation is an adequate substitute for litigation discovery.  *See, e.g.*, *SEC*

26 *v. Jasper,* 678 F.3d 1116, 1128-29 (9th Cir. 2012); *SEC v. Wu*, No. 11-cv-4988, 2016 WL

27 4943000, at *3 (N.D. Cal. Sept. 16, 2016). The purpose of discovery in a pre-complaint

28

1   investigation is to determine whether there is reason to believe that the law has been violated.

2   Additional discovery is merited to prove claims in court. While Qualcomm has produced a

3   significant number of documents to the FTC, over two-thirds of those were copies of documents

4   that Qualcomm had previously produced in other matters, and new documents were limited to a

5   discrete number of custodians. Also, there is now a substantial time period for which Qualcomm

6   has not produced documents, as custodial documents produced during the investigation were

7   collected in the summer of 2015 and (for a limited set of custodians) March of 2016. The FTC is

8   entitled to seek discovery in this case and Qualcomm has shown no good cause to delay the start

9   of discovery.

10          The FTC stands ready to meet and confer with Qualcomm and with MDL

11   plaintiffs, and with Apple as this Court and the court hearing Apple's case find appropriate, in an

12   effort to identify and implement any appropriate means of coordinating discovery activities

13   without unduly impairing or delaying proceedings in this action.

14          DEFENDANT'S POSITION:  Qualcomm requests that discovery be deferred

15   until after the Court has ruled on Qualcomm's pending Rule 12(b)(6) motion.  This Court has

16   "broad discretion to stay discovery pending the disposition of a dispositive motion".  *Gibbs v.*

17   *Carson*, No. C-13-0860, 2014 WL 172187, at *3 (N.D. Cal. Jan. 15, 2014).  The burdens of

18   discovery in antitrust cases are an important consideration in the Court's exercise of that

19   discretion, which have often led courts to stay discovery pending decision on a motion to dismiss

20   antitrust claims.  *See, e.g.*, *In re Graphics Processing Units (GPU) Antitrust Litig.*, No. C-06-

21   07417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) (staying discovering pending resolution of

22   motions to dismiss and noting the "to allow antitrust discovery prior to sustaining a complaint

23   would defeat one of the rationales of *Twombly*, at least when the discovery would be

24   burdensome").[1]

---

[1] *See also Top Rank, Inc. v. Haymon*, No. CV 15-4961, 2015 WL 9952887, at *2 (C.D. Cal. Sept. 17, 2015) ("Staying discovery in antitrust cases pending the resolution of a motion to dismiss may be particularly appropriate"); *Actelion Pharms. Ltd v. Apotex Inc.*, No. 12-5743,

The particular circumstances of this case warrant deferring discovery, even more than in a typical antitrust case.  Unlike the typical plaintiff, the FTC has already had over *two years* of extensive pre-Complaint discovery of Qualcomm as part of its non-public investigation. In that context, the FTC served on Qualcomm over 50 broad discovery "specifications", each with multiple sub-specifications.  In response, Qualcomm collected more than 20 million documents and produced to the FTC more than 1.6 million documents stretching back to 2006. Qualcomm produced documents from the files of 24 different custodians.  In addition, the FTC obtained responses to extensive interrogatories and took investigational hearing testimony from Qualcomm's most senior executives.  The FTC also collected documents and took testimony from multiple third parties (the precise extent of that third-party discovery is not known to Qualcomm).  Through this extensive pre-Complaint discovery, the FTC has had ample opportunity to develop and articulate its case.  After such an extensive investigation, the FTC cannot credibly argue it has an urgent need for additional discovery.  The FTC presumably filed its Complaint because it believed it had sufficient information to do so, and that Complaint should be evaluated under Rule 12(b)(6) before further discovery proceeds.

"[P]roceeding to antitrust discovery can be expensive".  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  As the above numbers suggest, here it already has been burdensome and expensive for Qualcomm, requiring Qualcomm to dedicate a large team of lawyers to the FTC's discovery requests for nearly two years.  At the parties' Rule 26(f)

2013 WL 5524078, at *4 (D.N.J. Sept. 6, 2013) (granting a stay of discovery pending resolution of a motion to dismiss in an antitrust case); *Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 1:11-CV-249, 2011 WL 4345432, at *3 (N.D. Ind. Sept. 15, 2011) (granting a stay of discovery pending a decision on a motion to dismiss and stating that "[c]ritically, this is an antitrust case, which directly invokes the Supreme Court's concerns in *Twombly* about burdensome and expensive discovery"); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (granting a stay of discovery in an antitrust case pending a decision on a motion to dismiss); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, No. H-08-CV-0857, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) (granting a stay of discovery in an antitrust case pending a decision on a motion to dismiss).

1  conference, the FTC indicated that it intends to seek *additional* burdensome discovery, including

2  the production of documents from additional custodians and from time periods both pre-dating

3  and post-dating the existing production.  Although Qualcomm does not yet know the precise

4  scope of the additional discovery that the FTC will seek, it anticipates based on its experience so

5  far that this additional discovery, if allowed, will impose additional extraordinary expenses.

6  Those expenses would be wasted if the FTC's Complaint cannot survive a motion to dismiss.

7        **C.**    **Scope of Anticipated Discovery**

8        PLAINTIFF'S POSITION:  The FTC will seek documentary and testimonial

9  discovery from Qualcomm regarding, among other things, (1) Qualcomm's supply and licensing

10  agreements; (2) negotiations with actual and prospective customers and licensees;

11  (3) Qualcomm's policies and practices related to product sales; (4) Qualcomm's policies and

12  practices related to licensing; (5) the development and adoption of cellular standards;

13  (6) Qualcomm's commitments to license standard essential patents on fair, reasonable, and non-

14  discriminatory ("FRAND") terms; (7) the meaning and importance of FRAND commitments for

15  standard essential patents; (8) baseband processor markets; (9) Qualcomm's market power;

16  (10) barriers to entry and expansion in baseband processor markets, and (11) the effects of

17  Qualcomm's policies and practices on competition, innovation, and consumers.

18        The FTC also intends to seek documentary and testimonial discovery from non-

19  parties, including (1) Qualcomm's current and former customers and licensees, and other non-

20  parties that are or have been engaged in the design, manufacture, and sale of cellular

21  communications equipment; (2) non-parties that are or have been engaged in the design,

22  manufacture, or sale of baseband processors; (3) non-party holders of declared standard-essential

23  patents; and (4) cellular network operators.

24        The FTC further anticipates that this case will involve significant expert

25  discovery.

26        DEFENDANT'S POSITION:  If Qualcomm's Rule 12(b)(6) motion is denied or

27  if discovery proceeds prior to a ruling on the motion, Qualcomm anticipates seeking discovery

28

JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE
STATEMENT - 5:17-CV-0220-LHK

1   from the FTC of, among other things, (a) documents relating to the FTC's nonpublic

2   investigation of Qualcomm, including documents the FTC sent to, or received or collected from,

3   third parties; (b) documents relating to substantive matters at issue in the litigation, such as the

4   licensing of standard-essential patents; and (c) testimony the FTC obtained from third parties.

5   Qualcomm also anticipates taking discovery of relevant third parties in the cellular industry.

6   Qualcomm further anticipates that this case will involve extensive expert discovery.

7         **D.**    **Protective Order**

8         The parties agree that a protective order is necessary to safeguard confidential and

9   competitively sensitive information of Qualcomm and of non-parties.  The parties have

10  tentatively agreed to submit a proposed Protective Order to the Court by April 26, 2017.

11        PLAINTIFF'S POSITION:  The FTC recognizes that it may be appropriate and

12  efficient to have a single protective order covering this action and other actions, including the

13  MDL and the Apple action, and is prepared to meet and confer with counsel for Qualcomm,

14  counsel for MDL plaintiffs, and counsel for Apple at the Court's direction.

15        DEFENDANT'S POSITION:  Qualcomm recognizes the advisability of

16  coordinating appropriate matters where feasible, but believes it is premature to assess the

17  appropriateness and feasibility of a protective order that includes more than the instant case.

18  Qualcomm proposes to discuss coordination and other discovery matters with the appropriate

19  parties in due course.

20        **E.**    **Proposed Limitations or Modifications to the Discovery Rules**

21        *Depositions.*  The parties agree that relief from the limitation on the number of

22  depositions set forth in Rule 30(a)(2) is necessary and appropriate, but believe it is premature to

23  set a precise limit on the number of depositions at this time.  The parties agree to work in good

24  faith to negotiate a stipulated deposition protocol to govern depositions in this action.

25        *Interrogatories.*  The parties agree that no more than 20 interrogatories may be

26  served on any named party.

27

28

*Previously Produced Qualcomm Documents.*  The parties agree that all documents and associated privilege logs previously produced by Qualcomm to the FTC in the course of the FTC's investigation of Qualcomm, FTC File No. 141-0199, shall be deemed produced in this action upon entry of a Protective Order in this action.

*Document Subpoenas to Non-Parties.*  The parties agree as follows with respect to non-parties producing materials in response to Fed. R. Civ. P. 45 document subpoenas in this action.  The issuing party shall request that non-parties simultaneously produce materials to both Plaintiff and Defendant.  If, notwithstanding such request, the non-party does not produce the materials to both sides, the issuing party shall provide a copy of all materials to the other side within five (5) calendar days after receipt of the materials from the non-party.  Any party that does not have access to substantially all materials that have been provided by a non-party for at least thirty (30) calendar days before any deposition of that non-party may elect to have the deposition postponed until the party has had access to the materials for at least thirty (30) calendar days.  If a party modifies or extends the time to respond to a Fed. R. Civ. P. 45 document subpoena in writing, it shall simultaneously provide that written extension, modification, or explanation to the other party.

*Authenticity Presumptions.*  Documents produced by non-parties from the non-parties' files shall be presumed to be authentic within the meaning of Fed. R. Evid. 901.  Documents produced by Qualcomm either in response to document requests in this action or in the course of the FTC's pre-Complaint investigation, FTC File No. 141-0199, shall be presumed to be authentic within the meaning of Fed. R. Evid. 901.  If a party serves a specific good-faith written objection to the authenticity of a document that it did not produce from its files, the presumption of authenticity will no longer apply to that document.  Any objection to a document's authenticity must be provided with (or prior to) the exchange of objections to trial exhibits.  The parties will promptly meet and confer to attempt to resolve any objection.  The Court will resolve any objections that are not resolved through this means or through the discovery process.

1     *Expert Discovery*.  The parties agree that expert disclosures, including each side's

2  expert reports, shall comply with the requirements of Federal Rule of Civil Procedure 26(a)(2),

3  except as modified herein.  Neither side must preserve or disclose, including in expert deposition

4  testimony, the following documents or materials: (i) any form of communication or work product

5  shared between any of the parties' in-house or outside litigation counsel and such party's

6  expert(s) or consultant(s), or between any of such party's experts or consultants themselves;

7  (ii) any form of communication or work product shared between an expert and persons assisting

8  the expert; (iii) expert's notes, unless they are expressly relied upon and/or cited in support of an

9  opinion or fact; or (iv) drafts of expert reports, analyses, or other work product.  The parties shall

10  disclose the following materials in connection with all expert reports: (a) a list by Bates number

11  of all documents relied upon by the testifying expert(s); (b) copies of any materials relied upon

12  by the expert not previously produced; and (c) for any calculations appearing in the report, all

13  data and programs underlying the calculation, including all programs and codes necessary to

14  recreate the calculation from the initial ("raw") data files.

15     *Service*.  Service of any documents not filed via ECF, including pleadings,

16  discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all

17  correspondence, whether under seal or otherwise, shall be by email to all attorneys for the

18  receiving party then appearing on the ECF docket, at the email addresses listed thereon.  In the

19  event the volume of served materials is too large for email and requires electronic data transfer

20  by file transfer protocol or a similar technology, or overnight delivery, the serving party will

21  telephone or email the other side's principal designee when the materials are sent to provide

22  notice that the materials are being served.  For purposes of calculating discovery response times

23  under the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand

24  delivery.

25     PLAINTIFF'S POSITION:  The FTC requests that the Court order that any

26  pleading or document filed or served after 5:00 p.m. Pacific Time on any day, or at any time on a

27  weekend or a Federal holiday, shall be deemed to be filed or served on the next business day.

28

1    DEFENDANT'S POSITION:  Defendant objects and requests that filing times be

2    governed by the Federal Rules of Civil Procedure and the Civil Local Rules of the Northern

3    District of California.  Civil Local Rule 5-1(e)(4) provides that electronic filings of documents

4    completed "prior to midnight" are "considered timely filed that day".

5    *Information Not Subject to Discovery*.  The parties have met and conferred in an

6    effort to agree on categories of documents that are highly likely to be subject to a privileged or

7    protected status, and that therefore may be exempted from retention and logging obligations in

8    discovery.  The parties have not yet reached agreement, and intend to continue those discussions.

9    **F.    Report on Planned Stipulated E-Discovery Order**

10    The parties are continuing to discuss a Stipulated Electronically Stored

11    Information (ESI) [Proposed] Order.

12    **G.    Proposed Discovery Plan**

13    The parties' respective proposals regarding the timing of discovery are set forth in

14    Exhibit A.

15    **H.    Current Discovery Disputes**

16    To date, the parties have not identified any discovery disputes other than the issue

17    noted above as to whether discovery should commence prior to the Court's ruling on

18    Qualcomm's motion to dismiss.

19    **IX.    CLASS ACTIONS**

20    There is no proposed class at issue in this matter.

21    **X.    RELATED CASES**

22    The parties respectfully refer this Court to the schedule of related actions,

23    attached hereto as Exhibit B.

24    There is a proceeding pending before the Judicial Panel on Multidistrict Litigation

25    ("JPML"), *In re Qualcomm Antitrust Litig.*, MDL No. 2773, which addressed a case filed by

26    Apple, Inc. ("Apple") against Qualcomm in the Southern District of California, where

27

28

1    Qualcomm is headquartered; and putative consumer class actions filed against Qualcomm in this

2    Court and in the Southern District of California.  On April 5, 2017, the JPML transferred certain

3    of the putative consumer class actions to this Court; on April 7, 2017, the JPML issued

4    conditional transfer orders referring the tag-along consumer actions to this Court.  The JPML did

5    not transfer the case filed by Apple, which remains pending in the Southern District of

6    California.

7              PLAINTIFF'S POSITION:  Outside the United States, Qualcomm is currently the

8    subject of publicly disclosed proceedings that the FTC believes are also appropriately brought to

9    the Court's attention as related "proceedings pending before . . . another court or administrative

10   body." *See* N.D. Cal. Standing Order for All Judges of the Northern District of California –

11   Contents of Joint Case Management Statement ¶ 10. Proceedings initiated by the European

12   Commission and Korea Fair Trade Commission involve conduct that is similar or related to the

13   conduct alleged in the Complaint, evidence that could overlap with evidence in this action, and

14   potential remedies that could overlap with equitable relief that the Court may find appropriate

15   should the FTC prove the violations alleged in the Complaint.[2]

16             DEFENDANT'S POSITION:  Qualcomm believes the foreign regulatory

17   proceedings identified above, which are proceeding under foreign legal regimes, are not relevant

18   to the Court's determination of the instant matter under United States law, and that the FTC has

19   included them in this Case Management Statement to create prejudice rather than to assist the

20   Court in the management of this litigation and avoid "unduly burdensome duplication of labor

21   and expense".  *See* Civil Local Rule 3-12(a)(2) (defining Related Cases).

22

23

24

25   ───────────────────
         [2] Proceedings before the European Commission are ongoing. Qualcomm has announced that

26   it has appealed and sought a stay of a remedial order issued by the Korea Fair Trade
     Commission.

27

28

1

## XI.    RELIEF

PLAINTIFF'S POSITION:  The Complaint seeks equitable relief in the form of entry of judgment against Qualcomm declaring, ordering, and adjudging (1) that Qualcomm's course of conduct violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); (2) that Qualcomm is permanently enjoined from engaging in its unlawful conduct; and (3) that Qualcomm is permanently enjoined from engaging in similar and related conduct in the future. The Complaint also seeks such other equitable relief as the Court finds necessary to redress and prevent recurrence of the violations of the FTC Act alleged in the Complaint. *See* Compl. at 32 (Prayer for Relief).

DEFENDANT'S POSITION:  Qualcomm seeks judgment dismissing all claims against it.  Qualcomm believes the FTC's statement of the relief sought is insufficiently detailed and that Qualcomm and the Court are entitled to a clearer understanding of the conduct sought to be enjoined and any other relief requested.

## XII.    SETTLEMENT AND ADR

The parties have not engaged in formal settlement discussions since the commencement of this action.  The parties have met and conferred regarding ADR and determined that ADR would be premature at this time.  The parties have also complied with Civ. L.R. 16-8(b) and ADR L.R. 3-5 and have each filed an ADR Certification form and jointly filed a Notice of Need for an ADR Phone Conference with the ADR Clerk.  Dkt. Nos. 62, 63 and 64. A call with the ADR clerk has not yet been scheduled.

## XIII.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

On January 26, 2017, the FTC filed a declination to proceed before a Magistrate Judge for all future proceedings.  Dkt. No. 24.

## XIV.    OTHER REFERENCES

The parties agree this case is not suitable for reference to binding arbitration, a special master or the JPML.  As described in Paragraph 10 above, there is a pending JPML proceeding involving a number of related cases.

1

## XV.   NARROWING OF ISSUES

2          The parties do not seek bifurcation of any issues.  The parties will consider issues

3 that can be narrowed by agreement or by motion, as well as potential means to expedite the

4 presentation of evidence at trial.

5 ## XVI.   EXPEDITED TRIAL PROCEDURE

6          The parties agree that this case is not suitable for handling under the Expedited

7 Trial Procedure of General Order No. 64.

8 ## XVII.   PROPOSED CASE SCHEDULE

9          The parties' respective proposals regarding the case schedule are set forth in

10 Exhibit A.

11 ## XVIII.   TRIAL

12          The parties agree that a bench trial is required.  At this point, the parties are

13 unable to estimate the necessary length of any trial.

14 ## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

15          Pursuant to Civil Local Rule 3-15, Qualcomm has filed its Certificate of

16 Interested Entities or Persons, which states that as of the date of filing, Qualcomm Incorporated

17 has no parent corporation, and no publicly held corporation owns 10% or more of its stock, and

18 that no party other than the named parties has a "financial interest" as defined in the Civil Local

19 Rule.[3]

20 ## XX.   PROFESSIONAL CONDUCT

21          All attorneys of record have reviewed the Guidelines for Professional Conduct for

22 the Northern District of California.

23

24

25

26     [3] Qualcomm notes that the following companies have been named in the Complaint:  Apple
Inc., Samsung Electronics Co. (Ltd.), Intel Corporation and MediaTek, Inc.

27

28

1  **XXI.    OTHER ISSUES**

2          The parties have not identified any other issues to address with the Court at this

3  time.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE
STATEMENT - 5:17-CV-0220-LHK

1    Dated: April 12, 2017                    _____/s/ Jennifer Milici_____

2                                            JENNIFER MILICI

3                                            Bureau of Competition
4                                            Attorney for Plaintiff Federal Trade
                                            Commission
5
     Dated: April 12, 2017                    _____/s/ Gary A. Bornstein_____
6
7                                            Gary A. Bornstein
                                            Yonatan Even
8                                            CRAVATH, SWAINE & MOORE LLP
                                                 Worldwide Plaza
9                                                825 Eighth Avenue
                                                New York, NY 10019
10                                                Tel: (212) 474-1000
                                                    Fax: (212) 474-3700
11                                                    gbornstein@cravath.com
                                                    yeven@cravath.com
12
13                                           Richard S. Taffet
                                            MORGAN, LEWIS & BOCKIUS LLP
14                                               101 Park Avenue
                                                New York, NY 10178-0060
15                                                Tel: (212) 309-6000
                                                    Fax: (212) 309-6001
16                                                    richard.taffet@morganlewis.com
17
                                            Willard K. Tom
18                                           MORGAN, LEWIS & BOCKIUS LLP
                                                1111 Pennsylvania Ave. NW
19                                                Washington, DC 20004-2541
                                                    Tel: (202) 739-3000
20                                                    Fax: (202) 739 3001
                                                        willard.tom@morganlewis.com
21
                                            Donn P. Pickett
22                                           Geoffrey T. Holtz
                                            MORGAN, LEWIS & BOCKIUS LLP
23                                               One Market, Spear Street Tower
                                                San Francisco, CA 94105-1126
24                                                Tel: (415) 442-1000
                                                    Fax: (415) 442-1001
25                                                    donn.pickett@morganlewis.com
26                                                    geoffrey.holtz@morganlewis.com
27                                           *Attorneys for Qualcomm Incorporated*
28

─────────────────────────────────────────────────
                                    19

**Exhibit A**

**Parties' Proposed Discovery Plan and Schedule for FTC Action Only**

| Event | Plaintiff's Position | Defendant's Position |
|---|---|---|
| Commencement of Fact Discovery | Immediate | Following the resolution of the Motion to Dismiss |
| Deadline for Defendant's Response to the Complaint | April 3, 2017 | April 3, 2017 |
| Rule 26(a)(1) Initial Disclosures | April 12, 2017 | April 12, 2017 |
| Protective Order | April 26, 2017 | April 26, 2017 |
| Deadline for Plaintiff to File Opposition to Rule 12 Motion | May 12, 2017 (per stipulated order) | May 12, 2017 (per stipulated order) |
| Deadline for Defendant to File Reply in Support of Rule 12 Motion | June 2, 2017 (per stipulated order) | June 2, 2017 (per stipulated order) |
| Hearing on Defendant's Rule 12 Motion | June 15, 2017 | June 15, 2017 |
| Close of Fact Discovery | March 30, 2018 (12 months) | November 1, 2018 (15 months from hypothetical decision on motion to dismiss) |
| Plaintiff's Rule 26(a)(2) Merits Expert Reports | April 20, 2018 (3 weeks) | November 30, 2018 (1 month) |
| Defendant's Merits Expert Reports | May 25, 2018 (5 weeks) | February 1, 2019 (2 months) |
| Plaintiff's Merits Expert Rebuttal Reports and Commencement of Expert Depositions | June 22, 2018 (4 weeks) | March 1, 2019 (1 month) |
| End of Expert Depositions & Close of Expert Discovery | July 20, 2018 (4 weeks) | April 1, 2019 (1 month) |
| Last day to file Summary Judgment and *Daubert* Motions | August 10, 2018 (3 weeks) | May 1, 2019 (1 month) |
| Summary Judgment Oppositions | September 21, 2018 (6 weeks) | June 14, 2019 (6 weeks) |
| Summary Judgment Replies | October 12, 2018 (3 weeks) | July 15, 2019 (1 month) |
| Hearing on Summary Judgment and *Daubert* Motions | TBD by the Court | TBD by the Court |

1

| Event | Plaintiff's Position | Defendant's Position |
|---|---|---|
| Pretrial Disclosures | November 16, 2018 (5 weeks) | August 30, 2019 (6 weeks) |
| Pretrial Conference | TBD (~6 weeks after pretrial disclosures) | TBD (~6 weeks after pretrial disclosures) |
| Trial | TBD (~2 weeks after pretrial conference) | TBD (~2 weeks after pretrial conference) |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE
STATEMENT - 5:17-CV-0220-LHK

### Exhibit B

### Schedule of Related Actions

The parties have identified the following matters as related to the present action. Pursuant to Civ. L.R. 3-12 and 7-11, plaintiffs in *Bornstein et al. v. Qualcomm Incorporated*, No. 17-cv-0234 (N.D. Cal.), administratively moved before this Court to relate a number of these actions pending in the Northern District of California for transfer and reassignment. This Court has granted each such motion. For the Court's reference, the actions that have been administratively related are identified below.

| Case Name | Docket No. | Related in N.D. Cal. |
|---|---|---|
| *Bornstein et al. v. Qualcomm Incorporated* | 17-0234 (N.D. Cal.) | Yes (D.E. 36) |
| *Stromberg et al v. Qualcomm Incorporated* | 17-0304 (N.D. Cal.) | Yes (D.E. 36) |
| *McMahon v. Qualcomm Incorporated* | 17-0372 (N.D. Cal.) | Yes (D.E. 36) |
| *Boardsports School LLC v. Qualcomm Incorporated* | 17-0398 (N.D. Cal.) | Yes (D.E. 36) |
| *Benad et al. v. Qualcomm Incorporated* | 17-0440 (N.D. Cal.) | Yes (D.E. 36) |
| *Key v. Qualcomm Incorporated* | 17-0442 (N.D. Cal.) | Yes (D.E. 47) |
| *Ewald et al v. Qualcomm Incorporated* | 17-0565 (N.D. Cal.) | Yes (D.E. 47) |
| *Davis et al v. Qualcomm Incorporated* | 17-0604 (N.D. Cal.) | Yes (D.E. 48) |
| *Esteban v. Qualcomm Incorporated* | 17-0622 (N.D. Cal.) | Yes (D.E. 48) |
| *Housenick et al. v. Qualcomm Incorporated* | 17-0675 (N.D. Cal.) | Yes (D.E. 52) |
| *Ervin v. Qualcomm Incorporated* | 17-0713 (N.D. Cal.) | Yes (D.E. 52) |
| *Carney v. Qualcomm Incorporated* | 17-0743 (N.D. Cal.) | Yes (D.E. 52) |
| *Tada et al v. Qualcomm Incorporated* | 17-0762 (N.D. Cal.) | Yes (D.E. 52) |
| *Crutcher et al. v. Qualcomm Incorporated* | 17-0766 (N.D. Cal.) | Yes (D.E. 58) |
| *Kiefer et al v. Qualcomm Incorporated* | 17-0785 (N.D. Cal.) | Yes (D.E. 52) |
| *Zatlin et al v. Qualcomm Incorporated* | 17-0938 (N.D. Cal.) | Yes (D.E. 57) |
| *Ackerman et al v. Qualcomm Incorporated* | 17-1080 (N.D. Cal.) | Yes (D.E. 57) |
| *Dietrich v. Qualcomm Incorporated* | 17-1093 (N.D. Cal.) | Yes (D.E. 57) |
| *Espinosa et al v. Qualcomm Incorporated* | 17-1112 (N.D. Cal.) | Yes (D.E. 57) |
| *Hallahan v. Qualcomm Incorporated* | 17-1231 (N.D. Cal.) | Yes (D.E. 59) |
| *McDevitt et al. v. Qualcomm Incorporated* | 17-1244 (N.D. Cal.) | Yes (D.E. 59) |
| *Kurzon v. Qualcomm Incorporated* | 17-1271 (N.D. Cal.) | Yes (D.E. 59) |

| Case Name | Docket No. | Related in N.D. Cal. |
|---|---|---|
| *Nagy et al. v. Qualcomm Incorporated* | 17-1274 (N.D. Cal.) | Yes (D.E. 59) |
| *Acosta et al. v. Qualcomm Incorporated* | 17-1591 (N.D. Cal.) | No |
| *Miller v. Qualcomm Incorporated* | 17-0147 (S.D. Cal.) | No |
| *Mackay et al. v. Qualcomm Incorporated* | 17-0148 (S.D. Cal.) | No |
| *Schwartz et al. v. Qualcomm Incorporated* | 17-0166 (S.D. Cal.) | No |
| *Hadnett v. Qualcomm Incorporated* | 17-0197 (S.D. Cal.) | No |
| *Carroll et al. v. Qualcomm Incorporated* | 17-0216 (S.D. Cal.) | No |
| *Rotman et al v. Qualcomm Incorporated* | 17-0260 (S.D. Cal.) | No |
| *Herrera et al v. Qualcomm Incorporated* | 17-0273 (S.D. Cal.) | No |
| *Frederick et al v. Qualcomm Incorporated* | 17-0377 (S.D. Cal.) | No |
| *Kreuzer v. Qualcomm Incorporated* | 17-0526 (S.D. Cal.) | No |

JOINT CASE MANAGEMENT AND FEDERAL RULE OF CIVIL PROCEDURE 26(f) CONFERENCE
STATEMENT - 5:17-CV-0220-LHK