CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA
Research LLC, Dfinity Foundation and
Dominic Williams*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' MOTION TO DISQUALIFY ROCHE FREEDMAN LLP AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: November 17, 2022<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

### NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 17, 2022, at 10 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James Donato, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 11, 19th Floor, Defendants Dfinity USA Research, LLC, Dfinity Foundation, and Dominic Williams (together, "Defendants") will and do hereby move the Court for an order disqualifying Roche Freedman LLP as Lead Counsel in the above-captioned action.

This motion is made pursuant to California Rules of Professional Conduct Rule 1.7 and Rule 1.10, and is based upon this Notice of Motion and the Memorandum of Points and Authorities in Support, the Declaration of Kevin J. Orsini and exhibits attached thereto, the Request for Judicial Notice filed herewith, and such argument as may be heard.

### ISSUE TO BE DECIDED

Whether Roche Freedman LLP should be disqualified from representing Lead Plaintiffs and the putative class in the above-captioned action because Kyle Roche violated California Rule of Professional Conduct 1.7 and that violation is imputed to Roche Freedman LLP pursuant to California Rule of Professional Conduct 1.10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION...................................................................................... 1

II.     RELEVANT FACTS .................................................................................. 2

III.    LEGAL STANDARD ................................................................................ 8

IV.     ARGUMENT .............................................................................................. 9

      A.      Mr. Roche Violated the California Rules of Professional Conduct.      9

      B.      Mr. Roche's Individual Withdrawal Does Not Cure the Violation.      11

      C.      Disqualification of Roche Freedman is Appropriate.      13

V.      Conclusion................................................................................................ 15

### TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Anderson, et al. v. Binance, et al.*,
  20-cv-02803 (S.D.N.Y.) ...................................................................................7

*Beltran v. Avon Prod., Inc.*,
  867 F. Supp. 2d 1068 (C.D. Cal. 2012) ...........................................................15

*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*,
  52 Cal. App. 4th 1 (1997) .........................................................................10, 14

*Cyrulnik v. Roche Freedman, et al.*,
  No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., 2021) ..........................................12, 13

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
  No. 18-cv-05546, 2019 WL 144589 (N.D. Cal. Jan. 9, 2019).................................15

*Hardin and Williams v. TRON Foundation, et al.*,
  20-cv-02804 (S.D.N.Y.).........................................................................7, 15

*Hitachi, Ltd. v. Tatung Co.*,
  419 F. Supp. 2d 1158 (N.D. Cal. 2006) .......................................................12, 13

*Huston v. Imperial Credit Com. Mortg. Inv. Corp.*,
  179 F. Supp. 2d 1157 (C.D. Cal. 2001) .........................................................8, 14

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  658 F.2d 1355 (9th Cir. 1981) .......................................................................13

*In re Cty. of Los Angeles*,
  223 F.3d 990 (9th Cir. 2000) ..........................................................................8

*In re Tether and Bitfinex Crypto Asset Litigation*,
  19-cv-9236 (S.D.N.Y.) ..........................................................................7, 8, 15

*Jeong v. Nexo Financial LLC, et al.*,
  21-cv-02392 (N.D. Cal.) .................................................................................7

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ..........................................................................9

*Kleiman v. Wright*,
  No. 22-11150 (11th Cir. September 6, 2022) .......................................................7

*Klein v. Facebook, Inc.*,
  No. 20-cv-08570, 2021 WL 3053150 (N.D. Cal. July 20, 2021) ........................8, 13

*Lockhart v. BAM Trading Services Inc., et al.*,
  22-cv-03461 (N.D. Cal.) .................................................................................7

*Messieh v. HDR Global Trading Ltd.*,
    No. 20-cv-3232 (S.D.N.Y.).................................................................................7, 15

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
    20 Cal. 4th 1135 (1999) ..............................................................................8, 9, 11

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................8

*Visa U.S.A., Inc. v. First Data Corp.*,
    241 F. Supp. 2d 1100 (N.D. Cal. 2003) .................................................................8

*Williams v. Block.one, et al.*,
    20-cv-2809 (S.D.N.Y.)..........................................................................................14

*Young v. Solana Labs, Inc. et al.*,
    22-cv-03912 (N.D. Cal.) .......................................................................................7

**Statutes & Rules**                                                                            **Page(s)**

California Rule of Professional Conduct 1.7(b) .............................................2, 9, 10, 11

California Rule of Professional Conduct 1.10 ...................................................2, 11, 13

United States District Court for the Northern District Of California Civil Local Rule 11-4..........8

Federal Rule of Civil Procedure 23 ...................................................................8, 14

Private Securities Litigation Reform Act of 1995 ...........................................8, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants respectfully ask this Court to disqualify Roche Freedman LLP ("Roche Freedman") as Lead Counsel to Lead Plaintiff and the putative class due to violations of the California Rules of Professional Conduct recently revealed in a shocking series of video clips of Kyle Roche—a founding partner of Roche Freedman.  On camera, Mr. Roche details his misuse of the legal system to advance the commercial interests of Ava Labs, a cryptocurrency client in which he owns substantial equity.  Mr. Roche boasts that he uses litigation as a "tool [for] competition" by (1) filing lawsuits against Ava Labs' competitors on behalf of purported classes he refers to as "10,000 idiots," (2) obtaining confidential information by "su[ing] half the companies in this space" in order to "see[] the insides" of other blockchain companies to advise Ava Labs, (3) "making sure the SEC and the CFTC have other magnets to go after" to deflect attention from Ava Labs, and (4) enforcing the personal vendettas of Ava Labs' CEO.  As described herein, Mr. Roche demonstrates a disregard for the integrity of the judicial system, calling jurors and his own clients "idiots" and boasting that he has the "power" and "resources" to take Ava Labs' competitors "to the end", thus disregarding the best interests of the putative class.

In a clear attempt to avoid the disqualification of his firm, Mr. Roche *individually* withdrew as counsel of record for the putative class soon after the videos were released.  He has taken this same approach in several other class actions he and his law firm filed against other Ava Labs competitors, in which defendants and co-lead counsel have similarly moved to disqualify Roche Freedman.  *See* Declaration of Kevin J. Orsini, Exhibits 2 to 11 attached thereto ("Ex(s).").

Mr. Roche's individual withdrawal is insufficient to cure the professional conduct violations, stated conflict of interest, and impropriety that now taint Roche Freedman's representation of the putative class.  In putative class actions such as this one, appointed lead counsel are subject to a heightened standard, and must be able to show they can fairly and adequately represent the interests of the class.  Courts in this circuit have held that

disqualification in the class action context is more compelling and more likely than in individual representations, as the court has an obligation to closely scrutinize counsel's ability to represent absent class members.  Here, Mr. Roche's statements reveal that Roche Freedman does not meet that heightened standard.  The video clips demonstrate that Mr. Roche has violated California Rule of Professional Conduct 1.7(b), which prevents a lawyer from representing a client if there is a risk that the representation will be impacted by the lawyer's own interests or those of another client.  This violation, in turn, prevents Roche Freedman from continuing as counsel pursuant to California Rule of Professional Conduct 1.10, providing for vicarious disqualification of the associated firm.

Given Roche Freedman's size—a boutique firm with fewer than ten partners—and Mr. Roche's position as a named and founding partner, disqualification of Roche Freedman is necessary to resolve the impropriety exposed in the videos.  Moreover, Mr. Roche is not the sole beneficiary of Roche Freedman's agreement with Ava Labs.  Other Roche Freedman partners similarly received tokens for the strategic "legal services" provided to Ava Labs, including at least one other partner who has entered an appearance in this litigation and has not withdrawn. Mr. Roche's individual withdrawal from this action serves as an admission that he is unable to adequately represent the putative class.  Neither is Roche Freedman.  Disqualification would not prejudice Lead Plaintiff or the putative class at this early stage of the litigation as they may be afforded sufficient time to obtain replacement counsel.

## II.    RELEVANT FACTS

On August 9, 2021, Roche Freedman filed this action on behalf of a putative class of "[a]ll persons who purchased ICP tokens from May 10, 2021, to the present".  (ECF No. 1 at 28.) On October 12, 2021, Henry Rodriguez filed a motion for appointment as Lead Plaintiff and to appoint Roche Freedman as Lead Counsel.  (ECF No. 21.)  In emphasizing that "Roche Freedman's lawyers [] have unique and unparalleled expertise with respect to litigation involving cryptoassets like ICP", the motion identifies Mr. Roche as "a lead attorney from Roche Freedman", and "a recognized thought leader in the industry" who "has published multiple articles on the intersection of cryptoassets and the law" and "represents plaintiffs in some of the

most significant disputes in the crypto industry". (*Id.* at 10.) On December 20, 2021, the Court appointed Roche Freedman as Lead Counsel in this Action. (ECF No. 42.)

On August 26, 2022, *Crypto Leaks* released a report and a series of video clips in which Mr. Roche describes his firm's close ties to Ava Labs—a company that develops a blockchain called Avalanche—and its executives, his financial interest in Ava Labs, and his firm's improper use of litigation against Ava Labs' competitors. *See* Ex. 1, *Ava Labs (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche Freedman* (Aug. 26, 2022), https://cryptoleaks.info/case-no-3. Mr. Roche states that he formed Roche Freedman on August 1, 2019, the same day that Ava Labs launched, and that both companies shared the same co-working space.[1] Mr. Roche says he "agreed to provide legal services in exchange for a certain percentage" of the cryptocurrency tokens issued by Ava Labs ("AVAX"), and was one of the first people to receive such tokens, along with equity in Ava Labs, for his services.[2] Indeed, Mr. Roche explains that "obviously, I'm biased", as he has "an interest in Ava Labs . . . a big one. I did very well."[3] Specifically, Mr. Roche indicates that he owns approximately 1% of the AVAX token supply and the equity of Ava Labs,[4] worth tens of millions of dollars or more. Mr. Roche admits his personal bias in favor of Ava Labs, agreeing that they have the "same

---

[1] Video 1 (https://d33wubrfki0l68.cloudfront.net/1a432cb907f50390478d5c7b5c2c30c24547d110/5ca00/videos/c3-00-office-ava-labs-launch.mp4).

[2] Video 2 (https://d33wubrfki0l68.cloudfront.net/ba470e47132c5cb938f344be9ffd8261adc0eca2/6c3ea/videos/c3-01-office-deal-for-perc-token-supply.mp4). On September 13, 2022, Ava Labs co-founder Emin Gün Sirer claimed in a blog post that Mr. Roche's "equity interest in Ava Labs . . . will end". *See* Emin Gün Sirer, *My Statement about the Crypto Leaks Lies*, Medium.com (updated September 13, 2022) (https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752). At a recent hearing in the Southern District of New York, Roche Freedman attorneys nonetheless confirmed that at least some other partners at the Firm continue to hold interests in Ava Labs.

[3] Video 3 (https://d33wubrfki0l68.cloudfront.net/96d2fbedbfb4ac619f2656ce923aa707cfca9cbe/3d59f/videos/c3-02-office-i-got-1-point-on-both.mp4).

[4] *Id.* The market capitalization of AVAX is currently approximately $5 billion dollars, meaning Mr. Roche's interest would be worth tens of millions of dollars. Mr. Roche also explains that this interest amounts to "a third of what [Ava Labs co-founder] Kevin" Sekniqi received. Video 4 (https://d33wubrfki0l68.cloudfront.net/7360f4c61d57fad10a087c767c32f5e1551088c1/f4e42/videos/c3-03-office-one-third-of-what-kevin-got.mp4).

interests, same goals".[5]  Mr. Roche describes his relationship with Ava Labs' co-founders Emin Gün Sirer and Kevin Sekniqi as "like brothers",[6] and Mr. Roche even says he now lives with Mr. Sekniqi.[7]  Mr. Roche confirms that he helps Ava Labs "in many situations", including regarding "regulation issues" and "competitors".[8]  According to Mr. Roche, "litigation is an underused tool", one he confirms he uses as "a strategic instrument to support Ava Labs".[9]  Because Mr. Roche was "fortunate in that I did the Ava Labs deal", he claims that "it's not about the money anymore for me it's about taking you guys to trial and the sport of it".[10]  Mr. Roche emphasizes: "I don't f***ing care about settling . . . I'm just a crazy motherf***er and I have resources, and I will take you to the end.  And taking you to the end . . . it won't be a nuisance settlement.  It will be, I've got a piece of paper that says I own your company now.  That is power . . . ."[11]

 Mr. Roche describes at least four ways that Roche Freedman uses litigation to support Ava Labs.  *First*, Mr. Roche states that Roche Freedman files class action lawsuits against Ava Labs' competitors, because as Mr. Roche states, "litigation can be a tool to competition . . . a fantastic tool to competition".[12]  There is no dispute that Dfinity is a competitor to Ava Labs.

---

[5] Video 5 (https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab3 4a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4).

[6] Video 5 (https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab3 4a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4).

[7] Video 7 (https://d33wubrfki0l68.cloudfront.net/789531f0f9b4b55626c52801967 703b1968bca18/b171a/videos/c3-06-office-i-live-with-kevin-in-miami.mp4).

[8] Video 4 (https://d33wubrfki0l68.cloudfront.net/7360f4c61d57fad10a087c767c32f5e15 51088c1/f4e42/videos/c3-03-office-one-third-of-what-kevin-got.mp4).

[9] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41 148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4).

[10] Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a 254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

[11] Video 18 (https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e8487 25ce51e04/4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4).

[12] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef 5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

Indeed, Mr. Roche says that "litigation is the most uncorrelated asset that exists, period".[13]

Mr. Roche explains:

> Q: Has Ava Labs filed a complaint against one of their
> competitors?
> Roche: No, they have me to do that on behalf of the class. Their
> name was never . . .
> Q: Explain.
> Roche: So, I can sue Solana . . .
> Q: Yeah.
> Roche: But a plaintiff will purchase Solana. . .
> **Q: And what about Dfinity?**
> **Roche: Oh yeah.**[14]

Thus, by filing lawsuits on behalf of absent class members and unsuspecting lead plaintiffs, Mr. Roche implies that Roche Freedman is able to conceal the true party in interest, Ava Labs, while inflicting harm on Ava Labs' competitors. *Second*, Mr. Roche explains that he acts as "Ava Labs' crypto expert"—expertise he gained "because [he] sue[d] half the companies in the [cryptocurrency] space" and has "seen the insides of every single crypto company".[15]  In other words, Mr. Roche implies that he uses the confidential information produced in discovery in actions Roche Freedman files against blockchain companies to support Ava Labs.  *Third*, Mr. Roche agrees that he is Ava Labs' "solver", and boasts that he "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after" instead of Ava Labs.[16]  Mr. Roche emphasizes that since the CEO of Ava Labs "signed [him] up", he has "ensured that there's no

---

[13] Video 25 (https://d33wubrfki0l68.cloudfront.net/443e70d9f96180e7219809abc4926 26856fbde02/7f50a/videos/c3-23-litigation-is-the-most-uncorrelated-asset.mp4).

[14] Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254 850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).  Mr. Roche also confirms that Dfinity is a competitor of Ava Labs.  Video 17 (https://d33wubrfki0l68.cloudfront.net/b660cb79f51a 071ece800cda7fc3521e5e21a59d/0467e/videos/c3-16-0-dfinity-is-a-competitor-to-avalanche.mp4).

[15] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812fe7b039402f74be62f 625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[16] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef 5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

such thing as regulation for what they want to do".[17]  *Fourth*, Mr. Roche describes litigation used to enforce the personal vendettas of Ava Labs CEO, Emin Gün Sirer ("Gün").  Mr. Roche says that he "took down one of Gün's biggest archnemeses",[18] and sued another individual who criticized Gün on social media, emphasizing "that's why Gün loves me".[19]

Mr. Roche also describes his views of the legal process, particularly with respect to securities class actions: "I don't think there's any reason to settle for less than half a billion to a billion. But for me, if we get $100 million settlement we are in the front page of all the legal press and so it's good for my partners and my firm."[20]  Mr. Roche goes on to disparage the plaintiff classes he purports to represent, describing them as "100,000 idiots".  Mr. Roche says: "I go to the Court, and I say, 'hey Court, I got $100 million for these 100,000 idiots out here. Give me $30 million and then I will administer'".[21]  As for juries, Mr. Roche characterizes them as "10 idiots [who] control the flow of all the money that happens in American class actions".[22]

On September 1, 2022, following the release of these videos, Roche Freedman filed a Notice of Withdrawal of Kyle W. Roche as Counsel for Plaintiffs in this action, noting that "Mr. Roche is no longer involved in [Roche Freedman's] class action practice and is therefore withdrawing as counsel of record in this case".  (ECF No. 70.)  Around that same day, Mr. Roche filed similar notices in several other actions his law firm brought against Ava Labs

---

[17] Video 11 (https://d33wubrfki0l68.cloudfront.net/91987bc2f582f24ecb688ab4c137a485d139dfe1/b4646/videos/c3-10-office-theres-no-such-thing-as-regulation.mp4).

[18] Video 15 (https://d33wubrfki0l68.cloudfront.net/54bcd83ef86e546fa4f97c2e481fba064e228c8d/483a3/videos/c3-14-gun-goes-after-craig-wright.mp4).

[19] Video 14 (https://d33wubrfki0l68.cloudfront.net/ccce812b0d07fc6c1bb9928d1a7a99db011ed1af/13125/videos/c3-13-gun-watches-video-once-a-month.mp4); *see also* Video 12 (https://d33wubrfki0l68.cloudfront.net/09acbd864d61cc489ffeb0fe889e19f7c0fce682/6e048/videos/c3-11-troll-says-gun-member-feto.mp4).

[20] Video 23 (https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be5078b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4).

[21] Video 24 (https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c23c8dd3/de306/videos/c3-22-these-100000-idiots.mp4).

[22] Video 22 (https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4).

competitors.  *See* Ex. 2 (*Young v. Solana Labs, Inc. et al.*, 22-cv-03912 (N.D. Cal.) (ECF No. 28)); Ex. 3 (*Lockhart v. BAM Trading Services Inc., et al.*, 22-cv-03461 (N.D. Cal.) (ECF No. 33)); Ex. 4 (*Jeong v. Nexo Financial LLC, et al.*, 21-cv-02392 (N.D. Cal.) (ECF No. 70)); Ex. 5 (*Hardin and Williams v. TRON Foundation, et al.*, 20-cv-02804 (S.D.N.Y.) (ECF No. 88)); Ex. 6 (*Anderson, et al. v. Binance, et al.*, 20-cv-02803 (S.D.N.Y.) (ECF No. 80)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.*, No. 20-cv-3232 (S.D.N.Y.) (ECF No. 105)); and Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.) (ECF No. 229)).  In another case, Roche Freedman, as a firm, voluntarily filed a motion to withdraw its representation of the putative class "[g]iven recent restructuring of its class action practice group, the press of its current business, and the early stage of this litigation".  *See* Ex. 9 (*Williams et al. v. Block.one, et al.*, 20-cv-2809 (S.D.N.Y.) (ECF No. 154)).

Counsel in at least four actions also have moved to disqualify Roche Freedman as counsel in light of these recent developments.  *See* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.) (ECF Nos. 230–236, 248)); Ex. 5 (*Hardin and Williams v. TRON Foundation, et al.*, 20-cv-02804 (S.D.N.Y.) (ECF Nos. 89, 92–93)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.*, No. 20-cv-3232 (S.D.N.Y.) (ECF Nos. 106–09)); Ex. 10 (Motion to Disqualify Roche Freedman LLP, *Kleiman v. Wright*, No. 22-11150 (11th Cir. September 6, 2022)).  In three of these cases, not only do counsel for *Defendants* seek to disqualify Roche Freedman, but co-Lead Counsel for the *class* also seek to have Roche Freedman removed because "Roche Freedman's continued involvement in the litigation is not in the best interests of the class".  Ex. 5 (*Hardin and Williams* (ECF No. 93)); *see also* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation* (ECF No. 234)) ("Roche Freedman's continued representation of the class would likely spawn significant discovery and motion practice as to the veracity and/or import of the allegations [in the videos]. These issues are likely to unnecessarily distract from the merits of this dispute, and can be avoided by the removal of Roche Freedman as class counsel."); Ex. 7 (*Messieh v. HDR Global Trading Ltd.* (ECF Nos. 107–108)) (same).

In responding to these motions, Mr. Roche did not contest the authenticity of the video clips.  Instead, he indicated that they were taken without his knowledge while he was intoxicated,

1  although certain video clips appear to have been taken at different times and when Mr. Roche is

2  not drinking nor exhibiting any signs of intoxication.  *See* Ex. 8 (Affidavit of Kyle W. Roche, *In*

3  *re Tether and Bitfinex Crypto Asset* (ECF No. 232-1)).

4  **III.    LEGAL STANDARD**

5        Attorneys practicing in the Northern District of California must adhere to the California

6  Rules of Professional Conduct (the "Rules").[23]  Civ. L.R. 11-4; *see also Visa U.S.A., Inc. v. First*

7  *Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).  Disqualification of counsel based on

8  a violation of the Rules is governed by California state law.  *See Rodriguez v. West Publ'g Corp.*,

9  563 F.3d 948, 967 (9th Cir. 2009); *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

10  The "right to disqualify counsel is within the discretion of the trial court as an exercise of its

11  inherent powers".  *First Data Corp.*, 241 F. Supp. 2d at 1103 (citing *United States v. Wunsch*,

12  84 F.3d 1110, 1114 (9th Cir. 1996)).  In deciding a motion to disqualify counsel, "[t]he

13  paramount concern must be to preserve public trust in the scrupulous administration of justice

14  and the integrity of the bar."  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20

15  Cal. 4th 1135, 1145 (1999).  While clients have the "right to counsel of one's choice", that right

16  "must yield to ethical considerations that affect the fundamental principles of our judicial

17  process".  *Id.*

18        "Two requirements must be met in order for the Court to disqualify counsel.  First,

19  counsel must have violated the Rules of Professional Conduct. . . . Second, the Court must

20  conclude that it is appropriate to order disqualification."  *Klein v. Facebook, Inc.*, No. 20-cv-

21  08570, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021) (internal citations omitted).  In a class

22  action governed by Federal Rule of Civil Procedure 23 and the Private Securities Litigation

23  Reform Act of 1995 ("PSLRA"), "disqualification is more likely because putative class counsel

24  are subject to a 'heightened standard' which they must meet if they are to be allowed by the

25  Court to represent absent class members".  *Huston v. Imperial Credit Com. Mortg. Inv. Corp.*,

26

27        [23] On November 11, 2021, Mr. Roche and each of the other Roche Freedman attorneys
    appearing in this action filed Motions for leave to appear Pro Hac Vice, in which they each
    agreed to abide by the Local Rules of this Court including the "Standards of Professional

28  Conduct for attorneys".  (ECF Nos. 24–27.)

179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (quoting *Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 132–33 (D.D.C. 1994)).

## IV.    ARGUMENT

### A.    Mr. Roche Violated the California Rules of Professional Conduct.

California Rule of Professional Conduct 1.7(b) provides that "[a] lawyer shall not . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests." Cal. R. Prof'l Conduct 1.7(b). The Comment to Rule 1.7 emphasizes: "Even where there is no direct adversity, a conflict of interest . . . under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." Cal. R. Prof'l Conduct 1.7, Comment 4. Attorneys "have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process". *SpeeDee Oil Change*, 20 Cal. 4th at 1146; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel. . . . The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict.").

On camera, Mr. Roche vividly states—in his own words that he never thought would be discovered by the Court—that his personal interests and loyalties to Ava Labs come before, and predominate over, the interests of the putative class. Mr. Roche agrees that he uses litigation as a "strategic instrument to support Ava Labs", and specifically states that he files class action lawsuits—including against Dfinity—so that Ava Labs does not appear as plaintiff.[24]

---

[24] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41 148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4); Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a 254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

Mr. Roche's admissions regarding the use of "strategic" litigation as a competitive tool for Ava Labs provide ample evidence that Mr. Roche has compromised his ability to consider, recommend or carry out an appropriate course of action for the putative class in violation of Rule 1.7(b).  Indeed, Mr. Roche states that his priorities are to use litigation as a tool against competitors of Ava Labs, obtain confidential information regarding "the companies in the [crypto] space" to benefit Ava Labs,[25] and maintain lawsuits to direct the attention of regulators to "other magnets" to avoid scrutiny of Ava Labs.[26]  Mr. Roche has referred to litigation itself as a "tool to competition", and has implied that he misuses the discovery process to "see the insides" of his clients' competitors.  (*Id.*)

Mr. Roche further explains that, because of the payment he has received from Ava Labs, he doesn't "care about settling".  Mr. Roche specifically states that because of the compensation he has received from Ava Labs, "it's not about the money anymore for me it's about taking you guys to trial and the sport of it".[27]  While he considers a large settlement "good for my partners and my firm" if it's on "the front page of all the legal press", he disparages the clients he is meant to represent as "idiots".[28]  Prioritizing payment and publicity of Roche Freedman at the expense of the putative class members is a conflict of interest that directly violates the Rules. *See Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 52 Cal. App. 4th 1, 11 (1997) (case in which lawyer offered to "sell out" client for payment was "factually distinguishable from most of the disqualification cases, but the most notable difference is the magnitude of the ethical lapse").

---

[25] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[26] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[27] Video 18 (https://d33wubrfki0l68.cloudfront.net/2f1313a474fff7dedbb5432d16e848725ce51e04/4f9ab/videos/c3-16-im-a-crazy-motherfucker.mp4); Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

[28] Video 23 (https://d33wubrfki0l68.cloudfront.net/6ab1d54cf47b4b43a28ec4d52d2a12be5078b5d7/8826b/videos/c3-21-no-reason-to-settle-less-than-500m.mp4).

Mr. Roche not only demeans the putative classes he claims to represent—referring to them as "100,000 idiots"[29]—but also derisively refers to juries as "10 idiots [who] control the flow of all the money that happens in American class actions".[30]  Such statements mock the legal profession and the judicial process.

As described above, on September 1, 2022, after Mr. Roche's breach of the Rules was exposed, he withdrew as counsel of record in this action.  (ECF No. 70.)

### B.    Mr. Roche's Individual Withdrawal Does Not Cure the Violation.

California Rule of Professional Conduct 1.10 provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule[] 1.7".  "The vicarious disqualification rule recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information."  *SpeeDee Oil Change*, 20 Cal. 4th at 1153–54.  Mr. Roche has violated Rule 1.7, and pursuant to the plain language of Rule 1.10, such violation is imputed to Roche Freedman.

The individual withdrawal of Mr. Roche does not address the serious issues regarding his statements about the misuse of class action lawsuits generally and the potential misuse of discovery imputed to Roche Freedman.  Even though Mr. Roche is no longer counsel of record, there can be no dispute that, as the named partner of the small firm that he founded, should this action proceed with Roche Freedman as counsel there would be an ongoing concern about his access to discovery materials and he would retain the ability to direct the conduct of other lawyers at the firm.  Mr. Roche's declaration that he uses lawsuits such as this one as a "tool to

---

[29] Video 24 (https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c2 3c8dd3/de306/videos/c3-22-these-100000-idiots.mp4).

[30] Video 22 (https://d33wubrfki0l68.cloudfront.net/f580f15300ae3305352a21a810a4cbce 4b1247a7/73e42/videos/c3-20-ten-idiots-control-the-flow.mp4).

competition"[31] and that he has "seen the insides" of blockchain companies[32] offers further

support for vicarious disqualification, as Mr. Roche seems to say that it was his intention all

along to abuse the discovery process in order to advise Ava Labs—a client in which Mr. Roche

and Roche Freedman have a substantial financial interest through their ownership of tens of

millions of dollars in AVAX tokens.

These concerns are magnified by Mr. Roche's position at his namesake firm, and Roche

Freedman's extensive relationship with Ava Labs. Mr. Roche is a founding and named partner

of Roche Freedman, a boutique firm with fewer than ten partners across all practice areas. In a

résumé filed with this Court, Roche Freedman identifies only two attorneys under

"Cryptocurrency Expertise": Kyle Roche and co-founding partner Devin "Velvel" Freedman.

(ECF No. 21-6.) Both Mr. Roche and Mr. Freedman apparently own substantial amounts of

AVAX tokens, as do other attorneys at Roche Freedman, including Edward Normand, who has

entered an appearance in this litigation and has not withdrawn. *See* Ex. 11 (Compl. Ex. A,

*Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021),

Dkt. No. 2).[33] The small size of the firm and the widespread relationship with Ava Labs

"exacerbates the problem of proximity" contemplated by Rule 1.10. *Hitachi, Ltd. v. Tatung Co.*,

419 F. Supp. 2d 1158, 1165 (N.D. Cal. 2006).

---

[31] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[32] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

[33] Ongoing litigation between former and current Roche Freedman partners over the distribution of tokens from Ava Labs provides further evidence of Roche Freedman's ties to Ava Labs. Mr. Roche and Roche Freedman were sued by a former Roche Freedman partner who alleges that Mr. Roche and others "illegally oust[ed]" him from the firm to take his portion of "a fee payable in cryptocurrency by one of the Firm's clients that only days before had suddenly appreciated exponentially to more than $250 million". Ex. 11 (Compl. at p. 1, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021), Dkt. No. 2). The complaint appends a Memorandum of Understanding, which provides that "[i]n exchange for legal services, Ava Labs has agreed to pay Roche Freedman LLP a certain amount of Tokens over a thirty-six month period beginning on September 30, 2019", and identifies distribution of Ava Labs tokens to Mr. Roche, Mr. Freedman, Mr. Normand and others. *Id.* Ex. A.

Accordingly, any attempt by Roche Freedman to impose an ethical wall or screen between Mr. Roche and other attorneys at Roche Freedman would not cure the violation. *See id.* (holding that "screening procedures utilized" at small firm were "insufficient to adequately . . . prevent the appearance of impropriety"). Should this action survive Defendants' motion to dismiss, Defendants have serious concerns about proceeding to discovery based on Mr. Roche's stated intention to "see[] inside" Ava Labs' competitors for the benefit of Ava Labs. There is no doubt that Mr. Roche will continue to have "substantial contact" with the other attorneys in this practice that seek to continue to represent the class in this action (*id.*), including Mr. Normand, who remains in the case and who reportedly receives Ava Labs tokens pursuant to a firm agreement. *See* Ex. 11 (Compl. Ex. A, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021), Dkt. No. 2). Roche Freedman should not be permitted to continue as Lead Counsel when there is even a suggestion that it may use knowledge that it gains in discovery to benefit another client. Mr. Roche's violations of the Rules must be imputed to Roche Freedman under Rule 1.10.

### C.    Disqualification of Roche Freedman is Appropriate.

Mr. Roche's statements regarding his and his firm's abuse of the class action mechanism, his conflicted motivations for filing this and other suits, and improper use of confidential materials obtained in discovery, coupled with disparaging comments about clients and the judicial system, provide ample reason for this Court to disqualify Roche Freedman from serving as counsel for the class in this action. *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1360–61 (9th Cir. 1981) ("In order that the court may in fact control the conduct of attorneys appearing before it, the court should have the ability to disqualify attorneys if their conduct actually interferes with the integrity of the court, or actually produces an appearance of impropriety."). The "paramount concern" when considering a motion to disqualify "must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Klein*, 2021 WL 3053150, at *8 (quoting *SpeeDee Oil Change*, 20 Cal. 4th at 1145).

The critical factor that weighs heavily in favor of disqualifying Roche Freedman is that this is a putative class action governed by Fed. R. Civ. P. 23 and the PSLRA, in which class counsel is subject to a heightened standard to fairly represent absent class members. "In the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented." *Huston*, 179 F. Supp. 2d at 1167 (citing Fed. R. Civ. P. 23(a)(4)). It is "[p]recisely because of the responsibility to absent class members" that counsel "in the class action context are subject to a heightened standard". *Cal Pak Delivery*, 52 Cal. App. 4th at 12. Accordingly, disqualification of counsel where a breach of the Rules has occurred in the class action setting is "even more compelling", *id.*, and "more likely" than individual representations, *Huston*, 179 F. Supp. 2d at 1167. This heightened standard applies even before a class is certified, during which time Lead Counsel is still obligated to "protect the interests of the putative class" and "act in the best interests of the class as a whole". Fed. R. Civ. P. 23, Advisory Committee's notes to 2003 amendments. Absent class members may not be aware of Roche Freedman's "betrayal of their interests"; if they were, they may "harbor continuing doubts about [the firm's] loyalty and the integrity of the judicial proceedings", which is reason alone to grant this motion to disqualify. *Cal Pak Delivery*, 52 Cal. App. 4th at 12.

These same issues also would prevent Roche Freedman's appointment as class counsel at the class certification stage under Fed. R. Civ. P. 23(g), which requires the Court to determine, among other things, that class counsel "fairly and adequately represent[s] the interests of the class" considering "any . . . matter pertinent to counsel's ability" to do so. Fed. R. Civ. P. 23(g)(1), (4). Indeed, Roche Freedman all but admitted it will fail to overcome this hurdle in another class action, when it recently withdrew from that action. In *Williams v. Block.one, et al.*, 20-cv-2809 (S.D.N.Y.), the court denied lead plaintiff's motion for final approval of a proposed class action settlement because lead plaintiff's interests conflicted with the class. Ex. 9 (*Block.one* (ECF No. 146)). Roche Freedman quickly filed a motion to substitute as lead plaintiff an individual that selected Roche Freedman as counsel, and to appoint Roche Freedman as co-lead counsel. *Id.* (ECF Nos. 148–49). Before its motion was decided, these videos were

released and Roche Freedman withdrew, citing "recent restructuring of its class action practice group, the press of its current business, and the early stage of this litigation". *Id.* (ECF No. 154). Roche Freedman's filing evidences its recognition that the firm is unable to fairly and adequately represent a class in an action against Ava Labs competitors. Indeed, co-lead counsel for other putative classes have sought to remove Roche Freedman as class counsel because "Roche Freedman's continued involvement in the litigation is not in the best interests of the class". Ex. 5 (*Hardin and Williams* (ECF No. 93)); *see also* Ex. 8 (*In re Tether and Bitfinex Crypto Asset Litigation* (ECF No. 234)); Ex. 7 (*Messieh v. HDR Global Trading Ltd.* (ECF Nos. 107–108)).

Disqualifying Roche Freedman would not prejudice Lead Plaintiff or the putative class, particularly given the early stage of the litigation. *See Beltran v. Avon Prod., Inc.*, 867 F. Supp. 2d 1068, 1084 (C.D. Cal. 2012) ("[P]rejudice to Plaintiff is minimal given the early stage of the litigation."). The motion to dismiss has not yet been decided, and the PSLRA automatic stay remains in effect. *See Diva Limousine, Ltd. v. Uber Techs., Inc.*, No. 18-cv-05546, 2019 WL 144589, at *14 (N.D. Cal. Jan. 9, 2019) (finding that "[non-movant] has not described any particular prejudice it would suffer as a result of" counsel's disqualification because "[t]his case is still in its early stages; no discovery has been conducted"). Accordingly, Lead Plaintiff and the putative class will not be prejudiced by identifying replacement counsel, but will benefit from lead counsel who is driven by the best interests of the putative class rather than the interests of itself and third parties.

**V.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Roche Freedman be disqualified from representing Lead Plaintiff and the putative class in this Action.

Dated:        October 4, 2022                CRAVATH, SWAINE & MOORE LLP

                                             */s/ Antony L. Ryan*
                                             Antony L. Ryan (admitted *pro hac vice*)
                                             Kevin J. Orsini (admitted *pro hac vice*)
                                             Lauren M. Rosenberg (admitted *pro hac vice*)
                                             Worldwide Plaza
                                             825 Eighth Avenue
                                             New York, New York 10019
                                             Tel.:  (212) 474-1000
                                             Fax:  (212) 474-3700
                                             korsini@cravath.com

                                             *Counsel for Defendants*

                                             QUINN EMANUEL URQUHART & SULLIVAN
                                             LLP

                                             */s/ Michael E. Liftik*
                                             Michael E. Liftik (CA Bar No. 232430)
                                             Sarah Heaton Concannon (*pro hac vice*)
                                             1300 I Street, Suite 900
                                             Washington, D.C. 20005
                                             Telephone:  (202) 538-8000
                                             michaelliftik@quinnemanuel.com
                                             sarahconcannon@quinnemanuel.com

                                             Emily C. Kapur (CA Bar No. 306724)
                                             555 Twin Dolphin Dr., 5th Fl.
                                             Redwood Shores, California 94065
                                             Telephone:  (650) 801-5000
                                             emilykapur@quinnemanuel.com

                                             Brenna D. Nelinson (*pro hac vice*)
                                             51 Madison Avenue, 22nd Fl.
                                             New York, New York 10010
                                             Telephone:  (212) 849-7000
                                             brennanelinson@quinnemanuel.com

                                             *Counsel for Defendants*