# EXHIBIT 8

# ECF 229

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEIBOWITZ, BENJAMIN LEIBOWITZ, JASON LEIBOWITZ, AARON LEIBOWITZ, and PINCHAS GOLDSHTEIN, | |
| Plaintiffs, | CASE NO. 1:19-cv-09236-KPF |
| v. | |
| IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER OPERATIONS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, DIGFINEX INC., PHILIP G. POTTER, GIANCARLO DEVASINI, LUDOVICUS JAN VAN DER VELDE, REGINALD FOWLER, CRYPTO CAPITAL CORP., and GLOBAL TRADE SOLUTIONS AG, | |
| Defendants. | |

## NOTICE OF MOTION TO WITHDRAW AS COUNSEL

PLEASE TAKE NOTICE that Kyle W. Roche, Esq. of Roche Freedman, LLP ("RF") respectfully moves the Court pursuant to Local Rule 1.4 to withdraw as one of the attorneys for the Proposed Class. Mr. Roche is no longer involved in RF's class action practice. Accordingly, pursuant to Local Rule 1.4, Mr. Roche respectfully requests to no longer receive docketing notifications *via* the ECF system. Mr. Roche also asks that the Court approve this withdrawal.

DATED: August 31, 2022        Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Kyle W. Roche*
Kyle W. Roche
99 Park Avenue, 19th Floor
New York, NY 10016

kyle@rochefreedman.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

SO ORDERED this _____ day of _____, 2022.

_____

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 31, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Kyle W. Roche*         
Kyle W. Roche

# ECF 230



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

August 31, 2022

<u>BY ECF AND EMAIL</u>

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re:  In re Tether and Bitfinex Crypto Asset Litigation***, No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney.  (Dkt No. 229.)  Mr. Roche's motion comes immediately following the public disclosure of a series of videos of Mr. Roche suggesting that he and his law firm are misusing the litigation process.  Mr. Roche apparently has an enormous stake in a crypto company called Ava Labs, Inc., files class action lawsuits against companies in the crypto space for the purpose of harming competitors of Ava Labs, and uses market intelligence gathered through the discovery process for the benefit of Ava Labs.  The videos also show Mr. Roche making several disparaging remarks about juries, class members, and the class-action process in the United States.[1]

Mr. Roche's statements raise grave concerns for the B/T Defendants regarding the motivations behind filing this lawsuit, the purpose for which certain discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused.  That Mr. Roche, who initially claimed that his comments were taken out of context, has now announced that he "is no longer involved" in his firm's class action practice further heightens those concerns.

The B/T Defendants' concerns are not addressed by Mr. Roche's individual withdrawal as counsel of record in this matter.  Accordingly, the B/T Defendants respectfully request that Mr. Roche's firm, Roche Freedman LLP, be terminated as counsel in this case, and that Mr. Roche and Roche Freedman LLP certify to this Court that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party.

---

[1]  *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

The Honorable Katherine Polk Failla                2                August 31, 2022

### I.      The Kyle Roche Video.

Mr. Roche's withdrawal motion comes on the heels of a high profile investigative exposé published by the Crypto Leaks website on August 26, 2022 that includes a series of video clips in which Mr. Roche, a founding partner of the Roche Freedman firm, makes a number of highly disturbing comments about his significant financial interest in Ava Labs and his misuse of class action litigation.  Among other things, Mr. Roche states that:

- He personally owns approximately 1% of the Avalanche tokens ("AVAX") issued by Ava Labs, as well as 1% of the equity in Ava Labs.   (That interest is worth tens of millions, if not hundreds of millions of dollars:  the market capitalization of AVAX tokens is currently $5.7 billion and has been as high as $30 billion in the past year.)

- He uses litigation as "a strategic instrument to support Ava Labs," which he states is "a completely different way than being a lawyer."   Litigation, according to Mr. Roche, is "a fantastic tool to competition."

- Ava Labs does not file complaints against its competitors, but instead "they have me do that on behalf of the class."

- By filing lawsuits against competitors of Ava Labs, Mr. Roche "deal[s] with making sure that . . . the SEC and the CFTC have other magnets to go after," thereby protecting Ava Labs from regulatory scrutiny.

Mr. Roche's statements also give rise to a serious concern that he may be abusing the discovery process and misusing information that he learns through litigation.  He states that he is Ava Lab's "crypto expert" because he "*sue[s] half the companies in the space*" and "know[s] where this market is going" because he has "*seen the insides of every single crypto company.*"   These concerns resonate strongly in this case, where Plaintiffs have served a number of document requests seeking information that has no apparent link to the claims and defenses in this lawsuit. For example, Plaintiffs have sought documents related to numerous entities and individuals with whom the B/T Defendants have business relations, as well as all documents related to the B/T Defendants' investments in other crypto companies, their efforts to raise equity and to obtain loans, and a wide array of financial information unrelated to the issues raised by Plaintiffs' complaint.

More broadly, Mr. Roche disparages the putative class members whom he seeks to represent – and to whom he and his firm owe a fiduciary duty – as "100,000 idiots out there" and dismissively refers to juries as "10 idiots" who "control the flow of all the money that happens in American class actions."

Mr. Roche has publicly confirmed that the recordings are genuine.  He claims that he was "exploit[ed]" using "leading questions," and that his statements were taken out of context.[2]

## II.   Mr. Roche's Motion to Withdraw Does Not Adequately Address the Concerns Raised by the Kyle Roche Video.

In his Motion to Withdraw, Mr. Roche states that he "is no longer involved in [Roche Freedman's] class action practice."  (Dkt. No. 229 at 1.)  That is an extraordinary statement given that Mr. Roche is a founder of Roche Freedman LLP and the "class action practice" represents the vast majority of his firm's work.  Such a drastic step is inconsistent with Mr. Roche's suggestion that his videotaped statements were taken out of context, and it validates the serious concerns caused by those statements.  Indeed, it heightens those concerns.

The individual withdrawal of Mr. Roche, however, does little if anything to address the serious issues regarding the potential misuse of discovery and class action lawsuits generally.  Even if he is no longer counsel of record, he would still have access to discovery materials, would retain the ability to direct the conduct of other lawyers at his firm, and would profit from any potential recovery in this lawsuit.  Moreover, any conflict of interest impacting Mr. Roche is imputed to his entire firm.  And, in fact, it appears that other lawyers at Roche Freedman who have entered appearances in this litigation – including Devin "Vevel" Freedman, Amos Friedland, and Edward Normand – may also own substantial amounts of AVAX tokens and have similar involvement with Ava Labs.[3]

Accordingly, the B/T Defendants respectfully request that, in response to Mr. Roche's motion to withdraw, the Court order that the entire firm of Roche Freedman LLP be terminated as counsel in this case.  Such a removal would not prejudice Plaintiffs, as they would remain represented by two other large and experienced firms:  Selendy Gay Elsberg PLLC and Schneider Wallace Cottrell Konecky LLP.

In order to protect the highly sensitive information that Defendants have produced in discovery, the B/T Defendants also respectfully request that the Court issue an order requiring Mr. Roche and Roche Freedman LLP to certify that they (*i*) have returned or destroyed all documents and information produced by Defendants in this lawsuit and (*ii*) have not shared any such documents or information with Ava Labs or any other third party.  The documents produced by the B/T Defendants and other parties in this litigation are highly sensitive, as they include not only confidential, competitively sensitive information about Defendants' businesses but also information that, if disclosed, would threatens the privacy and security of Defendants and their

---

[2]  *See* Kyle Roche, *My Response*, MEDIUM (Aug. 29, 2022), available at https://medium.com/@kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[3]  Crypto Leaks (@CryptoLeaksInfo), TWITTER (Aug. 29, 2022, 5:44 A.M.), https://twitter.com/CryptoLeaksInfo/status/1564187241949298688.

The Honorable Katherine Polk Failla                4                August 31, 2022

customers.  The Court has already recognized the importance of protecting information about cryptocurrencies and related accounts and wallets.  (Dkt. No. 195.)

*     *     *

We thank the Court for its consideration.


Respectfully submitted,

/s/ Elliot Greenfield

# ECF 231

LAW OFFICES OF

# MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ
A Pʀᴏғᴇssɪᴏɴᴀʟ Lɪᴍɪᴛᴇᴅ Lɪᴀʙɪʟɪᴛʏ Cᴏᴍᴘᴀɴʏ

600 UNIVERSITY STREET, SUITE 2700
SEATTLE, WASHINGTON 98101-3143
Tᴇʟᴇᴘʜᴏɴᴇ: (206) 467-1816
Fᴀᴄsɪᴍɪʟᴇ: (206) 624-5128

Gʀᴇɢᴏʀʏ J. Hᴏʟʟᴏɴ                                    E-ᴍᴀɪʟ: GHᴏʟʟᴏɴ@MᴄNᴀᴜʟ.ᴄᴏᴍ
                                                                          Direct (206) 389-9348

Tɪᴍᴏᴛʜʏ B. Fɪᴛᴢɢᴇʀᴀʟᴅ                          E-ᴍᴀɪʟ: TFɪᴛᴢɢᴇʀᴀʟᴅ@MᴄNᴀᴜʟ.ᴄᴏᴍ
                                                                          Direct (206) 389-9338

September 1, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:    **In re Tether and Bitfinex Crypto Asset Litigation**
          **No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

Together with O'Melveny & Myers, we represent Defendant Bittrex, Inc. in the referenced matter. Defendant Poloniex LLC, represented by Nelson Mullins, also joins in this letter (Bittrex and Poloniex are collectively "the Exchange Defendants"). We write to join in the requests made by the B/T Defendants in responding to Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney (Dkt. No. 229) – namely, (1) that Roche Freedman LLP be terminated as counsel in this case, and (2) that both Mr. Roche and Roche Freedman LLP certify, in connection with their termination, that they have returned or destroyed all documents and information produced by the Exchange Defendants and that they have not shared any of those documents or information with any third party.

In the video recordings released by Crypto Leaks, Mr. Roche states that "litigation is an underused tool," and confirms that he has used class action litigation as a "strategic instrument" to support non-party Ava Labs, a cryptocurrency company in which he and other Roche Freedman attorneys maintain a substantial interest. He states that he has used litigation against other participants in the cryptocurrency space to further the interests of Ava Labs. He goes on to state that he is Ava Labs' "crypto expert . . . because I sue half the companies in the space" and brags that he has "seen in the insides of every single crypto company." Mr. Roche describes himself in one of the videos as a "crazy mother****er" who will "take you to the end" to get a

The Honorable Katherine Polk Failla
September 1, 2022
Page 2

piece of paper saying "I own your company now," and describes that "power" as "a tool that has not been unlocked by many."

Mr. Roche's statements raise troubling questions about his firm's use of the discovery process in this matter. As the Court is aware, Plaintiffs amended their complaint in June 2020 to add the Exchange Defendants. *See* Dkt. No. 114. The Amended Complaint relies heavily on allegations that the B/T Defendants owned or controlled certain accounts on the Exchange Defendants' platforms, including specifically the "1AA6" account on Bittrex and the "1J1d" account on Poloniex, incorrectly describing those accounts as the "Bitfinex deposit address(es)." *Id.* at ¶ 207. In response to those allegations, the Exchange Defendants provided Mr. Roche and his colleagues conclusive evidence, including a sworn declaration from the actual holder of the supposed "Bitfinex deposit address(es)," that the accounts in question are not and never have been owned or controlled by the B/T Defendants; instead, they have always been exclusively owned and controlled by a foreign arbitrage trader who has no relation to the B/T Defendants. The Exchange Defendants have identified that trader, provided sworn testimony from him about his arbitrage activities, and produced documents proving that the relevant accounts are—contrary to the allegations in the Amended Complaint—not owned or controlled by the B/T Defendants.

Notwithstanding the arbitrage trader's sworn testimony about his trading, Plaintiffs say that they cannot yet re-evaluate their claims against the Exchange Defendants because "[f]ull discovery, from all Defendants, is needed to test the assertions in the Anonymous Declaration." Plaintiffs say that such discovery must include "documents and deposition testimony not only from the declarant, but also from the Exchange Defendants, Bitfinex, and their affiliates." Dkt. No. 181 at 2.

The Exchange Defendants have worked diligently in preparing a substantial production of documents to Plaintiffs. [1] Mr. Roche's recent statements raise serious concerns about the intent behind such discovery and how it will be used. While the Exchange Defendants appreciate that a protective order has been entered in this matter and that attorneys can be expected to comply with such orders, Mr. Roche's statements make clear that he has already used confidential materials produced in litigation for improper purposes. Moreover, the Court previously recognized that the protective order is not sufficient protection for certain information Defendants have produced. *See* Dkt. No. 195. Under the circumstances, simply accommodating Mr. Roche's withdrawal is not sufficient. He remains a member of Roche Freedman, and it must be assumed that, just as the actions he described in the recently released videos benefited Mr. Roche, his firm, and Ava Labs, any further access by Roche Freedman to the highly confidential materials produced in this matter may be subject to similar misuse.

For the above reasons, the Exchange Defendants respectfully join in the B/T Defendants' requests that (1) Roche Freedman LLP be terminated as counsel in the matter, and (2) Roche

---

[1] Plaintiffs originally proposed nearly 300 search terms to each of the Exchange Defendants, many of which related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter.

The Honorable Katherine Polk Failla
September 1, 2022
Page 3

Freedman LLP be required to certify that is has destroyed all documents produced by the Defendants in this matter, and that no such materials remain in the possession, custody, or control of any principals, agents, or employees of the firm.

Given these revelations, the Exchanges Defendants reserve the right to pursue additional relief as they obtain more information.

Respectfully,

Gregory J. Hollon
Timothy B. Fitzgerald

GJH/TBF:ln

# ECF 232



September 2, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *In re Tether and Bitfinex Crypto Asset Litigation*, **19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We write in response to Defendants' August 31, 2020 letters asking the Court to disqualify Roche Freedman LLP ("Firm") as co-lead counsel for Plaintiffs based on statements made by Kyle Roche. We respectfully submit the Court should deny Defendants' request.

A.  **RELEVANT BACKGROUND**

On January 27, 2022, Mr. Roche attended a meeting in London to facilitate a potential venture capitalist investment. Mr. Roche believed he was attending that meeting to pursue the interests of a technology start-up initiative. But it now appears the meeting was actually a set up orchestrated by a defendant in a different class action the Firm is pursing. Roche Decl. ¶ 2.

Unfortunately, at that meeting, Mr. Roche made untrue statements apparently intended to impress the participants at the meeting. He also made inappropriate remarks disparaging jurors and class members.

As demonstrated below, the statements with which Defendants take issue are not just false, they are *demonstrably* false. Nonetheless, to protect against even the appearance of impropriety, and to avoid unnecessary distraction from the merits of this case, Mr. Roche has withdrawn from this case and the Firm has removed him from its entire class action practice. Mr. Roche has also been screened from the Firm's class actions (this case included). Finally, to ensure there is no optical concern whatsoever, Mr. Roche has also forfeited any financial interest in this litigation.

It's no surprise, however, that Defendants are using it as a litigation tactic to disqualify the entire Firm. The Firm has one of the leading litigation practice groups in this space, understands the technology exceptionally well, originated the case theory, was retained by every single client in this action, and drafted and filed the original complaint.

The Honorable Katherine Polk Failla
September 2, 2022
Page 2 of 5

## B.  THE STATEMENTS

1.  **The Firm did not use this litigation as a strategic instrument to support Ava Labs, did not file this action at Ava Labs' request, and any interest in Ava Labs or AVAX tokens doesn't present a conflict.**

The notion that Roche Freedman decided to pursue this case in order to further the interests of Ava Labs is plainly false. First and foremost, the Firm's retention in this case by the three original named plaintiffs - Jason Liebowitz, Benjamin Liebowitz and Aaron Liebowitz - pre-dates Ava Lab's retention of the Firm. Indeed, when the Firm filed the 95-page complaint in this matter, Ava Labs had only been a Firm client for a matter of days. Moreover, at that time, Ava Labs was a relatively unknown start up and the AVAX crypto-asset was not existent. The idea, therefore, that the Firm filed this case for Ava Labs, is both impossible, nonsensical, and untrue.

In fact, shortly after this incident unfolded, Ava Labs' CEO issued a statement confirming that "[n]either I, nor anyone else at Ava Labs ever directed Roche in his selection of cases."[1]

Further, Defendants' suggestion that a disqualifying conflict of interest exists owing to the fact that some Roche Freedman lawyers own AVAX tokens, or have a personal equity interest in Ava Labs, is meritless. The result of this lawsuit would not have any particularized effect on Ava Labs or the AVAX crypto-asset. Ava Labs and AVAX do not compete with the Exchange Defendants, Tether, Bitfinex, or USDT. In fact, Tether and Bitfinex leverage the AVAX ecosystem and support its efforts.[2] And the Exchange Defendants facilitate the sale of AVAX on their platforms.

But even if Defendants are competitors of Ava Labs or AVAX (they are not), it does not create a disqualifying conflict here. Lawyers that sue Microsoft on behalf of a class do not need to disclose that they hold shares in Apple. That's because "the mere existence of financial or business interests does not warrant disqualification." *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC,* No. 17CV4831, 2017 WL 5312193, at *4 (S.D.N.Y. Nov. 13, 2017). "Rather, there must be a 'significant risk' that these interests will 'adversely affect[ ]' the lawyer's exercise of professional judgment on behalf of the client." *Id.* (citing N.Y. Rule of Prof'l Conduct 1.7(a)(2) (finding that even though a lawyer's financial arrangement simply seemed "unseemly," the movant failed to explain how the lawyer's "financial and business interests . . . would impair his professional judgment or how it was adverse to Defendants' interests"). Defendants have done nothing to show such a "significant risk" exists in this case.

None of the co-lead counsel in this case is pursuing this litigation for any collateral purpose, and there is no basis for that assertion beyond Mr. Roche's improper and false statements (which themselves don't even specifically reference this case).

---

[1] https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752.
[2] https://medium.com/avalancheavax/tether-token-usdt-launches-on-avalanche-baf5a313f1a7.

99 Park Ave., Suite 1910, New York, NY 10016  |  (t) 646.350.0527 (f) 646.392.8842  |  www.rochefreedman.com

The Honorable Katherine Polk Failla
September 2, 2022
Page 3 of 5

**2. There could not have been, and has not been, any sharing of confidential discovery material.**

Defendants' letter also voices a "concern" that Mr. Roche may be "misusing information that he learns through litigation" including information produced in this case. First and foremost, Mr. Roche and the Firm can confirm that no confidential discovery material has ever been shared with Ava Labs (or any third party). Roche Decl. ¶ 5. Nor would we ever do that.

Importantly, Mr. Roche's comments do not actually include a statement that he shared confidential discovery materials and he's explained that is not what he meant. The actual statement was:

> because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts mid-sentence].

Mr. Roche's declaration explains that what he intended to convey was that due to the numerous suits he has filed in this space, dozens of whistleblowers and other insiders have sent him information that has proved useful in pursuing class action claims. Roche Decl. ¶ 6.

**3. Mr. Roche's comments do not reflect the Firm's beliefs about jurors, class members, or class actions.**

The inappropriate comments Mr. Roche made regarding (i) jurors and class members, and (ii) his approach to class actions and intention on how and why to resolve them, do not reflect the view of the Firm or any of the other 24 other lawyers practicing at the Firm. Indeed, Mr. Roche only made these comments under the influence of alcohol.

Nonetheless, these statements are one of the reasons he has promptly withdrawn from this case, from the Firm's other class actions, and has been screened from them.

In sum, none of the alleged factual impropriety that Defendants frame as the foundation for their request to disqualify the Firm has actually occurred, and any optical issue should be cured based on Mr. Roche's withdrawal, screening, and forfeiture.

**C. DEFENDANTS' PURPORTED CONCERNS ABOUT THE DISCOVERY PROCESS DO NOT SUPPORT THE FIRM'S DISQUALIFICATION**

In support of their request to terminate the Firm as co-lead counsel, Defendants argue that Mr. Roche's statements "raise grave concerns . . . regarding the motivations behind filing this lawsuit for which discovery has been sought, and whether the highly sensitive, confidential information the B/T Defendants have provided is being misused." This claim cannot be squared with Defendants' later recognition in their letter that Plaintiffs in this action are also represented by two other law firms. In other words, even crediting Defendants' argument that Mr. Roche's statements raise concerns about the motives for initiating this lawsuit, the complaint was also

signed by two other law firms who have conducted a good faith inquiry into the merits of this case and the claims have already withstood a motion to dismiss.

The same is true of Plaintiffs' discovery requests, which Defendants characterize as having "no apparent link to the claims and defenses in this lawsuit." Obviously Plaintiffs' disagree, but more importantly, those discovery requests were reviewed and approved by the two other law firms that Defendants' have already told the Court should remain in the case. We appreciate that Mr. Roche's statements and the ensuing publicity have created a regrettable distraction, but they do not provide a basis for *the Firm's* disqualification.

Moreover, to the extent Defendants intend to create a distraction or spend further time on this issue, the Firm's removal from this action will not prevent them from pursuing these efforts.

**D.    THE FIRM'S STATUS AS CO-COUNSEL BENEFITS THE CLASS**

**1.  RF's continued participation in this case is in the best interests of the class.**

Roche Freedman's participation as co-lead counsel will continue to benefit the proposed class. The Firm's lawyers who would remain working on the case include the principal lawyers who helped formulate the original complaint, *i.e.*, Vel Freedman and Joseph Delich. In addition to those two attorneys, many of the lawyers from the Firm that would remain on this case have the most institutional knowledge of the facts and law underlying the case. Their contribution of many thousands of hours on the case to date have been invaluable and their removal from the case would be detrimental to the class's interest.

Finally, these same attorneys are those working on the Firm's many other crypto-related cases and class actions. All of these facts thus stand to continue to benefit the named Plaintiffs and the proposed class. The Court carefully appointed three firms to represent the named Plaintiffs, considering their respective resources and areas of expertise, and those rationales continue to counsel in favor of the three-firm team that has been working effectively to date.

**2.  The named plaintiffs request the Firm remain as co-lead counsel.**

The named Plaintiffs request that the Firm remain as co-lead counsel. This is reflected in their attached affidavits. Jason Leibowitz Decl.; Benjamin Leibowitz Decl.; Aaron Leibowitz Decl.; Matt Script Decl.; Pinchas Goldshtein Decl.

Having conceived of and filed the lawsuit, the Firm has the original and closest relationships with the named Plaintiffs. These Plaintiffs understand the relevant facts, have reviewed the videos, read both letters from Defendants, and are adamant the Firm remain on the case. They all state that they do not believe or see how they, or the class, would benefit from removing the Firm's crypto-related expertise from the current team of lawyers that have been diligently prosecuting the case.

Moreover, they have all signed declarations stating that they "have never heard or seen anything that would in anyway support the concerns raised by the Defendants." and that "RF has only ever been concerned about the best interests of the class."

These individuals have already dedicated a substantial amount of their time and energy to the case, and they intend to remain as lead Plaintiffs. Accordingly, we respectfully submit that their views are entitled to significant weight and their opinions should be considered by the Court.

\* \* \* \* \*

We note that what is in the best interests of the proposed class in this case overlaps with what the Firm believes is fair and equitable under the circumstances. In speaking as he did, Mr. Roche engaged in a serious lapse of judgment. However, the extreme remedy of disqualifying the entire Firm, which would have the effect of punishing all of the Firm's lawyers for Mr. Roche's lapse in judgment (which amounts to statements that were either untrue or misunderstood), seems disproportionate and unwarranted.

Finally, to the extent the Court is considering a formal request to disqualify Roche Freedman from this matter, we respectfully request that the Court first schedule a conference to address these issues and allow the Firm to submit additional evidence to address any specific concerns that the Court may have.

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*

Devin "Vel" Freedman
Edward Normand
Joseph M. Delich
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016
vel@rochefreedman.com
tnormand@rochefreedman.com
jdelich@ rochefreedman.com

# ECF 232-1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tether and Bitfinex Crypto Asset Litigation | Case No. 19 Civ. 9236 (KPF) |

I, Kyle Roche, declare as follows:

1.      I am a partner at Roche Freedman LLP ("Firm").

2.      I have reviewed the videos referenced by the Defendants in this action. Those videos were illegally taken without my knowledge or consent during meetings that occurred in in London on January 27, 2022. I was invited to London under the false pretense of pitching a venture capital investment, but I now understand that the real reason I was brought there was through a scheme that was executed by a defendant in a different lawsuit the Firm recently filed. The purpose of this scheme was to surreptitiously obtain comprising recordings of me.

3.      I deeply regret making many of the statements I made during these meetings as they are not only inconsistent with the manner in which I have practiced law, but also because some of the statements were false.

4.      The Firm has never filed a class action at the direction of or for the benefit of another Firm client. This case is no exception. The sole reason we filed this action was for the benefit of the named plaintiffs in this action and the other members of the class. We filed the action at the direction of the named plaintiffs. We have not shared any confidential information from this lawsuit with any third party, including other clients of the firm.

5.     I have never disclosed or used, for any collateral purpose, any confidential information from any lawsuit—including this lawsuit. Indeed, at the time the recordings took place (January 27, 2022), there had been no confidential documents produced by any party.

6.     The statement I made in one of the video recordings was: "because I sue half the companies in the space, I know where the market is going, I believe, better than one of the top ten people in the world. I've seen the insides of every crypto company [video cuts]." What I intended to convey was that due to the numerous suits I've filed in this space, many whistleblowers and other insiders send information that has proved valuable in pursuing class action claims.

7.     None of the co-lead counsel in this matter have served any discovery requests for any purpose collateral to the prosecution of the claims in this case. All of the initial discovery requests were derived from information contained in the Amended Complaint or sourced from publicly available material, including foreign documents and were solely intended to obtain information material to the claims and defenses in this matter.

8.     The comments I made regarding the nature of jury trials, jurors, and absent class members have nothing to do with the Firm's views and are not even representative of my own personal views. My comments in the video were highly inappropriate, made while I was intoxicated, and I deeply regret my statements.

9.     While the published videos are carefully edited and spliced to remove context and paint me in the worst possible light, the fact remains that my actions and words were inexcusable. I have spent years helping build the Firm's crypto-asset practice, and I'm ashamed that my conduct called into question the excellent work the attorneys at the Firm have done pursuing the interests of class members across numerous and innovative class actions in the space.

10.     I have withdrawn from this case, been screened from the matter, and will not receive any financial interest in this action.

11.     I respectfully request that this Court accept my motion to withdraw but that it not terminate the Firm as Co-Lead Counsel. The expertise of the other attorneys working on this matter from the Firm will continue to add significant value to the Proposed Class.

12.     I declare under penalty of perjury that the foregoing is true and correct.

Dated September 2, 2022

Kyle W. Roche

# ECF 233



**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022
+1 212 909 6000

September 2, 2022

BY ECF AND EMAIL

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re:  In re Tether and Bitfinex Crypto Asset Litigation*, **No. 19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

We represent the B/T Defendants in the above-referenced matter and write in response to Roche Freedman's September 2, 2022 filing regarding Plaintiffs' Motion for Kyle W. Roche to Withdraw as Attorney.  (Dkt No. 232.)

While we appreciate that Mr. Roche and his firm have sought to address the issues raised in the B/T Defendants' August 31 letter to the Court (Dkt. No. 230), the evolving explanations they have offered regarding his videotaped statements – which implicate both Mr. Roche and the Roche Freedman law firm – offer little comfort with respect to the grave concerns raised by those statements.

Mr. Roche first claimed that his statements were taken "out of context" and/or were somehow elicited from him "using leading questions."[1]  Notwithstanding that initial response, Mr. Roche then took the extraordinary step of withdrawing entirely from his firm's class action practice.

In its September 2 letter, Roche Freedman states that Mr. Roche's statements are "demonstrably false" but offers no such demonstration.  That the initial complaint in this case was filed prior to when Roche Freedman reports it commenced a formal attorney-client relationship with Ava Labs says nothing about how it has conducted the lawsuit since that time, including potential misuse of the discovery process.[2]  Beyond that, Roche Freedman relies on its own denials.

---

[1]  Kyle Roche, *My Response*, Medium (Aug. 29, 2022), available at https://medium.com/ @kyleroche/my-response-b691563c255b [https://perma.cc/WH2G-ZD8B].

[2]  Notably, Mr. Roche stated on video that his firm and Ava Labs launched their businesses together at the same time in the same co-working space, he already knew the CEO of Ava Labs, and he received a percentage of the AVAX token supply in September 2019, prior to the commencement of this action.

The Honorable Katherine Polk Failla  2  September 2, 2022

In his affidavit, Mr. Roche himself states only that "some of the statements were false."  The videos published on the Crypto Leaks website, however, do not show merely a discrete set of questionable statements but a comprehensive description of how Mr. Roche and his law firm abuse the class action process and discovery.

Importantly, the B/T Defendants expressed a serious and valid concern that the discovery process is being misused based on Mr. Roche's statement that he serves as Ava Lab's "crypto expert" and "know[s] where this market is going" because he "sue[s] half the companies in the space" and has "seen the insides of every single crypto company."[3]  In his affidavit, relied on by Roche Freedman, Mr. Roche offers only the implausible explanation that he was not referring to information gained in discovery but to other information purportedly provided to him outside of litigation by "whistleblowers and other insiders."

Roche Freedman's assertion that Defendants have raised Mr. Roche's statements with the Court as a "litigation tactic" suggests that it fails to fully understand the egregious nature of those statements or the seriousness of the concerns they raise.

Respectfully submitted,

/s/ Elliot Greenfield

---

[3]  *Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm*, Roche Freedman, CRYPTO LEAKS (Aug. 26, 2022), available at https://cryptoleaks.info/case-no-3 [https://perma.cc/N433-63SC].

# ECF 234

 

September 2, 2022

<u>**Via ECF and E-mail**</u>

The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:     <u>*In re Tether and Bitfinex Crypto Asset Litigation*</u>, **19-cv-09236 (KPF)**

Dear Judge Failla:

      Selendy Gay Elsberg PLLC ("<u>Selendy Gay Elsberg</u>") and Schneider Wallace Cottrell Konecky LLP ("<u>Schneider Wallace</u>") write in their capacity as interim class counsel, and specifically not on behalf of the named plaintiffs, in response to the letter dated September 2, 2022, by Roche Freedman LLP ("<u>Roche Freedman</u>"), ECF No. 232. The named plaintiffs have all reviewed this letter and stated that they disagree with its content and recommendation; in short, the named plaintiffs express a strong preference that Roche Freedman remain in the case.[1] Undersigned counsel nevertheless believe they have a duty to the Court and the putative class to inform the Court of their views. *See* Fed. R. Civ. P. 23(g)(3) (stating interim class counsel is appointed to "act on behalf of a putative class.").

      As explained below, Selendy Gay Elsberg and Schneider Wallace believe that Roche Freedman's continued involvement in the litigation is not in the best interests of the class. Accordingly, we respectfully request that the Court terminate Roche Freedman's status as interim co-lead counsel. Selendy Gay Elsberg and Schneider Wallace are ready and willing to continue representing the class as interim co-lead counsel.

      Selendy Gay Elsberg and Schneider Wallace became aware of video recordings of Kyle Roche, a founding partner of Roche Freedman, when they were published online on August 26, 2022.[2] In the recordings, Mr. Roche makes statements regarding the blockchain industry and his approach to class action litigation. On August 31, 2022, Mr. Roche (though not Roche Freedman) filed a motion to withdraw as counsel. ECF No. 229. Later that day, the B/T Defendants submitted

---

[1] Selendy Gay Elsberg and Schneider Wallace were not aware of the affidavits of the class representatives until they were filed as exhibits to Roche Freedman's letter. *See* ECF Nos. 232-2–232-6. Although Selendy Gay Elsberg and Schneider Wallace respect the opinions expressed in those affidavits, they believe their duty as interim class counsel is to "the interests of the class" as a whole. *See* Fed. R. Civ. P. 23(g)(4).

[2] *See Ava Labs (Avalanche) Attacks Solana & Cons SEC in Evil Conspiracy with Bought Law Firm, Roche Freedman*, CRYPTO LEAKS (Aug. 26, 2022), *available at* https://cryptoleaks.info/case-no-3.

a letter asking the Court to terminate Roche Freedman as counsel for the class. ECF No. 230. The Exchange Defendants filed a letter on September 1, joining this request. ECF No. 231.[3]

Given the content of the recordings—and the fact that Mr. Roche, in an August 29, 2022 public response, did not deny the recordings' authenticity[4]—Selendy Gay Elsberg and Schneider Wallace asked Roche Freedman to withdraw as counsel to protect the interests of the class. Roche Freedman declined to withdraw.

Selendy Gay Elsberg and Schneider Wallace are not able to evaluate the credibility of Roche Freedman's statements concerning Ava Labs, AVAX tokens, or Mr. Roche's position at his firm or his financial interest in this litigation. However, Roche Freedman's continued involvement as counsel in the case is contrary to the best interests of the class. Roche Freedman's continued representation of the class would likely spawn significant discovery and motion practice as to the veracity and/or import of the allegations. These issues are likely to unnecessarily distract from the merits of this dispute, and can be avoided by the removal of Roche Freedman as class counsel.

Selendy Gay Elsberg and Schneider Wallace are both experienced and capable class counsel, with expertise in litigation concerning digital assets, and will continue to prosecute this action on behalf of the class as interim co-lead counsel. For example, Selendy Gay Elsberg has been appointed as co-lead counsel in numerous class actions in this district where the plaintiffs' allegations involve the technical details of dozens of different crypto-assets.

To protect the interests of the putative class, we respectfully request that the Court terminate Roche Freedman's appointment as interim co-lead counsel.

---

[3] Selendy Gay Elsberg and Schneider Wallace disagree with Defendants' claims that Plaintiffs have sought "information that has no apparent link to the claims and defenses in this lawsuit," ECF No. 230 at 2, or which "related to broad aspects of the cryptocurrency industry but did not appear related to any of the claims or defenses in this matter," ECF No. 231 at 2 n.1. Rather than air that dispute here, Plaintiffs will continue to meet and confer with Defendants in an effort to resolve any remaining discovery issues without Court intervention. *See* ECF No. 228 at 2.

[4] https://medium.com/@kyleroche/my-response-b691563c255b

Respectfully submitted,

/s/ Caitlin Halligan
Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider
Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*

# ECF 235

**KM | KIRBY McINERNEY**                    **RADICE LAW FIRM**

<u>VIA ECF AND E-MAIL</u>

September 5, 2022

The Honorable Katherine Polk Failla
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re: *In re Tether and Bitfinex Crypto Asset Litig.*,
     No. 19 Civ. 9236 (S.D.N.Y.)

Dear Judge Failla:

  We represent plaintiffs Eric Young, Adam Kurtz, and David Crystal ("Kirby-Radice Plaintiffs") in the above-referenced action. These Kirby-Radice Plaintiffs, our clients, are passive members of the putative class alleged in the operative complaint.[1] We respectfully submit that recent events involving the named partner of Roche Freedman LLP ("Roche Freedman") are and will likely continue to be detrimental to Kirby-Radice Plaintiffs and the putative class. The focus of the litigation should remain on prosecuting claims relating to Defendants' alleged manipulation and protecting the interests of members of the putative class. Because the stewardship over the litigation is in jeopardy, we respectfully submit that Roche Freedman be removed as interim co-lead counsel and that the law firms of Kirby McInerney LLP ("Kirby") and Radice Law Firm, P.C. ("Radice") be substituted as lead counsel to protect the interests of our clients and the putative class.

  **The adequacy (or not) of interim lead counsel has harmed the prospects of the claims of the putative class.** Without recounting all the details of the current leadership crisis, which have been amply recounted in other filings,[2] suffice that Mr. Kyle Roche and his firm have been implicated in conduct that appears to negatively implicate the way that they have approached this and other cryptocurrency litigation. *See* ECF No. 232-1. Leaving aside the truth or any other ramifications of Mr. Roche's statements, this situation is an enormous distraction for the case.

---

[1] *See* ECF No. 114 at 103 (defining the class as "All persons or entities that purchased or otherwise acquired cryptocommodities (including Bitcoin, Bitcoin Cash, Ethereum, Ethereum Classic, Litecoin, Monero, Dash and ZCash) or cryptocommodity Futures, in the United States or its territories at any time from February 17, 2015 through the present and were injured thereby.").

[2] On August 31, 2022, Kyle Roche filed a motion to withdraw from this litigation and represented that his colleagues from the law firm of Roche Freedman LLP would remain available to prosecute claims on behalf of the putative class. *See* ECF Nos. 229, 232. On August 31 and September 1, 2022, Defendants requested that this Court order the entire firm of Roche Freedman LLP be terminated as counsel given Mr. Roche's alleged "misus[e] [of] the litigation process" and "disparaging remarks about juries, class members, and the class-action process in the United States." *See* ECF Nos. 230, 231.

Defendants have weighed in, stating that the discovery process may have been "misuse[d]," demanding the removal of Roche Freedman. ECF No. 230 at 3. Roche Freedman filed a response in opposition which annexed nearly identical declarations from the Named-Plaintiffs[3] that assert that the class "will be prejudiced" if Roche Freedman is terminated as counsel because the "claims at issue in this case will require co-lead counsel to oversee and direct blockchain forensic experts to show the manipulation of crypto-commodities." *See* ECF Nos. 232-2-6. Each Plaintiff further declared that having Selendy Gay Elsberg PLLC ("Selendy Gay") and Schneider Wallace Cottrell Konecky LLP ("Schneider Wallace") remain co-lead counsel in the case does "not address [their] significant concerns that terminating [Roche Freedman] would leave the class without the benefit of its crypto-asset litigation experience and thereby result in prejudice." *See id.* For their part, Selendy Gay and Schneider Wallace take a contrary position to the Named-Plaintiffs and, like Defendants, support Roche Freedman's removal. *See* ECF No. 234.

**The current situation creates a serious problem for discovery and class certification.** Going forward, the problems created by the current situation are likely to linger. This is especially true if Roche Freedman stays in the case. The adequacy of class counsel under Rule 23(g)(2)[4] will remain the focus of this litigation, and that fact remains even if Kyle Roche is screened off from his firm's involvement in the litigation. Likewise, in ruling on discovery disputes, the Court may be asked not only to evaluate the proportionality of a challenged request but may also have to weigh in on the issues of whether the discovery had ulterior and improper motives, a concern raised by Defendants' recent submissions. *See* ECF No. 230 at 3, 231 at 2.

**For the benefit of the putative class, the Court should remove Roche Freedman and appoint Kirby and Radice as interim lead counsel.** Unless Roche Freedman is removed as interim co-lead counsel, the inquiry into the adequacy of lead counsel's representation in this and other litigations will prejudice the rights of the putative class.[5] To avoid a sideshow about the adequacy of counsel or the motives and use of litigation and discovery, a new leadership structure is necessary. With Kirby and Radice leading the litigation the leadership structure will be protected from accusation of bias or mismanagement. That is, appointing Kirby and Radice would provide guardrails against additional fallout from the recent disclosures relating to Roche Freedman and ensure that the putative class has adequate representation going forward.[6]

As the Court is aware, the law firms of Kirby and Radice sought to be appointed interim co-lead counsel at the outset of this litigation. Following oral argument on the interim lead counsel motion, the Court acknowledged that the appointment of Roche Cyrulnik Freedman LLP (n/k/a

---

[3] "Named-Plaintiffs" are Aaron Leibowitz, Benjamin Leibowitz, Jason Leibowitz, Matthew Script, and Pinchas Goldshtein. *See* ECF No. 114.

[4] FED. R. CIV. P. 23(g)(2) "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class."

[5] Undersigned counsel has spoken with the three Kirby-Radice Plaintiffs, and all explicitly support this proposal.

[6] Since the appointment of interim co-lead counsel, Kirby and Radice have monitored the litigation, but they have not otherwise been involved in the litigation.

Roche Freedman)[7] and its subsequently selected co-counsel, Selendy Gay and Schneider Wallace, over competing applicants was a "very difficult decision."[8]  We respectfully submit that the Court should reconsider its prior decision in light of the recent events.

If appointed interim co-lead counsel, Kirby and Radice would devote the resources necessary to ensure that the interests of putative class members are appropriately protected and pursued in a professional and effective manner.  As set forth in our initial application, Kirby and Radice have significant expertise in complex antitrust and commodity manipulation cases and have already committed substantial resources to develop original allegations that identified and demonstrated the alleged manipulation of Bitcoin and Bitcoin Futures.  *See* ECF No. 75 at 6-8.  Our extensive pre-suit investigation included econometric analyses of Bitcoin blockchain, specific crypto-currency wallets, and order flow to identify alleged manipulation, which underscores our ability to address the concerns articulated by Named-Plaintiffs surrounding the potential termination of Roche Freedman from this litigation.

**Selendy Gay and Schneider Wallace leading the litigation will not solve the current problem.**  We also respectfully submit that the problem with the leadership structure is not solved simply by removing Roche Freedman without adding additional counsel free of any of the issues created by the Roche Freedman revelations.  The reasons for this are three-fold.

The first reason is practical.  By Named-Plaintiffs' own admission, neither Selendy Gay nor Scheider Wallace have the subject matter expertise in crypto-currency to prosecute this case. *See e.g.*, ECF Nos. 232-2 at 10, 232-4 at 10.  In contrast Kirby and Radice have demonstrated extensive knowledge and expertise in identifying crypto-currency manipulation, including overseeing experts in the development of a proprietary algorithm and identifying, for the first time, specific dates of Defendants' manipulation of Bitcoin.  *See* ECF No. 75 at 6-8.[9]

Second and relatedly, Selendy Gay and Schneider Wallace only represent the Named-Plaintiffs in connection with their joint representation with Roche Freedman.  *See* ECF Nos. 232-2-6 at ¶ 2 (noting retainment of Roche Freedman LLP).  Roche Freedman added Selendy Gay and Schneider Wallace to its proposed leadership structure to bolster its team's litigation bona fides after the initial complaint was filed and as the leadership of the litigation was contested.  *See* ECF Nos. 58, 77, 78.  While reputable firms to be sure, this shortcoming is significant because the Named-Plaintiffs that they do represent have now taken a position that Roche Freedman must stay in the case as co-lead counsel, a position which is contrary to Selendy Gay's and Schneider Wallace's position that Roche Freedman must go.  *See* ECF No. 234 at 2 (requesting "that the

---

[7] *See* ECF No. 97 (appointing Roche Cyrulnik Freedman LLP).  Notably, Roche Cyrulnik Freedman LLP had a partnership fallout and is currently engaged in litigation with former named-partner Jason Cyrulnik.  *See generally Roche Freedman LLP v. Jason Cyrulnik*, 21 Civ. 01746 (S.D.N.Y.).

[8] *See* ECF No. 96, Transcript at 54:6-7 ("You've made my decision very difficult, which is a testament to all of your abilities, and I thank you for that.").

[9] *See generally* ECF No. 75; *see also Young, et al. v. iFinex, Inc., et al.*, 20 Civ. 00169 (S.D.N.Y.), ECF Nos. 25 (Memorandum of Law in Support of Motion to Appoint Kirby McInerney LLP and the Radice Law Firm, P.C. as Interim Lead Counsel), 26 (résumés of Kirby McInerney LLP and Radice Law Firm, P.C. detailing extensive financial fraud and antitrust expertise including *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11 MD 2262 (S.D.N.Y.) and *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 789 (S.D.N.Y.)).

Court terminate Roche Freedman's appointment as interim co-lead counsel"). This conflict with their own clients is untenable. In contrast, Kirby and Radice directly represent clients, the Kirby-Radice Plaintiffs, who have explicitly supported the removal of Roche Freedman. These Kirby-Radice Plaintiffs are ready to substitute in as plaintiffs in the litigation as necessary to protect the interest of the putative class.

Third, having Selendy Gay and Schneider Wallace alone as leaders may not solve the discovery or Rule 23(g) distractions that currently exist. This is because they are in the unfortunate position of having worked with Roche Freedman for the last few years, and Defendants may seek to make their collective participation in the litigation an issue.[10]

None of this is to denigrate the contribution of Selendy Gay and Schneider Wallace to this case. They certainly have valuable experience and we hope that, distanced from Roche Freedman, they can continue to be part of the litigation either as part of, or under, the leadership structure of Kirby and Radice.

*    *    *

In sum, this case unfortunately has been stalled by a sideshow. The interests of the putative class are imperiled if (i) Roche Freedman is not removed as interim co-lead counsel and (ii) untainted counsel do not take over the leadership structure at least to protect the case from any imputation of impropriety from the Roche Freedman disclosures. Here, the Court can proactively manage the risk of future fallout by addressing this problem through the appointment of additional interim co-lead counsel well in advance of any class certification or settlement approval process. *See generally In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221, 2015 WL 4645240, at *12 (E.D.N.Y. Aug. 4, 2015) (denying final approval, removing one lead counsel, and ordering to show cause why remaining interim class counsel should continue in their capacities). Accordingly, for the foregoing reasons, we respectfully submit that Kirby and Radice are uniquely qualified to protect the interests of the putative class in this litigation as interim co-lead counsel.

Finally, we appreciate that this Court already has expressed concerns regarding the pace of this litigation. We respectfully submit that our firms are prepared to commit the resources necessary to litigate this case with the minimal possible disruption to the current litigation schedule.

We appreciate this Court's attention to this matter.

---

[10] Defendants' suggestion that the interests of the putative class remain adequately protected by Selendy Gay and Schneider Wallace would best not be taken at face value. In other contexts, courts have found that permitting defendants to dictate the outcome of the lead plaintiff process is analogous to "permitting defendants to police the adequacy of class representatives and their counsel is like 'permitting a fox . . . to take charge of the chicken house.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir.1981); *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007) (finding defendants' "sudden concern for the best interests of the class is as ironic as it is unconvincing"); *George v. China Auto. Sys., Inc.*, No. 11 Civ. 7533, 2012 WL 3205062, at *17 (S.D.N.Y. Aug. 8, 2012).

Respectfully Submitted,

/s/ *David E. Kovel*
David E. Kovel
**KIRBY McINERNEY LLP**
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
Email: dkovel@kmllp.com

/s/ *John Radice*
John Radice
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, New Jersey 08540
Telephone: (646) 245-8502
E-mail: jradice@radicelawfirm.com

cc: All counsel of record (via ECF)

# ECF 236



September 6, 2022

**VIA ECF**

The Honorable Katherine Polk Failla
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:      *In re Tether and Bitfinex Crypto Asset Litigation,* **19 Civ. 9236 (S.D.N.Y.)**

Dear Judge Failla:

        We write in reply to Defendants' further additional letter arguing that, despite the strong objection of all five named Plaintiffs, the Court remove Roche Freedman LLP ("Firm") as co-lead counsel in this matter.

        Defendants' initial letter sought the extraordinary remedy of disqualification based solely on a series of spliced video recordings of a single lawyer who has since sworn those statements were false or misinterpreted.

        In addition to Mr. Roche's sworn testimony, the Firm's response marshalled facts that demonstrate the statements are either (i) false, (ii) spun by Defendants to imply something not stated, or (iii) do not provide cause to disqualify the entire Firm. Specifically, the Firm submitted a signed pleading stating unequivocally that the initiation of this matter had nothing to do with any relationship between the Firm and Ava Labs, and that Plaintiffs' retention of the Firm pre-dates any work the Firm did for Ava Labs.[1] Discovery was not, and could not have been, abused because no discovery was produced before the video statements were made. Moreover, while Defendants argue the statements imply discovery abuse occurred, the actual recorded statements *never even mention discovery*, much less that Mr. Roche used it for an improper purpose; the statements refer to whistleblower submissions. The Firm's co-counsel, moreover, approved all discovery requests and likewise deny any wrongdoing. Finally, whether any lawyer in this action (on either side) holds an unrelated cryptoasset is both factually and legally irrelevant.

        The Firm also took appropriate steps to avoid any appearance of impropriety. The Firm removed Mr. Roche from its class action practice group, screened him from this case, and Mr. Roche will not receive any portion of the proceeds from this litigation. That should be the end of it. In fact, while other movants stand to benefit from the Firm's removal, the five named plaintiffs who actually retained the Firm and stand to lose the most if deprived of their counsel of choice, all

---

[1] While it should not be necessary to go further than this, the Firm's partners can prove unequivocally that they began preparing this suit long before they ever met Ava Labs.

The Honorable Katherine Polk Failla
September 6, 2022
Page 2 of 5

oppose the Firm's disqualification, and all "express a strong preference that Roche Freedman remain in the case." DE 234.

Under these circumstances, Defendants' continued insistence that the Firm be removed, despite their inability to show any concrete wrongdoing, demonstrates that the Defendants' request is a litigation tactic intended to remove Plaintiffs' preferred counsel—the firm responsible for originating this case, and the firm with the most cryptoasset litigation experience. The inequity Defendants seek, through this gamesmanship, is particularly sharp given the evidence that the videoclips were the apparent result of efforts by defendants in another class action who are seeking to deter the Firm from prosecuting cryptocurrency cases, and who may have now escalated to threats of violence.[2]

Below, the Firm further addresses and refutes each of the main arguments seeking its disqualification.

*First*, Defendants request directly implicates the well-established law that strongly disfavors strategic motions to disqualify opposing counsel. *Scantek Medical, Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny.") (collecting authority). Defendants actions demonstrate this is a tactic. For example, consistent with the irrelevance of such facts, they have expressed no intent to inquire into co-lead counsel's personal cryptoasset holdings at all. And while all three co-lead counsel helped draft the amended complaint and authorized every discovery request, Defendants only seek to remove this Firm, *i.e.,* the firm that investigated, developed, pursued, and filed the case, and the firm with by far the most experience in the crypto-asset space. Such disqualification efforts are improper. *See, e.g.,* *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 48 (S.D.N.Y. 2012) ("It is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class [so] . . . new class counsel [] will more readily compromise the claims . . . It is this presumption of strategic behavior by class action defendants that has convinced courts to preclude, or severely limit, their ability to raise alleged ethical violations in the context of class certification."). Consequently, "except in rare cases, ethical issues regarding attorneys are properly dealt with in professional disciplinary bodies rather than by motions to disqualify counsel, which are subject to abuse." *Universal City Studios, Inc. v. Reimerdes*, 104 F. Supp. 2d 334, 358 (S.D.N.Y. 2000), *on reconsideration*, 2000 WL 1016649 (S.D.N.Y. 2000).

To be clear, while Mr. Roche's statements were improper, Defendants have failed to show any evidence that the Firm's attorneys remaining on the case have done anything questionable. On this record, the reasonable inference is that Defendants' continued pursuit of disqualification is because they stand to benefit from it. In short, Defendants wrongly impugn the Firm's motives and

---

[2] In the last several days the Firm has heard these defendants may intend physical harm against Mr. Roche. While it is difficult to verify the severity of this threat, whether someone in fact possesses such an intent, or simply wants Mr. Roche to believe they do, the Firm has contacted law enforcement about the matter.

99 Park Ave., Suite 1910, New York, NY 10016    |    (t) 646.350.0527 (f) 646.392.8842    |    www.rochefreedman.com

The Honorable Katherine Polk Failla
September 6, 2022
Page 3 of 5

actions while they would have the Court ignore their own motives in making those accusations—which the law accounts for in strongly disfavoring the relief they seek.

*Second*, Defense counsel argues there has been discovery abuse, but that argument collapses under scrutiny. Mr. Roche never said he shared confidential discovery materials. That is an inference Defendants are urging the Court to make from comments in the video that, Mr. Roche has explained, simply referred to whistleblower/insider submissions. Mr. Roche has now sworn he did not share confidential discovery, the timeline demonstrates such sharing was impossible, the Firm has signed a pleading under Rule 11 that no such discovery was shared, the alleged recipient has likewise denied receiving it,[3] and co-counsel agrees that no improper discovery was sought. Defense counsel nevertheless urges the Court to ignore the facts, timeline, and sworn testimony, construe Mr. Roche's statements in the worst possible way, impute that conduct to the entire Firm, and then disqualify the Firm for it. That is unreasonable.

*Third*, the Firm brought this suit because we concluded, as other analysts in the crypto-asset space had concluded (without appreciating or analyzing the applicable law), that Tether was not fully backed and that Defendants were manipulating prices. Defendants have already tried and failed to show that the allegations based on these conclusions are wrong as a matter of law. The Firm did not bring suit to try to affect the price of any crypto-asset, and the supposed prospect that the prosecution of the lawsuit could have such an effect could implicate any lawyer holding crypto-assets. Nor are Plaintiffs entitled to discovery to determine whether any such motivations are at play. The relevant question, from either an ethical or optical perspective, is whether counsel is mounting non-frivolous claims and defenses and whether counsel is representing the best interests of the class. Any other rule would require Courts supervising class actions to mandate full and frank disclosure of class counsel's assets, and then require that Court—presumably by hiring experts—to determine whether the resolution of the case could affect those assets to such a degree that counsel should be conflicted out of the representation. That has never been the law.

*Fourth*, although we respect our co-counsel's submission, and remain amenable to continuing the good work the firms have done together over the past two years, both the solution they propose and the rationales underlying it are incorrect. Removal of this Firm would not avoid potential discovery disputes, as Defendants reserve the right to take issue with the origins and prosecution of this claim regardless. The proper way to address an argument that co-lead counsel are seeking discovery for the wrong reasons is not to remove this Firm, but for co-lead counsel collectively to show that any such argument is baseless—that the requested discovery is relevant, that no counsel has ever breached the confidentiality order in this case and that there is no reasonable basis for somehow presupposing an officer of the court intends to do so.

In addition, contrary to what seems to be implicit in our co-counsel's submission, their clients are the named Plaintiffs—not absent class members. These Plaintiffs, the ones who have overseen the day-to-day conduct of this litigation for the past three years, "have all reviewed [co-

---

[3]  https://el33th4x0r.medium.com/my-statement-about-the-crypto-leaks-lies-ef2005da752 ("We do not receive materials or information from him").

The Honorable Katherine Polk Failla
September 6, 2022
Page 4 of 5

counsel's] letter and stated that they disagree with its content and recommendation; in short, the named plaintiffs express a strong preference that Roche Freedman remain in the case." DE 234. Under these circumstances, it is incorrect for co-counsel to suggest that our Firm's continued involvement is not in the best interest of the proposed class.

Inasmuch as our co-counsel mean to suggest that the named Plaintiffs are making an ill-informed decision, or one that should simply be disregarded, we disagree. Our co-counsel are understandably upset with the optics of the video statements, but, as detailed above and in our earlier letter, the Firm has addressed those optics. Removing the Firm is not necessary to address any optical issue. In fact, while removing the Firm would inure to co-counsel's financial benefit, it would harm the class and override the named Plaintiff's' express preference. Our co-counsel does not adequately account for these facts in their submission, and they fail to address at all the optical issue they run the risk of raising themselves.[4] They also discount some of the named plaintiffs' statements that they do not feel comfortable continuing acting as a fiduciary to the class without this Firm's continued involvement.

*Fifth*, Defendants' proposed removal would, in multiple respects, send the wrong message. The following is indisputable: someone carefully orchestrated the meetings, statements, and circumstances to record Mr. Roche making compromising statements. Someone then edited the video recordings to feature the statements prompting these submissions, released the edited recordings to the general public on a website along with a story that went far further than the actual statements, and within five minutes of that release, a named defendant in a class action the Firm has brought Tweeted that the video recordings had been released. It is telling that every other story on the website involves those same defendants, that historic postings and registrations demonstrate collaboration between the site and those defendants, and that the release was made less than two weeks before a scheduled oral argument on the motion to dismiss in that class action.

These actions were clearly taken to hurt Mr. Roche, discredit his good work in the cryptocurrency space, and thereby obtain an advantage against the classes we represent in this space. While we do not condone Mr. Roche's statements, we do submit that to afford these Defendants the relief they seek would effectively signal that any and all parties could benefit from targeting opposing counsel and their firms through underhanded means. We respectfully submit that is not good precedent to set or conduct to incentivize.

In this case, in sum, the demanding legal standards for disqualifying the Firm have not been met. Defendants have not even met their initial, burden-shifting showing that any Firm attorney improperly shared any confidential information in this case with any third party. *See Kassis v. Teacher's Ins. & Annuity Ass'n*, 717 N.E.2d 674, 677-78 (N.Y. 1999) (applying this threshold requirement with respect to a firm attorney's alleged acquisition of confidential client information

---

[4] In the absence of any concrete suggestion that the Firm's continued involvement would somehow hurt the case, we believe the message on requests like Defendants' here should be that co-lead counsel in class actions should focus their resources towards prosecuting and winning the case.

The Honorable Katherine Polk Failla
September 6, 2022
Page 5 of 5

at a former law firm). Nor have Defendants shown that any Firm attorney disclosed any confidential information with any third party. In addition, where Mr. Roche has withdrawn from the matter and the Firm has set up an ethical wall preventing his participation, disqualification is not necessary, because there is no evidence that any Firm attorney intends to use any confidential information in this case in any improper respect. *See, e.g.*, *TI Payments LLC v. New U Life Corp.*, Case No. 19-cv-01816-APG-DJA, 2021 WL 139989, at *9-11 (D. Nev. Jan. 14, 2021) (under the "high standard" to be met, finding not "necessary" the disqualification of law firm for individual lawyer's possession of information from prior client on the conditions that the lawyer withdraws from the case, the firm screens the lawyer, and the lawyer will not share in any fees). In such circumstances, "no one should be punished through disqualification." *State Compensation Ins. Fund v. Drobot*, No. SACV 13-956 AG (CWx), 2014 WL 12579808, at *10 (C.D. Cal. July 11, 2014). The "Court's focus must be forward, not backward," and there is "no reason to believe the outcome of this case will be affected if [the Firm] continues to represent Plaintiff[s]." *Drobot*, 2014 WL 12579808, at *10. The ethical wall the Firm has put in place resolves any concerns with any appearance of impropriety going forward and thereby gives the requisite weight to the precept that a "party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing—on which the party seeking disqualification bears the burden—that counsel's removal is warranted." *Total Asset Recovery Servs., LLC v. Huddleston Capital Partners VIII LLC*, No. 1:21-CV-2466-ALC, 2022 WL 1125924, at *1 (S.D.N.Y. Apr. 15, 2022) (quotations omitted). This a proposed class action, to be sure, but as to the Court-appointed lead Plaintiffs, it remains true here that "[d]isqualification denies a party's right to representation by the attorney of its choice." *Id.* (quotations omitted). Finally, for all of these reasons, no submission remotely meets the standard of showing that the Firm's disqualification is "absolutely necessary" under the circumstances. 6 *Newberg & Rubenstein on Class Actions* § 19:13 (6th ed. June 2022 update) (quotations omitted).

For the foregoing reasons we respectfully request that the Court deny Defendants' request or, in the alternative, schedule a conference so that the Firm has an opportunity to address these issues in more detail including any concerns that Your Honor may have.

Respectfully submitted,

*/s/ Velvel (Devin) Freedman*
Devin "Vel" Freedman
Edward Normand
Joseph M. Delich
**ROCHE FREEDMAN LLP**
99 Park Avenue, 19th Floor
New York, NY 10016
vel@rochefreedman.com
tnormand@rochefreedman.com
jdelich@rochefreedman.com

# ECF 248





September 30, 2022

<u>**Via ECF and E-mail**</u>

The Honorable Katherine Polk Failla
U.S. District Court Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

Re:    <u>***In re Tether and Bitfinex Crypto Asset Litigation***</u><u>**, 19-cv-09236 (KPF)**</u>

Dear Judge Failla:

In advance of the October 3, 2022 hearing in the above-referenced matter, *see* ECF No. 237, Selendy Gay Elsberg PLLC ("<u>Selendy Gay Elsberg</u>") and Schneider Wallace Cottrell Konecky LLP ("<u>Schneider Wallace</u>") write in response to specific statements by Roche Freedman LLP ("<u>Roche Freedman</u>") and from the firms of Kirby McInerney LLP ("<u>Kirby</u>") and The Radice Law Firm ("<u>Radice</u>"). Selendy Gay Elsberg and Schneider Wallace write only in their capacity as interim class counsel and specifically not on behalf of the named plaintiffs.

## I.    Interim Lead Counsel Owe Duties to The Class as a Whole

As we stated in our September 2, 2022 letter, ECF No. 234, we do not believe that Roche Freedman's continued involvement as interim lead counsel is in the best interests of the class. We recognize the named plaintiffs have a different view, *see* ECF Nos. 232, and respectfully disagree.

In its September 6, 2022 letter, Roche Freedman states: "[C]ontrary to what seems to be implicit in" the September 2, 2022 letter from Selendy Gay Elsberg and Schneider Wallace, "their clients are the named Plaintiffs—not absent class members." ECF No. 236 at 3. To the extent Roche Freedman argues that interim class counsel owe duties only to the named plaintiffs, and not to absent class members, we disagree. The Federal Rules are clear that class counsel have a duty "to act on behalf of a putative *class*," Fed. R. Civ. P. 23(g)(3) (emphasis added), and that "Class counsel must fairly and adequately represent the interests of the *class*," Fed. R. Civ. P. 23(g)(4) (emphasis added). Leading authorities recognize that interim lead counsel have the same obligations. *See* 6 Newberg and Rubenstein on Class Actions § 19:2 (6th ed., June 2022 Update) ("[T]here is little doubt that an attorney pursuing a class suit has some duty to the prospective class and generally must act in the class's best interest."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("[C]lass attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.").

Because class counsel's duties are to the class, if there is a disagreement between class counsel and the named plaintiffs, it is counsel's obligation to act in what they believe are the best interests of the class as a whole. *See Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494, 496 (S.D.N.Y. 1994) ("Class Counsel must act in a way which best represents the interests of 'the entire class and is not dependent on the special desires of the named plaintiffs.'"), *aff'd* 67 F.3d 1072, 1078 (2d Cir. 1995) (quoting *Parker v. Anderson*, 667 F.2d 1204, 1211-12 (5th Cir. 1982)).

Selendy Gay Elsberg and Schneider Wallace's request that the Court remove Roche Freedman is grounded in this understanding.[1]

## II. Selendy Gay Elsberg and Schneider Wallace Should Remain as Interim Class Counsel

Contrary to the views expressed by the Kirby and Radice law firms, a disagreement between named Plaintiffs and interim class counsel does not create an "untenable" situation. *See* ECF No. 235 at 4. Any difference of opinion among interim class counsel has not interfered with their vigorous pursuit of claims on behalf of the putative class, including in a recent motion to compel. *See* ECF Nos. 239, 247.

To the extent the Kirby and Radice firms suggest that Selendy Gay Elsberg and Schneider Wallace should be removed as class counsel, we also disagree. Selendy Gay Elsberg and Schneider Wallace have done substantial work on behalf of the putative class, including:

- filing a consolidated amended complaint reflecting substantial economic analysis and analysis of the blockchain, *see* ECF No. 114;

- opposing Defendants' motions to dismiss, *see* ECF No. 182; and

- obtaining hard-fought discovery from Defendants, *see* ECF Nos. 223, 247.

Both firms are deeply familiar with crypto-assets, the operation of crypto-exchanges, and the operation and evolution of the markets for stablecoins and cryptocommodities. Kirby and Radice, in contrast, admit they "have not been involved in the litigation," ECF No. 235 at 2 n.6, and identify no meaningful experience in litigation concerning crypto-assets. Removing Selendy Gay Elsberg and Schneider Wallace and appointing Kirby and Radice would prejudice the class by saddling the class with counsel less versed in the subject matter and unfamiliar with the progress of the case. This wholesale substitution would also likely require extensions to the discovery schedule while Kirby and Radice familiarize themselves with the case.

---

[1] In further support of our understanding that we owe fiduciary duties to the class as a whole, we respectfully submit as Exhibit 1 the Declaration of Bruce Green, an expert in professional responsibility and legal ethics whom Selendy Gay Elberg and Schneider Wallace have retained in connection with this matter.

Respectfully submitted,

/s/ Caitlin Halligan

Philippe Z. Selendy
Caitlin Halligan
Andrew R. Dunlap
SELENDY GAY ELSBERG PLLC
1290 Sixth Avenue
New York, NY 10104
pselendy@selendygay.com
challigan@selendygay.com
adunlap@selendygay.com

/s/ Todd M. Schneider

Todd M. Schneider (*pro hac vice*)
Jason H. Kim (*pro hac vice*)
Matthew S. Weiler (*pro hac vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
tschneider@schneiderwallace.com
jkim@schneiderwallace.com
mweiler@schneiderwallace.com

*Interim Lead Counsel and Attorneys for Plaintiffs and the Proposed Class*