CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA
Research LLC, Dfinity Foundation and
Dominic Williams*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY**<br><br>Date: January 12, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT......................................................................................................2

     A.   Mr. Roche Violated the California Rules of Professional Conduct.........2

     B.   Mr. Roche's Departure from the Firm Does Not Cure the Violation. .....4

     C.   FNF Cannot Evade the Conflict By Arguing That Defendants Lack Standing.......7

     D.   FNF Cannot Evade the Conflict By Suggesting That Mr. Roche Was Set Up........9

     E.   Disqualification of Roche Freedman (Now FNF) Is Appropriate. ..........9

III. CONCLUSION.................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ballew v. City of Pasadena*,
  No. CV 18-0712 FMO (ASX), 2020 WL 4919384 (C.D. Cal. Apr. 13, 2020) ............7

*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*,
  52 Cal. App. 4th 1 (Cal. Ct. App. 1997) ..................................................................8, 10

*In re Complex Asbestos Litig.*,
  234 Cal. App. 3d 572 (Cal. Ct. App. 1991) ....................................................................5

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  658 F.2d 1355 (9th Cir. 1981) ........................................................................................4

*Corns v. Laborers Int'l Union of N. Am.*,
  No. 09-CV-4403 YGR, 2014 WL 1319306 (N.D. Cal. Mar. 31, 2014) .......................9

*Emin Gün Sirer v. Emre Aksoy*,
  No. 21-cv-22280 (S.D. Fla.) ...........................................................................................6

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) ............................................................................................7

*Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,
  3:15-cv-01525-GPC-AGS, 2018 WL 538961 (S.D. Cal. Jan. 24, 2018)......................7

*Hardin and Williams v. TRON Foundation, et al.*,
  20-cv-02804 (S.D.N.Y.)..................................................................................................1

*Kayes v. Pac. Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995) ..........................................................................................3

*Klein v. Facebook, Inc.*,
  No. 20-cv-08570, 2021 WL 3053150 (N.D. Cal. July 20, 2021) .................................9

*McIlwain v. Brown*,
  CV 18-5275-DMG (SKx), 2019 WL 8219492 (C.D. Cal. Aug. 30, 2019) ..................4

*Netlist, Inc. v. SK hynix Inc.*,
  No. 8:16-CV-01605-JLS-JCGx, 2016 WL 8905079 (C.D. Cal. Dec. 5, 2016)............9

*In re Tether and Bitfinex Crypto Asset Litigation*,
  19-cv-9236-KPF (S.D.N.Y.)......................................................................................1, 9

*United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*,
  No. 5:18-CV-00612-EJD, 2018 WL 6619981 (N.D. Cal. Dec. 18, 2018) ...................9

**Statutes & Rules**

California Rule of Professional Conduct 1.7 ....................................................................................4

California Rule of Professional Conduct 1.10 ...................................................................................5

Federal Rule of Civil Procedure 23 ........................................................................................4, 8, 10

## I. INTRODUCTION

Since Defendants filed their Motion to Disqualify in this case,[1] Judge Katherine Polk Failla of the U.S. District Court for the Southern District of New York—in a similar blockchain-related securities class action—conducted extensive oral argument and ordered the removal of Roche Freedman (now "Freedman Normand Friedland" or "FNF") as counsel. *See* Declaration of Kevin J. Orsini, Exhibit 1 attached thereto ("Ex(s)."") (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.), Decision ("Failla Decision"), at 3:16-19).  Judge Failla explained that "allowing the Roche Freedman [now FNF] firm to continue as interim class counsel with the metaphorical baggage they now carry is not in the best interests of the class." *Id.* at 11:20-22. Judge Failla also emphasized that "the degree to which the Roche Freedman [now FNF] firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements." *Id.* at 11:14-16.  Parties in at least ***three*** other actions likewise have sought FNF's removal in light of Mr. Roche's violations and the conflicts and impropriety that his statements revealed.  *See* ECF Nos. 72-6, 72-8, 72-11.  FNF voluntarily withdrew from two of those actions before those judges could rule on FNF's removal.  *See* Ex. 2 (*Hardin and Williams v. TRON Foundation, et al.*, 20-cv-02804 (S.D.N.Y.) (ECF No. 99)); ECF No. 72-8.

Now, in its Opposition to Defendants' Motion to Disqualify (ECF No. 76 ("Opp.")), FNF makes clear that it still fails to grasp the seriousness of Mr. Roche's statements, ethical impropriety, and abuse of the legal system, which fatally taint FNF (Roche Freedman principals and attorneys operating under a different name) from continuing as counsel in this case.  Faced with the consequences of Mr. Roche's statements, FNF attempts to deflect and minimize rather than acknowledge and show remorse for the issues, puts forth a series of strained legal arguments that miss the point, and claims—irrelevantly—that Mr. Roche was set up.  This underscores the fundamental deficiencies in FNF's arguments.  This Court should grant Defendants' Motion to Disqualify and should remove FNF as interim class counsel.

---

[1] ECF No. 72.  Capitalized terms have the meanings assigned to them in Defendants' opening brief ("Mem."). All citations and quotations are omitted and all emphasis added unless otherwise noted.

-1-
DEFENDANTS' REPLY ISO MOTION TO DISQUALIFY
CASE NO. 3:21-CV-06118-JD

Mr. Roche himself stated that he uses strategic litigation as a "tool to competition,"[2] files lawsuits against Ava Labs' competitors in order to redirect regulators' attention from Ava Labs to "other magnets,"[3] and uses the discovery process to "see[] the insides" of his clients' competitors.[4] Roche Freedman's after-the-fact efforts to distance itself from Mr. Roche—including by rebranding itself as "FNF"—are insufficient. Because FNF is a boutique law firm where Mr. Roche was the founding named partner, the conflict of interest is imputed to the firm in its entirety. Mr. Roche brought this lawsuit together with his partners at FNF. Mr. Roche states he did so for improper motives, and FNF cannot cure that defect after the fact by arranging for Mr. Roche to leave the firm and changing the letterhead. The record establishes that each of the named partners of FNF still has substantial ownership interest in Ava Labs, and the firm apparently still represents Ava Labs' CEO.

FNF's further attempts to sidestep the issues by claiming that Defendants lack standing or have "unclean hands" are also meritless. The Court has the inherent power to preserve the integrity of the adversarial process and to protect the putative class's interests. Defendants plainly have standing to protect against the potential misuse of their confidential information and the litigation process. Although FNF argues that the videos were recorded surreptitiously, no one coerced Mr. Roche into making the statements he made. To protect both the judicial process and the absent class members, this Court should disqualify FNF. Otherwise, FNF's continued participation in this case will lead to the precise sideshows Judge Failla identified—to the detriment of the putative class and Defendants alike.

## II.    ARGUMENT

### A.    Mr. Roche Violated the California Rules of Professional Conduct.

FNF contends that "Defendants' motion is based almost exclusively on the CryptoLeaks article about Mr. Roche," Opp. at 5; FNF is incorrect. This motion relies exclusively on

---

[2] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[3] *Id.*

[4] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

2

***Mr. Roche's own words***.  Mr. Roche himself stated, for example, that "litigation is an underused tool" and confirmed that he uses such litigation as "a strategic instrument to support Ava Labs,"[5] stated that plaintiff classes are "100,000 idiots,"[6] and stated that he uses the discovery process to "see[] the insides" of his clients' competitors.[7]  *See* Mem. at 9-11.  FNF, a small firm Defendants are informed is comprised of the exact attorneys who worked at Roche Freedman, less Mr. Roche, has provided no explanation for these statements.  As Judge Failla explained: "It is too easy to say that Mr. Roche was drunk and stupid.  His statements were coherent and logical and too detailed . . . to dismiss out of hand.  Roche Freedman [now FNF] has offered a number of arguments seeking to mitigate or contextualize these statements, but largely they do not succeed."  Ex. 1 (Failla Decision), at 9:17-22.  FNF attempts to downplay this instructive decision by relegating it to a footnote on the last page of its opposition, where FNF deflects that the decision is irrelevant.  Opp. at 15 n.6.   Like the instant litigation, *In re Tether* is a securities class action that Roche Freedman (now FNF) filed against a blockchain company.  And like the instant litigation, the defendants sought the firm's removal on the basis of Mr. Roche's statements and the violations that those statements revealed.  In fact, disqualification is even more proper here, because while Roche Freedman argued that the *In re Tether* defendants were not competitors of Ava Labs, *see* Ex. 1 (Failla Decision) at 10:3-6, FNF here does not (and cannot) dispute that Defendants and Ava Labs are competitors.  In light of the fact that "[t]he responsibility of class counsel to absent class members . . . does not permit even the ***appearance*** of divided loyalties of counsel," *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995), this constitutes a direct conflict and violates the California Rules of Professional Conduct.  *See* Mem. at 9-11.

FNF argues that there is no "[a]ctual [c]onflict," because "both Plaintiffs and Ava Labs want to maximize Plaintiffs' recovery against Defendants," Opp. at 11-12, but this position

---

[5] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4).

[6] Video 24 (https://d33wubrfki0l68.cloudfront.net/ca154b2403c4f503206afd0666cf4694c23c8dd3/de306/videos/c3-22-these-100000-idiots.mp4).

[7] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

underscores FNF's failure to appreciate the seriousness of the issue. FNF is seeking appointment from this Court as class counsel under Fed. R. Civ. P. 23(g), and, as even FNF recognizes, it is not "*ever* proper for an attorney to commence a class action for the benefit of anyone other than" the client, *id*. at 12 (emphasis in original). Indeed, "[e]ven where there is no direct adversity, a conflict of interest . . . under paragraph (b) exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities, interests, or relationships, whether legal, business, financial, professional, or personal." Cal. R. Prof'l Conduct 1.7, Comment 4; Mem. at 9.[8] Even if both Plaintiffs and Ava Labs want to "maximize Plaintiffs' recovery against Defendants," Opp. at 12, FNF's loyalty to Ava Labs—and Mr. Roche's statement that he uses litigation as a "competitive tool" for Ava Labs—poses a "significant risk" that FNF's representation of the class will be "materially limited." Cal. R. Prof'l Conduct 1.7(b). It also creates the "***appearance*** of impropriety," which further supports disqualification. *See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1360–61 (9th Cir. 1981).

### B. Mr. Roche's Departure from the Firm Does Not Cure the Violation.

In an apparent effort to undermine this motion and other similar efforts, Roche Freedman has announced that Mr. Roche has purportedly left the firm and that Roche Freedman has changed its name to "Freedman Normand Friedland." *See* ECF No. 76-15; Ex. 3 (Bloomberg Law). But this is nothing more than window dressing; Mr. Roche's conflict—which existed at the time this litigation was filed and at the time the Court considered FNF's appointment as counsel for lead plaintiff and the putative class—is imputed to his partners who remain at FNF.

---

[8] Plaintiffs cite *McIlwain v. Brown*, CV 18-5275-DMG (SKx), 2019 WL 8219492, at *8-9 (C.D. Cal. Aug. 30, 2019), for the proposition that there is no conflict because "both Plaintiffs and Ava Labs want to maximize Plaintiffs' recovery against Defendants." Opp. at 12. But *McIlwain* is inapposite. That case concerned an alleged conflict between an individual client's interests and those of the *law firm* representing it—it did not concern a conflict between a proposed class and a *separate client*. *Id.* The portion of *McIlwain* that Plaintiffs invoke stands for the unremarkable proposition that an individual defendant and his counsel both want to prevail against the plaintiff.

4

FNF's actions are too little too late. The question for this Court is whether Mr. Roche's improper conduct was imputed to Roche Freedman (now FNF) at the time he and his partners brought this lawsuit. After-the-fact, superficial corrective measures are insufficient. *See* Cal. R. Prof'l Conduct 1.10(b) (providing imputation even "[w]hen a lawyer has terminated an association with a firm," if "the matter is the same or substantially related to that in which the formerly associated lawyer represented the client"); *In re Complex Asbestos Litig.*, 234 Cal. App. 3d 572, 594 (Cal. Ct. App. 1991) ("Screening must take place at the outset to prevent any confidences from being disclosed."). Mr. Roche has admitted that he had improper motives in bringing this lawsuit. FNF cannot cure that defect by arranging for Mr. Roche to leave the firm and then rebranding.

FNF argues that there is no evidence that its remaining attorneys share Mr. Roche's improper purposes in pursuing class actions or would share Defendants' confidential information with Ava Labs. *See* Opp. at 13. But this Court can draw reasonable inferences directly to the contrary from the known facts: (i) **all three** named partners of FNF—Messrs. Freedman, Normand and Friedland—still own substantial amounts of AVAX tokens (the tokens issued by Ava Labs), ECF No. 72-12; and (ii) Mr. Normand has entered an appearance in this litigation and has not withdrawn (indeed, he appears to be lead counsel and signed FNF's Opposition to this very disqualification motion). *See* Opp. at 15. Although FNF likens its holdings to those of an attorney who holds Apple stock representing a client suing Microsoft, *see* Opp. at 13 n.5, the facts here are fundamentally different: Roche Freedman and Ava Labs launched on the ***same day*** in the ***same*** office space;[9] FNF received an enormous equity stake in Ava Labs worth ***tens of millions of dollars*** or more, *see* Mem. at 3 & n.4; and Mr. Roche has made statements regarding the ***strategic use of class action litigation***—including specifically this lawsuit—to benefit Ava Labs,[10] has

---

[9] Video 1 (https://d33wubrfki0l68.cloudfront.net/1a432cb907f50390478d5c7b5c2c30c24547d110/5ca00/videos/c3-00-office-ava-labs-launch.mp4).

[10] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4); Video 19 (https://d33wubrfki0l68.cloudfront.net/b4a2e7900f289e01ce2b25dfa5a254850a22496d/e7035/videos/c3-17-i-can-sue-solana.mp4).

5

asserted that he uses litigation as a competitive tool to harm Ava Labs' competitors,[11] and has acknowledged that Ava Labs is a direct competitor of Defendants.[12]

FNF asserts that the firm "is no longer representing Ava Labs in any matter (though it acts as local counsel to an Ava Labs principal in a longstanding defamation case)," Opp. at 6, but this further illustrates the firm's improper deflections and obfuscations from the serious issues here. The "Ava Labs principal" to whom FNF refers appears to be Ava Labs CEO Emin Gün Sirer. *See* Ex. 4 (*Emin Gün Sirer v. Emre Aksoy*, No. 21-cv-22280 (S.D. Fla.) (ECF No. 1 (complaint))). Notably, Mr. Roche remains counsel of record for Mr. Sirer, *together with* Mr. Freedman and other Roche Freedman (now FNF) lawyers from the firm's Miami and New York offices. *See* Ex. 5 (*Emin Gün Sirer v. Emre Aksoy*, No. 21-cv-22280 (S.D. Fla.) (docket sheet)).[13] Furthermore, Mr. Roche has described his relationship with Mr. Sirer as "like brothers,"[14] and has emphasized that the "defamation case" to which FNF refers (including publicly tagging the defendant in the Miami airport and sending a recording of the incident to Mr. Sirer) is "why Gün loves me."[15]

As Judge Failla concluded: "If Mr. Roche's boasts are true—and again, I can't reject them out of hand—then it would actually surprise me if such an ethos were limited to Mr. Roche alone. In any event, the degree to which the Roche Freedman [now FNF] firm has attempted to minimize Mr. Roche's statements gives me concern that they don't appreciate the seriousness of those statements." Ex. 1 (Failla Decision), at 11:11-16. Indeed, although FNF relegates the decision to a footnote, *see* Opp. at 15 n.6, Judge Failla expressed her concern that "Mr. Roche's problems will

---

[11] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[12] Video 17 (https://d33wubrfki0l68.cloudfront.net/b660cb79f51a071ece800cda7fc3521e5e21a59d/0467e/videos/c3-16-0-dfinity-is-a-competitor-to-avalanche.mp4).

[13] Indeed, so far as the PACER docket shows, the FNF lawyers have not filed a notice of appearance in the defamation matter for Mr. Sirer, the Ava Labs CEO, to reflect that Roche Freedman has changed its name to FNF or that Mr. Roche is no longer associated with Roche Freedman, and Mr. Roche remains one of the counsel of record in that action. *See id.*

[14] Video 5 (https://d33wubrfki0l68.cloudfront.net/61dabcad45d46c6207e4acded4ab34a49a0aa163/fc7a7/videos/c3-04-office-same-interests-same-goals.mp4).

[15] Video 14 (https://d33wubrfki0l68.cloudfront.net/ccce812b0d07fc6c1bb9928d1a7a99db011ed1af/13125/videos/c3-13-gun-watches-video-once-a-month.mp4).

extend to others at his firm or will otherwise adversely impact the case," Ex. 1 (Failla Decision) at 9:7-9, and that "the litigation strategies suggested in [Mr. Roche's] recorded comments were implemented by him with respect to Ava Labs or other clients of the firm or by others at the firm," *id.* at 9:14-16. Any reasonable observer would have these concerns about FNF, Mr. Roche's purported departure notwithstanding, because: (i) Mr. Roche did not found the small Roche Freedman firm alone, but alongside several partners who remain at the firm; (ii) Mr. Roche and his partners brought this lawsuit at a time when, according to Mr. Roche's own statements, he had improper motives, and (iii) given the small size of the firm, Mr. Roche is highly likely to remain in contact with his former partners and retain an ongoing economic interest in the success of the firm and its pending cases. Indeed, as noted above, Mr. Roche appears still to be counsel of record alongside his former partners in the very defamation case for the Ava Labs CEO to which FNF refers in its Opposition. *See* Opp. at 6. Mr. Roche's violations therefore must be imputed to the remaining lawyers at FNF, including counsel in this case.

### C. FNF Cannot Evade the Conflict By Arguing That Defendants Lack Standing.

FNF argues that Defendants "lack standing to complain about a conflict among FNF's clients," Opp. at 7, but this argument is legally baseless.

*First*, this Court has the inherent power to disqualify counsel *sua sponte*: "the court need not decide whether [the movant] has standing to move for disqualification because the court 'possesses the power to consider and decide the motion for disqualification by virtue of its inherent power to preserve the integrity of the adversary process.'" *Ballew v. City of Pasadena*, No. CV 18-0712 FMO (ASX), 2020 WL 4919384, at *8 (C.D. Cal. Apr. 13, 2020) (quoting *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*, 3:15-cv-01525-GPC-AGS, 2018 WL 538961, at *2 (S.D. Cal. Jan. 24, 2018)). Therefore, "Article III has conferred that power regardless of how the ethical violation comes to the Court's attention." *Id.* (quoting *Greenfield*, 2018 WL 538961, at *3); *see also Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them[, and] an arsenal of sanctions they can impose for unethical behavior . . . [including]

7

disqualification of counsel."). Standing requirements thus do not apply to a disqualification motion.

*Second,* since this is a putative class action, counsel has a "responsibility to absent class members" and must meet a "heightened standard." *Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 52 Cal. App. 4th 1, 12 (Cal. Ct. App. 1997); *see also* Mem. at 14. FNF's inability to meet this heightened standard will prevent the firm's appointment as class counsel at the class certification stage. *See* Fed. R. Civ. P. 23(g)(1), (4) (requiring the Court to determine that class counsel "fairly and adequately represent[s] the interests of the class" considering "any . . . matter pertinent to counsel's ability" to do so); Mem. at 14. This Court has the authority to revisit and modify its order appointing lead counsel, *see* Fed. R. Civ. P. 23(d)(2), in light of Mr. Roche's statements or otherwise, as Judge Failla did, *see* Ex. 1 (Failla Decision) at 3:20-25.

*Third*, Defendants plainly have "a personal stake beyond the general interest in the fair administration of justice." Opp. at 7. Mr. Roche stated that "litigation can be a tool to competition . . . a fantastic tool to competition,"[16] and agreed that he uses litigation as a "strategic instrument to support Ava Labs."[17] Mr. Roche also stated that he became "Ava Labs' crypto expert" "because [he] sue[d] half the companies in the [cryptocurrency] space" and has "seen the insides of every single crypto company."[18] But Mr. Roche did not bring these class actions by himself; the firm that he founded, and which continues on as FNF, did so. Defendants have an obvious and serious interest in preventing that firm from gaining access to their confidential information through the discovery process, and, should FNF be permitted to continue as putative class counsel, disputes between the parties over who has access to discovery information could become a distracting sideshow to the detriment of the putative class—FNF's purported clients.

---

[16] Video 10 (https://d33wubrfki0l68.cloudfront.net/1edf92baa6d2ec8203a8568c7869ef5e4b326a71/428f7/videos/c3-09-magnets-for-sec-and-competitive-attacks.mp4).

[17] Video 6 (https://d33wubrfki0l68.cloudfront.net/a799bb8bcde3170c313e3ad7662a41148621c4d1/2fbf3/videos/c3-05-office-litigation-is-a-strategic-instrument.mp4).

[18] Video 8 (https://d33wubrfki0l68.cloudfront.net/68e1d6812f6e7b039402f74be62f625271142a20/73af8/videos/c3-07-office-i-sue-crypto-companies-to-see-inside.mp4).

### D.  FNF Cannot Evade the Conflict By Suggesting That Mr. Roche Was Set Up.

FNF devotes a substantial portion of its Opposition to accusing Defendants of engaging someone to record Mr. Roche and arguing that Defendants therefore have "unclean hands." *See, e.g.*, Opp. at 3-5, 8-9.  But FNF does not suggest that Mr. Roche was somehow coerced into making any of the statements.  In fact, Mr. Roche himself acknowledges that he "made statements that were highly inappropriate." ECF No. 76-15 ¶ 5.  Although Mr. Roche now "deeply regret[s]" such statements, *id.* (which he contends were "spliced, cut, and otherwise taken into [*sic*] context," *id.* ¶ 4),  neither Mr. Roche nor anyone at FNF provides any explanation for the statements.  If there were "context" that would somehow justify or excuse Mr. Roche's statements, then FNF should have provided it to the Court.  It has not.  Indeed, Judge Failla forcefully rejected any argument that Mr. Roche was set up: "No one made him say what he said . . . . [M]aybe he was set up, but you're not helping yourself with those arguments." Ex. 6 (*In re Tether and Bitfinex Crypto Asset Litigation*, 19-cv-9236 (S.D.N.Y.), Hr'g Tr. at 17:14-20).

FNF also contends that Defendants unreasonably delayed the filing of this motion.  *See* Opp. at 9-10.  The *Crypto Leaks* article was published in late August 2022, and Defendants moved to disqualify shortly thereafter.  There was no unreasonable delay.  *See United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc.*, No. 5:18-CV-00612-EJD, 2018 WL 6619981, at *6 (N.D. Cal. Dec. 18, 2018) (holding that even a five-month delay was not unreasonable); *see also Netlist, Inc. v. SK hynix Inc.*, No. 8:16-CV-01605-JLS-JCGx, 2016 WL 8905079, at *7 (C.D. Cal. Dec. 5, 2016) (explaining that the "trial court's denial of a disqualification motion based on a four-and-a-half-month delay [was held] to be an abuse of discretion").  FNF also ignores that the critical issue is "whether disqualification would result in prejudice to the nonmoving party." *Corns v. Laborers Int'l Union of N. Am.*, No. 09-CV-4403 YGR, 2014 WL 1319306, at *4 (N.D. Cal. Mar. 31, 2014).  There would be no prejudice to Plaintiffs here, as the litigation is still in its early stages and Plaintiffs may identify replacement counsel.  *See* Mem. at 15.

### E.  Disqualification of Roche Freedman (Now FNF) Is Appropriate.

The "paramount concern" when considering a motion to disqualify "must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Klein v.*

9

*Facebook, Inc.*, No. 20-cv-08570, 2021 WL 3053150, at *8 (N.D. Cal. July 20, 2021). FNF's continued representation of the putative class would jeopardize the public trust.

FNF's argument boils down to assertions that Defendants' concerns are "baseless" and "speculative," that Mr. Roche's statements are not indicative of any conflict, and that FNF has invested significant resources in this lawsuit. *See* Opp. at 14-15. But, as detailed above, this motion is neither "baseless" nor "speculative," as it is wholly based on ***Mr. Roche's own statements***, which have never been denied. The conflicts presented by Mr. Roche's statements are inescapable and imputed to the firm that he founded, which, until recently, bore his name. Finally, whether FNF has invested resources in prosecuting this action (in which a motion to dismiss is pending) is irrelevant to the question before this Court: whether the firm is irremediably conflicted, and the impact the conflict has on the firm's representation of the putative class. As Judge Failla emphasized: "I cannot say that Mr. Roche's professed class action litigation strategy was limited to [Ava Labs]." Ex. 1 (Failla Decision) at 10:5-6.

FNF's attempt to minimize and deflect Defendants' concerns demonstrates the firm's failure to grasp the seriousness of Mr. Roche's statements; this makes FNF's disqualification even more appropriate. *See id.* at 11:13-18. Should this action proceed to discovery, Defendants continue to have serious concerns about the potential of disclosing confidential information to FNF through the discovery process—and discovery-related disputes will follow if FNF continues as putative class counsel. *See id.* at 7:8-14. Indeed, disqualification in the class action context is "even more compelling," *Cal Pak Delivery,* 52 Cal. App. 4th at 12, and if FNF remains as class counsel, this action will inevitably be derailed by these same issues at the class certification stage, when this Court will need to assess the suitability of FNF as class counsel under Fed. R. Civ. P. 23(g). *See* Mem. at 14. Ultimately, allowing FNF "to continue as interim class counsel with the metaphorical baggage they now carry is not in the best interests of the class." Ex. 1 (Failla Decision) at 11:20-22.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that Freedman Normand Friedland be disqualified from representing Lead Plaintiff and the putative class in this Action.

10

| | | |
|---|---|---|
| Dated: | November 8, 2022 | CRAVATH, SWAINE & MOORE LLP |

 /s/ *Kevin J. Orsini*
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*

QUINN EMANUEL URQUHART & SULLIVAN LLP

 /s/ *Michael E. Liftik*
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

Brenna D. Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Telephone:  (212) 849-7000
brennanelinson@quinnemanuel.com

*Counsel for Defendants*

11