# EXHIBIT 1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE TETHER AND BITFINEX
CRYPTO ASSET LITIGATION,
                                        19 Civ. 9236 (KPF)

                                        Decision
------------------------------x
                                        New York, N.Y.
                                        October 13, 2022
                                        2:15 p.m.

Before:

                HON. KATHERINE POLK FAILLA,

                                        District Judge


                        APPEARANCES

ROCHE FREEDMAN LLP
     Attorneys for Plaintiffs
BY:  CONSTANTINE PHILIP ECONOMIDES
     DEVIN FREEDMAN
     EDWARD JOHN NORMAND
     -and-
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
BY:  TODD MICHAEL SCHNEIDER
     MATTHEW SINCLAIR WEILER
     -and-
SELENDY GAY ELSBERG PLLC
BY:  ANDREW RIGGS DUNLAP
     MITCHELL D. NOBEL

KIRBY McINERNEY LLP
     Attorneys for Consolidated Plaintiffs
BY:  KAREN M. LERNER
     DAVID E. KOVEL
     -and-
RADICE LAW FIRM, P.C.
BY:  JOHN D. RADICE
```

MADHTetD

APPEARANCES (Cont'd)

DEBEVOISE & PLIMPTON, LLP (NYC)
     Attorneys for Defendants iFinex, BFXNA, BFXWW, Tether
Holdings Limited, Tether Operations Limited, Tether
International Limited, DigFinex, Giancarlo Devasini, Ludovicus
Jan van der Velde, and Tether Limited
BY:  ELLIOT GREENFIELD
     MELANIE BURKE
     MAEVE L. O'CONNOR
     -and-
LAW OFFICES OF MICHAEL JASON LEE, APLC
     Attorneys for Defendant Potter
BY:  MICHAEL JASON LEE
     -and-
DILLON MILLER & AHUJA, LLP
BY:  SUNJINA KAUR AHUJA
     CHRISTOPHER BEAL

WILLKIE FARR & GALLAGHER LLP
     Attorneys for Defendant Potter
BY:  CHARLES DEAN CORDING
     AMANDA PAYNE

NELSON MULLINS RILEY & SCARBOROUGH LLP
     Attorneys for Defendant Poloniex, LLC
BY:  MATTHEW G. LINDENBAUM
     ROBERT LAURI LINDHOLM JR.

McNAUL EBEL NAWROT & HELGREN PLLC
     Attorneys for Defendant Bittrex, Inc.
BY:  ABBY FAITH RUDZIN
     GREGORY HOLLON

|     |                                                                        |
|-----|------------------------------------------------------------------------|
| 1   | (The Court and all parties present remotely)                           |
| 2   | THE COURT:  The case has been called.  I'm not going                   |
| 3   | to ask the parties to identify themselves because I'm aware            |
| 4   | that my deputy has already taken appearances.                          |
| 5   | I am now going to be giving an oral decision on the                    |
| 6   | applications regarding Mr. Roche and the Roche Freedman firm,          |
| 7   | and I'm going to ask you all, please, to mute your phones as I         |
| 8   | do so, so that there aren't interruptions once I begin.  I'll          |
| 9   | give you a second or two to mute your phones at this time.             |
| 10  | Now I will begin.                                                      |
| 11  | As always, I thank you, those of you who have given me                 |
| 12  | written and oral submissions on these points, and I do                 |
| 13  | genuinely and sincerely appreciate your giving me some                 |
| 14  | opportunities, some time, to consider what was said at the             |
| 15  | October 3 oral argument and to reflect on what I think is a            |
| 16  | very serious issue.  For the reasons that I am about to                |
| 17  | outline, I am modifying my order appointing interim class              |
| 18  | counsel to remove the Roche Freedman firm from that class              |
| 19  | counsel.                                                               |
| 20  | This decision does not require extensive citation to                   |
| 21  | cases.  Unlike Roche Freedman's framing of the issue as one of         |
| 22  | disqualification of a firm, I find that this dispute actually          |
| 23  | arises under Federal Rule of Civil Procedure 23(d)(2), which           |
| 24  | allows an order under Rule 23(d)(1) to be altered or amended           |
| 25  | from time to time and to be combined with an order under               |

1     Rule 16.
2             The order in question is my February 27, 2020, order
3     by way of minute entry appointing lead plaintiff and interim
4     class counsel, and it is the latter portion that I am being
5     asked to revisit.  I have considered the views of the named
6     plaintiffs in this case.  They are the putative class
7     representative, but, ultimately, I conclude that their
8     preferred counsel structure is not in the best interests of the
9     class, and of course, if that causes any of the plaintiffs, the
10    named plaintiffs, to wish to exit the case, I will hear from
11    them when it is appropriate to do so.
12            But before I get to the legal analysis, I do want to
13    spend a moment on the reasons why I am revisiting my prior
14    order, and this is not to beat the proverbial dead horse, but
15    rather just to provide a factual framework for my decision.
16            In January of 2022, nearly two years after my
17    appointment of an interim class counsel team that included the
18    Roche Freedman firm and before the production of discovery in
19    this case, one of the principals at the Roche Freedman, Kyle
20    Roche, made a series of ill-advised comments suggesting, if not
21    asserting, his close ties to and financial interest in Ava
22    Labs, a research and development company that is involved in
23    developing the Avalanche platform and the AVAX cryptocurrency,
24    as well as Mr. Roche's strategic deployment of class action
25    litigation to aid Ava Labs both by focusing regulators on Ava's

competitors and on obtaining confidential information concerning those competitors through the class action process.

Mr. Roche claims that the video recordings of these statements are highly edited and taken out of context, that he was set up by a competitor, and that he was inebriated at the time he made the statements. All of that notwithstanding, Mr. Roche has moved to withdraw from representing the class plaintiffs in this case. The Roche Freedman firm has represented that it will or has walled him off financially from receiving any fees from this case, and Mr. Roche is not currently involved with the firm's plaintiff-side crypto-asset class action practice.

Roche Freedman has suggested that this is sufficient to allow them to remain on as one of the three interim class counsel. Their cocounsel, as well as defendants' counsel, and an earlier contender for interim class counsel all disagree.

In an early effort to frame this issue, I considered whether the factual bases for my decision to include Roche Freedman in the trio of law firms appointed as interim class counsel has changed. That answer is an easy, indisputable yes.

At the February 24, 2020, oral argument, it was Mr. Roche that I heard from first who began by explaining his firm's expertise in the crypto-asset space, and in so doing countering the position offering by the competing Robbins Geller firm regarding the appropriate definition of the class.

1    Ms. Halligan then came in to explain the selling
2    points of each firm and, more to the point, why I should
3    appoint all three of them.  Roche Freedman for their -- her
4    words, not mine -- unparalleled expertise in cryptocurrency;
5    Schneider Wallace for their class action experience; and what
6    was, I believe, then the Selendy & Gay firm, it's now Selendy
7    Gay & Elsberg, for their experience with complex litigation and
8    state law claims.
9    Mr. Roche and Ms. Halligan's arguments convinced me to
10   appoint the three firms as interim class counsel despite my
11   initial expressed hesitancy to do so.
12   In my oral decision, which I believe was issued
13   February 27 of 2020, I remarked, and I'm quoting here, that
14   "what interests me about this case is that it is an interesting
15   combination of old and new.  The cryptocurrency laws is quite
16   novel and lots of issues and not a lot of resolution, but there
17   is a lot of established law out there with respect to the
18   pleading requirements, with respect to traditional antitrust
19   issues and RICO and the Commodities Exchange Act."
20   I included the Roche Freedman to address the novel
21   legal issues that were expected to arise.  I did so based
22   largely on the oral advocacy and anticipated involvement of
23   Mr. Roche, and he is no longer involved in the litigation.
24   But that analysis, while accurate, is also a bit
25   facile.  We are more than two and a half years removed from my

order appointing interim class counsel, and I daresay that we all know more about crypto-assets, crypto exchanges, stablecoin, and crypto commodities than we did when this litigation began.  That said, Mr. Freedman, from the Roche Freedman firm, has forcefully argued that the firm still has a leg up on their cocounsel when it comes to this particular area of the law.

On the other side of the equation is the additional litigation that would ensue if the Roche Freedman firm were to remain in the case.  Defense counsel has made it clear that there will be additional litigation both during the discovery phase if Roche Freedman continues to have access to materials produced by the defendants under the protective order, and then later in connection with the class certification stage.

I want to be clear, or I should say that I'm not optimistic that discovery will be entirely free from disputes if Roche Freedman is out of the case, particularly given the disputes I've already resolved.  But I do acknowledge that there will be additional litigation if and because the firm remains in the case.

The question here distills to what counsel structure is in the best interests of the putative class, and to me that further distills to whether the incremental benefits of Roche Freedman remaining as interim class counsel in terms of their institutional knowledge and their expertise in one of the

substantive areas of the law implicated by the case outweigh the additional litigation burdens occasioned by their involvement. Ultimately, I find that the burdens outweigh the benefits.

For starters, we are two years into this litigation. Everyone has benefited from the on-the-job instruction we've received on crypto-assets and crypto exchanges. And as a result, I believe that the Selendy and the Schneider firms are, or quickly can be, up to speed on that area of the law. Further, I believe that they already have superior expertise in other areas of the law implicated by this litigation, including the Sherman Act, the Commodities Exchange Act, common law fraud, and issues of class action certification. So in consequence, I find that the putative class will not suffer any loss in the quality of their representation if the Roche Freedman firm is discontinued as interim class counsel.

Now, just to amend what I've just said, I said we're two years into this litigation. I think we're closer to three. We've been in this litigation for several years. Let me look at the converse position, though.

The parties have been fighting since long before Mr. Roche's disclosures were made. I am concerned that establishing another front for the parties' disputes will derail this litigation. What is more, I cannot be sure at this time of the size of this new front. So in this regard, I don't

1  share Mr. Normand's view expressed in oral argument that this
2  additional litigation would be but a brief distraction and not
3  disabling.  These ancillary disputes will extend this
4  litigation, they cannot be dismissed summarily, and I don't
5  think that it's in the best interests of the class if they
6  persist.
7           Related to this point is my concern that Mr. Roche's
8  problems will extend to others at his firm or will otherwise
9  adversely impact the case before me.
10          Now, this is almost certainly a consequence of the
11 recency of these disclosures, but the fact is we, or anyone,
12 had not yet gotten to the bottom of the relationship that
13 Mr. Roche has or had with Ava Labs and, by extension, whether
14 the litigation strategies suggested in his recorded comments
15 were implemented by him with respect to Ava Labs or other
16 clients of the firm or by others at the firm.
17          It is too easy to say that Mr. Roche was drunk and
18 stupid.  His statements were coherent and logical and too
19 detailed for me to dismiss out of hand.  Roche Freedman has
20 offered a number of arguments seeking to mitigate or
21 contextualize these statements, but largely they do not
22 succeed.  For example, the firm asserts that their involvement
23 in the instant litigation, or their decision to bring the
24 instant litigation, predates the formation of or certainly the
25 retention by Ava Labs, and that may be.  But Mr. Roche's

comments did not suggest that his strategic use of class action litigation only came into existence after his dealings with Ava Labs. Similarly, even if I accept Roche Freedman's arguments that the defendants in this litigation are not competitors of Ava Labs, I cannot say that Mr. Roche's professed class action litigation strategy was limited to that one client.

Furthermore, given what Mr. Roche did say on the point, I am not comforted by the fact that he did not specifically say in the recordings that he shared confidential materials produced in discovery in this case. And I completely reject the counterargument that removing the Roche Freedman firm as interim class counsel would somehow incentivize misconduct by defense attorneys.

Nor am I persuaded after reading and considering Mr. Roche's declaration that he didn't capitalize on synergies between this litigation and the interests of other Roche Freedman clients. To begin, I currently don't accept his current explanation that he was merely referring to whistleblowers or insiders, given the comments that were made.

More fundamentally, the issues created by -- for Mr. Roche by these disclosures are evolving. They clearly extend beyond this case. I have only limited visibility into these issues, and I will not make findings about what Mr. Roche did or did not do or meant or did not mean based on a two-and-a-half page declaration without a more extensive

1     investigation.

2          Now, to be clear, I acknowledge that there is a
3     difference between Mr. Roche and the Roche Freedman firm, but
4     at this point in time, I have concerns about the firm as well.
5     I acknowledge that similar disclosures haven't been made about
6     other lawyers at the firm, but it remains the case that one of
7     the two named partners at the firm, and the very person who
8     persuaded me to add the Roche Freedman firm to the interim
9     class counsel team, touted a theory of class action litigation
10    that I believe amounts to improper purposes.

11         If Mr. Roche's boasts are true -- and, again, I can't
12    reject them out of hand -- then it would actually surprise me
13    if such an ethos were limited to Mr. Roche alone.  In any
14    event, the degree to which the Roche Freedman firm has
15    attempted to minimize Mr. Roche's statements gives me concern
16    that they don't appreciate the seriousness of those statements,
17    and I've already explained the dim view with which I hold the
18    firm's arguments in mitigation.

19         I want now to return to my earlier point, and that is
20    that allowing the Roche Freedman firm to continue as interim
21    class counsel with the metaphorical baggage they now carry is
22    not in the best interests of the class.  Put somewhat
23    differently, I see this as a case of subtraction by addition,
24    wherein three law firms will have a more difficult time
25    litigating this case than two law firms because of the

1    aftershocks of Mr. Roche's comments.
2             And to repeat, I do not believe that the class will
3    suffer any diminution in their representation if the Selendy
4    and the Schneider firms remain, and for all of these reasons, I
5    am amending my prior order to remove Roche Freedman as interim
6    class counsel.
7             There is one related issue to address, and that is
8    that the Kirby Radice team of attorneys argued that the best
9    course of action here was to start with a clean slate, whereby
10   the Kirby and Radice firms would take over at interim class
11   counsel and, if and as appropriate, new class plaintiffs could
12   be substituted in.
13            While I have given this option consideration, serious
14   consideration, I have ultimately rejected it.  We are too many
15   years into this litigation to switch horses entirely, and I see
16   nothing to suggest that the Selendy and the Schneider firms
17   have comparable issues that would impact their ability to
18   represent the putative class adequately.  So the Selendy and
19   the Schneider firms will remain interim counsel.
20            In short, I am granting Mr. Roche's earlier motion to
21   withdraw because I don't believe I have done that.  I am
22   modifying my prior order to remove Roche Freedman as one of the
23   three interim class counsel.  To the extent appropriate, I will
24   direct Roche Freedman to withdraw from any relevant protective
25   order entered in this case and to return any confidential

1   materials that are covered by that agreement.
2              That is my decision in this case.  I thank you all for
3   listening to it, and I appreciate your allowing me to give it
4   as an oral decision rather than a written.
5              I wish you, your families, and your clients continued
6   safety and good health in this pandemic.
7              We are adjourned.  Thank you.
8              (Adjourned)