# EXHIBIT 3

Filed
November 21, 2022
Clerk of the Court
Superior Court of CA
County of Santa Clara
20CV372622
By:  afloresca

Signed: 11/21/2022 04:07 PM

1

2

3

4

5    ORDER ON SUBMITTED MATTER

6

7

8                         **SUPERIOR COURT OF CALIFORNIA**

9                         **COUNTY OF SANTA CLARA**

10

11   TEMUJIN LABS INC.,                          Case No.:  20CV372622

12          Plaintiff,
                                                 **ORDER CONCERNING (1) TEMUJIN**
13        vs.                                    **LABS INC., A DELAWARE**
                                                 **CORPORATION, TEMUJIN LABS**
14                                               **INC., A CAYMAN ISLANDS**
     ARIEL ABITTAN, et al.,                      **CORPORATION, LILY CHAO,**
15                                               **DAMIEN DING, AND DISCREET LABS**
          Defendants.                            **LTD.'S MOTION TO DISQUALIFY**
16                                               **ROCHE LLP, AND TO STAY, AND TO**
                                                 **CLARIFY, THE COURT'S AUGUST 22,**
17                                               **2022 ORDER; (2) CROSS-**
                                                 **COMPLAINANTS BENJAMIN FISCH**
18                                               **AND CHARLES LU'S MOTION TO**
                                                 **COMPEL FURTHER RESPONSES**
19                                               **REGARDING CROSS-DEFENDANTS'**
                                                 **TRUE IDENTITIES**
20

21

22   TEMUJIN LABS INC.,                          Case No.:  21CV375422

23          Plaintiff,
                                                 **ORDER CONCERNING DEFENDANT**
24        vs.                                    **AND CROSS-COMPLAINANT FRANK**
                                                 **FU'S MOTION TO ENFORCE**
25                                               **AUGUST 22, 2022 RULING AND TO**
     FRANK FU, et al.,                           **COMPEL PRODUCTION OF CHINESE**
26                                               **IDENTITY INFORMATION**
          Defendants.
27

28   AND RELATED CROSS-ACTIONS.

These related actions arise from the business dealings of: (1) Temujin Labs Inc., a Delaware corporation ("Temujin"); (2) a related Cayman Islands corporation; and (3) Temujin's co-founders, who go by the aliases of Lily Chao and Damien Ding.[1] These business dealings involve the development of Temujin as a financial technology company operating under the name "Findora."

In Case No. 20CV372622 ("*Abittan*"), Temujin alleges that Defendants and Cross-Complainants Ariel Abittan, Benjamin Fisch, and Charles Lu conspired to: (a) assert a false claim of ownership of its business; (b) misappropriate its trade secrets; (c) usurp and interfere with control over its assets, such as social media accounts; and (d) interfere with its relationships with investors and business partners. Mr. Abittan, a former business partner of Ms. Chao and Mr. Ding, filed a cross-complaint alleging, among other things, that Ms. Chao and Mr. Ding stole from and defamed him. Mr. Fisch and Mr. Lu filed a separate cross-complaint, asserting that Ms. Chao and Mr. Ding misrepresented a host of important facts about their business and activities to induce Mr. Fisch and Mr. Lu to work for Temujin.

In Case No. 21CV375422 ("*Fu*"), Temujin alleges that its former consultant, Defendant and Cross-Complainant Franklin Fu, demanded additional under-the-table payments for himself and secret payments to certain investors rather than performing his duties in good faith. In a cross-complaint, Mr. Fu alleges that Ms. Chao and Mr. Ding repeatedly lied to him about a range of subjects, including Temujin's technology and even their own identities.

In an order filed on August 22, 2022 ("August 2022 Order"), the Court ordered Ms. Chao and Mr. Ding to provide identity-related discovery, including in response to requests for production of documents ("RFPs") propounded by Mr. Fisch and Mr. Lu and a form interrogatory and RFP propounded by Mr. Fu. As discussed below, disputes soon developed over Ms. Chao and Mr. Ding's compliance with that order, which gave rise to some of the motions now before the Court.

---

[1] The Temujin entities, a related entity called Discreet Labs Ltd., Ms. Chao, and Mr. Ding are referred to collectively herein as the "Temujin Parties."

Currently at issue are (1) the Temujin Parties' motion to disqualify Freedman Normand Friedland LLP, formerly known as Roche Freedman LLP, (the "Freedman Firm") as counsel for Mr. Abittan and to stay and clarify the August 2022 Order, as well as separate motions by (2) Mr. Fu and (3) Mr. Fisch and Mr. Lu to compel further discovery responses concerning Ms. Chao and Mr. Ding's Chinese character names.  All three motions are opposed.

The Court issued a tentative ruling on November 16, 2022.  It heard oral argument on November 17 and took the matter under submission.  The Court now issues its final order which: a) conditionally DENIES the Temujin Parties' motion to disqualify, pending the submissions of certain declarations from partners in the Freedman Firm (the firm representing Mr. Abittan) and modifications to the protective orders in these cases; and b) GRANTS the motions to compel further responses concerning Ms. Chao and Mr. Ding's Chinese character names.

## I.    BACKGROUND

*Abittan* was filed and deemed complex in November 2020.  The initial discovery stay was lifted in May 2021.  In January 2022, the *Fu* matter was also designated complex.  The Court denied Mr. Fu's motion to formally consolidate or relate the two matters, but explained that "these cases will benefit from informal coordination, particularly with regard to discovery…."  Stipulated protective orders were entered in both matters, and discovery proceeded.

Following a joint case management conference for both cases, the Court issued an order taking several demurrers to the various pleadings off calendar and staying the briefing for those motions and any other pleadings challenges pending an anticipated mediation.  The Court tolled the deadlines to file motions concerning discovery that had already been served, pending an informal discovery conference ("IDC") "to focus the parties' attention on key discovery necessary to lead to a productive early mediation."

Following the IDC, the Court issued an order memorializing the parties' agreement "to meet and confer with each other regarding a briefing schedule concerning discovery related to the identities and aliases of Lily Chao and Damien Ding (the 'Identity Briefing')," and their further agreement "that regardless of the outcomes of the Identity Briefing, they will attend a

mediation in these matters [(tentatively set for Fall 2022)] (without waiver of any right to appeal the decisions on the Identity Briefing)." A hearing on the Identity Briefing was scheduled for August 18, 2022, and three motions on that subject were briefed by the parties. In the August 2022 Order, the Court largely granted those motions.

On September 21, 2022, the Temujin Parties moved to disqualify the Freedman Firm and to stay and clarify the August 2022 Order, with a hearing date set for October 27, 2022. On September 27, 2022, Mr. Fu, joined by Mr. Fisch and Mr. Lu, moved ex parte to compel Ms. Chao and Mr. Ding's compliance with the August 2022 Order. The Court granted that application on September 29, ordering Ms. Chao and Mr. Ding to respond to Mr. Fisch and Mr. Lu's RFPs by October 6. The Court's order instructed Mr. Fisch, Mr. Lu, and their counsel not to share any information or documents with Mr. Abittan or his counsel until the Court confirms that this is appropriate, and stated that the Court "is not taking a position at this time whether documents identifying the Chinese character spelling of the names of Ms. Chao and Mr. Ding must be produced" pending an appropriate motion.

On October 10, 2022, Mr. Fu filed a second ex parte application seeking compliance with the August 2022 Order with regard to the discovery he propounded concerning Ms. Chao and Mr. Ding's identities, and specifically, their Chinese character names. The Court denied that application and set an expedited briefing schedule for a motion on that issue. Meanwhile, efforts to conduct additional discovery and to attempt mediation have come to a halt.

Mr. Fu and, separately, Mr. Fisch and Mr. Lu filed their motions to compel further discovery concerning Ms. Chao and Mr. Ding's Chinese character names on October 17, 2022. These motions and the Temujin Parties' motion have now been fully briefed for hearing by the Court.

## II.    TEMUJIN PARTIES' MOTION TO DISQUALIFY THE FREEDMAN FIRM

The Temujin Parties move to disqualify the Freedman Firm based largely on inappropriate conduct by a former partner in the firm, Kyle Roche, which was captured in videos that were posted to the web site Crypto Leaks.

The Temujin Parties also seek a stay of the August 2022 Order pending the resolution of the disqualification issue, an order commanding the Freedman Firm to return all confidential documents produced in this action, and, finally, clarification as to whether the August 2022 Order requires the disclosure of Ms. Chao and Mr. Ding's Chinese character names. The Court will address the last request in the context of the two related motions before it that seek to compel this discovery; first, it will address the issues related to disqualification.

### A.    Background and Asserted Grounds for Disqualification

On August 26, 2022, the web site Crypto Leaks posted a story entitled "Ava Labs (Avalanche) attacks Solana & cons SEC in evil conspiracy with bought law firm, Roche Freedman." The Crypto Leaks story includes several short video clips of Mr. Roche discussing his financial interest in Ava and explaining how he uses litigation as a strategic tool to support Ava ("Crypto Leaks Videos").[2] He states that he agreed to provide legal services for Ava "in exchange for a certain percentage of the token supply," and also has equity in Ava. He was Ava's "crypto expert in the beginning as well," and because he sues "half of the companies in this space," he knows where the market is going, is "one of the top 10 people in the world" who are knowledgeable about crypto, and has seen "the insides of every single crypto company."

In the videos, Mr. Roche suggests that Ava has not been sued yet because he deals "with making sure that the SEC and the CFTC have other magnets to go after" and he has "ensured that there's no such thing as regulation for what they want to do." He states that he "took down" one

---

[2] The Court GRANTS judicial notice of the existence and contents of this story, available at https://cryptoleaks.info/case-no-3, and of Mr. Roche's statements in the videos it contains. (Evid. Code, § 452, subd. (h); see *In re Forchion* (2011) 198 Cal.App.4th 1284, 1287 [taking judicial notice of statements on party's own web site, where party had an opportunity to express specific concerns].) Mr. Abittan does not oppose this request, and the Freedman Firm admits that Mr. Roche made the statements reflected in the videos. Mr. Roche also admits to making these statements (but denies their truth) in a declaration filed in federal court, of which the Court GRANTS judicial notice (Ex. 4 to the Temujin Parties' Req.). (Evid. Code, § 452, subd. (d).)

The Temujin Parties also seek judicial notice of web sites purportedly reflecting Mr. Roche's and other individuals' responses to the Crypto Leaks story. The Court DENIES judicial notice of those web site pages (including Exs. 17 & 18 to the Temujin Parties' Req.), as the authors' identities are disputable. In any event, these responses to the Crypto Leaks story are not particularly relevant to this motion.

of Ava's CEO's rivals, Craig Wright (who claims to have been an inventor of Bitcoin), and emphasizes that he does not "care about settling" cases but litigates until "I've got a piece of paper that says I own your company now." Mr. Roche states that Ava does not file lawsuits against its competitors because Ava has him do that in class action lawsuits on behalf of other plaintiffs. He also says that judges and juries do not understand the blockchain space, and juries are "10 idiots" who "control the flow of all the money that happens in American class actions."

Since the Crypto Leaks Videos became public, various parties in other cases in which the Freedman Firm serves as counsel have moved to disqualify the Firm.[3] According to Freedman Firm partner Constantine P. Economides, who has served as lead counsel for Mr. Abittan in this matter, Mr. Roche has now withdrawn from the Firm.

Still, it is unclear whether members of the Freedman Firm maintain an interest in Ava Labs. On March 2, 2022, Jason Cyrulnik, a former partner in the Firm, filed counterclaims in a federal action brought against him by other partners (not including Mr. Economides), alleging that the partners schemed to oust him from the Firm so that they could take his rightful stake for themselves—including a client fee payable in cryptocurrency that had suddenly appreciated to more than $250 million.[4] In its answer, the Firm denied many specific allegations related to its interest in this cryptocurrency, but admitted that it had some kind of "potential/contingent interest in the Tokens." Mr. Cyrulnik alleged that the cryptocurrency was to be allocated 32 percent to Mr. Freedman, 28 percent to Mr. Roche, 25 percent to Mr. Cyrulnik, and five percent each to partners Normand, Friedland, and Holcomb—which the Firm denied.

---

[3] The Court GRANTS judicial notice of various filings in these other cases (Exs. 1–9 & 12–14 to Temujin Parties' Req.). (Evid. Code, § 452, subd. (d).)

The Court also takes judicial notice of an October 13, 2022 minute order reflecting that the Freedman Firm was removed as interim class counsel and ordered to return confidential materials produced in *In re Tether and Bitfinex Crypto Asset Litigation* (S.D.N.Y., No. 1:19-cv-09236-KPF). The Court understands that when this removal order was made, Mr. Roche was still part of the Freedman Firm.

[4] The Court GRANTS judicial notice of filings in this action (Exs. 10–11 to Temujin Parties' Req.). (Evid. Code, § 452, subd. (d).)

Against this background, the Temujin Parties contend that Mr. Roche would have a conflict of interest in representing Mr. Abittan, which is imputed to the Freedman Firm. The Temujin Parties further urge that Mr. Roche's conduct involved dishonesty, fraud, deceit, and/or is prejudicial to the administration of justice, in violation of both the New York and California Rules of Professional Conduct.[5]

### B.    Legal Standard

"A judge's authority to disqualify an attorney has its origins in the inherent power of every court in the furtherance of justice to control the conduct of ministerial officers and other persons in pending judicial proceedings." (*Neal v. Health Net, Inc*. (2002) 100 Cal.App.4th 831, 840, citing Code Civ. Proc., § 128, subd. (a).)  The power is most often exercised in connection with "professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information." (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1723–1724.)

The classic disqualification case involves the attorney switching sides, so that an attorney who once represented "A" now seeks to represent "B" in a matter materially related to the original representation.  Disqualification in such a case is necessary to safeguard the attorney-client relationship.  A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one.

In other cases, counsel may be disqualified where counsel has obtained the secrets of an adverse party in some other manner, such as where counsel's newly hired paralegal had access to the adversary's confidences while working for opposing counsel, or where counsel obtained confidential information from an expert with whom opposing counsel had consulted. Disqualification is warranted in these

---

[5] The Court GRANTS judicial notice of relevant portions of the California and New York Rules of Professional Conduct cited by the Temujin Parties (Exs. 15–16 to Temujin Parties' Req.). (Evid. Code, § 452, subds. (c), (h).)

cases, not because the attorney has a direct duty to protect the adverse party's confidences, but because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process.

(*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219 (*Roush*), internal citations and quotation marks omitted.)

In the latter type of case, "the common thread … is that the attorney obtained confidential information from a source who could not ethically disclose the information without consent from the adversary." (*Roush, supra*, 150 Cal.App.4th at p. 220.) The moving party has the initial burden to show that the source possessed its confidential information materially related to the proceedings (see *ibid.*) and/or that counsel breached an ethical duty in obtaining or using the information (see *id.* at pp. 225–226).

Here, the Temujin Parties raise a somewhat different issue: a concern that opposing counsel will use their confidential information disclosed during discovery in this action to benefit another client that is their business competitor.[6] But as with the expert witness and related cases, the concern here is that the situation implicates counsel's ethical duty to maintain the integrity of the judicial process. So the Court will apply the standard stated in those cases, placing the burden on the Temujin Parties to show counsel has breached (or is likely to breach) an ethical duty in obtaining or using confidential information. Similarly, to the extent the Temujin Parties' motion is based on an asserted conflict arising from the Freedman Firm's representation of Mr. Abittan in light of its relationship with Ava Labs, the burden remains with the Temujin Parties to show there is a conflict—and to show that they have standing to raise it.

In evaluating the Temujin Parties' motion, it is important to bear in mind that "[m]otions to disqualify counsel present competing policy considerations":

"On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing

---

[6] The Court is unaware of any authority addressing the specific asserted ground for disqualification raised here.

effect on the proceedings before the court.  [Citations.]  On the other hand, it must be kept in mind that disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement.  …."

(*Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 462–463, quoting *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300 (*Gregori*).)

"[A]s courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent," since they "can be misused to harass opposing counsel, to delay the litigation, or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable." (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 352 (*Dino*), quoting *Gregori*, internal quotation marks and other notations omitted.)  The importance of the competing policy concerns raised by a motion for disqualification requires a careful exercise of discretion by the trial court.  (See *ibid.*)

## C.    Discussion

The Freedman Firm admits that Mr. Roche made the statements captured on the Crypto Leaks Videos.  But Mr. Abittan declares that he has never communicated with Mr. Roche, and lead counsel Mr. Economides declares that Mr. Roche has never worked on this matter and has withdrawn from the Freedman Firm.  Mr. Abittan urges that the Temujin Parties lack standing to seek disqualification based on a conflict among the Freedman Firm's clients—and while he does not believe there is any conflict, he would waive it if there were.  He stresses that he was the one who was sued by Temujin in this case, and he was represented by prior counsel at that time.  And he urges that even if Mr. Roche violated professional rules of conduct, there is no evidence that supports imputing any such violations to the other members of the Freedman Firm.

With these arguments in mind, the Court will evaluate each of the grounds for disqualification raised by the Temujin Parties.

### 1.    Standing

"To bring a motion to disqualify counsel, the moving party must have standing; that is, the invasion of a legally cognizable interest."  (*Lynn v. George* (2017) 15 Cal.App.5th 630, 636

(*Lynn*).)  "Standing may arise from an attorney-client relationship between the moving party and targeted counsel or from a duty of confidentiality owed by the attorney to the moving party despite the absence of an attorney-client relationship." (*Id.*, pp. 636–637.)  "Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information." (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356 (*Great Lakes*); see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 9:406.5.)

### a.  conflict of interest theory

Here, the Temujin Parties do not contend that they ever had an attorney-client relationship with anyone at the Freedman Firm.  And they do not have standing to seek disqualification based on an asserted conflict raised by the Freedman Firm's representation of Mr. Abittan given its relationship with another client, Ava Labs.  (See *Great Lakes, supra*, 186 Cal.App.4th at pp. 1358–1359 [party did not have standing to move to disqualify opposing counsel based on asserted conflict impacting opposing parties]; see generally *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 131–133 [summarizing authorities and affirming that moving party must have itself had an attorney-client relationship to disqualify counsel based on a conflict of interest].)  The first ground for disqualification raised by the Temujin Parties accordingly fails.

### b.  confidential information theory

Still, the Temujin Parties also contend that the Freedman Firm has a financial incentive to breach its duties with regard to their own confidential information provided in this case.  The Court is unaware of any authority holding that these duties respecting an adverse party's *confidential information* give rise to a *confidential relationship* of the sort that has been found to confer standing to bring a motion for disqualification.

The opinion in *Dino* explains this distinction.  There, the moving parties complained that by jointly representing two opposing parties, opposing counsel would necessarily violate the moving parties' right to mediate confidentially with each opposing party.  But *Dino* held that the "exchange of confidential information as part of the mediating process" did not create a

*confidential relationship* between the moving parties and opposing counsel. (*Dino, supra*, 145 Cal.App.4th at p. 356.)[7]  And as explained in *Barajas v. Oren Realty & Development Co.* (1997) 57 Cal.App.4th 209 (*Barajas*)—where a party attempted to disqualify opposing counsel who had mediated a related case against it on behalf of a different client—serious policy concerns would result from a rule that would disqualify counsel on the assumption they would misuse confidential information learned during mediation.  *Barajas* noted "that common practice allowed attorneys to mediate without subjecting themselves to disqualification" and held that a contrary rule would discourage mediation.  (See *Dino, supra*, 145 Cal.App.4th at pp. 354–355 [discussing *Barajas* and endorsing its reasoning].)

    It would raise similar policy concerns to disqualify opposing counsel merely for investing in or representing the moving party's business competitor, on the assumption that counsel will misuse the moving party's confidential information.  The Temujin Parties do not identify any ethical rule that prohibits such representation, and such disqualification would interfere with parties' ability to choose their own counsel, negotiate their own payment terms, and perhaps even to retain qualified counsel at all.

    Here, though, the Temujin Parties raise more specific concerns prompted by Mr. Roche's statements in the Crypto Leaks Videos and the inappropriate conduct they imply.  The Court will assume without deciding that the Temujin Parties have standing to move to disqualify the

---

[7] The opinion reasoned:

> Under California law, a confidential relationship is not created simply by the receipt of confidential information.  Instead, its creation generally hinges on an unequal relationship between parties in which one surrenders to the other some degree of control because of the trust and confidence which he reposes in the other.  When a confidential relationship is found to exist, the one in whom confidence was reposed may be held to a higher standard of disclosure and fairness than in an arm's-length relationship.

> Parties and their attorneys who agree to exchange confidential information during mediation are not in an unequal relationship, nor are they held to a standard of disclosure and fairness higher than in an arm's-length relationship. …

(*Dino, supra*, 145 Cal.App.4th at pp. 356–357, internal citations, quotation marks, and other notations omitted.)

1  Freedman Firm based on the more specific asserted threat to the appropriate treatment of their

2  confidential information raised by Mr. Roche's statements. It turns to the merits of that theory.

3                    2.    *Merits of Confidential Information Theory*

4        Based on his own statements, there is certainly a basis to conclude that Mr. Roche

5  engaged in conduct prejudicial to the administration of justice: specifically, misusing the

6  litigation process to learn confidential information about business competitors to an entity in

7  whose performance he had a large financial interest, Ava Labs, and then sharing that information

8  with Ava, as well as using litigation to draw negative regulatory attention away from Ava and

9  towards its competitors. But the Temujin Parties provide no authority supporting their argument

10  that this personal conduct by Mr. Roche, who has left the Freedman Firm, should be

11  automatically imputed to the rest of the Firm.

12        The Court again assumes without deciding that Mr. Roche's conduct could support an

13  inference that other members of the Freedman Firm were participating on a sufficient factual

14  record. But here, it would be speculative to conclude that others were involved. While there is

15  some suggestion that other partners received compensation in the form of Ava Labs

16  cryptocurrency, this has not been established with admissible evidence. And even if it were, the

17  Court would hesitate to infer that other partners were complicit in the conduct described by Mr.

18  Roche based on this fact alone.

19        Moreover, there is not even a suggestion that the specific attorneys who have worked

20  substantively on this case, including Mr. Economides, have funneled confidential information to

21  Ava Labs.[8] This case does not fit the profile of the putative class action litigation potentially

22  filed by Mr. Roche for improper purposes—here, Mr. Abittan was sued by the Temujin Parties.

23  And the Court does find that Mr. Abittan would be prejudiced by having to retain new counsel in

24  a complex matter on which the Freedman Firm has worked for well over a year.

25

26

    _____

27  [8] Mr. Abittan declares that Velvel (Devin) Freedman, who may have an interest in Ava Labs
    cryptocurrency, was his "first point of contact," but that he has "only worked with" Mr.
28  Economides and Brianna Pierce since then, "with some intermittent communication" with Mr.
    Freedman.

                                    12

**D.    Conclusion**

Based on this record, the Court is inclined to conclude that the Temujin Parties have not met their burden to show that the remaining members of the Freedman Firm breached an ethical duty in obtaining or using their confidential information, or are likely to do so.  But to confirm the Court's understanding, the Court will require the following actions before making a final ruling on this motion:[9]

1.    Declarations from every partner in the Freedman Firm that she or he has not provided, and will never provide, another party's confidential information to Ava Labs in violation of a protective order or other court order.

2.    A modification of the protective orders in these cases to make crystal-clear that no confidential information of any party can be shared by any counsel with Ava Labs without the consent of that party.  (The Court understands that these modifications will require meet-and-confer discussions with all parties before they are presented to the Court for sign-off.)

The Court orders such declarations, and the draft modifications to the protective orders, to be provided to the Court by **December 16, 2022**.  Once the Court has reviewed those declarations and has agreed to the modifications to the protective orders, the Court will make a final ruling on the Temujin Parties' disqualification motion.

In addition, the Court DENIES the Temujin Parties' request for a stay of the August 2022 order pending resolution of the disqualification issue.

## III.    MOTIONS CONCERNING MS. CHAO AND MR. DING'S CHINESE CHARACTER NAMES

In the August 2022 Order, the Court ordered Ms. Chao and Mr. Ding to serve verified, code-compliant further responses to Mr. Fu's Form Interrogatory no. 2.1 and RFP no. 24, "without objection."  It similarly ordered Temujin Labs Inc. to serve further responses to Mr. Fisch's RFP nos. 25 and 26, again "without objection."  The Temujin Parties now seek "clarification" as to "whether those parties must provide the Chinese character names of Chao

---

[9] At the November 17 oral argument on this motion, Mr. Freedman offered to take these actions, and the Court is taking him up on his offer.

and Ding, or whether the official English language versions of their names (i.e., the ones that one would utilize on a driver's license) are sufficient for discovery purposes." Meanwhile, Mr. Fu and, separately, Mr. Fisch and Mr. Lu move to compel further discovery responses disclosing Ms. Chao and Mr. Ding's Chinese character names.

### A.    The Temujin Parties' Motion for "Clarification"

The August 2022 Order requires full and complete responses to the requests at issue, without objection. This includes information concerning Ms. Chao and Mr. Ding's Chinese character names. Any specific objection that the Temujin Parties had about Chinese character names should have been raised in opposition to the motions addressed by the August 2022 Order. And indeed, Ms. Chao and Mr. Ding specifically objected to disclosing their "Chinese legal names"—objections that the Court overruled. Temujin Labs Inc. raised the same objections, and the Court likewise overruled its objections.

The Temujin Parties' renewed request that the Court permit them to withhold their Chinese character names thus constitutes an improper motion for reconsideration. (See *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577 ["regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under Code of Civil Procedure section 1008"].) The Temujin Parties raise no new or different facts, circumstances, or law that would justify reconsideration. (See Code Civ. Proc., § 1008, subd. (a).) They simply repeat the same argument that the Court already rejected, and offer evidence consistent with that argument that could have been submitted before.[10] This does not suffice.

---

[10] The Court has read and considered the Declaration of Lily Chao filed on September 21, 2022, but it does not raise any new facts. Ms. Chao claims that both Mr. Abittan and, separately, Mr. Lu and Mr. Fisch threatened to expose her identity back in 2020. But the Temujin Parties provide no explanation as to why these asserted threats were not raised in their prior oppositions, in which they did more generally and speculatively accuse Mr. Abittan, Mr. Fisch, and Mr. Lu— as well as Mr. Fu—of "only nam[ing] Chao and Ding as cross-defendants for the purpose of harassment" by disclosing their identities. Under these circumstances, the Court does not find Ms. Chao's declaration to be credible and it does not find her more specific allegation of harassment to be a new fact.

Ms. Chao also vaguely states that she "plan[s] on traveling to China soon" and fears various repercussions "if [her] Chinese legal name was exposed to the Chinese authorities, … due to my

(See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212–213 ["[t]he burden under section 1008 is comparable to that of a party seeking a new trial on the ground of newly discovered evidence: the information must be such that the moving party could not, with reasonable diligence, have discovered or produced it [before]"].)  And their request is untimely since it was made much more than 10 days after the August 2022 Order.  (See Code Civ. Proc., § 1008, subd. (a).)

The Temujin Parties' motion to clarify the August 2022 Order is accordingly DENIED.

**B.    The Remaining Motions**

The Court construes the motions by Mr. Fu and Mr. Fisch and Mr. Lu as motions to compel compliance with the August 2022 Order, and those motions are GRANTED.[11]  Within 10 calendar days of the filing of this order, Ms. Chao, Mr. Ding, and Temujin Labs Inc. shall provide full and complete discovery responses in compliance with the August 2022 Order, including with regard to Ms. Chao and Mr. Ding's Chinese character names.

At oral argument, Craig Hansen, counsel for Ms. Chao and Mr. Ding (and the Temujin entities) stated he and his firm were going to withdraw from their representation, apparently with the consent of his clients.  But Jingling Ye is going to continue to represent Ms. Chao, Mr. Ding, and the Temujin entities, even after Mr. Hansen and his firm stops their representation.  Given

---

involvement in the crypto field."  This is also not a new fact: the August 2022 Order already explained why, "[e]ven assuming that Ms. Chao and Mr. Ding have some reasonable fear of retaliation by the Chinese government," withholding their identities from discovery was not justified.  The Court stands by that analysis.

Finally, the evidence submitted with Ms. Chao and Mr. Ding's ex parte opposition filed on September 29, 2022 similarly could have been offered before and does not change the Court's prior analysis.

[11] Code of Civil Procedure section 2031.310, subdivision (i) provides that "if a party fails to obey an order compelling further response, the court may make those orders that are just …."  There is no statutory deadline associated with a motion pursuant to this subdivision.  (See *Kayne v. The Grande Holdings Limited* (2011) 198 Cal.App.4th 1470.)  Code of Civil Procedure section 2030.300, subdivision (e) similarly authorizes a motion to compel compliance with an order compelling a further response to an interrogatory.

that Ms. Chao and Mr. Ding still will have counsel, the Court sees no reason to further delay this discovery.

The Court is hopeful that once this issue is fully resolved, the parties can get back on track for an early mediation.

**IT IS SO ORDERED.**

Date:       November 19, 2022

_____
The Honorable Sunil R. Kulkarni
Judge of the Superior Court

16