

February 13, 2023

**<u>Via ECF</u>**
The Honorable James Donato
United States District Judge
450 Golden Gate Avenue, Courtroom 11
San Francisco, CA 94102

Re: *Valenti et al. v. Dfinity USA Research LLC et al.*, No. 3:21-cv-06118-JD (N.D. Cal.)

Dear Judge Donato:

We write regarding the topics Defendants have proposed for the prospective Rule 30(b)(6) deposition of Freedman Normand Friedland LLP ("FNF"). I certify FNF has met and conferred with Defendants.

After the hearing on February 2, 2023, the Court authorized Defendants to "take one 30(b)(6) deposition of FNF" that "will be three hours or less, and will focus tightly on the relevant issues for the motion." (Dkt. No. 86.) Those issues, as the Court made clear, concern FNF's *current and future* relationship with Ava Labs. (*See* Dkt. No. 91 at 30:18-19 (focus of deposition will be "from today on"), 32:6-8 (the "question is what's happening today and what's going to happen tomorrow"); Dkt. No. 86 ("[T]he bulk of the examination should be directed to FNF's discharge of its fiduciary duties as lead counsel for plaintiffs.").) Underscoring the forward-looking nature of the discovery permitted, the Court repeatedly rejected Defendants' efforts to obtain discovery relating to Mr. Roche, a former firm lawyer whose statements form the basis of Defendants' motion to disqualify. (*See, e.g.*, Dkt. No. 91 at 27:5-28:4 (rejecting Defendants' request to depose Mr. Roche), 29:25-30:17 ("I don't want any questions about Mr. Roche other than confirming that he's in every way, shape, and form been excised out of the firm. That's it. Okay?").)

Unfortunately, Defendants have ignored the Court's guidance. After delaying for a week, Defendants served FNF with topics that cover everything from Mr. Roche, the privileged internal investigation conducted by FNF, and every aspect of FNF's relationship with Ava Labs dating back to 2019—including subjects (such as communications) that would clearly invade Ava Labs' attorney-client privilege. (Ex. 1 at 5-6.) Moreover, instead of focusing on the connections (or lack thereof) between FNF and Ava Labs, Defendants seek detailed financial discovery over FNF's attorneys, including about historic cryptocurrency transactions and—incredibly—their cryptocurrency *wallet addresses*. (*Id.*) This is information that, if provided—as both Defendants and their counsel know—would allow Defendants to see every single cryptocurrency transaction FNF's attorneys have ever engaged in, regardless of whether those transactions relate in any way to Ava Labs or assets FNF attorneys received from Ava Labs. In conventional terms, identifying these wallets would amount to turning over years' worth of bank statements.

FNF sees no good-faith basis for Defendants to seek this information, and therefore concludes that Defendants have noticed such broad topics to harass the firm and its attorneys—not to obtain information the Court has indicated is relevant. Those concerns are rooted in, among

other facts, (i) Defendants' counsel's repeated statements that Defendants (including Mr. Williams) were intimately involved in designing and approving the noticed topics (even though the critical issue is protecting the class, not Defendants), (ii) Defendants' counsel's admission in a meet and confer that Defendants would continue to pursue their motion *regardless* of FNF's deposition testimony (in apparent disregard of the Court's order that Defendants "be forthright" if "no potatoes come up," Dkt. No. 91 at 34:15-17), (iii) Defendants' extreme efforts to date, which they repeatedly have declined to deny, to get Plaintiffs' counsel out of the case (*see* Dkt. No. 76 at 8-10), and (iv) threats Dfinity appears to have made on Mr. Roche's life that required involving the Federal Bureau of Investigation.

On February 10, and in good faith, FNF proposed modifications to Defendants' proposed topics:

| **Defendants' Noticed Topic** | **Proposed Modification** |
|---|---|
| 1. The relationship, interactions and communications between You and Ava Labs from 2019 to the present, including, but not limited to, in connection with the founding of Roche Freedman in 2019, and excluding any communications concerning the case *Emin Gun Sirer v. Emre Aksoy*, No. 21-cv-22280 (S.D. Fla.) that are subject to the attorney-client privilege and/or work product protection. | A short overview of the origin of the relationship between FNF and Ava Labs, and the current relationship between FNF and Ava Labs. |
| 2. Equity ownership or other interests in Ava Labs held by FNF and/or by its partners in their individual capacities, and FNF's and/or its individual partners' ownership or other interests in AVAX Tokens and/or Ava Labs Digital Assets, including but not limited to: (1) the number of AVAX Tokens and/or Ava Labs Digital Assets FNF and/or each individual partner received at or around the time Roche Freedman was founded; (2) the number of AVAX Tokens and/or Ava Labs Digital Assets FNF and/or each individual partner has received since that time; (3) the dates on which FNF and/or each individual partner sold AVAX Tokens and/or Ava Labs Digital Assets, and at what price; (4) the market value as of February 15, 2023 of the AVAX Tokens and/or Ava Labs Digital Assets held by FNF and/or each individual partner; (5) the Wallet Address(es) associated with the Wallet(s) where such AVAX Tokens and/or Ava Labs Digital Assets are stored; (6) the reason(s) FNF and/or its individual partners received equity ownership or other interests in Ava Labs, and/or received ownership or other interests in AVAX Tokens and/or Ava Labs Digital Assets; and (7) the circumstances under which such ownership or other interests arose. | Current ownership interest of FNF and its attorneys in Ava Labs and/or AVAX tokens received from Ava Labs. |
| 3. All individuals who are or were partners in, employed by or otherwise associated with FNF who have represented or otherwise worked for Ava Labs or any of its officers and/or employees, and the nature of such representation or work. | FNF attorneys who currently represent Ava Labs and/or its principals and any current work for |

|  |  | Ava Labs and/or its principals. |
|---|---|---|
| 4. | The investigation FNF purportedly conducted in connection with Mr. Roche's statements (*see* Hr'g Tr. 3:23-4:9), including but not limited to the investigation's scope, any findings and any actions taken in response, including but not limited to any ethical walls relating to this Action. | Topic should be struck. |
| 5. | Any ongoing personal, professional and/or business relationships between You and Mr. Roche and/or any current, future or potential joint representations by You and Mr. Roche. | Current and ongoing business/professional relationships between FNF and Kyle Roche. |

After a meet and confer, Defendants rejected each of the foregoing modifications, claiming their topics were "appropriate as noticed." Defendants further stated that FNF was "welcome to seek relief from the Court."

Defendants' topics sweep far beyond what the Court permitted. FNF's proposed modifications, in contrast, adhere to the Court's order that "the bulk of the examination should be directed to FNF's discharge of its fiduciary duties as lead counsel for plaintiffs" (Dkt. No. 86), that the relevant issue "is just from today on" (Dkt. No. 91 at 30:18-19), that "[t]he question is what's happening today and what's going to happen tomorrow" (*id.* at 32:6-8), and that the Court did not "want any questions about Mr. Roche other than confirming that he's in every way, shape, and form been excised out of the firm" (*id.* at 29:25-30:17). At the same time, consistent with the Court's order, FNF's proposed modifications allow Defendants to ask "[s]ome background questions" about FNF's relationship with Ava Labs (Dkt. No. 86; *see also* Dkt. No. 91 at 30:23-32:23 (allowing Defendants to "[a]sk a few" background questions, but noting that such discovery would be "of questionable utility")), while also protecting FNF and its attorneys from harassment and intrusive financial disclosures that have no bearing on an alleged potential appearance of impropriety. Indeed, the Court correctly recognized that Defendants' theory about FNF attorneys' *current* AVAX token ownership was "highly, highly speculative" (Dkt. No. 91 at 15:25); thus, the relationship between FNF attorneys' *previous* ownership and old sales of AVAX tokens has no bearing at all on FNF's ability to discharge its fiduciary duties.

In short, as indicated at the February 2 hearing, FNF remains willing to disclose facts the Court indicated were relevant to resolving Defendants' motion. It is not willing to permit Defendants—highly motivated as they are to harm Plaintiffs' counsel—to leverage arguments the Court characterized as "weak" to obtain wide-ranging highly intrusive discovery of FNF's attorneys' personal finances from historic investments and sales, and information that has no bearing on this litigation.[1] Plaintiffs respectfully request the Court limit the deposition to FNF's proposed modifications.

---

[1] Indeed, the publicly available data shows that, as expected, there is *no* relationship between any events in this case to date and the price of AVAX tokens.

Freedman Normand Friedland LLP

99 Park Ave., Suite 1910, New York, NY 10016 | (t) 646.350.0527 (f) 646.392.8842 | www.fnf.law

Respectfully,

*/s/ Edward Normand*

Edward Normand

**FREEDMAN NORMAND FRIEDLAND**
Edward Normand (*admitted pro hac vice*)
Richard Cipolla (*admitted pro hac vice*)
Stephen Lagos (*admitted pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs and the Class*

cc: Counsel of Record (via ECF)