

February 22, 2023

**<u>Via ECF</u>**
The Honorable James Donato
United States District Judge
450 Golden Gate Avenue, Courtroom 11
San Francisco, CA 94102

Re: *Valenti et al. v. Dfinity USA Research LLC et al.*, No. 3:21-cv-06118-JD (N.D. Cal.)

Dear Judge Donato:

We respectfully write pursuant to Rule 26(c), the so-ordered stipulation dated February 17 (Dkt. No. 97), and the Court's Standing Orders to request a protective order designating Freedman Normand Friedland's deposition transcript as "Attorneys' Eyes Only" and prohibiting disclosure of that transcript to anyone except for (i) the Court and its personnel, and (ii) the parties' outside counsel.[1] FNF has met and conferred with Defendants' counsel, who oppose this relief.

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Protective orders may properly be granted with respect to "many types of information," so long as the movant shows "good cause." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). District courts are "free to tailor the protective order to the circumstances presented," including by "making the documents available only on an 'attorney's eyes only' basis or requiring the documents—and other submissions that reference them—be filed under seal." *In re City of New York*, 607 F.3d 923, 949 (2d Cir. 2010).

FNF's deposition testimony concerned (i) the terms of FNF's confidential agreements with its former client, Ava Labs; (ii) work performed by FNF pursuant to those confidential attorney-client agreements; (iii) the assets that individual attorneys at FNF obtained pursuant to those agreements; (iv) FNF attorneys' personal transactions involving those assets; (v) highly personal financial information that relates to those assets; and (vi) the identity of the attorney (unaffiliated with Ava Labs) who suggested that FNF attorneys investigate Defendants' conduct. This classically confidential and private information should be made available on only an AEO basis to protect these attorneys from harassment, intrusion of privacy, and physical harm.

*First*, the case law strongly supports keeping this information confidential. As to FNF's confidential agreements with its former client, "Rule 26(c) expressly authorizes protection of confidential commercial information," *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 2020 WL 1492692, at *2 (N.D. Cal. Mar. 27, 2020), and courts frequently seal confidential agreements involving non-parties, as well as testimony and documents that reference the provisions of such agreements and work done pursuant to such agreements, *see, e.g., Synchronoss Techs., Inc. v. Dropbox Inc.*, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020) (sealing "confidential agreements

---

[1] This is not a motion to seal. FNF will file such a motion pursuant to Local Civil Rule 79-5 with its supplemental statement on February 24. (Dkt. No. 86.)

with third parties").[2] The agreements at issue here, moreover, expressly require confidentiality and arise in the attorney-client context, where clients reasonably expect privacy. *See* ABA Model Rule 1.6 (lawyer may only "reveal information relating to the representation of a client" under limited circumstances); Cal. Bus. & Prof. Code § 6149 (fee agreements are "confidential"); *Stiner v. Brookdale Senior Living, Inc.*, 2022 WL 1180216, at *3 (N.D. Cal. Mar. 30, 2022) (sealing records over which employees had "reasonable expectation of privacy"). With respect to FNF attorneys' assets and private transactions, "[n]on-party privacy interests" are "sufficient to satisfy the 'good cause' standard," *Chloe SAS v. Sawabeh Info Servs. Co.*, 2015 WL 12734004, at *3 (C.D. Cal. Feb. 4, 2015), especially where, as here, the non-parties' "sensitive financial information" is at issue, *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4472993, at *2 (N.D. Cal. Aug. 22, 2016).[3] And with respect to the individual who identified Defendants' conduct as potentially unlawful, courts routinely limit disclosure of the identity of confidential informants whose safety may be implicated. *See Blight v. City of Manteca*, 2017 WL 2813161, at *1-2 (E.D. Cal. June 29, 2017) (collecting cases).

*Second*, the federal court adjudicating the litigation between FNF and a former firm attorney (the "Cyrulnik Litigation") has found—repeatedly—that "good cause" exists to keep this information confidential. As recently as January 31, that court granted a motion to seal FNF attorneys' testimony regarding these same transactions. *See, e.g.*, Order, *Roche Freedman LLP v. Cyrulnik*, No. 1:21-cv-01746 (S.D.N.Y. Jan. 31, 2023), Dkt. No. 348. That court has likewise found on numerous occasions, *including in the context of a dispositive motion*, that the terms of the same agreements discussed during FNF's deposition were appropriately sealed. *See, e.g.*, Dkt. Nos. 111, 182. The argument for confidentiality here is even stronger: in contrast to the Cyrulnik Litigation, the sensitive client and private financial information relates to non-parties and has no conceivable relevance to the merits of this case, which concerns allegations that *Defendants* illegally sold unregistered securities and manipulated the market for those securities.

*Third*, over and above ordinary confidentiality, AEO is necessary here because FNF reasonably believes that Defendants will either publicize the deposition testimony or otherwise use it to harm FNF and others. *See, e.g.*, *Diamond Consortium, Inc. v. Hammervold*, 737 F. App'x 194, 195 (5th Cir. 2018) ("Diamond Doctor sought and obtained a protective order designating certain discovery materials 'Attorney's Eyes Only' due to concerns that Hammervold and Manookian would publicize customer information."); *Cefalu v. Vill. of Elk Grove*, 1999 WL 167029, at *4 (N.D. Ill. Mar. 22, 1999) (issuing protective order treating deposition testimony as AEO based on, among other things, "the atmosphere of distrust and animosity that appears to exist between the parties"). Indeed, as explained in Plaintiffs' opposition brief, and as Defendants have never

---

[2] *See Lane v. Wells Fargo Bank, N.A.*, 2013 WL 2627487, at *3 (N.D. Cal. June 11, 2013) (sealing "confidential agreements" between defendant "and various non-parties"); *Asetek Holdings, Inc. v. CMI USA, Inc.*, 2014 WL 12644231, at *2 (N.D. Cal. Sept. 23, 2014) (sealing "confidential agreements" and testimony describing that confidential relationship).

[3] *See Fundingsland v. OMH Healthedge Holdings, Inc.*, 2018 WL 1524474, at *2 (S.D. Cal. Mar. 27, 2018) (sealing "information relating to payments to non-parties investors, non-party salary and bonus information, and non-party ownership information"); *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *3-4 (N.D. Cal. Nov. 1, 2007) (request to seal "personal financial information" met "the 'good cause' standard given [the] non-party privacy interest.").

denied,[4] Defendants hired a "conflict management" specialist to lure Mr. Roche to London under false pretenses, secretly record him, and illegally distribute those recordings via an anonymous website in highly edited form alongside an inflammatory and misleading article, and then paid Twitter to promote that article. (Dkt. No. 76 at 8-10.) Worse, Defendants apparently have since made threats on Mr. Roche's life, necessitating FBI involvement. (Dkt. No. 93 at 2.) This conduct is, unfortunately, consistent with what FNF believes is a pattern of vindictive and dangerous behavior from Defendant Williams, who has previously offered "reward[s]" to those who expose his critics' identities (Dkt. No. 45 ¶ 97), and allegedly engaged in domestic violence, TRO, *Williams v. Williams*, No. 16-dv-020442 (Cal. Super. Ct. San Mateo Cnty. Dec. 12, 2016).

In addition, further supporting FNF's belief, Williams *continues* to make inflammatory public statements about FNF (Ex. A), and during the meet-and-confer process, Defendants' counsel told FNF that Williams was involved in designing the overbroad deposition topics, would need to approve any modifications to those topics, and would *never* agree to keep the transcript AEO. His intimate involvement with a process designed to ensure that FNF will protect the class, coupled with his history of wrongful conduct and violence, heightens FNF's concerns that, if provided with this sensitive information, he would misuse it. These concerns are exacerbated by the near-unlimited resources available to Williams, who Plaintiffs allege sold billions of dollars' worth of ICP tokens and fled the jurisdiction for Switzerland. (Dkt. No. 45 ¶¶ 8, 21.)

*Fourth*, if this information were disclosed, FNF, its former client, and the individual who suggested that FNF investigate Defendants' conduct could each suffer significant harm. The confidential agreements between FNF and its former client not only implicate the attorney-client relationship, but also—when combined with details about FNF attorneys' transactions—could enable Defendants and the public to identify FNF attorneys' cryptocurrency wallet addresses, which would allow anyone to track every single cryptocurrency transaction, investment, or trade that any of those attorneys made. This would be extraordinarily intrusive, and would also potentially expose those attorneys to theft, cybercrime, and physical violence, a known tactic used by malicious actors seeking cryptoassets. *See, e.g.*, Nathaniel Popper, *Bitcoin Thieves Threaten Real Violence for Virtual Currencies*, N.Y. Times (Feb. 18, 2018), https://www.nytimes.com/2018/02/18/technology/virtual-currency-extortion.html.

*Fifth*, Defendants would face no prejudice from the requested AEO designation. *See UCC Ueshima Coffee Co., Ltd. v. Tully's Coffee Corp.*, 2007 WL 710092, at *2 (W.D. Wash. Mar. 6, 2007) (rejecting argument that AEO designation would prejudice defendants' ability "to prepare its defense"). This motion has nothing to do with the merits of this action or Defendants' rights or interests. (Dkt. No. 91 at 6:16-18.) The *only* issue—as the Court made clear at the February 2 hearing (*see id.* at 17:6-12)—is whether the Court is satisfied that FNF will protect the interests of the proposed class. Defendants simply do not need this information; it is for the Court.

For the foregoing reasons, FNF respectfully requests that the Court enter a protective order providing for AEO treatment of FNF's deposition transcript. To the extent that the Court disagrees that AEO treatment is appropriate, FNF respectfully requests confidential treatment.

---

[4] In fact, in meeting and conferring with opposing counsel on this issue of AEO designation, FNF pointed out the lack of denials and asked point-blank whether Williams was behind the scheme. Defense counsel again refused to provide any denial, inexplicably claiming only that FNF's request for this core information was "gamesmanship," which it is not.

Respectfully,

*/s/ Edward Normand*

Edward Normand

**FREEDMAN NORMAND FRIEDLAND**
Edward Normand (*admitted pro hac vice*)
Richard Cipolla (*admitted pro hac vice*)
Stephen Lagos (*admitted pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs and the Class*

cc: Counsel of Record (via ECF)