CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA Research LLC, Dfinity Foundation and Dominic Williams*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>　　　　　　Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' SUPPLEMENTAL STATEMENT IN SUPPORT OF MOTION TO DISQUALIFY**<br><br>Date: February 2, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  DISCUSSION ..................................................................................................... 4

    A.   Contrary to FNF's Representations to This Court, Mr. Roche and FNF Remain Deeply Connected, ██████████████████ 4

    B.   ████████████████████████████████████████████ 6

    C.   ████████████████████████████████████████████ 7

III. CONCLUSION .................................................................................................. 10

## I. INTRODUCTION

As this Court emphasized, under Federal Rule of Civil Procedure 23 and the Private Securities Litigation Reform Act, the putative class must have "counsel who are going to have an untarnished allegiance on a fiduciary duty basis to the putative class and the named plaintiffs". ECF No. 91 at 2:18-20.  The 30(b)(6) deposition Defendants recently took of Freedman Normand Friedland ("FNF") revealed that FNF already has had "its fiduciary duty clouded or muddied in such a way that it will be a disservice to the named plaintiffs or the putative class". *Id.* at 3:3-5.

This is a highly unusual case involving an unprecedented situation between putative class counsel and a direct competitor of Defendants.  At his deposition, Mr. Freedman made a range of admissions that confirm FNF should not represent the putative class, including:

- ████████████████████████████████████████████████████████████████████ and (2) serving as co-counsel in at least three cases (including one recently filed after Mr. Roche formed his own firm in the wake of the Crypto Leaks scandal);

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████████████████

- ████ hold ████ AVAX tokens ████ worth at least ████ based on current market prices, and depending on the fate of competitor Dfinity and the crypo market, will likely swell to over ████



-1-
DEFENDANTS' SUPPLEMENTAL STATEMENT ISO MOTION TO DISQUALIFY
CASE NO. 3:21-CV-06118-JD

- ███████████████████████████████
- ███████████████████████████████
███████████████[1]

All of this provides multiple bases to conclude that the ongoing taint of FNF partners' intertwined personal financial interests and their firm's affiliation with Ava Labs create an incurable conflict between them and the putative class.

*First,* ██████████████████████████████████████████████████████ Mr. Roche remains co-counsel with FNF on three active litigation matters, ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████

*Second,* ███████████████████████████████████████████ At their peak, the AVAX tokens Ava Labs paid to FNF were worth over ██████[2]██████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

_____

[1] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

[2] ████████████████████████████████████████████████████████████████████

2

1 ████████████████████████████████████████
2 ████████████████████████████████████████
3 ██████████████████████████████████
4 *Third,* ████████████████████████████████
5 ████████████████████████████████████████
6 ████████████████████████████████████████
7 ████████████████████████████████████████
8 ████████████████████████████████████████
9 ████████████████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 ████████████████████████████████████████
14 ████████████████████████████████████████
15 ████████████████████████████████████████

▌As set forth further below, FNF has a direct financial incentive to increase the harm this litigation is causing Dfinity to the benefit of Ava Labs. Mr. Roche has already admitted—and FNF has never disputed—that Dfinity and Ava Labs are direct competitors. The spurious statements and personal attacks contained in the letter that FNF filed trying to keep the deposition away from the public eye—and the eyes of their own client and the putative class they seek to represent—provide a further example of the conduct that is harming Dfinity and potentially benefitting FNF partners directly through their holdings in AVAX tokens.[3]

For all of these reasons, and reasons previously set forth, Defendants respectfully submit that the "[t]he responsibility of class counsel to absent class members . . . does not permit even the *appearance* of divided loyalties of counsel". *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (citation omitted) (emphasis added). Defendants therefore respectfully request that the

---

[3] If this case continues, Defendants expect at a minimum to depose Mr. Roche to demonstrate that this action was part of an intentional scheme to drive up the AVAX token price.

Court remove FNF as interim lead class counsel and undertake a new lead counsel process to see if any counsel not tainted by an ongoing entanglement with Ava Labs sees enough merit in this case in its own right to pursue it on behalf of a putative class.[4]

## II.    DISCUSSION

### A.    Contrary to FNF's Representations to This Court, Mr. Roche and FNF Remain Deeply Connected, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

FNF represented at oral argument that Mr. Roche had been excised from the firm. *See, e.g.*, ECF No. 91 at 3:16-20 ("[H]e's all in the rearview mirror, so to speak. Right?" "That's right, Your Honor."); *id.* at 4:17-18 ("Mr. Roche . . . is out.")  A key component of the deposition was to determine whether Mr. Roche was "long gone, financially, personally, everything else", *id.* at 20:4-5, and "in every way, shape, and form . . . excised", *id.* at 30:14-15.[5]  He is not.

#### 1.    FNF Is Only a Name Change and Kyle Roche Remains Actively Involved In A Number of Its Cases.

Mr. Roche still remains actively involved—▇▇▇▇▇▇▇▇▇▇—with FNF and its partners. Mr. Roche ***remains co-counsel*** with FNF on three active litigation matters, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Litigating cases together means that Mr. Roche and FNF share economic interests, are in frequent contact, and may have

---

[4] At oral argument, the Court raised the concern that removing FNF as interim class counsel would effectively end this litigation.  ECF No. 91 at 23:25-24:8.  *First*, a respected plaintiffs' firm is vigorously representing a nearly identical class in a parallel state court action.  *See Daniel Ocampo v. Dfinity USA Research LLC, et al.*, No. 21-civ-03843 (Cal. Super. Ct. 2021).  *Second*, if the claims FNF has brought are in fact meritorious, then other law firms will undoubtedly seek to represent the putative class; even before Judge Failla removed FNF from *In re Tether*, another law firm sought to take over as interim class counsel.  *See* ECF No. 77-2, at 7-12.  *Third*, in any event, the shocking circumstances here necessitate FNF's removal.

[5] *See also* ECF No. 91 at 27:7-8 ("We all know he's out of the picture."); *id.* at 27:11-14 ("Look, he's done. Okay? He was dealt with, in my view, in an appropriate fashion, which means he was kicked out of the case, kicked out of the firm, kicked out of the picture."); *id.* at 19:12-16 (stating that Mr. Roche has been "cut out" "like the bad apple he apparently was").

4

1  increased opportunities to continue to share ideas and strategies about other litigations, such as this
2  one. ████████████████████████████████████████████████████████████████████
3  ██████████████████████████████████████████████████████████████████████████
4  ██████████████████████████████████████████████████████████████████████████
5  Plainly, Mr. Roche is far from being "in the rearview mirror". ECF No. 91, 3:16-20. It is therefore
6  reasonable to infer that Mr. Roche's ethos remains embedded in the dynamic of the firm.
7        2.  ██████████████████████████████████████████████████████████
8           ████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████████████████████████
13 ██████████████████████████████████████████████████████████████████████████
14 ██████████████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████████████████
16 ██████████████████████████████████████████████████████████████████████████
17 ████  FNF's representation to this Court that Mr. Roche is "long gone, financially, personally,
18 everything else", ECF No. 91 at 20:4-5, thus defies reality.
19        Whatever cleansing effect FNF claims to have achieved by changing its name and
20 removing Mr. Roche from its roster does not scrub the stain of its continued professional and
21 financial affiliations with Mr. Roche. No longer can FNF argue that disqualification is not
22 necessary because Mr. Roche is "in every way, shape, and form" removed from the firm.
23
24 ─────────────────────────

[6] In addition, holders of AVAX tokens can "stake" those tokens, which means pledge those
25 tokens. In exchange for pledging those tokens, holders can receive additional AVAX tokens. As
   of this filing, AVAX tokens staked from a wallet owned and controlled by one or more individual
26 token holders ███████████████████████████ generated an annual percentage rate of
27 approximately 9%. *See* Eric Huffman, *AVAX Staking: What to Know and How to Get Started*,
   Milkroad.com (Jan. 16, 2023), https://milkroad.com/staking/avax. ████████████████
28 ██████████████████████████████████████████████████████████████████

B. ▮▮▮

All of this creates a cloud that impairs their representation of the putative class.

1. ▮▮▮

▮▮▮ [7] Several FNF partners executed a Memorandum of Understanding ("MOU") that governed the allocation of these tokens across the partnership. The MOU provided that, subject to certain conditions, Mr. Freedman was entitled to 32% of the AVAX tokens (the largest share), Mr. Roche was entitled to 28% and Mr. Normand was entitled to 5%. ▮▮▮ Ex. 2, at § IV(B). There is ongoing litigation with a former FNF partner concerning his claimed right to some percentage of the AVAX tokens, *see* ECF No. 72-12 (Compl., *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021)), ▮▮▮

2. ▮▮▮

---

[7] ▮▮▮

1  ████████████████████████████████████████████
2  ████████████████████████████████████████████
3  ████████████████████████████████████████████
4  ████████████████████████████████████████████
5  ████████████████████████████████████████████
6  ████████████████████████████████████████████
7  ████████████████████████████████████████████
8  ████████████████████████████████████[8]████
9  ██████████████████████████████████ supports the inference
10 that Mr. Roche was being candid when he described the firm's deployment of "a completely
11 different way than being a lawyer". ECF No. 72-2, at 8.
12      Even the appearance of a potential conflict is enough to remove class counsel. *See Kayes*,
13 51 F.3d at 1465. While Mr. Roche has left the firm (at least in name), the history of the
14 extraordinarily unique relationship between FNF and Ava Labs creates a cloud that cannot be
15 ignored. ████████████████████████████████
16    C.  ████████████████████████████████
17       ████████████████████████████████
18       ████████████████████████████████
19       ████████████████████████████████
20       ████████████████████████████████
21       ████████████████████████████████
22       ████████████████████████████████
23       ████████████████████████████████
24       ████████████████████████████████
25       ████████████████████████████████
26       ████████████████████████████████
27  ──────────────────────────
    [8] ████████████████████████████████
28       ████████████████████████████████

1
2
3
4
5
6
7

8       So why is this relevant to this case?  Because FNF does not (and cannot) dispute that
9  Dfinity is a direct competitor of Ava Labs.  *See, e.g.*, ECF No. 77, at 7.
10
11                    Members of the blockchain community actively debate the merits of Dfinity's
12  ICP tokens versus Avalanche's AVAX tokens.[9]  A video created by "BitDegree Insider", entitled
13  "Avalanche vs. ICP: Which One's Better", illustrates this head-to-head competition.  The
14  description of the video reads:



In this video, we take a deeper look into two prominent Industry names: Avalanche and DFinity's ICP. Both are prominent blockchain networks, and both are promising to reshape the future of the internet as such. Yet they don't share the same vision. So let's get under the hood, and see what are the actual differences between the two projects.[10]

21       Another example is an article entitled "Internet Computer vs. Avalanche:  Who Will Win
22  the Scalability Game?".[11]  Harming Dfinity—particularly through a securities class action alleging

---

[9] Avalanche is the blockchain platform developed by Ava Labs.

[10] BitDegree Insider, *ICP vs. Avalanche:  Which One's Better?*, YouTube.com (Oct. 18, 2022), https://www.youtube.com/watch?v=IkB8gb4F_c4.

[11] Moses On-Chain, "Internet Computer vs. Avalanche:  Who Will Win The Scalability Game?", Publish0x (Jun 2, 2022), https://www.publish0x.com/moses-on-chain/internet-computer-vs-avalanche-who-will-win-the-scalability-xnnerwx.  ("Avalanche and the Internet Computer however, are two networks that have a better position to solve the various blockchain

fraud and seeking rescissory damages that could grind Dfinity "to dust", ECF No. 91, at 15:14-19—would benefit Ava Labs and increase the value of the tokens used on its blockchain. Given this direct competition, it is not simply the case that "maybe someday something might happen way down a chain of a series of events that could enrich these partners". *Id.* at 16:22-24. Indeed, on August 8, 2021 (the day before the complaint in this action was filed, *see* ECF No. 1), the AVAX token price was $14.81. The price skyrocketed shortly after the complaint was filed, and by August 24, 2021, it had reached $55.57—an increase of about 275%. At that value, FNF's AVAX token interests would be nearly ▮▮▮▮▮▮▮ What is more, AVAX tokens have reached as high as $134.87. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Indeed, Dfinity has already been the target of derision and antagonism as a direct result of this lawsuit. One Twitter user wrote: "Imagine dumping on your investors in this rate then attempting to divert attention away from this potential lawsuit."[12] Another responded: "Dominic must really be desperate to try to keep ICP alive, he won't succeed, and with all the false claims he has made, there are even fewer chances he succeeds."[13] Mr. Sirer—Ava Labs' CEO—recently conceded during an evidentiary hearing that third parties' statements about a blockchain project can have a tremendous impact on a token's value. *See* "Crypto CEO Says Defamation Tanked Token's Price" (Feb. 13, 2023), *Law 360*.[14] Mr. Sirer stated that alleged defamatory remarks about him destroyed the value of AVAX tokens, and a financial economist he called testified about this impact. And, until just a few days ago, the majority of FNF's partners had entered appearances for Mr. Sirer in this very litigation. *See* Ex. 1, at 51:4-14. If alleged defamatory remarks about a

---

and network scalability issues. So let's take a look at how they do that, as well as how they compare and contrast.")

[12] partychad | OOPA (@0xpartychad), *Twitter* (Aug. 29, 2021), https://twitter.com/0xpartychad/status/1564178884001763329.

[13] Mike Stonkowsky.eth (@BigTiddyMilkies), *Twitter* (Aug. 29, 2021), https://twitter.com/bigtiddymilkies/status/1564377357313507330.

[14] Unlike Dfinity Foundation, which is a Swiss not-for-profit entity called a stiftung, Ava Labs is a for-profit corporation. Ex. 1, at 106:20-24.

9

blockchain company's founder can severely impact a token's value, then a securities class action alleging fraud and seeking full recission also has the obvious potential to do the same.

That appears to have been Mr. Roche's goal, both from his own statements on video and his conduct. Just two days after filing the complaint, Mr. Roche publicized the allegations on Twitter[15] and Reddit, including on a discussion board entitled "ICP Trader"[16] that is "[a] Community to discuss Internet Computer Protocol tokens (DFINITY)".[17] Just this week, FNF launched yet another public attack on Defendant Dominic Williams, making outrageous accusations of violence under the guise of a request to seal its deposition transcript. *See* ECF No. 98, at 2-3.[18] FNF ignored entirely that since the underlying issue is a potential conflict between FNF and the putative class, the deposition transcript should be public so that Lead Plaintiff and putative class members may review it. FNF's attempt instead to hide its testimony from the putative class members it seeks to represent further demonstrates its conflicted interests.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court remove Freedman Normand Friedland as interim lead class counsel and undertake a new lead counsel process.

---

[15] Kyle Roche (@KyleWRoche), *Twitter* (Aug. 11, 2021), https://twitter.com/kylewroche/status/1425470032063213570.

[16] *See* Kyle Roche (Kwroche1030), "Roche Freedman LLP Brings Class Action Lawsuit Against DFINITY USA Research LLC for Engaging in Insider Trading and Other Securities Violations Resulting in Billions of Dollars in Unlawful Sales to Retail Investors", *Reddit* (Aug. 11, 2021).

[17] ICP Trader, *Reddit*, https://www.reddit.com/r/ICPTrader/.

[18] FNF has allegedly engaged in other bad acts. For example, blockchain company Humbl has petitioned a New York court to order FNF to turn over records that might show it hired a "troll and basher" to malign the company on Twitter. This troll's tweets included threats of violence. *See Humbl v. Paysen, et al.* No. 159867/2022 (N.Y. Sup. Ct. 2022). FNF is currently suing Humbl in a securities class action captioned *Pasquinelli v. Humbl, LLC*, No. 3:22-cv-00723-AJB-BLM (S.D. Cal.).

| | | |
|---|---|---|
| 1 | Dated:     February 24, 2023 | CRAVATH, SWAINE & MOORE LLP |

 */s/ Kevin J. Orsini*
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*

QUINN EMANUEL URQUHART & SULLIVAN LLP

 */s/ Michael E. Liftik*
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

Brenna D. Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Telephone:  (212) 849-7000
brennanelinson@quinnemanuel.com

*Counsel for Defendants*