# EXHIBIT 2

**Memorandum of Understanding**
December 26, 2019

This Memorandum of Understanding ("MOU") is dated as of December 26, 2019, and establishes the intent to form a partnership between Jason Cyrulnik, Velvel Freedman, Amos Friedland, Nathan Holcomb, Edward Normand, and Kyle Roche (together, the "Founding Partners").

## I. PURPOSE

This MOU sets out the basic terms upon which the Founding Partners will enter into a definitive partnership agreement to use their respective skills, knowledge, and assets for the purposes of building a high-end litigation-orientated law firm to be named Roche Cyrulnik Freedman LLP (the "Firm") that is it be branded and marketed as "RCF".

The terms of this MOU are not comprehensive, and additional terms, including further clarification of areas of responsibility and resources to be committed, will be incorporated into a formal Partnership Agreement (the "Partnership Agreement") to be negotiated and to be made effective on or around January 1, 2020.

It is mutually agreed upon and understood by and among the Founding Partners that the Founding Partners agree to work together and co-operate in good faith and to fully participate to develop the Firm and to work towards the finalization of the Partnership Agreement.

## II. EQUITY IN THE FIRM

The Founding Partners understand that equity in Roche Freedman LLP is currently split 50/50 between Kyle Roche and Velvel Freedman. After execution of the Partnership Agreement, and effective January 2020, the equity division in the Firm will be the following:

Jason Cyrulnik – 27%
Velvel Freedman – 24%
Amos Friedland – 10%
Nathan Holcomb – 10 %
Edward Normand – 10 %
Kyle Roche – 19 %

The allotment of equity to additional partners, anticipated to include at least Paul Fattaruso, will be made by the Equity Committee in accordance with the procedures specified below. The Founding Partners understand that at the Firm meeting at the end of 2020, the Founding Partners will sit down to review their contributions to the Firm and discuss whether any equity revisions amongst the six of them should be made.

## III. DISTRIBUTION OF FIRM REVENUE

The Founding Partners understand that the Firm will distribute revenue to its partners according to the Firm's Partnership Compensation Model (attached as Exhibit C).

Exhibit 0002

The Firm will endeavor to distribute revenue to its partners based on this Model on at least a semi-annual basis.

The Founding Partners shall take the following draws (1/12 every month) against their expected formula compensation:

- Jason – 300k
- Vel – 300k
- Kyle – 300k
- Amos – 420k
- Nathan – 300k
- Ted – 420k

These draws are not final, and draws may be adjusted going forward.

### IV.  ASSIGNMENT AND EXCLUSION OF ROCHE FREEDMAN LLP ASSETS AND RIGHTS

The Founding Partners understand that Kyle Roche and Velvel Freedman formed a law firm called Roche Freedman LLP in August 2019.  Roche Freedman LLP will be merged into the Firm in January 2020.  Not all rights and assets of the Roche Freedman LLP will be shared according to the equity percentages of the Firm in January 2020.  An exhaustive list of assets that will not be shared pro-rata will be prepared in connection with the Partnership Agreement, but the list of core assets being excluded or not divided according to the Firm's equity allocations is set forth below, along with a description of how they are excluded from the assignment (the "Excluded Assets").

#### A.    The Finance Agreement

To facilitate the founding of Roche Freedman LLP, Kyle Roche and Velvel Freedman raised $7.5 million[1] in litigation finance (the "Finance Agreement").  A copy of that agreement is attached to this MOU as Exhibit A. The Founding Partners understand that, prior to founding of Roche Freedman LLP, Kyle Roche and Velvel Freedman agreed to certain distributions of $3.5 million of the Finance Agreement.

The $4 million balance of funds available from the Finance Agreement will be paid to the Firm on the schedule set forth therein and allocated as follows:

1. $1.75M for Tether lodestar/expenses;
2. $1.75M for ICO lodestar/expenses;[2]

---

[1] In addition to the initial $7.5 million raised, the Finance Agreement contemplates a possible additional $2.5 million payment in August 2021, which is addressed below.

[2] The Partnership understands that RF incurred hours and expenses billed to Tether and ICO prior to January 2020. These expenses will be removed from these allocations. While some of this funding might

3. $500K for Kleiman expenses/lodestar

   **$750k of the Finance Agreement will be allocated toward paying firm draws and expenses for the first 90 days. However, this allocation is only for the purposes of funding the Firm's operations during its startup and shall be reallocated to the above matters after 90 days.

Should the investor exercise his right to put an additional $2.5M into the firm's resources, that $2.5M shall be divided as follows:

1. $1.25M to pay lodestar/expense for Tether
2. $1.25M to pay lodestar/expense for ICO
3. In the event the full $1.25M is not needed to pay lodestar/expense for either of these two respective cases, all remaining funds shall be allocated to the other matter. In the event funds remain after lodestar/expense is paid for both matters, those funds will be added to any contingency recovery for either or both matters and distributed through the Firm's waterfall.

   B.   *Ava Labs Tokens*

The Founding Partners understand that Roche Freedman LLP represents Ava Labs. Ava Labs is a startup company that plans to distribute a certain amount of Digital Assets (the "Tokens") as part of its plans of building a new platform for decentralized assets and applications. In exchange for legal services, Ava Labs has agreed to pay Roche Freedman LLP a certain amount of Tokens over a thirty-six month period beginning on September 30, 2019. A copy of the Roche Freedman LLP / Ava Labs retention agreement is attached to this MOU as Exhibit B. Notwithstanding, the Founding Partners understand that Roche Freedman LLP has agreed to distribute its Ava Labs Tokens according to the following breakdown:

| | |
|---|---|
| Jason Cyrulnik | 25% |
| Velvel Freedman | 32% |
| Amos Friedland | 5% |
| Nathan Holcomb | 5% |
| Edward Normand | 5% |
| Kyle Roche | 28% |

The Founding Partners understand that Kyle Roche will be the Originating Attorney for Ava Labs (i.e., he will have 100% of the Origination Credit) and any further consideration paid by Ava Labs for the Firm's services will be subject to the Firm's Partnership Compensation Model.

The Founding Partners further understand that notwithstanding the fact that all Founding Partners will have an interest in the Ava Labs Tokens, Kyle Roche, Velvel Freedman, and Jason Cyrulnik will be the only partners expected to bill to the Ava Labs matter. In the event that

---

also be allocable to prior hours, Kyle and Velvel agree to run these hours through the firm's formula compensation so as to share this benefit through the firm's equity pool.

further partner resources are required, the Firm will revisit the above distribution of the Ava Labs Tokens.

### C. Kleiman Contingency

The Founding Partners understand that Roche Freedman LLP represents the estate of David Kleiman and W&K Info Defense Research LLC in active litigation against Craig Wright. As part of that representation, Roche Freedman LLP maintains a contingency interest in any recovery. Any proceeds the Firm recovers from this contingency shall be distributed according to a distribution agreement Kyle, Velvel, and Jason previously negotiated.

### D. Bill's Nursery Contingency

The Founding Partners understand that Roche Freedman LLP represents Bill's Nursery in active litigation with Privateer. As part of that representation, Roche Freedman LLP already holds an equity interest in the company (1%) called the "Velvel & Kyle Equity." The Firm shall not have any interest in the Velvel & Kyle Equity. Further equity earned over the course of litigation shall belong to the Firm and be distributed according to the formula governing Firm revenue.

### E. PartnerRe Contingency Cases

The Founding Partners understand that Amos Friedland, Ted Normand, and Nathan Holcomb represent PartnerRe in two contingency/partial contingency cases, in which Friedland, Normand, and Holcomb have invested significant time and effort, including LFR Collections LLP (full contingency – 30-50% of recoveries) ("LFR") and PartnerRe v RPM/LendUS (partial contingency – 50% rack rates, plus 20-25% of any recovery). The Founding Partners agree that to the extent any settlement or settlements for LFR are received on or before March 1, 2020, without significant litigation, the Firm will receive 10% of any fee proceeds from same, and Friedland, Normand, and Holcomb will receive 90% of any fee to apportion among themselves in proportions they determine are appropriate. The Founding Partners agree that to the extent any settlement is reached in RPM on or before March 1 and absent summary judgment briefing or trial, the Firm will receive 10% of any fee proceeds from same, and Friedland, Normand, and Holcomb will receive 90% of any fee to apportion among themselves in proportions they determine are appropriate. For the avoidance of doubt, any partial rack rate hourly fees generated in RPM shall belong to the Firm and be distributed according to the formula governing Firm revenue. For further avoidance of doubt, any settlement reached in LFR or RPM on or after March 2, 2020, shall belong to the Firm and be distributed according to the Firm's compensation system, subject to any adjustments for the apportionment of revenue among Friedland, Normand, and Holcomb that they may unanimously agree to among themselves.

## V. TREATMENT OF EXISTING CASES

The following client/cases are already part of Roche Freeman LLP's cases, and origination credit has been allocated as follows:

1. Kleiman: 50/50 Vel and Kyle
2. Tether: 50/40/10 Kyle/Vel/Joe Delich
3. ICO: 60/40 (for funded portion of lodestar) and 55/45 for contingent recovery: Kyle and Vel
4. Bill's 50/50 Vel and Kyle
5. Ava Labs[3]: Kyle
6. JPay: Vel (all cases)
7. OJC: Vel (all cases)
8. Harvest: Vel (all cases)
9. Weiss: Vel
10. Meridian: Vel
11. Bossel: Vel
12. Privatbank: 50/50 Vel/Jason
13. Just Energy Securities Litigation:  Jason
14. Just Energy Consumer Action Litigation:  Jason
15. In re Straight Path:  Jason
16. W 66th Street:  Jason
17. Fifth Avenue Developer:  Jason
18. Elie Schwartz/Nightingale:  Jason
19. Skye Mineral Investors:  Jason
20. Genie Energy/Residents Energy General:  Jason
21. Genie Energy TCPA:  Jason
22. ESCO Litigation:  Jason
23. PartnerRe v. RPM/LendUS: Amos (originator; credits apportionment to be determined)
24. WPP v. PartnerRe: Amos (originator; credits apportionment to be determined)
25. Novolex/Carlyle Group v. PartnerRe / PartnerRe v. Newell Brands: Amos (originator; credits apportionment to be determined)
26. PartnerRe – LFR Collections matter: Amos (originator; credits apportionment to be determined)
27. Everard Findlay v. Republic of Suriname: Amos (originator; credits apportionment to be determined)
28. US Fuel Cell Corp. v. US Hybrid Cell et al.: Amos (originator; credits apportionment to be determined)

## VI.  FIRM MANAGEMENT

A.  *New Clients / Matters*

All new billable hour representations that an attorney wishes to bring into the Firm will be presented to the Firm's partnership.  Equity partners can voice any objections to the proposed representation as soon as practicable.  All prospective representations will be approved by 75% of the members of the New Matter Committee, which shall consist of Kyle Roche, Velvel Freedman, Jason Cyrulnik, and Ted Normand.  The New Matter Committee shall vote as soon

---

[3] The Token Consideration the Firm received for Ava Labs shall be distributed as set forth in Section VI.

practicable after the New Matter Memorandum and Conflict Check and after allowing time for views, concerns or feedback from the Firm's partnership.

      B.    *New Associate / Partner Hires*

All lawyer hires will be subject to a vote amongst the Firm's Founding Partners requiring 2/3 approval.

      C.    *Withdrawal from Firm*

If any Partner withdraws from the firm within 18 months from the Firm's formation, the following shall occur: That Partner shall return to the firm any amount of payments received that exceed what that Partner was entitled to under the Firm's formula compensation model. If the Firm owes that Partner funds under the formula, that amount shall be paid to that Partner at the next quarterly distribution, but the Firm shall not owe that Partner any additional compensation going forward. That Partner's equity shall be returned to the balance of the firm's equity partners pro-rata.

      D.    *Firm Marketing*

Kyle Roche will head up the Firm's marketing efforts.  This means that Kyle Roche must circulate any marketing plan or decision to the Founding Partners and provide reasonable time for them to provide comments, input, and ultimately vote to approve or disapprove any marketing decisions.

      E.    *Approval over Lodestar*

All lodestar calculations must be approved by the Originating Lawyer.

      F.    *Firm Name*

Any change in the Firm's name requires unanimous vote of the Named Partners.

      G.    *Partner Removal*

A Founding Partner cannot be removed without cause. A Founding Partner can be removed for cause only on the affirmative vote of 2/3 of the Firm's equity partners.

      H.    *Death of Partner*

If a Partner dies, or becomes severely disabled, he/her or her/his estate is entitled to any unpaid lodestar accrued to him/her under the Firm's then existing formulas. If a Founding Partner dies, or becomes severely disabled, in addition to the payment of lodestar contemplated above, the Firm shall make best efforts to buy out the value of that partner's equity (as valued by an

independent 3rd party). That Partner's equity will then be reallocated according to the vote of the Equity Committee.

I.     *Firm Equity*

Any change in the Firm Equity will be decided by an Equity Committee consisting of the following four members: Kyle Roche, Velvel Freedman, Jason Cyrulnik, and Ted Normand. Any change in Firm equity shall require a unanimous vote of the Equity Committee. Notwithstanding the above, Roche, Freedman, and Cyrulnik may, any time following six months after the Founding Partners join the Firm, terminate Normand from the Equity Committee if (1) Roche, Freedman, and Cyrulnik unanimously vote to do so; and (2) Roche, Freedman, and Cyrulnik provide all the Founding Partners with three months' notice of such termination. Additional members may be appointed to the Equity Committee by the Equity Committee's members by unanimous vote. The Equity Committee will make no changes to the pro-rata equity levels of the Founding Partners prior to December 2020; any changes to the pro-rata levels of the Founding Partners thereafter shall only take place following 90 days' notice by the Equity Committee to the Founding Partners, provided that no notice will be required if the Founding Partners unanimously agree to a change to such pro rata distribution levels.

J.     *Firm Expenses*

The Firm shall have an Expense Committee consisting of four members: Kyle Roche, Velvel Freedman, Jason Cyrulnik, and Amos Friedland. Any expense to be borne by the Firm must be approved by at least 1 member of the Expense Committee if it is below $500, 2 Expense Committee members if it exceeds $500, and 3 Expense Committee members if it exceeds $5,000.

K.     *Compensation Formulas*

The Firm shall have a Compensation Formula Committee consisting of four members: Kyle Roche, Velvel Freedman, Jason Cyrulnik, and Nathan Holcomb. Any change to the compensation formulas must be approved by 3 of the 4 members of the Compensation Formula Committee and can only be effected on six months' notice to the full partnership, unless the Founding Partners approve an early effective date by 2/3 vote.

L.     *Benefits/Admin:*

The benefits offered by the firm, insurance policies the firm carries, salaries and bonuses of admin staff shall be determined by Velvel Freedman and Jason Cyrulnik. The Expense Committee must approve any such Benefit / Admin expenses according to the procedure set forth in Section VIII(J).

M.     *Firm Co-Chairpersons*

The Firm shall have two co-chairpersons serving at all times. The job and powers of the chairpersons shall be to propose ideas, opportunities, and additional partners to the Firm's governing committees and partnership to help lead the firm and provide direction for the Firm's

future development. They shall call the firm's meetings to order and be responsible for the orderly conducting of those meetings. The chairpersons shall be named "co-chairman (or chairwoman)" on the Firm's website and shall be entitled to use that title in public facing communications.

The Firm's partnership shall hold an election every two years to elect the chairpersons. One chairperson must be based in the New York office, the other must be based in the Miami office.

To be eligible for chairperson, the candidate must be a partner of the Firm holding at least 8% of the Firm's equity.

At inception, and for the first term only, the New York chairperson shall be Ted Normand for the first year, followed by Jason Cyrulnik for the second year. The Miami chairperson shall be Vel Freedman.

The Firm may only alter these obligations and requirements upon the affirmative vote of 100% of the Firm's Founding Partners.

N.   **Bank Account Access**

All Founding Partners will have access to view the Firm's bank accounts. Kyle Roche, Velvel Freedman, and Jason Cyrulnik will have full access to the Firm's bank accounts.

By: *Jason Cyrulnik* (Dec 27, 2019)
Name: Jason Cyrulnik

Date: Dec 27, 2019

By: *Velvel Freedman* (Dec 27, 2019)
Name: Velvel (Devin) Freedman

Date: Dec 27, 2019

By: *Amos Friedland* (Dec 27, 2019)
Name: Amos Friedland

Date: Dec 27, 2019

By: *Nathan Holcomb* (Dec 27, 2019)
Name: Nathan Holcomb

Date: Dec 27, 2019

Date: Dec 27, 2019

By: *Kyle Roche*
Name: Kyle Roche

Date: Dec 27, 2019

By: *Edward Normand* (Dec 27, 2019)
Name: Ted Normand