**FREEDMAN NORMAND FRIEDLAND LLP**
Edward Normand (admitted *pro hac vice*)
Richard Cipolla (admitted *pro hac vice*)
Stephen Lagos (admitted *pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION, and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS RELATING TO THEIR SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY**<br><br>Date: March 1, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS RELATING TO THEIR SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY –
No. 3:21-cv-06118

Pursuant to Local Civil Rules 79-5 and 7-11, Lead Plaintiff Henry Rodriguez and named plaintiff Daniel Valenti, on behalf of themselves and all others similarly situated, respectfully submit this Administrative Motion to Seal certain information referenced in Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants' Motion to Disqualify Roche Freedman LLP and Exhibits 1 and 2 to the accompanying Declaration of Edward Normand in Further Opposition to Defendants' Motion to Disqualify, dated February 24, 2023.[1]

## LEGAL STANDARD

"[I]n evaluating a motion to seal, different standards apply depending on whether the request is being made in connection with a dispositive motion or a non-dispositive motion." *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 2020 WL 1492692, at *1 (N.D. Cal. Mar. 27, 2020). "For dispositive motions, the historic 'strong presumption of access to judicial records' fully applies, and a party seeking sealing must establish 'compelling reasons' to overcome that presumption." *Id.* (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)). "For non-dispositive motions, the less-stringent 'good cause' standard applies." *Id.* Because Defendants' motion to disqualify Plaintiffs' counsel is unrelated to the merits of this action, the "good cause" standard applies here. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2020 WL 7133773, at *9 (N.D. Cal. June 16, 2020) (applying "good cause" standard to documents relating to motion to disqualify).

## ARGUMENT

Plaintiffs seek to seal information from the transcript of the Rule 30(b)(6) deposition of Freedman Normand Friedland LLP ("FNF") and a December 2019 memorandum of understanding among attorneys at FNF's predecessor firm, Roche Freedman LLP (the "MOU"), as well as certain references to those documents in Plaintiffs' supplemental opposition to Defendants' motion to disqualify. This information concerns the following six categories: (i) the terms of FNF's confidential agreements with its former client, Ava Labs, and with a litigation funder unaffiliated with Ava Labs; (ii) work performed by FNF for its former client pursuant to confidential attorney-client agreements;

---

[1] Pursuant to Local Civil Rule 79-5(d) and (e), these documents are attached to this motion.

1
PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS RELATING TO THEIR
SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY –
No. 3:21-cv-06118

(iii) the assets that individual attorneys at FNF obtained pursuant to those attorney-client agreements; (iv) FNF attorneys' personal transactions involving those assets; (v) highly personal financial information that relates to those assets; and (vi) the identity of the attorney (unaffiliated with Ava Labs) who suggested that FNF attorneys investigate Defendants' conduct. As explained below and in FNF's motion for a protective order (Dkt. No. 98), "good cause" exists to seal this information.

*First*, legitimate private interests warrant sealing. As to FNF's confidential agreements with its former client and a litigation funder, "Rule 26(c) expressly authorizes protection of confidential commercial information," *Milliner*, 2020 WL 1492692, at *2, and courts frequently seal confidential agreements involving non-parties, as well as testimony and documents that reference the provisions of such agreements and work done pursuant to such agreements, *see, e.g.*, *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020) (sealing "confidential agreements with third parties").[2] The agreements at issue here, moreover, expressly require confidentiality. (Attorney Declaration of Edward Normand in Support of Plaintiffs' Administrative Motion to Seal ("Normand Decl.") ¶ 3.) In addition, the confidential agreements between the firm and its former client arise in the attorney-client context, where clients reasonably expect privacy. *See* ABA Model Rule 1.6 (lawyer may only "reveal information relating to the representation of a client" under limited circumstances); Cal. Bus. & Prof. Code § 6149 (fee agreements are "confidential"); *Stiner v. Brookdale Senior Living, Inc.*, 2022 WL 1180216, at *3 (N.D. Cal. Mar. 30, 2022) (sealing records over which employees had "reasonable expectation of privacy").

Private interests also warrant sealing with respect to the remaining categories of information. As to FNF attorneys' assets and private transactions, "[n]on-party privacy interests" are "sufficient to satisfy the 'good cause' standard," *Chloe SAS v. Sawabeh Info Servs. Co.*, 2015 WL 12734004,

---

[2] *See Lane v. Wells Fargo Bank, N.A.*, 2013 WL 2627487, at *3 (N.D. Cal. June 11, 2013) (sealing "confidential agreements" between defendant "and various non-parties"); *Asetek Holdings, Inc. v. CMI USA, Inc.*, 2014 WL 12644231, at *2 (N.D. Cal. Sept. 23, 2014) (sealing "confidential agreements" and testimony describing that confidential relationship).

at *3 (C.D. Cal. Feb. 4, 2015), especially where, as here, the non-parties' "sensitive financial information" is at issue, *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4472993, at *2 (N.D. Cal. Aug. 22, 2016).[3] And with respect to the individual who identified Defendants' conduct as potentially unlawful, courts routinely limit disclosure of the identity of confidential informants whose safety may be implicated. *See Blight v. City of Manteca*, 2017 WL 2813161, at *1-2 (E.D. Cal. June 29, 2017) (collecting cases).

Consistent with the foregoing case law, the federal court adjudicating the litigation between FNF and a former firm attorney (the "Cyrulnik Litigation") has found—repeatedly—that "good cause" exists to seal this information. As recently as January 31, that court granted a motion to seal FNF attorneys' testimony regarding these same transactions. *See, e.g.*, Order, *Roche Freedman LLP v. Cyrulnik*, No. 1:21-cv-01746 (S.D.N.Y. Jan. 31, 2023), Dkt. No. 348. That court has likewise found on numerous occasions, *including in the context of a dispositive motion*, that the terms of the same confidential attorney-client agreements discussed during FNF's deposition were appropriately sealed. *See, e.g.*, Dkt. Nos. 111, 182. And Plaintiffs only seek to seal the MOU to the extent previously, and repeatedly, authorized by the court in the Southern District of New York. *See, e.g.*, Dkt. No. 71. It bears emphasizing that the argument for sealing here is stronger: in contrast to the Cyrulnik Litigation, the sensitive client and private financial information relates to non-parties and has no conceivable relevance to the merits of this case, which concerns allegations that *Defendants* illegally sold unregistered securities and manipulated the market for those securities.

*Second*, injury would result if this information were not sealed. Disclosure of FNF's confidential agreements with a former client and a litigation funder, and disclosure of FNF attorneys' assets and private transactions, would violate the legitimate privacy interests of non-parties. *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1,

---

[3] *See Fundingsland v. OMH Healthedge Holdings, Inc.*, 2018 WL 1524474, at *2 (S.D. Cal. Mar. 27, 2018) (sealing "information relating to payments to non-parties investors, non-party salary and bonus information, and non-party ownership information"); *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *3-4 (N.D. Cal. Nov. 1, 2007) (request to seal "personal financial information" met "the 'good cause' standard given [the] non-party privacy interest.").

2007) (privacy interests warrant sealing). In addition, if this information were disclosed, that could plausibly permit the public to identify FNF attorneys' crypto wallet addresses, thus enabling anyone to track every single cryptocurrency transaction, investment, or trade that any of those attorneys made. (Normand Decl. ¶ 4.) This would be extraordinarily intrusive, and would also potentially expose those attorneys to theft, cybercrime, and physical violence, a known tactic used by malicious actors seeking cryptoassets. *Cf. Nursing Home Pension Fund*, 2007 WL 3232267, at *2 ("The Ninth Circuit has found that compelling reasons exist to keep personal information confidential to protect an individual's privacy interest and to prevent exposure to harm or identity theft."); *see also* Nathaniel Popper, *Bitcoin Thieves Threaten Real Violence for Virtual Currencies*, N.Y. Times (Feb. 18, 2018), https://www.nytimes.com/2018/02/18/technology/virtual-currency-extortion.html. Finally, disclosure of the identity of the individual who suggested that Mr. Roche investigate Defendants' conduct could subject that individual to harassment from Defendants. *See Nursing Home Pension Fund*, 2007 WL 3232267, at *2 (noting that confidential witnesses are "susceptible to retaliation and harassment").

Plaintiffs believe that the likelihood of the foregoing injuries is significantly increased by Defendants' animosity toward Plaintiffs' counsel. Indeed, as explained in Plaintiffs' opposition brief, and as Defendants have repeatedly declined to deny, Defendants hired a "conflict management" specialist to lure Mr. Roche to London under false pretenses, secretly record him, and illegally distribute those recordings via an anonymous website in highly edited form alongside an inflammatory and misleading article, and then paid Twitter to promote that article. (Dkt. No. 76 at 8-10.) Worse, Defendants apparently have since made threats on Mr. Roche's life, necessitating FBI involvement. (Normand Decl. ¶ 5.) This conduct is, unfortunately, consistent with what Plaintiffs believe is a pattern of vindictive and dangerous behavior from Defendant Williams, who has previously offered "reward[s]" to those who expose his critics' identities (Dkt. No. 45 ¶ 97), and allegedly engaged in domestic violence, *see* TRO, *Williams v. Williams*, No. 16-dv-020442 (Cal. Super. Ct. San Mateo Cnty. Dec. 12, 2016).

Underscoring these concerns, Williams *continues* to make inflammatory public statements

4
PLAINTIFFS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS RELATING TO THEIR
SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY –
No. 3:21-cv-06118

about FNF (Normand Decl. ¶ 6), and during the meet-and-confer process, Defendants' counsel told FNF that Williams was involved in designing the overbroad deposition topics, would need to approve any modifications to those topics, and would *never* agree to keep the transcript AEO (*id.* ¶ 7). His intimate involvement with a process designed to ensure that FNF will protect the class, coupled with his history of wrongful conduct and violence, heightens FNF's concerns that, if provided with this sensitive information, he would misuse it. These concerns are exacerbated by the near-unlimited resources available to Williams, who Plaintiffs allege sold billions of dollars' worth of ICP tokens and fled the jurisdiction for Switzerland. (Dkt. No. 45 ¶¶ 8, 21.)

*Third*, in light of the sensitive nature of this information and Defendants' concerning conduct, Plaintiffs do not believe that a less restrictive alternative to sealing is appropriate.

## CONCLUSION

Plaintiffs respectfully submit, for the foregoing reasons, that the Court should grant their motion to seal.

Dated: February 24, 2023

Respectfully Submitted,

**FREEDMAN NORMAND FRIEDLAND LLP**

/s/ Edward Normand
Edward Normand (admitted *pro hac vice*)
Richard Cipolla (admitted *pro hac vice*)
Stephen Lagos (admitted *pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs and the Class*