CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA
Research LLC, Dfinity Foundation and
Dominic Williams*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' OPPOSITION TO FNF'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Date: February 2, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

Defendants Dfinity USA Research, LLC, Dfinity Foundation and Dominic Williams (together, "Defendants") submit this Opposition to Freedman Normand Friedland LLP's ("FNF's") Administrative Motion to Seal (ECF No. 102).

**PRELIMINARY STATEMENT**

FNF seeks to seal the entire transcript of the 30(b)(6) deposition ordered by this Court (ECF No. 86), portions of FNF's Supplemental Statement in Opposition to Defendants' Motion to Disqualify (ECF No. 101) and a Memorandum of Understanding ("MOU") that has already been filed publicly (ECF No. 72-12).[1] There is no legal justification for this extreme relief. The public has a fundamental right of access to judicial proceedings, which is precisely why the local rules require the parties to "avoid wherever possible sealing entire documents". Local R. 79-5(a). This principle is particularly important in this case: the underlying issue that gave rise to the deposition is the conflict between FNF's own interests—laid bare by Mr. Roche's statements and confirmed by the continuing entanglement between FNF, Mr. Roche and Ava Labs—and those of the absent putative class members they seek to represent. Having made no effort to circumscribe its sealing request with any precision—FNF does not even bother to identify which portions of the transcript should be sealed for which reasons—FNF hopes to shroud the evidence it claims absolves it of any conflict in secrecy. The law of this circuit does not support such an extreme result.

More broadly, if FNF truly believed that Mr. Freedman's testimony exonerated the firm from concern about conflicts with the putative class, one would expect them to want the putative class, the public and the press to know—particularly because this unusual motion arose out of Mr. Roche's statements about his firm's misuse of the legal system. The fact that they have taken the opposite approach is telling, particularly as they seek to justify the sealing request by making explosive, unsubstantiated and baseless claims of threatened violence against Defendants.[2] Mr. Normand claimed to the Court that FNF is an "open book". (ECF No. 91, at 29:2-5.) Defendants respectfully submit that the Court should hold FNF to that promise of sunlight and reject FNF's attempt now to keep the public and the people to whom they owe fiduciary duties in the dark.

---

[1] Emphasis is added and citations and quotations are omitted unless otherwise noted.

[2] Defendants have filed a separate motion to strike these meritless allegations.

## I. FNF HAS NOT ESTABLISHED GOOD CAUSE FOR SEALING THE 30(B)(6) DEPOSITION TRANSCRIPT

FNF seeks to represent a putative class, and the deposition transcript makes clear that FNF's ability to do so fairly and adequately has been compromised; the public should have access to this important document absent good cause to keep it under seal. "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). *First*, this is a putative class action, and the underlying motion is rooted in a fundamental conflict between FNF and the putative class members it seeks to represent. Putative class members have a right to know the details of FNF's entanglement with Ava Labs, which Mr. Roche admitted on tape drove this litigation and others. *Cf. In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 11195115, at *3 (N.D. Cal. Feb. 2, 2018) (acknowledging "the Court's duty to protect the interests of the absent class members").

*Second*, "[t]he sealing request must . . . be narrowly tailored to seek sealing only of sealable material". *Milliner v. Bock Evans Fin. Couns., Ltd.*, No. 15-cv-01763-JD, 2020 WL 1492692, at *1 (N.D. Cal. Mar. 27, 2020); *see also* Local R. 79-5(a). Ignoring this requirement, FNF's Proposed Order requests that the "[e]ntire transcript" be sealed (ECF No. 102-2). That is obviously not a narrowly tailored request. Indeed, FNF does ***not*** contend that testimony concerning its ongoing relationship with Mr. Roche is sealable—though this was a key deposition topic. This alone confirms that FNF asks for far too much when seeking an order sealing the ***entire*** transcript. *See Kamakahi v. Am. Soc'y for Reprod. Med*, No. 11-CV-01781-JCS, 2014 WL 6617262, at *3 (N.D. Cal. Nov. 13, 2014) ("Plaintiffs' failure to identify which portions of the transcript are sealable is therefore inconsistent with [the Local Rules] . . . .") While FNF does identify six *other* categories of information that it asserts would justify sealing the transcript (ECF No. 102, at 1), it makes no effort to provide any guidance as to what testimony falls into which category that would allow the Court to consider each category on its own with reference to specific testimony.

In any event, not one of those categories is entitled to protection. To begin, much of the information FNF seeks to keep under seal *already is public*. For instance, FNF's former partner

publicly filed in Florida state court the MOU that sets forth each FNF partner's AVAX token allotment. *See* Compl. Ex. A, *Cyrulnik v. Roche Freedman, et al.*, No. 2021-5837-CA-01 (Fla. 11th Cir. Ct., Mar. 9, 2021). That is how Defendants had a copy of the document to use at the deposition (since no document discovery has taken place in this case). FNF asks the Court to seal the MOU "to the extent previously . . . authorized by the court in the Southern District of New York" (ECF No. 102, at 3), but does not explain which provisions that would apply to, which portions of the deposition transcript would correlate to the unspecified redactions from the MOU and how it could be that they are entitled to seal any portion of a document ***that is already available on a public docket***. Information that is already public should not, of course, be lodged under seal. *See Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-cv-00119-HSG, 2020 WL 759528, at *5 (N.D. Cal. Feb. 14, 2020) ("The Court DENIES the motions to seal as to [a certain excerpt] because that information is unredacted elsewhere and thus publicly available.").

Similarly, the number of AVAX tokens FNF received, and the months and years during which they received those tokens, is set forth in Requests for Admission responses filed publicly in a related action in New York. *See* R&Os to RFAs, *Roche Freedman LLP v. Cyrulnik*, No. 21-cv-01746 (S.D.N.Y. Nov. 18, 2022) (ECF No. 288-1). Thus, with the exception of the dollar amount of FNF attorneys' token sales, FNF's categories (iii), (iv) and (v) (ECF No. 102, at 1) are already public and there is no basis whatsoever to put them under seal here.

As to the categories of documents that are *not* already public, FNF fails to make a "particularized showing of good cause with respect to any individual document". *Foltz*, 331 F.3d at 1138. FNF's opening argument is that its agreements with Ava Labs are protected under Rule 26(c). (ECF No. 102, at 2.) But FNF has not demonstrated that these are the kinds of agreements contemplated by Rule 26(c), which authorizes the court to issue a protective order "requiring that a *trade secret or other confidential research, development, or commercial information* not be revealed . . . .". Fed. R. Civ. P. 26(c)(1)(G). FNF's own case makes this clear. *See Milliner*, 2020 WL 1492692, at *2 (granting motion to seal because the non-party movant had "made a particularized showing that disclosure of its highly negotiated agreement . . . *would expose it to competitive harm*."). The cases FNF cites for the general proposition that confidential agreements

3

involving non-parties are sealable are not on point either; in each case, the court sealed agreements with third parties because those agreements contained proprietary or other information, the sealing of which "prevent[ed] competitors from gaining insight into the parties' business model and strategy". *Synchronoss*, 2020 WL 759528, at *2. FNF has not argued that declining to seal testimony concerning its agreements with Ava Labs would expose it to competitive harm.[3]

As to its attorneys' "assets and private transactions", FNF appears to contend that its status as a non-party is sufficient. (ECF No. 102, at 2-3.) This argument fails. Though courts sometimes seal documents concerning "*innocent* third parties", *see, e.g.*, *Digital Sin, Inc. v. Does 1-5698*, No. C 11-04397 LB, 2011 WL 5362068, *4 (S.D. Cal. 2011), FNF is plainly not an "innocent third party" here; its partners' loyalty to—and financial interests in—one of Defendant's direct competitors is the reason for the pending motion. (*See* ECF No. 72.) Nor is it sufficient simply to refer to unspecified categories of information as "sensitive financial information". (ECF No. 102, at 3.) FNF's misleading partial quotation from *Fundingsland v. OMH Healthedge Holdings* makes this clear: the court there did not seal all "information relating to payments to non-parties", ECF No. 102, at 3, but "**proprietary** information relating to payments to non-parties . . .", 2018 WL 1524474, at *2 (S.D. Cal. Mar. 27, 2018). FNF has made no effort to demonstrate that its partners' financial transactions, to the extent they are not already public, are in any way proprietary.[4]

FNF's final argument concerning purported "private interests" is that a judge in New York sealed similar testimony. (ECF No. 102, at 3.) Those decisions applied Florida law, *see, e.g.*,

---

[3] FNF's invocations of the ABA Model Rules and the California Business and Professions Code are similarly meritless. ABA Rule 1.6, for instance, provides that an attorney *may* reveal information relating to the representation of a client "to comply with other law or a court order". FNF's conflation of the confidentiality language in the Model Rules with a "reasonable expectation of privacy" only compounds the illogic. In *Stiner v. Brookdale Senior Living, Inc.*, the case on which FNF relies for the proposition that clients have a reasonable expectation of privacy that renders sealing appropriate here, the protected documents included "detailed corrective action and action plan forms", the disclosure of which could "result in unnecessary embarrassment or injury to those employees". 2022 WL 1180216, at *3 (N.D. Cal. Mar. 30, 2022). FNF has not even attempted to demonstrate such embarrassment or injury, much less make a "particularized showing" of such "specific prejudice or harm". *Id.* at *1.

[4] Even more absurd is FNF's contention that the attorney who allegedly suggested that FNF consider suing Defendants constitutes a "confidential informant". (ECF No. 102, at 3, 4.) *Bligh v. City of Manteca*, for instance, concerns a confidential informant who provided information that led to a "SWAT style raid" of the movant's home. 2017 WL 2813161, at *1.

4

Order, *Roche Freedman*, No. 1:21-cv-01746 (S.D.N.Y. Feb. 28, 2022) (ECF No. 71), are not binding here and contain no legal analysis. Moreover, as discussed above, much of what FNF seeks to seal **was already disclosed in that litigation**. *See* R&Os to RFAs, *Roche Freedman*, No. 1:21-cv-01746 (ECF No. 288-1). And FNF's argument that sealing is even more appropriate here ignores once again the point: putative class members, and the public, have a right to determine whether FNF's fiduciary duties have been "clouded or muddied in such a way that it will be a disservice to the named plaintiffs or the putative class" in a litigation that Mr. Roche specifically identified as being driven by his firm's relationship with Ava Labs. (ECF No. 91, at 3:3-5.)

*Third,* FNF fails to identify any actual "injury" that will result if the public and the members of the putative class are allowed to evaluate the testimony. (ECF No. 102, at 3-5.) For example, FNF argues that disclosure of FNF partners' token transactions would allow someone to reverse-engineer their wallet addresses and thereby expose them to a parade of horribles, including physical violence. FNF did not raise this argument when opposing the 30(b)(6) topic concerning FNF attorneys' token holdings and transactions (*see* ECF No. 93), but manufactures it now that FNF has made unflattering admissions under oath. In any event, this argument is purely speculative. FNF did not even provide testimony about particular transactions on particular dates, and instead offered only aggregate information about the total AVAX tokens obtained and total financial amounts obtained from token sales to date. FNF fails to explain, among other things, (1) how such generalized information would allow someone to identify their wallet addresses; or (2) how such identification would expose FNF partners to theft, cybercrime or physical violence.

*Fourth*, as discussed further in Defendants' Motion to Strike, filed contemporaneously herewith, FNF's *ad hominem* attacks on Defendants (ECF No. 102, at 4-5) are inappropriate and unavailing. Most outrageously, FNF accuses Defendants of "making threats on Mr. Roche's life". (*Id.*) Yet FNF does not even try to substantiate that shocking accusation, which is unequivocally false. They also do nothing to explain how allowing Defendants to understand FNF's entanglement with Ava Labs has anything to do with these baseless accusations. Nor could they.

## II.    CONCLUSION

For the foregoing reasons, Defendants submit that FNF's request to seal should be denied.

Dated: February 27, 2023    CRAVATH, SWAINE & MOORE LLP

 /s/ Kevin J. Orsini
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.:  (212) 474-1000
Fax:  (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*

QUINN EMANUEL URQUHART & SULLIVAN LLP

 /s/ Michael E. Liftik
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone:  (650) 801-5000
emilykapur@quinnemanuel.com

Brenna D. Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Telephone:  (212) 849-7000
brennanelinson@quinnemanuel.com

*Counsel for Defendants*