**FREEDMAN NORMAND FRIEDLAND LLP**
Edward Normand (admitted *pro hac vice*)
Richard Cipolla (admitted *pro hac vice*)
Stephen Lagos (admitted *pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION, and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED** |

Pursuant to Local Civil Rule 79-5(f)(3), Lead and named plaintiffs respectfully submit this Response to Defendants' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed. (DE 99.)

**INTRODUCTION**

Plaintiffs seek to seal FNF's deposition transcript and certain references to FNF's deposition testimony. FNF's deposition concerned its relationship with a former client, certain assets FNF attorneys received, what those attorneys did with those assets, and other nonpublic information relating to FNF. This plainly-confidential financial information *has nothing to do* with the merits of this action—a securities lawsuit against Defendants. And although Defendants repeatedly claim FNF is seeking to conceal its misconduct, the truth—as demonstrated by FNF's refusal to withdraw and candid deposition testimony—is that FNF has no problem providing a full and frank disclosure to the Court, which similarly has a duty to protect the putative class. FNF does, however, have a problem providing this sensitive and confidential information about its attorneys and former client to Defendants, who FNF reasonably believes are highly motivated to use their vast resources to harm FNF and its attorneys. Defendants' utterly illogical insistence that FNF attorneys' personal financial information become public only underscores that their goal here is to harass FNF out of the case.

**LEGAL STANDARD**

"[I]n evaluating a motion to seal, different standards apply depending on whether the request is being made in connection with a dispositive motion or a non-dispositive motion." *Milliner v. Bock Evans Fin. Counsel, Ltd.*, 2020 WL 1492692, at *1 (N.D. Cal. Mar. 27, 2020). "For dispositive motions, the historic 'strong presumption of access to judicial records' fully applies, and a party seeking sealing must establish 'compelling reasons' to overcome that presumption." *Id.* (quoting *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)). "For non-dispositive motions, the less-stringent 'good cause' standard applies." *Id.* Because Defendants' motion to disqualify Plaintiffs' counsel is unrelated to the merits of this action, the "good cause" standard applies. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 2020 WL 7133773, at *9 (N.D. Cal. June 16, 2020) (applying "good cause" standard to documents relating to motion to disqualify).

**ARGUMENT**

Defendants "oppose the sealing of any portions" of their Supplement Statement in Support of Motion to Disqualify (DE 99-3) and the Rule 30(b)(6) deposition transcript of Freedman Normand Friedland LLP ("FNF") (DE 99-4). For the reasons stated in Plaintiffs' motion to seal (DE 102), "good cause" exists to seal that information to the extent described in the proposed order accompanying this response. Defendants' contrary arguments are meritless.

*First*, without disputing that the "less stringent 'good cause' standard" applies, Defendants assert that "[p]utative class members have a right to know the details of FNF's entanglement with Ava Labs." (DE 103 at 3.) Defendants cite no authority establishing this purported "right" and offer no explanation why it extends to the billions of people who *are not* class members. Moreover, Defendants do not explain why the Court's review of the transcript for the purpose of protecting putative class members (DE 91 at 17:6-12) is insufficient to protect the class, especially given Defendants' alleged devotion to that cause in their questioning and submissions. Instead, Defendants concede sealing is appropriate where "specific prejudice or harm will result if no protective order is granted." (DE 103 at 3); *see also Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *14 (C.D. Cal. Apr. 12, 2012) (court sealed information relating to counsel's adequacy). Given the highly confidential and private nature of the information, it's beyond dispute that disclosure would cause prejudice and harm.

*Second*, Defendants falsely claim that "much of the information FNF seeks to keep under seal *already is public*." (DE 103 at 2-3). Indeed, Defendants claim that "the number of AVAX tokens FNF received, and the months and years during which they received those tokens, is set forth in [RFA] responses filed publicly in a related action in New York" (*id.* at 4), but those RFA responses contain no information about "the months" that FNF received tokens and were *filed with redactions* (DE 288-1), which have *never been removed*. And although Defendants similarly claim that the MOU referenced in FNF's deposition testimony "***is already available on a public docket***" (DE 103 at 4 (emphasis in original)), they omit the fact that the court in the case they reference promptly

sealed the MOU such that it is *not* available on that docket, *see* Order, *Jason Cyrulnik v. Kyle Roche*, No. 2021-005837-CA-01 (Fla. 11th Cir. Ct. Apr. 25, 2021), Dkt. No. 25).

*Third*, Defendants argue this Court should disregard Judge Koeltl and Judge Netburn's repeated orders in *Roche Freedman LLP v. Cyrulnik*, No. 1:21-cv-01746 (S.D.N.Y.) (the "Cyrulnik Litigation") sealing the following information: (i) FNF's agreements with its former client, (ii) information about when and how much that former client paid FNF and its attorneys, and (iii) FNF attorneys' transactions with assets received from that former client. (DE 103 at 5-6.) But Defendants' alleged basis for vitiating those orders—that this case arises in the class-action context—is not only unsupported by authority, it also defies law and logic. The prior orders in the Cyrulnik Litigation, some of which were made in connection with dispositive motions, concerned *party* information in a case *about* FNF and tokens paid by FNF's former client. (DE 102 at 4.) Here, the information strictly belongs to non-parties, the litigation has nothing to do with FNF or its former client, and the underlying motion has no bearing on the merits of the case. In other words, the argument for sealing is *far stronger* here than it was in the Cyrulnik Litigation.

*Fourth*, Defendants incorrectly suggest that FNF cannot show "good cause" to seal its confidential agreements with its former client because "FNF has not argued that declining to seal testimony" concerning those agreements "would expose it to competitive harm." (DE 103 at 5.) There is no such requirement. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) ("The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, *but not limited to*, trade secrets or other confidential research, development, or commercial information." (emphasis in original)). The agreements at issue are between non-parties and have no connection to the merits of this action; they are also attorney-client agreements that expressly require confidentiality. (DE 102-1 ¶ 3.) Disclosure of those agreements would eviscerate that former client's reasonable expectation of confidentiality and potentially impact that former client's negotiations with other counterparties that seek payment in cryptoassets. *See Universal Entm't Corp. v. Aruze Gaming Am., Inc.*, 2022 WL 17668678, at *6 (D. Nev. Dec. 14, 2022) (sealing engagement agreements between party

and law firm). Such disclosure, moreover, could harm FNF's relationships with current and prospective clients who value their attorneys' ability to keep client information confidential. *Cf. Jones v. PGA Tour, Inc.*, 2023 WL 2232094, at *3 (N.D. Cal. Feb. 23, 2023) (sealing information where disclosure could cause "damage" to "business relationships").

*Fifth*, Defendants' assertion that FNF attorneys' private transactions should be publicly disclosed because they are not "proprietary," is meritless. Again, there is no such requirement: courts *routinely* seal information relating to non-parties' personal finances and transactions. *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 2007 WL 3232267, at *4 (N.D. Cal. Nov. 1, 2007) ("Symond's request to seal personal financial information meets the 'good cause' standard given his non-party privacy interest."). Indeed, this kind of information is protected by California's constitution. *See Ortiz v. McNeil-PPC, Inc.*, 2009 WL 10725750, at *2 (S.D. Cal. Mar. 6, 2009) (keeping constitutionally-protected financial information sealed). Although Defendants claim these protections only apply to "innocent" non-parties (DE 103 at 5), their cited authority does not stand for that proposition, *see Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068, at *4-5 (N.D. Cal. Nov. 4, 2011) (issuing protective order *sua sponte*), and FNF's attorneys have done nothing wrong. At bottom, this is personal financial information that has nothing to do with the merits of this case, and its disclosure would—at best—cause needless embarrassment to non-parties and at worst, could result in serious harm to those parties.

*Sixth*, in characterizing Plaintiffs' effort to protect the identity of the individual who suggested FNF investigate Defendants' conduct as "absurd," Defendants disregard the evidence. Based on Defendants' conduct after this action was filed, Plaintiffs reasonably believe this individual could be subject to harassment or physical harm if his or her identity were disclosed. (DE 102 at 4-5.) Indeed, among other examples, Defendants *still* have not denied their involvement in an elaborate scheme to secretly record and illegally distribute videos of Mr. Roche, and they *continue* to attack FNF's predecessor firm online. (*Id.* at 5-6.) Although Defendants feign ignorance as to the relevance of their alleged "threats on Mr. Roche's life" (DE 103 at 6), such evidence, which FNF reported to

the FBI, obviously supports Plaintiffs' view that Defendants may seek to retaliate against that individual and others associated with this lawsuit. *See In re Bofl Holding, Inc. Securities Litig.*, 2021 WL 370744, at *1 (S.D. Cal. Aug. 18, 2021) (sealing identities of witnesses who "reportedly fear[ed] retaliation and potential harassment" from their former employer).

*Seventh*, contrary to Defendants' suggestion (DE 103 at 3), "good cause" exists to seal information relating to the current (minimal) relationship between FNF and Mr. Roche for the same reason that it exists to seal information relating to FNF's relationship and agreements with Ava Labs. Indeed, FNF's testimony regarding Mr. Roche discusses specific pending cases, attorney-client relationships, and confidential fee arrangements. (DE 99-4 at 74:24-82:6.)

*Eighth*, Defendants baselessly argue that Plaintiffs cannot "identify any actual 'injury' that will result" if the foregoing information were disclosed. (DE 103 at 6.) In addition to the many injuries identified above and in Plaintiffs' motion to seal (DE 102 at 4-5), Plaintiffs reasonably believe that disclosure of the amount and timing of their attorneys' transactions could enable the public, *including Defendants*, to identify FNF attorneys' crypto wallet addresses (DE 102-1 ¶ 4). Defendants claim that this concern is "manufactured" because FNF "offered only aggregate information about the total AVAX tokens obtained and total financial amounts obtained from token sales to date" (DE 103 at 6), but that is simply false, as demonstrated by *Defendants' own brief*, which describes specific transactions between Ava Labs and FNF attorneys, including the month and amount transferred (DE 99-3 at 6 n.7; *see also* DE 99-4 at 24:6-26:15, 29:3-9, 42:1-21 (additional transaction details)). And contrary to Defendants' suggestion, identifying FNF attorneys' wallet addresses could plausibly subject those attorneys to theft attempts and other crime, *see* Ezra Reguerra, *Scam Alert: MetaMask Warns Crypto Users About Address Poisoning*, Coin Telegraph (Jan. 12, 2023), https://cointelegraph.com/news/metamask-warns-crypto-users-about-address-poisoning-scam, especially given Defendants' apparent desire to inflict harm on FNF and its attorneys.

## **CONCLUSION**

Plaintiffs respectfully submit, for the foregoing reasons, the Court should seal information contained in Dkt. Nos. 99-3 & 99-4 to the extent described in the accompanying proposed order.

| | |
|---|---|
| Dated: March 3, 2023 | Respectfully Submitted,<br><br>**FREEDMAN NORMAND FRIEDLAND LLP**<br><br>*/s/ Edward Normand*<br>Edward Normand (admitted *pro hac vice*)<br>Richard Cipolla (admitted *pro hac vice*)<br>Stephen Lagos (admitted *pro hac vice*)<br>Ivy T. Ngo (SBN 249860)<br>99 Park Avenue, 19th Floor<br>New York, NY 10016<br>Telephone: (646) 350-0527<br>Facsimile: (646) 392-8842<br>Email: tnormand@fnf.law<br>Email: rcipolla@fnf.law<br>Email: slagos@fnf.law<br>Email: ingo@fnf.law<br><br>*Counsel for Plaintiffs and the Class* |