1
2
3
4
5
6
7
8
9
10

**FREEDMAN NORMAND FRIEDLAND LLP**
Edward Normand (admitted *pro hac vice*)
Richard Cipolla (admitted *pro hac vice*)
Stephen Lagos (admitted *pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| DANIEL VALENTI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION, and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE A NOTICE OF SUPPLEMENTAL EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY** |

1

2          Lead Plaintiff Henry Rodriguez and named plaintiff Daniel Valenti, on behalf of themselves

3  and all others similarly situated, respectfully submit this Motion for Leave to File a Notice of

4  Supplemental Evidence in Opposition to Defendants' Motion to Disqualify Freedman Normand

5  Friedland LLP ("FNF"). (Dkt. No. 72.).

6          As this Court is aware, Defendants' motion to disqualify FNF relied almost exclusively on

7  videos published by "CryptoLeaks," which purported to show former firm lawyer Kyle Roche

8  making certain statements. FNF maintains these videos are irrelevant given Roche's departure from

9  the firm many months ago. Defendants nevertheless continue to cite these videos as grounds for

10  disqualifying FNF. In light of Defendants' position, FNF seeks leave to file an expert report it just

11  received, and which explains that many of the videos on which Defendants rely are the product of

12  manipulation, are inauthentic, and contain indicators consistent with the use of deepfake

13  technology.[1]

14          Specifically, Plaintiffs seek permission to submit the Expert Report of David Kalat dated

15  March 10, 2023 (the "Kalat Report"), attached as Exhibit 1 to the Declaration of Edward Normand.

16          The Court may consider additional materials submitted in connection with a pending motion

17  under its inherent powers and Local Civil Rule 7-3(d). *See, e.g.*, *Quintana v. Claire's Stores, Inc.*,

18  2013 WL 1736671, at *4 (N.D. Cal. Apr. 22, 2013) (finding "good cause to allow Defendants to

19  submit the additional evidence"); *FTC – Forward Threat Control, LLC v. Dominion Harbor Enters.,*

20  *LLC*, 2020 WL 5545156, at *4 (N.D. Cal. Sept. 16, 2020) (granting administrative motion for leave

21  "to file supplemental evidence obtained through discovery"); *cf. Music Grp. Macao Commercial*

22  *Offshore Ltd. v. Foote*, 2015 WL 3882448, at *9 (N.D. Cal. June 23, 2015) ("A court may allow a

23  party to supplement the summary judgment record after briefing was completed upon a showing of

24  good cause."). In determining whether to consider such materials, courts frequently apply a "good

25  cause" standard that takes into account the movant's reasonable diligence. *See, e.g.*, *FTC*, 2020 WL

26  5545156, at *4 (granting motion where movant "was reasonably diligent in filing its administrative

27

28  _____
[1] https://en.wikipedia.org/wiki/Deepfake

PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL
EVIDENCE – No. 3:21-cv-06118

motion to bring this new evidence to the Court's attention"). Plaintiffs here have good cause for the Court to consider the Kalat Report, for three main reasons.

*First*, Plaintiffs did not obtain, and could not have obtained, the Kalat Report until two weeks after the parties' supplemental briefs in this action were filed. (Dkt. No. 86.) The Kalat Report is dated March 10, 2023, and was served on FNF by Kyle Roche in *Roche Freedman LLP v. Cyrulnik*, No. 1:21-cv-1746 (S.D.N.Y.), a partnership dispute to which Roche and FNF are parties and that is in expert discovery. FNF has promptly brought the Kalat Report to the Court's attention, filing this motion within three business days of receiving it.

*Second*, the Kalat Report undercuts Defendants' theory for disqualifying FNF. To be clear, Plaintiffs do not believe Roche's statements from the "CryptoLeaks" videos have any bearing on this action (and thus never sought any expert analysis of the videos). Roche is no longer part of this case or this firm. He has no say in the firm's governance, no insight into its management, and no ability to influence the firm at all. As the Court noted at the last hearing, Roche's comments cannot be attributed to the firm's current lawyers and the Court is "not worried about" Roche's statements. (Dkt. No. 91 at 27:11-28:1.) Nonetheless, Defendants have continued to rely on those statements, arguing that *this* case is unique, given Roche's specific mention of *this* case in the videos. (*Id.* at 7:6-20.)

The Kalat Report, however, explains that the critical video segments—including the snippet where Roche appears to indicate *this* action was filed to benefit Ava Labs—"exhibit signs of repeated compression, tampering, and extensive manipulation," and contain "artifacts" that are "consistent with the use of deepfake technology," including Roche's blurred face and tell-tale breaks in the "wave form" of the audio. (Ex. A ¶ 62.) The Kalat Report thus concludes that those video segments "cannot be accepted as reliable or authentic documents of what" Roche stated. (*Id.*) The Kalat Report's conclusions are supported by other evidence that indicates Defendants had motive and opportunity to use deepfake technology to alter the videos. Specifically, (i) Defendants went to extreme lengths to obtain secretly recorded footage of Roche (Dkt. No. 71 at 8-10), a fact their counsel have assiduously declined to deny, both before the Court and in meeting and conferring

PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL
EVIDENCE – No. 3:21-cv-06118

with Plaintiffs' counsel; (ii) Defendants must have incurred significant costs in obtaining that footage (including fees payable to their "conflict management" specialist) and it would be far more rational for Defendants to incur those costs if they knew they could get their desired result with deepfake manipulation; (iii) Defendants took seven months to release the recordings (likely to afford them time to manipulate the footage); and (iv) Defendants have only released highly-edited and short video clips, and have never released a full, unedited, video. With the authenticity of the clips brought into question, FNF's failure to find any corroborative evidence of the statements makes sense (Dkt. No. 101 at 11), and the Court should hesitate providing the clips with significant evidentiary value.

*Third*, the Kalat Report bears on the related issue that Defendants' motion raises concerning any purported *appearance* that FNF is litigating this case for any collateral purpose. Plaintiffs have explained in detail that FNF had no such collateral purpose in pursuing the lawsuit, has no such purpose in continuing to pursue the lawsuit, and has not identified any evidence that anyone at the firm has ever brought or pursued any lawsuit for any such collateral purpose. (Dkt. No. 76-1 ¶¶ 3-4, 6; Dkt. No. 101 at 4-5.) The Kalat Report further belies the notion that any reasonable third party—let alone any absent class members, as Defendants have suggested—would conclude that FNF has pursued or is pursuing the lawsuit for a collateral purpose like benefitting Ava Labs. The extent to which the analysis of "deepfake" technology will arise as an evidentiary issue in the federal courts over the next few years is a topic for another day, but the Court can take judicial notice of the national reporting on the deeply troubling nature of that technology. *See, e.g.*, Adam Satariano & Paul Mozar, *The People Onscreen Are Fake. The Disinformation Is Real*, THE NEW YORK TIMES (Feb. 7, 2023), available at https://www.nytimes.com/2023/02/07/technology/artificial-intelligence-training-deepfake.html; Will Wills, *Deep Fakes: Deeply Disturbing*, CULTURESONAR (Oct. 5, 2019), available at https://www.culturesonar.com/deep-fakes-deeply-disturbing/; Madeleine Kearns, *Deepfakes Are Deeply Worrying*, NATIONAL REVIEW (Aug. 27, 2019), available at https://www.nationalreview.com/corner/deepfakes-deeply-worrying/. Given the findings of the Kalat Report, coupled with the national publication of such analyses (and there are many, many

PLAINTIFFS' ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL
EVIDENCE – No. 3:21-cv-06118

more), the notion that the facts and evidence in this case now leave the "appearance" to a reasonable person that FNF will be acting improperly—as opposed to having had a former lawyer who may well have been the intended target of a premeditated effort to undercut an existentially problematic and well-founded lawsuit against an extremely well-funded set of Defendants—is, at best, wishful thinking on Defendants' part.

Accordingly, to the extent that the Court regards the CryptoLeaks videos as relevant to its analysis (and it should not), Plaintiffs respectfully request the Court properly discount the reliability of those videos in light of the Kalat Report.

## **CONCLUSION**

Plaintiffs respectfully submit, for the foregoing reasons, that the Court grant Plaintiffs leave to file the Kalat Report in further opposition to Defendants' motion to disqualify.


Dated: March 15, 2023          Respectfully Submitted,

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Edward Normand*
Edward Normand (admitted *pro hac vice*)
Richard Cipolla (admitted *pro hac vice*)
Stephen Lagos (admitted *pro hac vice*)
Ivy T. Ngo (SBN 249860)
99 Park Avenue, 19th Floor
New York, NY 10016
Telephone: (646) 350-0527
Facsimile: (646) 392-8842
Email: tnormand@fnf.law
Email: rcipolla@fnf.law
Email: slagos@fnf.law
Email: ingo@fnf.law


*Counsel for Plaintiffs and the Class*