CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
aryan@cravath.com
korsini@cravath.com
lrosenberg@cravath.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael E. Liftik (CA Bar No. 232430)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

*Counsel for Defendants Dfinity USA Research LLC, Dfinity Foundation and Dominic Williams*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL VALENTI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, DFINITY FOUNDATION and DOMINIC WILLIAMS,<br><br>Defendants. | Case No.: 3:21-cv-06118-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE (DKT. 104)**<br><br>Date: April 6, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFF'S MOTION
TO SEAL AND THE FEB. 24, 2023 DECLARATION OF EDWARD NORMAND IN SUPPORT THEREOF
CASE NO. 3:21-CV-06118-JD

## I. INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Strike both confirms and bolsters the fact that the irrelevant and unsubstantiated allegations at the heart of Defendants' Motion should be stricken.[1]  But even more importantly, FNF's submission underscores why FNF is not adequate counsel for the putative class.  To the contrary, FNF appears dead-set—in the filing that precipitated this Motion and otherwise[2]—on burdening this Court with meritless sideshows which FNF generates and that are not in the best interests of the putative class members or the Court.  Rather, these FNF collateral attacks are designed only to distract from the dispute at the heart of the disqualification motion and bury the Court and its clerks in an avalanche of irrelevant pleadings.

Since Defendants moved to strike, FNF has doubled down on the salacious accusations at issue, first by proffering them in response to Defendants' briefing as a supposed reason why the transcript of FNF's deposition should be shielded from the putative class's review (it should not be),[3] and again by trying to salvage these allegations through equally, if not more, dubious claims raised in the present Opposition.  At base, the Opposition highlights that the at-issue accusations are irrelevant and unsubstantiated, made only to impugn Defendants in a continued attempt to distract from the fundamental problem with FNF remaining as counsel to the putative class.

---

[1] *See* Defs.' Mot. to Strike Portions of Pl.'s Mot. to Seal and Feb. 24, 2023 Decl. of Edward Normand in Support (Feb. 27, 2023) (Dkt. 104) ("Mot." or "Motion to Strike"); Pl.'s Opp. to Defs.' Mot. to Strike Portions of Pl.'s Mot. to Seal and Feb. 24, 2023 Decl. of Edward Normand in Support (Mar. 13, 2023) (Dkt. 107) ("Opp." or "Opposition").

[2] In an apparent about-face from their attempt to distance themselves from Mr. Roche and his improper statements, Plaintiff and FNF are now alleging, via the last-minute submission of an improper "expert" report offered by Mr. Roche in an unrelated case, that Mr. Roche's on-camera statements were somehow the product of manipulation and "deepfake technology."  *See* Pl.'s Admin. Mot. for Leave to File Notice of Supp. Evidence in Opp. to Defs.' Mot. to Disqualify (Mar. 15, 2023) (Dkt. 109) at 1.  This submission only reaffirms that FNF are unfit to represent the putative class as interim counsel, as explained more fully in Defendants' opposition to Plaintiff's Motion for Leave, filed contemporaneously with this reply brief.

[3] *See* Pl.'s Resp. to Defs.' Admin. Mot. to Consider Whether Another Party's Material Should Be Sealed (Mar. 3, 2023) (Dkt. 105).

FNF's Opposition (and recent motion related to submission of an improper "expert" report filed by Mr. Roche in an unrelated case and court) appear to be an attempt to use this case, and this Court's process, to try to excuse Mr. Roche's actions and downplay the justifiable consequences of his statements—which, to date, have included both admissions that he initiates litigation against Ava Labs competitors (like Dfinity) based purely on the interests of himself and FNF, and an apparent personal agenda to destroy Defendants' (and its founder and Chief Scientist Mr. Williams's in particular) reputations. If it were not already clear from FNF and Mr. Roche's actions, it is now: FNF is not acting like interim class counsel diligently pursuing a class action on behalf of the putative class. Far from it, FNF is acting as if they are carrying out a private mission—one that by all accounts is consistent with that Mr. Roche described in the on-camera statements at issue in Defendants' motion to disqualify. FNF should not be permitted to continue as interim class counsel, as FNF's focus remains on resuscitating its former named partner through continued distractions such as this false "death threat" accusation, rather than advocating on behalf of the putative class FNF seeks to represent.

As explained below and in Defendants' Motion, this Court should strike any and all accusations concerning "threats" made on Mr. Roche so that this case can proceed toward resolving the (misplaced) securities laws violations at-issue in Plaintiff's complaint without permitting it to serve as a vehicle for FNF's personal vendetta against Dfinity and Mr. Williams and FNF's attack of an opposing party unrelated to any issue in the case.[4]

**II. Argument**

Despite FNF's resort to yet another declaration recounting layers of vague hearsay and a bizarre, misplaced reliance on this Court's Local Rules, the fact remains that the accusation made in Mr. Normand's declaration—*i.e.*, that he "understands[]" that "Defendants have made threats on [Kyle] Roche's life, which necessitated FBI involvement" (Normand Decl. ¶ 5)—are both irrelevant

---

[4] Should the Court grant Defendants' Motion to Strike, Defendants also request it strike Plaintiff's related statements made in other filings since the filing of the Motion.

to the instant proceedings, and based on unsubstantiated, anonymous statements upon anonymous statements. Indeed, FNF's accusations are on even *weaker* footing now that FNF has revealed the basis for FNF's and Mr. Normand's original claim. *See* Pl.'s Mot. to Seal Documents Related to Supp. Opp. to Defs.' Mot. to Disqualify (Feb. 24, 2023) (Dkt. 102) ("Motion to Seal").

FNF's last-ditch attempt to substantiate their accusation about alleged "death threats" directed at Mr. Roche only confirm that those allegations are not even colorably credible, but instead based solely on layers of anonymous, uncorroborated rumors. Specifically, according to the Opposition, the threadbare accusation first offered in Mr. Normand's declaration is as thin as Defendants' "surmised," based on nothing more than alleged out-of-court statements from Mr. Roche (notably Mr. Roche did not file an affidavit substantiating the allegations) and an apparent game of telephone between unidentified third parties. Such baseless accusations have no place in this proceeding, or any other. Striking these allegations is the minimum relief the Court should grant, given Mr. Normand's – and FNF's – attempt to slander Defendants on the public docket and use it to try and generate salacious headlines.[5]

### A.     FNF'S Claims Are Baseless.

The Opposition confirms what was true at the time of Defendants' Motion: Mr. Normand's "understanding" is based on no competent knowledge or fact.

Far from it, according to the Opposition, Mr. Normand's "understanding" is based on ***fourth-hand***, unsubstantiated hearsay statements relayed to ***another*** FNF lawyer from another, unnamed FNF associate, who, in turn, was relaying statements from ***another*** unnamed "New York Lawyer," who in turn was ***relaying statements he allegedly heard*** from "several [unnamed] members of the crypto community" about ***what they allegedly*** heard from unnamed "people associated with Dfinity." Decl. of Eric Rosen (Apr. 6, 2023) (Dkt. 108-1) ("Rosen Decl.") ¶¶ 3-6. This is pure nonsense. To say that these several layers of hearsay fall far short of the kind of

---

[5] *See, e.g.*, *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (noting that courts have inherent powers to fashion appropriate sanctions for conduct which abuses the judicial process).

"evidence" that FNF concedes is necessary to sustain its Motion to Seal is an understatement. To be sure, they fall even further short of the kind of substantiation that members admitted to practice before this Court – or any other court – should rely on when making statements under oath.

Indeed, the weaknesses in Mr. Rosen's account are many, and likely explain why FNF waited until Defendants challenged Mr. Normand's accusations to cobble together the alleged, and woefully lacking, basis for Mr. Normand's claims – and begs the question why Mr. Rosen's declaration was not the first submitted rather Mr. Normand's handwaving at his "understanding." First, as noted, Mr. Rosen's account is based on ***fourth-hand*** information, that neither he nor anyone else at FNF can come close to corroborating, and that would be impossible for Defendants to investigate or challenge. Specifically, Mr. Rosen relies on (1) the unsworn statements of an unnamed FNF associate, who apparently (2) heard something from an unnamed friend in New York, that (3) had been relayed to that anonymous friend during "[t]alk" about Dfinity with some unnamed attendees of an unnamed "crypto event" in New York, (4) who had apparently heard that some unnamed "people associated with Dfinity" had made threats on Mr. Roche. *See* Rosen Decl. ¶¶ 3-6. Mr. Rosen then supposedly reported this chain of information to the FBI, but neither he nor Mr. Normand identify (i) when FNF reported this information to law enforcement, (ii) how FNF did so, (iii) any information about law enforcement's response to this information, or (iv) anything substantiating such correspondence occurred. *See generally* Rosen Decl.

The Opposition only confirms that the accusation in Mr. Normand's declaration was indeed made of smoke, with nary a concrete fact in sight, based on several layers of nonspecific rumors.[6] Equally notable is the absence of any affidavit (either originally or now) from Mr. Roche himself, let alone any evidence to the effect that he personally ever received death threats, knew of any, took them seriously, has any basis to blame Dfinity, or reported them to law enforcement. Mr. Rosen's declaration does not even state that he relayed his "knowledge" to Mr. Normand – thus

---

[6] It bears mentioning that, since the events alleged to occur at this "crypto event" on September 3, 2022, Mr. Roche has remained visible to the public – including by establishing his own law firm.

-4-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFF'S MOTION TO SEAL AND THE FEB. 24, 2023 DECLARATION OF EDWARD NORMAND IN SUPPORT THEREOF
CASE NO. 3:21-CV-06118-JD

failing to even close that loop as to the source of Mr. Norman's "understanding." Such baseless allegations—especially when offered by a member admitted to practice before this Court—have no place on this Court's docket, and the Court should strike them. *See, e.g.*, *MST Mgmt. LLC v. Chicago Doughnut Franchise Co., LLC*, No. 21-CV-00360 (JAD) (DJA), 2022 WL 2275186, at *2 (D. Nev. June 23, 2022) (noting courts enjoy inherent discretionary power to strike filings for being "legally and factually baseless"); *see also* Mot. at 3-4.[7]

FNF's arguments about the standard courts use when deciding to strike materials (Opp. at 4) are inapposite—for the reasons explained above, FNF's baseless accusations clearly meet that standard, as exemplified by the below table:

|   | **Basis of Mr. Normand's "Understanding"** | **Failure of Evidence** |
|---|---|---|
| 1 | Mr. Normand apparently learns from Mr. Rosen about alleged threats to Mr. Roche's life (Opp. at 6), which were based on . . . | Mr. Normand failed in his Feb. 24 declaration to identify that this information came from Mr. Rosen, and, even now, fails to specify any details about his alleged conversation with Mr. Rosen. |
| 2 | . . . Mr. Rosen's conversation with another, unnamed FNF associate (Rosen Decl. ¶ 3) . . . | Mr. Rosen fails to identify who this other FNF associate was or provide any foundation for this hearsay. |
| 3 | . . . who relayed to Mr. Rosen what he heard from an unnamed "New York lawyer" (Rosen Decl. ¶ 3) . . . | Mr. Rosen does not identify this unnamed New York lawyer or provide any foundation for this hearsay. |

---

[7] Plaintiff claims, with little explanation, that the case law Defendants cite for the standard courts in this Circuit apply – in varying procedural contexts – to evaluate attorney declarations is somehow not relevant. Opp. at 7. This is, again, another attempt by Plaintiff at misdirection (this time, the specific procedural posture of Defendants' cited opinions) to distract from the clear impropriety of Mr. Normand's (and now Mr. Rosen's) statements. The authority Defendants cited stands for the proposition Defendants' identified and should guide this Court: In this Circuit, courts routinely disregard attorney declarations where allegations in them are supported by mere information and belief and outside the attorney's personal knowledge – just as is the case with Mrs. Normand and Rosen's allegations. *See* Mot. at 4-5 (collecting cases).

| | | |
|---|---|---|
| 4 | . . . who had heard about these alleged threats while attending some unspecified "crypto event" in New York (Rosen Decl. ¶ 4) … | Mr. Rosen does not identify what "crypto event" this unnamed lawyer attended or provide any foundation for this hearsay. |
| 5 | . . . where this unnamed "New York Lawyer" apparently talked with unnamed "members of the crypto community" (Rosen Decl. ¶¶ 5-6) … | Mr. Rosen does not identify who these unnamed "members of the crypto community" were, or provide any information that could plausibly substantiate that the alleged information provided by these individuals was credible. |
| 6 | … who told this unnamed lawyer that "people associated with Dfinity" intended harm on Mr. Roche (Rosen Decl. ¶ 6) . . . | Mr. Rosen does not identify who these unnamed "people" supposedly associated with Dfinity were or provide any information that would allow Defendants or the court to even attempt to corroborate this hearsay. |
| 7 | . . . Mr. Rosen then apparently informs the FBI about these alleged threats (Rosen Decl. ¶ 8). | Mr. Rosen fails to give any details about what he relayed to the FBI; how he relayed this information (much less attach any correspondence to corroborate this alleged conversation); when he purportedly did so; what the FBI said in response; or any other follow-up that occurred after this alleged conversation. |

The Court should strike FNF's baseless claims.[8]

**B.     FNF's Claims Are Irrelevant.**

Even assuming FNF's quadruple-hearsay accusations about alleged "threats" to Mr. Roche were credible or corroborated, the Opposition fails to explain why such accusations are relevant to Plaintiff's Motion to Seal. *See* Opp. at 5. They are not. Plaintiff does not argue how or why the *specific* alleged threats FNF highlights – which, according to Mr. Rosen, allegedly come from unknown individuals with some unexplained affiliation with "Dfinity," were admittedly never

---

[8] Aside from relying on Mr. Rosen's dubious recounting, FNF also claims, for the first time in Opposition, that Mr. Normand's accusations about alleged "threats" were based "in part" "on information that ***Mr. Roche provided to FNF***." Opp. at 6. But FNF's apparent hesitancy to acknowledge this sourcing in their Motion to Seal or Mr. Normand's related declaration, or provide a first-hand declaration from Mr. Roche seeking to substantiate these claim, is both glaring and unsurprising, given that their argument against disqualification hinges on discrediting Mr. Roche. *See* Mot. at 5. FNF's opportunistic desire to rely on Mr. Roche's statements when it serves them but otherwise rebuke them should be discarded.

made to Mr. Roche himself, and are based on multiple levels of unsubstantiated rumor and hearsay (Opp. at 6; Rosen Decl. ¶¶ 3-6) – somehow justify purported concerns about the disclosure of the specific information in Mr. Freedman's deposition that it seeks to shield from the public. And despite Defendants' invitation (Mot. at 4), FNF cites no authority to support its claim that otherwise non-sensitive information becomes worthy of sealing due merely to vague and speculative "concerns" over how that information may be used once it is public. *See id.* At 4.

Instead, FNF's flimsy claim to relevance hinges on the misplaced idea that Local Civil Rule 79-5(c)(1) somehow "required" them to make the irrelevant, defamatory accusations at issue in support of their pending Motion to Seal. *See, e.g.*, Opp. at 5. But Local Civil Rule 79-5(c)(1) simply (and understandably) requires that parties seeking to seal materials to provide "the reasons for keeping a document under seal" as well as "evidentiary support" where necessary. FNF's own cited authority acknowledges that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" fail to pass muster. *In re BofI Holding, Inc. Sec. Litig.*, No. 315-cv-02324 (GPC) (KSC), 2021 WL 3700744, at *1 (S.D. Cal. Aug. 18, 2021). Yet "unsubstantiated" allegations of harm are exactly what FNF now sets forth in support of the accusations at issue. FNF's "authority" thus provides no support for its argument.[9] FNF's attempt to flip Local Civil Rule 79-5(c)(1) on its head, from a prophylactic measure meant to deter baseless motions to seal into a license to "substantiate" such motions with baseless, speculative claims dressed up in affidavits, should be rejected.

For these reasons, as well as those identified in Defendants' opening briefing on this issue, the Court should strike the accusations identified in the Motion – as well as those later pleadings that continue to repeat them.

---

[9] *See BofI Holding*, 2021 WL 370744, at *1 (noting apparent *first-hand* complaints from confidential witnesses about a "fear-based" culture at the defendant employer) (emphasis added); *see also Software Rts. Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1113 (N.D. Cal. 2020) (finding good cause to seal where parties had identified "confidential and proprietary business information, mostly in the form of Facebook's proprietary source code").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFF'S MOTION TO SEAL AND THE FEB. 24, 2023 DECLARATION OF EDWARD NORMAND IN SUPPORT THEREOF
CASE NO. 3:21-CV-06118-JD

Dated: March 20, 2023

QUINN EMANUEL URQUHART & SULLIVAN LLP

 */s/ Michael E. Liftik*
Michael E. Liftik (CA Bar No. 232430)
Sarah Heaton Concannon (*pro hac vice*)
1300 I Street, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
michaelliftik@quinnemanuel.com
sarahconcannon@quinnemanuel.com

Emily C. Kapur (CA Bar No. 306724)
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, California 94065
Telephone: (650) 801-5000
emilykapur@quinnemanuel.com

Brenna D. Nelinson (*pro hac vice*)
51 Madison Avenue, 22nd Fl.
New York, New York 10010
Telephone: (212) 849-7000
brennanelinson@quinnemanuel.com

*Counsel for Defendants*

CRAVATH, SWAINE & MOORE LLP

 */s/ Antony L. Ryan*

Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Lauren M. Rosenberg (admitted *pro hac vice*)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Tel.: (212) 474-1000
Fax: (212) 474-3700
korsini@cravath.com

*Counsel for Defendants*