# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-80176-BB/BER

IRA KLEIMAN, and
W&K INFO DEFENSE, LLC,

        Plaintiffs,

v.

CRAIG WRIGHT,

        Defendant.

_____/

## ORDER DENYING MOTIONS TO DISQUALIFY [ECF Nos. 900, 929]

Defendant Craig Wright moves to disqualify Plaintiffs' counsel, Judge Bloom has referred all post-judgment matters to me. ECF No. 923. For the following reasons, the Motions to Disqualify are DENIED.

Dr. Wright moves to disqualify two law firms that represent Plaintiffs Ira Kleiman and W&K Info Defense, LLC ("W&K") — Freedman Normand Friedland LLP ("FNF") and Boies Schiller Flexner LLP ("Boies Schiller") (collectively, "the Firms"). ECF Nos. 900, 929. First, Dr. Wright argues that FNF has a conflict because former partner (and former counsel in this case) Kyle Roche admitted to bringing frivolous or bad faith litigation to further the interests of a cryptocurrency entity that was not a party to this case. Second, he argues that a recent court filing by Ira Kleiman shows that the Firms are advancing their own interests rather than the interests of W&K. In that filing, Mr. Kleiman expressed frustration with his lawyers.

I have reviewed the Motions to Disqualify, the Reponses, and the Replies. ECF Nos. 900, 929, 930, 934, 936, 941, 943, 945, 949. I am able to resolve this matter without oral argument. It is ripe for decision.

## I. BACKGROUND

This case was filed February 14, 2018. ECF No. 1. There were two plaintiffs: (1) W&K, and (2) Ira Kleiman, as personal representative of the Estate of David Kleiman. Mr. Freedman and Mr. Roche, who were both lawyers at Boies Schiller at the time, signed the complaint. *Id.* at 38. Andrew Brenner from Boies Schiller entered an appearance on August 27, 2019. ECF No. 275. Since then, other Boies Schiller lawyers have appeared in this case. At or about the time Mr. Brenner entered his appearance, Mr. Freedman and Mr. Roche left Boies Schiller to start their own firm (originally called Roche Freedman LLP, now FNF). Mr. Roche's appearance was terminated on January 17, 2023. ECF No. 908.

After a lengthy trial, the jury returned a verdict in favor of W&K for conversion, rejected W&K's other claims, and rejected all of the Estate's claims. ECF No. 812. Final Judgment was entered on March 9, 2022, in the amount of $143,132,492.48 plus post-judgment interest. ECF No. 889. On March 30, 2022, Judge Bloom entered an order on the cross-motions for taxable costs; Dr. Wright was awarded $103,146.06 in costs; W&K was awarded $98,376.24. ECF No. 891.

On April 8, 2022, the Estate appealed. ECF No. 892. Dr. Wright did not, so W&K's judgment is final.

2

Seven months later, on November 28, 2022, Dr. Wright moved to disqualify FNF and Mr. Roche. ECF No. 900. That motion was based entirely on Mr. Roche's conduct.[1] Judge Bloom denied the motion without prejudice because this Court lacked jurisdiction during the pendency of the appeal. ECF No. 901.

Dr. Wright also moved to disqualify FNF in the appellate proceedings. ECF No. 930-1. The motion was substantively identical to the motion that had been filed in this Court; it was based entirely on Mr. Roche's conduct outside of this case. The Court of Appeals denied the motion after requiring (and receiving) a sworn declaration from Mr. Freedman that (1) identified anyone who had an interest in the outcome of the appeal, (2) explained that Mr. Kleiman had been informed of the alleged conflict of interest, and (3) certified that ABA Model Rule 1.7(b) had been satisfied. ECF Nos. 930-4, 930-5.

On January 6, 2023, W&K moved to compel Dr. Wright to complete a debtor asset information form. ECF No. 903. Four days later, Dr. Wright renewed his motion to disqualify. ECF No. 904. Mr. Roche withdrew as counsel of record a week later on January 17. ECF No. 908.

On January 26, Mr. Kleiman filed a *pro se* Notice of Filing Documents for Courts [sic] Review. ECF No. 918. He questioned why his lawyers had not sought additional discovery about an entity called Coin-Exch. He also complained, "Many key pieces of evidence were abandoned at trial." *Id.* at 2. This evidence included

---

[1] Dr. Wright's pleadings and attachments describe that conduct in detail, so I do not repeat it here.

3

emails between Mr. Kleiman and Dr. Wright, and portions of Dr. Wright's deposition testimony. He further complained that his lawyers had not filed a motion to compel return of intellectual property that Dr. Wright testified at trial was still available to Mr. Kleiman. *Id.* at 5. Ultimately, he complained that the withholding of this information had caused the jury to find against the Estate. *Id.* at 5-6. His final paragraph said:

> If all the above behavior wasn't bizarre enough, the crazy train kept chugging along even after receiving a favorable verdict for W&K. The co-founder of Roche Freedman then sabotaged this one positive with his "uniquely stupid" statements about the case. At this point, I honestly don't believe they want to recover the W&K judgment otherwise I wouldn't have had to pressure them into requesting the form 1.977. There is no reason to allow a year to go by before taking such simple collection efforts.

*Id.* at 6.

The next day, Dr. Wright filed a Notice of New Evidence in Support of Motion to Disqualify. ECF No. 922. He amended the Notice on January 30. ECF No. 924. In both Notices, he argued that Mr. Kleiman's filing was evidence of FNF's conflict of interest. *Id.* On February 10, 2023, he moved to disqualify Boies Schiller based on Mr. Kleiman's filing. ECF No. 929.

## II. LEGAL PRINCIPLES

### A. Motion to Disqualify

Although they implicate ethical concerns, "motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). They are governed by two sources of

4

authority — federal common law and local rules of court. *Id.* The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). The Local Rules of this Court incorporate the Florida Rules of Professional Conduct. S.D. Fla. L.R. 11.1(c).

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." *In re BellSouth Corp.*, 334 F.3d at 961 (internal quotations and citations omitted). Disqualification of one's chosen counsel is a drastic remedy that should be resorted to sparingly. *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). When ruling on a motion to disqualify, a court must "be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely choose counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976). An opposing party's motion to disqualify counsel "should be viewed with caution, however, for it can be misused as a technique of harassment." Fla. R. Prof. Cond. 4-1.7 cmt.

Where, as here, a lawyer's conduct is allegedly unethical but does not threaten the orderly administration of justice, violating an ethical rule is a necessary but not always sufficient condition for disqualification.[2] *Schlumberger Techs., Inc. v. Wiley*,

---

[2] Threats to the orderly administration of justice (as compared to the fair and efficient administration of justice) include in-court misconduct or deliberate challenges to the court's authority. *Schlumberger*, 113 F.3d at 1561.

5

113 F.3d 1553, 1561 (11th Cir. 1997); *see McGriff*, 477 F. App'x at 677 (affirming district court's disqualification of an attorney based on a violation of the Georgia Rules of Professional Conduct); *see also Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2005) (collecting cases):

> [When] the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, we insist that district courts rest their disqualification decisions on the violation of specific Rules of Professional Conduct, not on some "transcendental code of conduct ... that ... exist[s] only in the subjective opinion of the court."

*Schlumberger*, 113 F.3d at 1561 (citation omitted). "The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* And even if an ethical rule has been violated, the Court must look to "various factors, such as the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment" ("the *Anodyne* factors"). 365 F. Supp. 2d at 1237.

B. Standing

"Article III standing ... 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (citation omitted). If there is no Article III standing, the Court lacks subject matter jurisdiction to adjudicate the claim.

6

Article III of the constitution limits the judicial power of the federal courts to cases or controversies arising under the laws of the United States. "This case-or-controversy requirement comprises three familiar 'strands': (1) standing, (2) ripeness, and (3) mootness." *Gardner v. Mutz*, 962 F.3d 1329, 1336 (11th Cir. 2020) (citations omitted). The standing requirement "'limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.' Standing asks, in short, whether a particular plaintiff even has the requisite stake in the litigation to invoke the federal 'judicial Power' in the first place." *Id.* at 1337 (quoting *Spokeo, Inc. v. Robins*, 587 U.S. 330, 338 (2016)).

The party invoking the jurisdiction of a federal court bears the burden of establishing the three elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). There must be an injury-in-fact (an invasion of an interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical), a causal connection between the plaintiff's injury and the challenged action of the defendant, and a likelihood (not merely speculation) that a favorable judgement will redress the plaintiff's injury. *Gardner*, 962 F.3d at 1338 (quoting *Lujan*, 504 U.S. at 560-61).

"[A] plaintiff must demonstrate standing for each claim he seeks to press [and] 'for each form of relief' that is sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citations omitted). Therefore, a party moving to disqualify opposing counsel bears the burden of proving Article III standing. *See Doe v. Lee*, 178 F. Supp. 2d 1239 (M.D. Ala. 2001) (denying motion to disqualify for lack of Article III

7

standing); *accord Booker v. Sec'y Fla. Dep't of Corr.*, 22 F.4th 954 (11th Cir. 2022) (denying motion to vacate appointment of counsel based on lack of Article III standing).

Even where Article III standing exists, there can be other limits on a party's ability to "invoke the courts' decisional and remedial powers." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (distinguishing Article III standing from prudential standing). One is that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* In the disqualification context, "[a] party who is not a [current or] former client of opposing counsel nevertheless has standing to raise the issue of opposing counsel's conflict of interest if there is 'a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice.'" *McGriff v. Christie*, 477 F. App'x 673, 676–77 (11th Cir. 2012) (citing *Bernocchi v. Forcucci*, 614 S.E.2d 775, 779 (2005)); *see also Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 673 (S.D. Fla. 1993) (J. Nesbitt) (A party has standing to seek disqualification "where the rights of [that] party may be compromised by representation in which opposing counsel is engaged . . . regardless of whether the party is a client or former client of the attorney or firm whose representation the party challenges.").[3]

---

[3] Dr. Wright asserts he has prudential standing to assert a violation of Rule 4-1.7 because the commentary to that Rule says a lawyer may move to disqualify opposing counsel if "the conflict clearly calls into question the fair or efficient administration of justice." Fla. R. Prof. Cond. 4-1.7 cmt. This commentary is not a statement of federal common law, so it cannot provide a rule of decision in this case. Nevertheless, it is materially the same as the Eleventh Circuit's rule in *McGriff*.

8

C. *Rule 4-1.7*

Florida Rule of Professional Conduct 4-1.7 prohibits certain conflicts of interest between a lawyer's current clients. It says:

> **(a) Representing Adverse Interests.** Except as provided in subdivision (b), a lawyer must not represent a client if: (1) the representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> **(b) Informed Consent.** Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

D. *Rule 4-8.4*

Rule 4-8.4(c) says a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Fla. R. Prof. Cond. 4-8.4(c). Rule 4-8.4(d) says, a lawyer shall not "engage in conduct that is prejudicial to the administration of justice." Fla. R. Prof. Cond. 4-8.4(d). Notably, neither rule requires disqualification as the remedy for a violation.

E. *Rule 4-1.10*

Rule 4-1.10(a) addresses when one lawyer's conflict of interest is imputed to other lawyers currently in the same firm. It says:

9

> (a) While lawyers are associated in a firm, none of them may knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 4-1.7 or 4-1.9, except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Fla. R. Prof. Cond. 4-1.10(a).

### III. DISCUSSION

*A. Article III Standing*

The Firms question whether Dr. Wright has Article III standing to move to disqualify. Dr. Wright responds that he has suffered a constitutionally-cognizable injury-in-fact because Mr. Roche said, "I took down one of [Ava Labs'] biggest arch-nemeses. The guy who claimed to be Satoshi, Craig Wright." ECF No. 943 at 4 (brackets in pleading). Dr. Wright continues, "Exactly how Roche Freedman's ties and loyalties to Ava Labs affected its litigation strategy against Dr. Wright isn't clear . . . But given Roche's statements, it is likely — or at the very least, possible — that the firm's relationship with Ava Labs affected its decision-making before, during and after the trial against Dr. Wright." *Id.* at 4-5; ECF No. 949 at 2. Dr. Wright then concedes that Boies Schiller had no involvement in Mr. Roche's allegedly improper conduct, but argues that the Firms are so inextricably intertwined that Mr. Roche's conduct should be imputed to Boies Schiller. *Id.* at 5.

Dr. Wright lacks Article III standing to disqualify the Firms. First, he fails to state a constitutionally-adequate injury-in-fact. The asserted injury is not concrete or particularized, nor is it actual or imminent. Even if I accept Dr. Wright's argument

10

that the lawsuit was brought (or at some point was pursued) for an improper purpose and somehow injured Dr. Wright, all of those injuries occurred in the past. The trial is over. All that remains is post-judgment collection proceedings. By Dr. Wright's own description, any current injury is, at best, speculative.

Similarly, there is no injury-in-fact from the Firms' allegedly putting their own interests ahead of W&K's. Dr. Wright argues that the Firms are improperly delaying collection activities because they have a conflict of interest. Even accepting that argument, delaying collection benefits Dr. Wright, it does not injure him.

Second, there is no causal link between the alleged unethical behavior and any actual or imminent injury. Right now, the Firms are merely helping W&K collect a judgment that Dr. Wright has not appealed. If the Firms' current collection efforts injure Dr. Wright, it is not an injury caused by the allegedly unethical filing and pursuit of a meritless lawsuit.

Third, Dr. Wright has not shown that disqualifying the Firms will redress his alleged injury. At best, Dr. Wright has asserted a historical injury. Disqualifying the Firms at this stage will not undo or remedy that injury.

### B. Prudential Standing

Dr. Wright also has failed to show he has non-constitutional standing. As discussed below, I find no violation of the Court's ethical rules. Even if I accepted Dr. Wright's arguments that the Firms violated Rules 4-1.7, 4-8.4, and/or 4-1.10, the alleged violations are not sufficiently severe to call into question the fair and efficient administration of justice in this case. Finally, Dr. Wright has not shown that his

11

personal rights have been compromised in this case by the Firms' allegedly unethical conduct.

C. *Alleged Violations of Ethical Rules*

Even though Dr. Wright lacks standing, a federal court has "the authority and duty to inquire *sua sponte* into whether counsel should not serve because of a conflict with another client." *United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993) *cited and quoted in Shaw v. Broad and Cassel*, No. 11-23689-CV, 2012 WL 315050 at *3 (S.D. Fla. Feb. 1, 2012) (J. Altonaga). I therefore will address the merits of Dr. Wright's claims.

1. Rule 4-1.7

Dr. Wright concedes that W&K is not directly adverse to any current or former client of the Firms, so only Rule 4-1.7(a)(2) is implicated. *See* Fla. R. Prof. Cond. 4-1.7 cmt ("Subdivision (a)(1) prohibits representation of opposing parties in litigation."). Dr. Wright argues that the conflict here is not between two clients but between W&K and the Firms' personal interests. So, he must prove by a preponderance of the evidence that there is a *substantial* risk that the Firms' representation of W&K will be *materially* limited by their personal interests. *Accord In re Johore Inv. Co. (U.S.A.), Inc.*, 157 B.R. 671, 675 (D. Haw. 1985) (applying preponderance standard to motion to disqualify counsel based on prior representation); *Storz Mgmt. Co. v. Carey*, 526 F. Supp. 3d 747, 751 (E.D. Cal. 2021) (same).

First, Dr. Wright has not met this burden of showing a violation of Rule 4-1.7(a)(2). Putting aside whatever may have occurred in other cases, Dr. Wright's

12

arguments for why the Firms should be disqualified for violating Rule 4-1.7 is that (1) the Firms are not zealously enforcing the judgment against him because they are trying to cover up misconduct in other cases or advance their own personal interests, *see* ECF Nos. 922 at 2-3, 929 at 9-10, and (2) the Firms litigated this case against him for an improper purpose. *See* ECF No. 900 at 13 ("Roche's discussion of Dr. Wright strongly suggests that this action was motivated by Gün's rivalry with Dr. Wright.").

Dr. Wright argues Mr. Kleiman's filing is powerful evidence that the Firms should be disqualified because they are acting in their own self-interest, to the detriment of their client. ECF Nos. 922, 929 at 8-10, 943 at 10-11. Upon close inspection, however, Mr. Kleiman is primarily complaining about how the Firms represented the Estate, not how they represented W&K. That makes sense given that the Estate lost at trial and W&K won. Mr. Kleiman's sole complaints about the representation of W&K is that his lawyers are not enforcing the judgment fast enough and are not seeking to recover W&K's intellectual property.

Dr. Wright has not shown that the Firms' current representation of W&K is materially limited by their personal interests. Dr. Wright's time to appeal the judgment expired on or about April 8, 2022. The Motion to Compel the Form 1.977 was filed January 6, 2023, which was eight months later. In the interim, there was litigation in the Eleventh Circuit. The Firms are now moving forward with collection efforts. ECF No. 939 (Order compelling Form 1.977). Even if they are moving too slowly for Mr. Kleiman's liking, it hardly prejudices Dr. Wright and is not the kind of conduct that calls into question the fair and efficient administration of justice.

13

Finally, based on Mr. Freedman's Declaration to the Eleventh Circuit, the requirements of Rule 4-1.7(b) are satisfied. So, even if there were a conflict of interest under Rule 4-1.7(a), that conflict has been properly waived.

2. Rule 4-8.4

Dr. Wright has not shown any dishonest, fraudulent, deceitful or otherwise deceptive conduct occurred in this case, nor has he identified other conduct in this case that is prejudicial to the administration of justice. As such, he has not shown a violation of Rule 4-8.4 that affected these proceedings. Even if he had, neither Rule 4-8.4(c) nor Rule 4-8.4(d) specifies that disqualification is the mandatory remedy for a violation.

3. Rule 4-1.10(a)

Dr. Wright incorrectly argues, "Roche's misconduct must be imputed to the Firm[s]." ECF No. 900 (citing and quoting Rule 4-1.10(a)). By its plain terms, Rule 4-1.10(a) imputes a conflict to an entire firm only when a lawyer *currently associated with* the firm would be prohibited from representing a client because of a conflict arising under Rule 4-1.7 or Rule 4-1.9. Here, Mr. Roche is no longer associated with either Firm, so his conflicts, if any, cannot be imputed to the Firms. More importantly, for the reasons stated above, no one currently at the Firms has a conflict under Rule 4-1.7.

D. Anodyne Factors

Even if I were to find a violation of one or more ethical rule, I would not disqualify the Firms. As noted above, there is no ongoing injury from the alleged

14

ethical violations. This litigation has been proceeding for an extended period of time. All that remains are potential post-judgment collection proceedings. The interests of justice are not served by disrupting and delaying these proceedings by requiring new counsel to take over. Disqualifying the Firms would substantially prejudice W&K. Conversely, Dr. Wright has not shown how he is unfairly prejudiced by allowing the Firms to remain in the case. He also has not shown that the public's perception of the legal profession would be adversely affected by allowing the Firms to remain as counsel.

W&K selected the Firms as its counsel and that choice is entitled to great deference. Dr. Wright has not met his burden of showing a compelling reason that this Court should take the drastic step of disqualifying W&K's counsel of choice.[4]

E. *Law of the Case*

W&K argues that the Motion to Disqualify FNF should be denied under the law-of-the-case doctrine. ECF No. 930. That doctrine says that an issue decided by the appellate court is binding on the trial court in the later proceedings in the same case. *See, e.g., Kelly v. Dun & Bradstreet, Inc.*, 641 Fed. Appx. 922, 924 (11th Cir. 2016). Dr. Wright responds that the law-of-the-case doctrine does not apply because W&K was not a party to the appeal and that new facts have arisen since the 11th Circuit's decision. ECF No. 936. Because the disqualification motions can be resolved

---

[4] Dr. Wright also argues that the Firms can no longer represent W&K because they have been discharged. I reject this argument for the reasons stated in my Order Granting Motion to Compel Form 1.977, ECF No. 939, and my Order Denying Motion to Strike Notice of Appearance. ECF No. 950.

15

on other grounds, I need not reach the law-of-the-case question.

### F. Evidentiary Hearing

In his Reply to FNF's law-of-the case brief, for the first time, Dr. Wright argues that the Court must conduct an evidentiary hearing. ECF No. 936 at 11-12.[5] This request is denied. First, an evidentiary hearing is required only when material facts are disputed by competent evidence. "[W]here there is no conflict on material facts raised by affidavits submitted upon a disqualification issue, there is no requirement that further testimony be taken to resolve the issue." *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051-CIV, 2012 WL 12868733, at *4 (S.D. Fla. June 11, 2012). Here, none of Dr. Wright's pleadings are supported by affidavits. *See* ECF Nos. 900, 929, 936, 943, 949. Second, even if I were to construe all facts in the light most favorable to Dr. Wright, I would still deny the Motions to Disqualify based on the *Anodyne* factors.

### IV. CONCLUSION

Whatever may have happened in other cases is not before me. I have presided over extensive proceedings in this case. From my vantage point, all counsel have been highly professional, ethical, and zealous advocates for their clients. The sole issue presented by the current motions is whether Dr. Wright has met his burden of proving that the Firms should be disqualified in this case. He has not.

---

[5] Ordinarily, the Court will not consider an issue raised for the first time in a reply pleading. *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1271 (S.D. Fla. 2020) (J. Bloom). Here, however, FNF responded to the request for an evidentiary hearing, ECF No. 941, so I will address the issue.

WHEREFORE, it is ORDERED that the Motions to Disqualify are DENIED.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 20th day of March 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE