UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VALENTI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DFINITY USA RESEARCH LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-06118-JD<br><br>**ORDER RE LEAD COUNSEL** |

This case is a securities fraud class action against defendants Dfinity USA Research LLC; Dfinity Foundation; and individual defendant Dominic Williams, the CEO of Dfinity USA and founder of Dfinity Foundation. Dkt. No. 45 ¶¶ 15-16, 18-19. The operative complaint alleges that defendants did not register Dfinity's cryptocurrency "ICP tokens" as a security with the U.S. Securities and Exchange Commission (SEC), and "reaped billions of dollars in profits" by unlawfully "selling and promoting these unregistered security tokens to investors, and by transacting in them while in possession of material, non-public information." *Id*. ¶¶ 1-4. The complaint presents eight causes of action under Sections 5, 12(a)(1) and 15 of the Securities Act; Section 10(b) of the Exchange Act and corresponding SEC Rule 10b-5; and Sections 20A and 20(a) of the Exchange Act. *Id*. ¶¶ 152-245.

The case is subject, like all private federal securities actions, to the provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67. It proceeded apace under the PSLRA, with the appointment of Henry Rodriguez as lead plaintiff and the Roche Freedman LLP law firm as lead counsel for the putative class, Dkt. No. 42, and the initial stay of discovery pending the resolution of defendants' motion to dismiss, Dkt. No. 62. The case then took a dramatic turn that put the normal course of litigation on hold. *See* Dkt. Nos. 72, 73. Before the hearing on the motion to dismiss, defendants asked to disqualify the law firm of Roche

Freedman LLP based on concerns gleaned from a variety of sources. Dkt. No. 72. Shortly after that, a district court in the Southern District of New York issued an order that terminated Roche Freedman LLP as a lead counsel in an unrelated securities action. *See In re Tether and Bitfinex Crypto Asset Litigation*, No. 19-cv-09236-KPF, Dkt. No. 253 (S.D.N.Y. Oct. 28, 2022); *Valenti* Dkt. No. 77-2.

Since then, the parties have waged a bitter war over lead counsel in this case, with charges of personal vendettas, deepfake videos, and other events not typically encountered in securities lawsuits. Along the way, Roche Freedman LLP was reconstituted as Freedman Normand Friedland LLP (FNF), consisting of most of the prior firm's attorneys. FNF was never appointed lead counsel in this case, and has not formally sought appointment under the PSLRA. Even so, the parties have in effect treated FNF as though it were lead counsel, and the dispute has focused on whether it should be retained in that role.

The Court held a hearing on Dfinity's disqualification motion, at which it emphasized that the question would be answered under Rule 23 of the Federal Rules of Civil Procedure, the PSLRA, and the Court's oversight of the rights and interests of absent class members. Dkt. No. 86. The Court directed the parties to engage in targeted discovery with respect to disqualification, and to file supplemental briefs on the issue. *Id.* After consideration of these materials, and the record as a whole, the Court concludes that an appointment of FNF is not in the best interests of the class. The lead plaintiff will have an opportunity to propose new class counsel.

## BACKGROUND

The class action complaint was initially filed in August 2021 by plaintiff Daniel Valenti, with Roche Freedman LLP as his counsel. Dkt. No. 1. As required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A), Valenti and his counsel published a notice of pendency that advised putative class members of an October 12, 2021 deadline to seek appointment as lead plaintiff in the action. Dkt. No. 8.

A motion seeking appointment was filed by Henry Rodriguez, another investor represented by Roche Freedman LLP. Dkt. No. 21. Rodriguez said he was "the 'most adequate' plaintiff because, to his knowledge, he had the largest financial interest in this matter and satisfied the

2

typicality and adequacy requirements set forth in Federal Rule of Civil Procedure 23." *Id*. at 6-7. Rodriguez asked the Court to appoint Roche Freedman as lead counsel, stating his belief that the firm "is fully capable of litigating this case." *Id*. at 9-11. The motion featured attorney Kyle Roche in particular, stating that "Mr. Roche, a lead attorney from Roche Freedman, is a recognized thought leader in the industry," having "published multiple articles on the intersection of cryptoassets and law," served as "a frequent speaker and lecturer on the topic," and "represent[ed] plaintiffs in some of the most significant disputes in the crypto industry." *Id*.

On December 20, 2021, the Court issued an order appointing Henry Rodriguez as lead plaintiff and approving his "selected and retained counsel, Roche Freedman, to serve as lead counsel for the putative class in the action." Dkt. No. 42. On February 3, 2022, lead plaintiff Rodriguez and plaintiff Valenti together filed an amended class action complaint, which is the operative complaint in this case. Dkt. No. 45.

After filing a motion to dismiss (which is fully briefed but remains sidelined by the class counsel dispute), Dfinity filed on October 4, 2022, a motion to disqualify plaintiffs' counsel. Dkt. No. 72. Acknowledging that this is a "putative class action governed by Fed. R. Civ. P. 23 and the PSLRA," Dfinity asked that "Roche Freedman be disqualified from representing lead plaintiff and the putative class in this action." *Id*. at 14-15. Dfinity pointed to a "report and a series of video clips" released by *Crypto Leaks* in August 2022 "in which Mr. Roche describes his firm's close ties to Ava Labs -- a company that develops a blockchain called Avalanche -- and its executives, his financial interest in Ava Labs, and his firm's improper use of litigation against Ava Labs' competitors" such as Dfinity. *Id*. at 3. Defendants highlighted Roche's statements in these videos that "Roche Freedman files class action lawsuits against Ava Labs' competitors" as a "'tool to competition'"; Roche "acts as 'Ava Labs' crypto expert'" by utilizing expertise gained from suing other cryptocurrency companies and "'see[ing] the[ir] insides'" in discovery; Roche makes sure that "'the SEC and CFTC have other magnets to go after' instead of Ava Labs"; and he uses litigation "to enforce the personal vendettas of Ava Labs CEO, Emin Gün Sirer." *Id*. at 4-6. Dfinity said that these statements called for plaintiffs' counsel's disqualification because they

3

show that Roche's "personal interest and loyalties to Ava Labs come before, and predominate over, the interests of the putative class." *Id*. at 9.

Even before defendants had filed the disqualification motion, attorney Roche had filed a notice of withdrawal as counsel on the docket. Dkt. No. 70. The notice stated that Roche "is no longer involved in [Roche Freedman's] class action practice and is therefore withdrawing as counsel of record in this case." *Id*. Defendants argued in their motion that Roche's individual withdrawal was insufficient to resolve the issues because, *inter alia*, Roche could still "direct the conduct of other lawyers at the firm"; other lawyers at the firm "own substantial amounts of AVAX tokens"; and the size of the firm is small and there is a "widespread relationship with Ava Labs." Dkt. No. 72 at 11-12.

By the time it filed an opposition to defendants' motion, Roche Freedman had changed to Freedman Normand Friedland LLP (FNF). Dkt. No. 76; *see also* Dkt. No. 78. FNF's opposition argued that there was evidence suggesting that defendants had "secretly launched CryptoLeaks," the anonymous website that had hosted the Kyle Roche videos, and that defendants had likely hired the man who "set up [a meeting with Roche] under false pretenses" and then "secretly record[ed]" him. Dkt. No. 76 at 3-5. At the same time, FNF stated that this "factual background is not intended to offer an excuse for Mr. Roche's statements; the statements are not excusable. Although the statements are false, FNF is deeply concerned by the suggestion that Mr. Roche engaged in unethical conduct," and "[t]o address those concerns, and considering his inappropriate statements," Roche was "no longer with the firm." *Id*. at 6. Similarly, a declaration from Kyle Roche that was submitted with the opposition "acknowledge[d] that, during the videos, I made statements that were highly inappropriate and that I deeply regret." Dkt. No. 76-15 (Roche Decl.) ¶ 5. Roche stated that he was "no longer representing Ava Labs in any matter, and as of October 17, 2022, I am no longer a member of Roche Freedman LLP, which is now known as Freedman Normand Friedland LLP. I am now practicing law at Kyle Roche P.A." *Id*. ¶ 8.

At the hearing, the Court made clear that, even though defendants had invoked the California Rules of Professional Conduct in their motion, the Court found it more appropriate to view this issue through the lens of "Rule 23 and the PSLRA," with the paramount goal of

4

"protecting the putative class and the named plaintiffs . . . with counsel who are going to have an untarnished allegiance on a fiduciary duty basis to the putative class and the named plaintiffs." Dkt. No. 91 (Hrg. Tr.) at 2:15-20.  The Court noted that the most relevant inquiry was whether "there is a conflict between the current law firm without . . . Mr. Roche, and the putative class or the named plaintiffs."  *Id*. at 10:10-13.  The Court also voiced the concern that, for example, "an opportunity to settle the case on terms favorable to the putative class" might present itself, but Roche might have "had such a vendetta against the defendant because of his allegiance to" Ava Labs, that he might have refused to settle in favor of "some strategic value in not settling for Ava Labs," in which case "an opportunity to resolve would be lost."  *Id*. at 11:11-16.  The Court asked how the reconstituted FNF firm would abate that and similar concerns.  Attorney Edward Normand for FNF emphasized throughout the hearing that attorney Roche "is out" and is "not part of the firm anymore," *id*. at 4:17-18, 12:2-3, and that there were "no deeper ties" between FNF and Ava Labs than the record already indicated.  *Id*. at 12:9.  Attorney Normand stated that "[t]he firm does not have an equity stake in Ava Labs," and though "[s]everal partners at the firm were paid in AVAX tokens," there was "no connection between that payment and how this lawsuit's going to be prosecuted."  *Id*. at 12:19-25.  Because the Court lacked clarity on FNF's existing ties with Ava Labs, the Court ordered a focused Rule 30(b)(6) deposition of FNF on a handful of topics most relevant to FNF's ability to proceed on behalf of the class.  *Id*. at 25:21-35:4.

        The Rule 30(b)(6) deposition was taken, and the parties have filed supplemental briefs.  Dkt. Nos. 100, 101.  Many other filings have been made, as the litigation of this issue has taken on a life of its own.  FNF filed a discovery dispute letter requesting to designate the FNF deposition transcript as "Attorneys' Eyes Only," in part because of an alleged threat defendants made as to Roche, Dkt. No. 98, and defendants responded with a motion to strike the statements about the alleged threat, Dkt. No. 104.  Plaintiffs also filed an administrative motion for leave to file a notice of supplemental evidence in opposition to defendants' motion to disqualify.  Dkt. No. 109.  The motion requests leave to file an expert report which, FNF says, "explains that many of the videos on which defendants rely" may be the product of "deepfake technology."  *Id*. at 1.  Dfinity opposes the request.  Dkt. No. 111.

**DISCUSSION**

**I.     FNF MAY NOT SERVE AS LEAD COUNSEL**

As the Court has advised the parties, the salient inquiry here is not whether attorney Roche and FNF violated the California Rules of Professional Conduct, as defendants initially framed the issue. Dkt. Nos. 72, 91. The question is more appropriately considered under the PSLRA and Rule 23. The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Rule 23(g) provides that the Court may appoint as class counsel an applicant who can fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1)(B) (in appointing class counsel, court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"); Rule 23(g)(2) (court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)"), Rule 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class"); *see also* Rule 23(g)(3) ("court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action"). Our circuit has noted that "[t]he responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 968 (9th Cir. 2009) (quotations omitted). The Court is also mindful that it has its own independent duty to protect the interests of the absent class members. *See*, *e.g.*, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

All of these factors inform the Court's consideration of whether the lead counsel order, Dkt. No. 42, should be terminated and new counsel appointed. The Court has the inherent authority to reconsider any of its interlocutory orders, *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001), and Rule 23(g)(1)(E) also provides that the Court may "make further orders in connection with [any class counsel] appointment."

The record warrants two conclusions. One is that the reconstituted FNF firm is not nearly as independent of Kyle Roche or Ava Labs as FNF suggests. To start, attorney Devin M. "Velvel" Freedman, who was designated as FNF's Rule 30(b)(6) witness, testified that "FNF is a rename.

6

It's just a name change of what was Roche Cyrulnik Freedman and then . . . well, Roche Freedman, then Roche Cyrulnik Freedman, Roche Freedman. We've had a number of changes to the name, but it's the same entity that was formed in August of 2019." Dkt. No. 99-4 (Freedman Depo.) at 9:22-10:2. And the firm's dealings with Roche are far from over. Pursuant to the firm's engagement agreement with Ava Labs several years ago, AVAX tokens were delivered to a single public address that is controlled by Freedman and Roche, and those tokens will unlock at a certain monthly rate for many years into the future. *Id*. at 24:21-34:8. Freedman testified that these "tokens belong to Mr. Roche and I, pursuant to agreements signed with Ava Labs in late 2019, but there are subsequent agreements between, for example, myself and Mr. Normand, and myself and Mr. Friedland, that obligate -- and Mr. Roche -- that obligate us contractually to pay some of those tokens to them." *Id*. at 35:16-21. Roche is hardly out of the picture when there are currently over a million AVAX tokens "sitting in a public address that is controlled by [Freedman] or [] Roche," with thousands more unlocking each month, and "technically, 50 percent belong to [Roche], subject to various claims" by current and former FNF partners. *Id*. at 44:25-45:10. In addition, FNF is co-counsel with Roche in three active matters, *id*. at 75:3-7, and another potential matter that has not yet been filed but for which there is a signed retention agreement that includes both FNF and Roche. *Id*. at 77:22-78:18. Freedman is still "personal friends with" Roche and their "wives are friends," *id*. at 82:7-15, and Freedman agreed it was fair to say that he was "still in contact with [Roche] regularly" since Roche's departure. *Id*. at 105:4-14.

      The other conclusion driven by the record is that there is serious doubt about the ability of FNF to litigate this case in the best interests of the class. FNF's docket entries manifest undue attention to its own interests and concerns, with scant mention of the class and its claims. FNF's discovery dispute letter, Dkt. No. 98, and ensuing motion to strike briefing illustrate the problem. In the discovery letter, FNF said that its 30(b)(6) deposition transcript needed to be designated "attorneys' eyes only" because, among other reasons, "FNF reasonably believes that defendants will either publicize the deposition testimony or otherwise use it to harm FNF and others." *Id*. at 2. FNF went on to say that "defendants apparently have . . . made threats on Mr. Roche's life, necessitating FBI involvement," and that this is "consistent with what FNF believes is a pattern of

7

1  vindictive and dangerous behavior from defendant Williams, who has previously offered
2  'reward[s]' to those who expose his critics' identities, and allegedly engaged in domestic
3  violence." *Id*. at 3 (internal citations omitted).  These grave and inflammatory accusations were
4  not necessary for FNF's sealing request, certainly not in that form.  Defendants responded by
5  asking to strike the statements about the "threats on Mr. Roche's life" as "improper and
6  unsupported," and "scandalous."  Dkt. No. 104.  In response, FNF submitted the declaration of
7  Eric Rosen, a partner at FNF and its general counsel, to the effect that he had "learned from an
8  associate at FNF that employees and/or owners of Dfinity were planning and/or discussing
9  physically harming Mr. Roche."  Dkt. No. 108-1 (Rosen Decl.) ¶ 3.  The FNF associate had
10 acquired this ostensible information from a "friend, who is a lawyer in New York," and the friend
11 in turn had heard from others that "they had learned from others that people associated with
12 Dfinity were planning to kill Mr. Roche."  *Id*. ¶ 6.  Attorney Rosen also stated that the relayed
13 information included "that Mr. Roche was being targeted because he was 'messing with people's
14 money,' referring to this lawsuit against defendants," and that Rosen had "provided this
15 information to the FBI to seek advice on what needed to be done, if anything, to secure
16 Mr. Roche's safety."  *Id*. ¶¶ 6, 8.

17 　　　The Court need not determine the truth of attorney Rosen's statements or the multiple
18 levels of hearsay on which they are based.  What matters for present purposes is that FNF and its
19 lawyers remain deeply immersed in a toxic perception of the defendants in this case, to the extent
20 of accusing defendants of an intent to commit murder or cause serious bodily harm.  There is no
21 way the attorneys at FNF will be able to adequately discharge their fiduciary duties to the class as
22 a whole in these circumstances.  FNF's litigation strategy and conduct will be subject to constant
23 second-guessing on the basis of its extreme animosity toward defendants, and the record provides
24 no assurance that FNF would be able to put its views to the side in service to the class.

25 　　　The record has other powerful indications that the best interests of the class are not in the
26 forefront of FNF's priorities.  Another example is in FNF's request to show that "many of the
27 videos on which defendants rely are the product of manipulation, are inauthentic, and contain
28 indicators consistent with the use of deepfake technology."  Dkt. No. 109 at 1.  This is a complete

flipflop from FNF's prior representations that it would not "offer an excuse for Mr. Roche's statements; the statements are not excusable," and that "[t]o address those concerns, and considering his inappropriate statements, Mr. Roche is no longer with the firm." Dkt. No. 76 at 6. Attorney Roche expressly "acknowledge[d] that, during the videos, I made statements that were highly inappropriate and that I deeply regret." Dkt. No. 76-15 ¶ 5. In effect, FNF has renounced these forthright representations in favor of alleging that the whole thing was a fake. This underscores the concern that FNF is heavily invested in protecting its own interests, to the detriment of those of the class.

There are serious consequences that plausibly could flow from FNF's fixation with its own affairs. At the motion hearing, the Court posited that "an opportunity to settle the case on terms favorable to the putative class [might] present[] itself" but that FNF might have "such a vendetta against the defendant" that it might pass on the opportunity to settle, to the detriment of the class. Hrg. Tr. at 11:11-17. The evidence developed after the hearing has made this concern even more pressing. Countless other litigation decisions may be adversely influenced in the same way.

Overall, the record demonstrates that FNF is unduly focused on "defendants' animosity toward plaintiffs' counsel," which it has raised at every possible turn. *See*, *e.g.*, Dkt. No. 102 at 4 (plaintiffs' motion to seal). The Court concludes that FNF is not able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). To the extent the prior appointment of Roche Freedman LLP, Dkt. No. 42, was a basis for FNF to be deemed lead counsel, the appointment is withdrawn and the order is dissolved with respect to counsel. Henry Rodriguez remains lead plaintiff. Defendants' disqualification motion, Dkt. No. 72, is terminated in all other respects.

## II.  PENDING SEALING AND ADMINISTRATIVE MOTIONS

FNF's request for a protective order designating its 30(b)(6) deposition transcript as "Attorneys' Eyes Only," Dkt. No. 98, is granted. To be clear, FNF's statements about defendants' alleged threats as to Roche, *id.* at 3, played no role in the Court's analysis. But even without that unnecessary detail, the requested sealing is appropriate because the deposition transcript is wholly "unrelated to the merits of" the "underlying cause[s] of action" in this case. *Center for Auto Safety*

*v. Chrysler Group, LLC*, 809 F.3d 1092, 1097-99 (9th Cir. 2016). And the filings received from both sides sufficiently indicate the possibility that the deposition transcript could be used "to 'gratify private spite or promote public scandal,'" or cause "annoyance" or "embarrassment" to FNF, which ultimately is not a party to the underlying action. *Id*. For the same reasons, defendants' motion to seal, Dkt. No. 99, is granted to the extent requested by FNF, Dkt. No. 105-1. FNF's motion to seal, Dkt. No. 102, is also granted.

Defendants' motion to strike FNF's statements about the alleged threats on Roche, Dkt. No. 104, is granted for the reasons already discussed. FNF's motion for leave to file a notice of supplemental evidence, Dkt. No. 109, is denied.

## CONCLUSION

Lead plaintiff Henry Rodriguez may propose alternate lead counsel for the Court's consideration and approval by August 7, 2023. A status conference is set for August 17, 2023, at 10:00 a.m. in Courtroom 11, 450 Golden Gate Ave., San Francisco. The case is stayed and will be administratively closed in the interim.

The record indicates that *Ocampo v. Dfinity USA Research LLC et al.*, Case No. 21-cv-03843 in the Superior Court of California, County of San Mateo, is a case that overlaps significantly with this one. *See* Dkt. Nos. 66, 67. Defendants' counsel are directed to provide a courtesy copy of this order to plaintiffs' counsel in the *Ocampo* action by May 15, 2023.

**IT IS SO ORDERED.**

Dated: May 8, 2023

JAMES DONATO
United States District Judge